Danielle Victor
4 Loring Road
Methuen, MA 01844
978-857-4885
daniellevictorlegal@yahoo.com
daniellekvictor@gmail.com


Self-Represented- Pro Se


**FILED**
CLERK, U.S. DISTRICT COURT

1/27/22

CENTRAL DISTRICT OF CALIFORNIA
BY:    C S         DEPUTY


# UNITED STATES DISTRICT COURT- CENTRAL DISTRICT OF CALIFORNIA

DANIELLE VICTOR,

                              Petitioner/ )
                              Plaintiff, )

      v.

SOUTHWEST WINE & SPIRITS, LLC, a Delaware limited liability company; WALLY'S AUCTION HOUSE, LLC, a California limited liability company; MEL-JEN, a California limited liability company; PAUL MARCIANO, an individual; MAURICE MARCIANO, an individual; CHRISTIAN NAVARRO, an individual; THOMAS KACHANI, an individual; MATTHEW TURNER, an individual; MATTHEW MARCIANO, an individual; JONATHAN POULIN, an individual; MINA JONES, an individual; NANCY HUNTER, an individual; SAMI FROMER, an individual; TATUM JIMENEZ, an individual; CHRISTIE BAKER, an individual; KEITH BJELAJAC, an individual; LAURA BURNS, an individual; CHRISTIE'S WINE, INC., a corporation operating under Delaware law; CHRISTIE'S INC, a corporation operating under New York law; CHRISTIE'S INC, a corporation operating under New Jersey law; 3900 WA ASSOCIATES, LLC, a corporation operating under Delaware law; DELTA AIR LINES, a corporation operating under Delaware law; WALTER MOSLEY, an individual; NATHALIE MEZA CONTRERAS, an individual; NATHALIE MEZA CONTRERAS LAW, A PROFESSIONAL CORPORATION, a California corporation; CARLOS EDUARDO MONTOYA SOLIS, an individual; JUAN J. DOMINGUEZ, an individual; JAE HYUN KIM, an individual; KACEY RICCOMINI, an individual; ARTHUR F. SILBERGELD, an individual; THOMPSON COBURN, LLP, a limited liability partnership of the District of Columbia; RICHARD GENE REINIS, an individual; AMANDA HEADWORTH, an individual; BLANCA GUTIERREZ, an individual; DOMINGUEZ LAW FIRM, PLLC, a Florida limited liability; SALLY D. GREIG, an individual; SALLY D. GREIG, LLC, a Florida limited liability company; THE STATE OF CALIFORNIA, in it's full capacity; THE COUNTY OF LOS ANGELES, in its full capacity; THE UNITED STATES OF AMERICA, in its full capacity; INDIVIDUAL DOES, 1-100, inclusive; DOES 1-100, inclusive;

                              Respondent/
                              Defendant

)
)
)
)
)
)
)
)
)
)
)

Case No.: **CV23-690-MEMF(PDx)**

**VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF**

1

**VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF**

**TO:** Clerk Of Court Kiry K. Gray of the United States District Court, Central District of California.

**PLEASE TAKE NOTICE** that Plaintiff Danielle Victor ("Ms. Victor" or "Plaintiff") attentions this **VERIFIED COMPLAINT & FACTUAL ALLEGATIONS** ("Complaint") to the Chief Judge of this Court Philip S. Gutierrez ("Chief Judge Gutierrez"), ex-parte, this is being filed concurrently with the Plaintiff's Emergency **Motion & Request For Immediate Relief**. Ms. Victor moves this court and Chief Judge Gutierrez to make an order that awards Ms. Victor immediate relief in her favor against the Defendants, each of them, on an expedited basis.

## JURISDICTION

### A. This Court Has Subject Matter Jurisdiction Pursuant to 28 U.S.C §1332

Pursuant to 28 U.S.C. §1332, this court has jurisdiction over this action because it is between citizens of different states, and the amount of controversy is greater than $75,000, exclusive of interests and costs. The Defendants named in this Complaint result in complete diversity of citizenship among the parties.

The Plaintiff now resides in Methuen, Massachusetts, Essex County, after fleeing Los Angeles County, State of California, for her safety, which was a direct result of the unlawful conduct of each and every named Defendant. As mentioned above and herein, Pursuant to 28 U.S.C. §1332, this court has jurisdiction over this action because it is between citizens of different states, including, but not limited too, Massachusetts, Delaware, New York, New Jersey, California, Florida, and the District of Columbia. Including Ms. Victor being a resident of the State of Massachusetts, Essex County. There is complete diversity between the Plaintiff and the Defendant's in this action, and this Court has subject matter jurisdiction.

The amount in controversy meets the jurisdiction requirements, as Ms. Victor is seeking millions of dollars in damages, interest and fees, in addition to all other remedy the Court deems proper. The amount in controversy is well in excess of seventy-five thousand dollars ($75,000), exclusive of interest and costs, giving this Court subject matter jurisdiction.

**B. This Court has Jurisdiction Because This Action Arises Under the Constitution, Laws, or Treaties of the United States Pursuant to 28 U.S.C. §1331**

3

Pursuant to 28 U.S.C. §1331, this Court has jurisdiction over this action because this action arises under the Constitution, laws, or treaties of the United States. Multiple claims that will be made herein arise under the Constitution, laws, or treaties of the United States giving the District Court original jurisdiction of Ms. Victor's action. Mentioned above was a list of United States Codes of law that have been violated by the Defendants, each of them. It must be acknowledged that the list is long and extensive, which also supports Ms. Victor's dire need for emergency relief and/or judgement against the Defendants, each of them, because the Defendants, each of them, will stop at nothing to ensure that Ms. Victor's day in Court be denied and that they will continue to not be held financially and legally liable for their unlawful conduct.

Ms. Victor's Fifth Amendment rights have been violated by the Defendants, each of them. Amendment V, ("Fifth Amendment"), states: "*No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall*

4

be compelled in any criminal case to be a witness against
himself, nor be deprived of life, liberty, or property without
due process of law; nor shall private property be taken for
public use, without just compensation." Ms. Victor has been, and
continues to be, deprived of life, liberty, and property without
due process of law by the Defendants, each of them.

Ms. Victor's Seventh Amendment rights have been violated by
the Defendants, each of them. Amendment VII, ("Seventh
Amendment)", states: "In suits at common law, where the value in
controversy shall exceed twenty dollars, the right of a trial by
jury shall be preserved, and no fact tried by a jury, shall be
otherwise reexamined in any court of the United States, than
according to the rules of the common law." Ms. Victor  from the
very beginning of signing a retainer, with her former
attorney's, Mosley & Associates, which is a fictitious business
name, has always demanded a jury trial. However, all Defendants,
each of them, have tirelessly conspired with one another to
ensure Ms. Victor was, and is, denied the right to a jury trial.
The Defendants, each of them, engaged in heinous unlawful
conduct for their own financial gain and profits, a pattern that
has been repeated on multiple cases that should have been marked

as related or coordinated within the Los Angeles Superior Court and District Courts, but were not.

Ms. Victor's Eighth Amendment rights have been violated by the Defendants, each of them. Amendment VIII, ("Eighth Amendment"), states: *"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."* From denying Ms. Victor **all** of her civil and constitutional rights, interfering with her rights to due process, amongst breaking almost ever single California Labor law, amongst other things, the Defendants, each of them, have inflicted cruel and unusual punishment to Ms. Victor with intention, oppression, malice, and extreme hate.

Ms. Victor's Fourteenth Amendment rights have been violated by the Defendants, each of them. Amendment XIV, ("Fourteenth Amendment"), states: *"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."* The

Defendants, each of them, have forgotten one important fact: _Ms. Victor is a citizen of the United States_. Ms. Victor has been deprived of her life, liberty, property without equal and fair due process of law. Ms. Victor has been denied within the jurisdiction of the United States the equal protection of the laws, which is prohibited by this Amendment. Ms. Victor will continue to be deprived of the rights guaranteed to her by the United States Constitution if action is not taken on this Complaint on an expedited basis.

**C. If Necessary, A District Court May Transfer Any Civil Action to Any Other District or Division Where it Might Have Been Brought Pursuant to 28 U.S.C §1404(a)**

Pursuant to 28 U.S.C §1404(a) which states: "_For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…_"

The Defendants do have financial ties to judicial employees and federal agencies through out the state of California, in fact, Ms. Victor, knows that the United States District Court, Central District of California, has more than one judge that has aided and abetted the Defendants, each of them. Their is indeed a civil conspiracy and an organized criminal organization that

has flooded the California judicial system, members of this organization include judicial officers and clerks of the U.S. District Court, Central District of California.

Ms. Victor is informed, and believes that the U.S. District Court, Central District of California may not have a Judge capable of presiding over this Complaint who does not have financial, political, and/or social interest with one, or several, of the named Defendants. If this assumption is accurate and true then this Court has the ability to remove Ms. Victor's action to any other District where the Plaintiff's case may have been brought and where there is a Judge who has no affiliation and/or interest in any party involved. Since the citizenship of the parties in her pending complaint is diverse then Ms. Victor's action could have been brought within several different U.S. District Courts and can be removed to any of those Courts, this includes a removal to the United States Supreme Court pursuant to 28 U.S.C §1251, subdivision (a) states: "*The Supreme Court shall have original and exclusive jurisdiction of all controversies between two or more states.*" This controversy is between two or more states, therefore, the Supreme Court would have original and exclusive jurisdiction.

**PLEASE TAKE NOTICE** that Plaintiff files this Verified
Complaint for damages and makes such allegations under penalty
of perjury pursuant with the laws of the State of California and
the laws of the United States of America. The Plaintiff alleges
as follows:

## GENERAL ALLEGATIONS

1. Ms. Victor at all relevant times mentioned herein
resided in the county of Los Angeles, State of California before
fleeing to the State of Massachusetts, County of Essex for
safety as a direct result of the Defendants unlawful conduct.

2. Ms. Victor is informed and believes and based thereon
alleges, that Defendant **SOUTHWEST WINE & SPIRITS, LLC,**
("Wally's), is a Delaware limited liability company and at all
times relevant herein was doing substantial business in the
county of Los Angeles, State of California. Ms. Victor is
informed and believes and based thereon alleges, that Defendants
Southwest wine & Spirits, LLC was and is doing business as
Wally's.

3. Ms. Victor is informed and believes and based thereon
alleges, that Defendant **WALLY'S AUCTION HOUSE, LLC,** ("Wally's"),
is a California limited liability company and at all times
relevant herein was doing substantial business in the county of

Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendants Wally's Auction House, LLC was and is doing business as Wally's.

4. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MEL-JEN**, ("Wally's"), is a California limited liability company and at all times relevant herein was doing substantial business in the county of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendants Mel-Jen was and is doing business as Wally's.

5. Ms. Victor is informed and believes and based thereon alleges, that Defendant **PAUL MARCIANO** ("Mr. Marciano")is an individual and a citizen of a country outside of the United States, and at all times relevant herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes that at all times relevant herein Defendant Paul Marciano was the Owner and Principal of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

6. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MAURICE MARCIANO** ("Maurice") is an individual and a citizen of Italy, and at all times relevant

herein was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes that at all relevant times herein mentioned Defendant Maurice Marciano was the Owner and Principal of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

7. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIAN NAVARRO** ("Mr. Navarro") is an individual who, possibly, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Christian Navarro, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Christian Navarro was the President and Principal of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

8. Ms. Victor is informed and believes and based thereon alleges, that Defendant **THOMAS KACHANI** ("Mr. Kachin") is an individual who, possibly, at all relevant times herein mentioned, resided in the County of Los Angeles, State of

California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Thomas Kachani, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Thomas Kachani was the Executive Vice President Of Operations of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

9. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MATTHEW TURNER** ("Mr. Turner") is a in individual who, possibly, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Matthew Turner, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Matthew Turner was the Wine Director of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

10. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MATTHEW MARCIANO** ("Matt Marciano") is a in individual who, at all relevant times herein, resided in the

County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Matthew Marciano, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Matthew Marciano was a manager of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

11. Ms. Victor is informed and believes and based thereon alleges, that Defendant **JONATHAN POULIN** ("Mr. Poulin") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Jonathan Poulin, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Jonathan Poulin was the Assistant General Manager of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

12. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MINA JONES** ("Ms. Jones") is an individual who, at all relevant times herein, resided in the

13

County of Los Angeles, State of California. Ms. Victor is informed and believes and thereon alleges that Defendant Mina Jones is a citizen of France and not of the United States. Ms. Victor is informed and believes and based thereon alleges, that Defendant Mina Jones, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Mina Jones was a manager of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

13. Ms. Victor is informed and believes and based thereon alleges, that Defendant **NANCY HUNTER** ("Ms. Hunter") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Nancy Hunter, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Nancy Hunter was a Human Resources Manager of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

14. Ms. Victor is informed and believes and based thereon alleges, that Defendant **SAMI FROMER** ("Ms. Fromer") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Sami Fromer, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Sami Fromer was the Director of Events of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

15. Ms. Victor is informed and believes and based thereon alleges, that Defendant **TATUM JIMENEZ** ("Ms. Jimenez") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Tatum Jimenez, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Tatum Jimenez was a manager of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

16. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIE BAKER** ("Ms. Baker") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Christie Baker, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Christie Baker was the Director of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

17. Ms. Victor is informed and believes and based thereon alleges, that Defendant **KEITH BJELAJAC** ("Mr. Bjelajac") is an individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Keith Bjelajac, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Keith Bjelajac was the Chief Financial Officer of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

18. Ms. Victor is informed and believes and based thereon alleges, that Defendant **LAURA BURNS** ("Ms. Burns") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Laura Burns, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Laura Burns was the Director of Human Resources of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

19. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIE'S WINE, INC.** ("Christie's Wine") is a corporation operating under Delaware law who, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Christie's Wine, Inc., was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other

17

Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

20. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIE'S INC** ("Christie's") is a corporation operating under New York law who, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Christie's Inc, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

21. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIE'S INC** ("Christie's") is a corporation operating under New Jersey law who, at all relevant times herein, was doing substantial business in the County of

18

Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Christie's Inc, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

22. Ms. Victor is informed and believes and based thereon alleges, that Defendant **3900 WA ASSOCIATES, LLC** ("3900 WA") is a corporation operating under Delaware law who, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant 3900 WA Associates, LLC, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships

19

to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

23. Ms. Victor is informed and believes and based thereon alleges, that Defendant **DELTA AIR LINES, INC.** ("Delta") is a corporation operating under Delaware law who, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Delta Air Lines, Inc., was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

24. Ms. Victor is informed and believes and based thereon alleges, that Defendant **WALTER MOSLEY** ("Mr. Mosley") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Walter Mosley, at all relevant times herein, was an individual

doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Walter Mosley was was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and/or was aiding and abetting with some or all of the other Defendants and/or was acting in civil conspiracy with some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

25. Ms. Victor is informed and believes and based thereon alleges, that Defendant **NATHALIE MEZA CONTRERAS** ("Ms. Contreras") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Nathalie Meza Contreras, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and

believes and based thereon alleges that at all relevant times herein, Defendant Nathalie Meza Contreras was was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and/or was aiding and abetting with some or all of the other Defendants and/or was acting in civil conspiracy with some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

26. Ms. Victor is informed and believes and based thereon alleges, that Defendant **NATHALIE MEZA CONTRERAS LAW, A PROFESSIONAL CORPORATION**, ("Contreras Law") is a corporation operating under California law who, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Nathalie Meza Contreras Law, a Professional Corporation, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation,

22

successor in interest, and/or predecessor in interest of some or
all of the other Defendants, and was engaged with some or all of
the other Defendants in a joint enterprise for profit, and bore
such other relationships to some or all of the other Defendants
so as to be liable for their conduct with respect to the matters
alleged herein.

27. Ms. Victor is informed and believes and based thereon
alleges, that Defendant **CARLOS EDUARDO MONTOYA SOLIS** ("Mr.
Montoya") is an individual who, at all relevant times herein,
resided in the County of Los Angeles, State of California. Ms.
Victor is informed and believes and based thereon alleges, that
Defendant Carlos Eduardo Montoya Solis, at all relevant times
herein, was an individual doing substantial business in the
County of Los Angeles, State of California. Ms. Victor is
informed and believes and based thereon alleges that at all
relevant times herein, Defendant Carlos Eduardo Montoya Solis
was was the partner, agent, affiliate, joint venturer,
controlling shareholder, subsidiary, parent corporation,
successor in interest, and/or predecessor in interest of some or
all of the other Defendants, and/or was aiding and abetting with
some or all of the other Defendants and/or was acting in civil
conspiracy with some or all of the other Defendants, and was

23

engaged with some or all of the other Defendants in a joint
enterprise for profit, and bore such other relationships to some
or all of the other Defendants so as to be liable for their
conduct with respect to the matters alleged herein.

28. Ms. Victor is informed and believes and based thereon
alleges, that Defendant **JUAN J. DOMINGUEZ** ("Juan Dominguez") is
an individual who, at all relevant times herein, resided in the
County of Los Angeles, State of California. Ms. Victor is
informed and believes and based thereon alleges, that Defendant
Juan J. Dominguez, at all relevant times herein, was an
individual doing substantial business in the County of Los
Angeles, State of California. Ms. Victor is informed and
believes and based thereon alleges that at all relevant times
herein, Defendant Juan J. Dominguez was was the partner, agent,
affiliate, joint venturer, controlling shareholder, subsidiary,
parent corporation, successor in interest, and/or predecessor in
interest of some or all of the other Defendants, and/or was
aiding and abetting with some or all of the other Defendants
and/or was acting in civil conspiracy with some or all of the
other Defendants, and was engaged with some or all of the other
Defendants in a joint enterprise for profit, and bore such other
relationships to some or all of the other Defendants so as to be

liable for their conduct with respect to the matters alleged herein.

29. Ms. Victor is informed and believes and based thereon alleges, that Defendant **JAE HYUN KIM** ("Mr. Kim") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Jae Hyun Kim, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Jae Hyun Kim was was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and/or was aiding and abetting with some or all of the other Defendants and/or was acting in civil conspiracy with some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

30. Ms. Victor is informed and believes and based thereon alleges, that Defendant **KACEY RICCOMINI** ("Ms. Riccomini") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Kacey Riccomini, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Kacey Riccomini was was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and/or was aiding and abetting with some or all of the other Defendants and/or was acting in civil conspiracy with some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

31. Ms. Victor is informed and believes and based thereon alleges, that Defendant **ARTHUR F. SILBERGELD** ("Mr. Silbergeld")

is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Arthur F. Silbergeld, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Arthur F. Silbergeld was was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and/or was aiding and abetting with some or all of the other Defendants and/or was acting in civil conspiracy with some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

32. Ms. Victor is informed and believes and based thereon alleges, that Defendant **THOMPSON COBURN, LLP,** ("Thompson Coburn") is a limited liability partnership operating under the laws of the District of Columbia, who, at all relevant times

herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes that Defendant Thompson Coburn, LLP, had a main branch operating under the laws of Missouri and has since become "inactive" after Ms. Victor had attempted to make multiple complaints against the Missouri branch. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Thompson Coburn, LLP, a limited liability partnership, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

33. Ms. Victor is informed and believes and based thereon alleges, that Defendant **RICHARD GENE REINIS** ("Mr. Reinis") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Richard Gene Reinis, at all relevant times herein, was an

individual doing substantial business in the County of Los
Angeles, State of California. Ms. Victor is informed and
believes and based thereon alleges that at all relevant times
herein, Defendant Richard Gene Reinis was was the partner,
agent, affiliate, joint venturer, controlling shareholder,
subsidiary, parent corporation, successor in interest, and/or
predecessor in interest of some or all of the other Defendants,
and/or was aiding and abetting with some or all of the other
Defendants and/or was acting in civil conspiracy with some or
all of the other Defendants, and was engaged with some or all of
the other Defendants in a joint enterprise for profit, and bore
such other relationships to some or all of the other Defendants
so as to be liable for their conduct with respect to the matters
alleged herein.

34. Ms. Victor is informed and believes and based thereon
alleges, that Defendant **AMANDA HEADWORTH** ("Ms. Headworth") is an
individual who, at all relevant times herein, resided in the
County of Los Angeles, State of California. Ms. Victor is
informed and believes and based thereon alleges, that Defendant
Amanda Headworth, at all relevant times herein, was an
individual doing substantial business in the County of Los
Angeles, State of California. Ms. Victor is informed and

believes and based thereon alleges that at all relevant times herein, Defendant Amanda Headworth was was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and/or was aiding and abetting with some or all of the other Defendants and/or was acting in civil conspiracy with some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

35. Ms. Victor is informed and believes and based thereon alleges, that Defendant **BLANCA GUTIERREZ** ("Ms. Gutierrez") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Blanca Gutierrez, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Blanca Gutierrez was was the partner, agent,

affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and/or was aiding and abetting with some or all of the other Defendants and/or was acting in civil conspiracy with some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

36. Ms. Victor is informed and believes and based thereon alleges, that Defendant **DOMINGUEZ LAW FIRM, PLLC,** ("TDF") is a limited liability company operating under Florida law who, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Dominguez Law Firm, PLLC, a limited liability company, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise

31

for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

37. Ms. Victor is informed and believes and based thereon alleges, that Defendant **SALLY D. GREIG, LLC**, ("Greig, LLC") is a limited liability company operating under Florida law who, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Sally D. Greig, LLC, a limited liability company, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

38. Ms. Victor is informed and believes and based thereon alleges, that Defendant **SALLY D. GREIG** ("Ms. Greig") is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is

32

informed and believes and based thereon alleges, that Defendant Sally D. Greig, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Sally D. Greig was was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and/or was aiding and abetting with some or all of the other Defendants and/or was acting in civil conspiracy with some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

39. Ms. Victor is informed and believes and based thereon alleges, that Defendant **THE STATE OF CALIFORNIA**, in its full capacity, operating under the laws of the State of California and of the United States, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based

thereon alleges that at all relevant times herein, Defendant The State of California, in its full capacity, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein. Ms. Victor is informed and believes that Defendant The State of California, in its full capacity, at all relevant times herein failed to prevent, failed to protect, and/or failed to investigate resulting in irreparable injury to the Plaintiff.

40. Ms. Victor is informed and believes and based thereon alleges, that Defendant **THE COUNTY OF LOS ANGELES**, in its full capacity, operating under the laws of the State of California and of the United States, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant The County of Los Angeles, in its full capacity, was the partner, agent, affiliate, joint venturer, controlling shareholder,

34

subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein. Ms. Victor is informed and believes that Defendant The County of Los Angeles, in its full capacity, at all relevant times herein failed to prevent, failed to protect, and/or failed to investigate resulting in irreparable injury to the Plaintiff.

41. Ms. Victor is informed and believes and based thereon alleges, that Defendant **THE UNITED STATES OF AMERICA**, in its full capacity, operating under the laws of the State of the United States, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant The United States of America, in its full capacity, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a

35

joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein. Ms. Victor is informed and believes that Defendant The United States of America, in its full capacity, at all relevant times herein failed to prevent, failed to protect, and/or failed to investigate resulting in irreparable injury to the Plaintiff.

42. The true names and capacities, whether corporate, associate, or otherwise, of Defendants **DOES 1-100**, inclusive, are unknown to Ms. Victor at this time. Ms. Victor therefor sues said Defendants by such fictitious names. When true names and capacities of said Defendants are ascertained, Ms. Victor will seek leave of court to amend this complaint to allege their true names and capacities. Ms. Victor is informed and believes and thereon alleges that each Defendant designated herein as a Doe is responsible in some manner for each other Defendants acts and omissions, and for the resulting injuries and damages to Ms. Victor, as alleged herein.

43. The true names and capacities, whether individual, or otherwise, of Defendants **INDIVIDUAL DOES 1-100**, inclusive, are unknown to Ms. Victor at this time. Ms. Victor therefor sues said Defendants by such fictitious names. When true names and

capacities of said Defendants are ascertained, Ms. Victor will seek leave of court to amend this complaint to allege their true names and capacities. Ms. Victor is informed and believes and thereon alleges that each Defendant designated herein as a Doe is responsible in some manner for each other Defendants acts and omissions, and for the resulting injuries and damages to Ms. Victor, as alleged herein.

44. Ms. Victor is informed and believes and based thereon alleges, that all Defendants are, and at all times relevant herein, were doing substantial business in the county of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that all Defendants, including individuals were either residents or doing substantial business in the county of Los Angeles, State of California.

45. Ms. Victor is informed and believes and based thereon alleges that at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of

the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

46. Ms. Victor is informed and believes and based thereon alleges that at all relevant times, each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, approved, adopted, controlled, and aided and abetted the conduct of all other Defendants.

47. Defendants and each of them, are, and were, the agents of the other Defendants, and in acting as described herein, were acting within the scope of their authority as agents thereof, and with the permission and consent of the other Defendants.

48. Ms. Victor herein was subjected to unlawful behavior by the Defendants.

49. Despite Ms. Victor making multiple verbal and written complaints to several management about sexual harassment, assault, sexual assault, harassment, bullying, retaliation, non payment of wages, and discrimination, management failed to do anything to stop such behavior nor report Ms. Victor's complaints to the Wally's Human Resources department. The Defendants failure to report and their failure to prevent further harassment, both sexual and non, bullying, retaliation,

38

non payment of wages, and discrimination was willful, intentional, and in reckless disregard for Ms. Victor's rights, feelings, and over all well being.

50. The Defendants through the Los Angeles Superior Court and with Judicial employees, acting in their full capacity, under color of law, attempted to defame Ms. Victor and have the court perceive her in a false light excusing the Defendants behavior by accusing Ms. Victor of prostitution, extortion, among other things. The Defendants, each of them, have used fraudulent means throughout the past three years to preserve the Defendants reputation, avoid a jury trial and/or criminal prosecution, and to minimize all costs, including damages owed to Ms. Victor, in an effort to conceal the Defendants unlawful behavior, all without regard to Ms. Victor's guaranteed rights or feelings.

51. Ms. Victor is informed and believes that the Defendants have sexually assaulted, sexually battered, abused, harassed, discriminated against, and retaliated against multiple victims, such as Ms. Victor, both employees of the Defendants and non-employees of the Defendants. The Defendants behavior toward Ms. Victor was not the first time the Defendants have engaged in

unlawful behavior and it certainly will not be the last time the Defendants engage in unlawful behavior.

52. Ms. Victor is informed and believes that the Defendants past and present history of sexual assault, sexual battery, sexual abuse, sexual harassment, harassment, and discrimination has been intentionally not investigated by any State or Federal agency in civil conspiracy to protect the Defendants each of them from legal and financial accountability for their ongoing heinous and oppressive conduct. Ms. Victor is informed and believes that the Defendants, each of them, have engaged in such unlawful conduct that it has resulted in outright public corruption, including bribery and/or the offer of kick back payments to Judicial employees who were acting in their full capacity, under color of law.

53. Ms. Victor is informed and believes that the Human Resources department, and all Departments, knew or should have known about the Defendant's unlawful behavior towards female employee's and customers as well as discriminatory behavior toward ethnic employee's and customers because there have been multiple complaints about the Defendants unwarranted and inappropriate behavior, even complaints filed in the Los Angeles

Superior Court, with the DFEH, and with the California Labor Commissioner's Office.

54. Ms. Victor is informed and believes that the Human Resources Department, and all other Departments, intentionally failed to take any appropriate action to protect female employees or customers and employees and customers of color. Their intentional neglect and cover up of the Defendants unlawful behavior was done to protect the reputation and finances of the Defendants and to ensure the Defendants avoided all legal and financial liability and accountability.

55. Ms. Victor is informed and believes that all Defendants, collectively, decided to conceal the fact that female employees and customers and employees and customers of color were being targeted and treated in ways that violated multiple laws in the State of California as well as the laws of the United States. This concealment was done in order to protect the reputation and finances of the Defendants, collectively, as well as ensure the Defendants avoid legal and financial liability and accountability.

56. Ms. Victor is informed and believes that all Defendants, collectively, entered into a conspiracy, the object of which was to conceal the fact that multiple victims had and

41

VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF

continue to complain about sexually inappropriate behavior and commentary by the Defendants, complaints about racism, and complaints about harassment, bullying, non payment of wages, and retaliation; to conceal the pattern of the Defendants and to enable the Defendants to continue to behave unlawfully with no accountability or repercussions.

57. Ms. Victor is informed and believes that the Human Resources Department and all management, agents, principals, partners, affiliates, etc., of Wally's conspired with all Defendants, each of them, to conceal the Defendants negligence while running the business, their complete failure to prevent harm to any and all employees and customers, and acted in furtherance of that conspiracy.

58. In furtherance of that conspiracy the Defendants have previously attempted to argue that all of Ms. Victor's claims were baseless and without merit. All of Ms. Victor's claims and others claims were either ignored, not investigated, or falsely found to be without merit, as an intentional and calculated moved made by the Defendants, each of them, to cause Ms. Victor intentional harm with malice, oppression, and extreme hate.

59. Over the years the Defendants have engaged in unlawful behavior that was sexually or racially motivated at the

Defendants place of business and all other businesses each individual Defendant is associated with and/or owns. Multiple complaints have been filed by several different Plaintiff's. Ms. Victor learned of these complaints and has discovered that no federal agency has conducted a legitimate or proper investigation in civil conspiracy with the Defendants.

60. In furtherance of the above alleged conspiracy, Ms. Victor is informed and believes that her complaint and any other complaints made by different Plaintiffs, against the Defendants, have not been reported accurately to the Department of Fair Employment & Housing ("DFEH"), the California Department of Industrial Relations, U.S. Equal Employment Opportunity Commission ("EEOC"), or any other legal authority or federal agency, in order to preserve the Defendants reputation and finances and to protect the unlawful profits they receive for such protection. The Defendants behavior not being reported nor their behavior being stopped insured the Defendants constant business occupancy, business sales and revenue, and the Defendants have not been adversely affected by their unlawful behavior.

61. Ms. Victor is informed and believes that no individual defendant has been held accountable for their individual actions

and unlawful behavior toward female employees and customers or employees and customers of color.

62. Ms. Victor has suffered emotional distress, humiliation, embarrassment, mental distress, anxiety, depression, illness, shame, sadness, anger, loss of enjoyment of life, personal and physical injuries, and unimaginable financial hardship due to the unlawful behavior by all Defendants, each of them, and their continued unlawful behavior.

### FACTUAL ALLEGATIONS

64. On January 11, 2019, prior to being employed at Wally's, Ms. Victor attended Wally's with some friends, Cassandra Baker ("Cassie") and Dezirae Deitch ("Ms. Deitch").

65. Ms. Victor and her friends checked in at the hostess stand, at Wally's, for a table of three where they were told a wait time of thirty-five minutes and were advised to grab a drink at the bar while they waited. Standing at the host stand was a manager whose name has never been learned by the Plaintiff, ("Manager Doe"), who was a French man, with a heavy French accent. Manager Doe followed Ms. Victor and her friends around the restaurant for several minutes. After ordering and paying for three glasses of wine, Manager Doe tapped Ms. Victor on her shoulder. Ms. Victor turned around and said "Can I help

44

you?" Manager Doe advised Ms. Victor that she needed to leave the restaurant immediately. Plaintiff chuckled and asked "Why?" Manager Doe told Ms. Victor that he could see her nipples through her bodysuit and that she needed to leave Wally's immediately. The Plaintiff and her friends were appalled by his degrading, outlandish, unwarranted, and disgusting remarks and refused to leave. Manager Doe kept harassing Ms. Victor tirelessly for several minutes causing a scene resulting in others in the restaurant to begin onlooking their argument either for curiosity or judgement; either way, leaving Ms. Victor humiliated and embarrassed. Ms. Victor went to the host stand and asked to speak to a different manager. Another Manager approached the host stand, apologized for what was said and allowed Ms. Victor to file a written complaint against Manager Doe whom had approached and harassed Ms. Victor, a paying customer, for no necessary reason. Ms. Victor and her friends were given three glasses of wine for free and thirty percent (30%) off their meal because of Manager Doe's actions.

66. On the evening of January 11, 2019, Ms. Victor had been wearing a yellow lace bodysuit, a cropped camouflage jacket, black leggings, and black heeled boots. Before attending Wally's, the Plaintiff and her friends had drinks at Harriet's

Rooftop ("Harriet's), located at 8490 Sunset Blvd., West Hollywood, CA 90069. Ms. Victor, nor her friends, had issues, especially on dress code, while attending Harriets. After the Plaintiff and her friends had a glass of wine at Harriet's they spontaneously decided to have dinner at Wally's, hence the no reservation and wait time for a table upon their arrival. Ms. Victor had been the only woman of color in the restaurant that evening, and was also the only woman, and person, followed, targeted, and harassed as a paying customer. Keep in mind these are actions taken by Wally's and their employee's **prior to Ms. Victor's employment**, establishing a disgusting, unacceptable, and repeated pattern of racism, discrimination, sexual harassment, and a complete disregard to a person's individual and promised Civil rights.

67. Ms. Victor was not free or treated equal and was maliciously exposed to discrimination and harassment based on her sex, her race, her color, and her genetic information from Wally's and it's employee's during her terrible experience as a customer on January 11, 2019.

68. On February 14, 2019, the Plaintiff had an interview at Wally's for an open hostess position, a position she learned of

through a Craigslist ad. Ms. Victor met with Tomara Conrad ("Ms. Conrad") upon her arrival to Wally's. Ms. Conrad at the time, and possibly may still be, the Maître D, "head hostess", of Wally's. Ms. Conrad hired Ms. Victor on the spot but Ms. Conrad left briefly to get another Manager, Thibaud Duccini ("Mr. Duccini") to begin a second interview with Ms. Victor before the final decision of her hire. After Mr. Duccini conducted a brief second interview, he congratulated Ms. Victor on her hire and informed her that her first training shift would be the following evening on February 15, 2019.

69. At Ms. Victor's interview, Ms. Victor had been wearing an oversized knit sweater from the brand Nasty Gal, with black jeans, and her hair in a slick back low ponytail. Ms. Conrad told Ms. Victor  to dress "sexy" for work because the hostesses were the first look of the restaurant and part of the job is looking "attractive". Ms. Conrad advised Ms. Victor to not wear sweaters like the one she had on and stated, "This isn't an office." Ms. Victor took out her cellphone to pull up her Instagram account to show Ms. Conrad pictures of her tattoos and Ms. Conrad's response was "So hot!" Ms. Victor asked if showing her tattoos would be an issue and both Ms. Conrad and Mr. Duccini confirmed that Ms. Victor's tattoos would not be an

47

issue. Ms. Conrad again reminded Ms. Victor about how to dress, advising Ms. Victor to dress like she would if she were going to be coming to Wally's for a night out. However, Ms. Victor, remembers how she dressed for her evening out to Wally's on January 11, 2019, and how she was treated, and couldn't imagine being treated as such as an employee. Ms. Victor knew that before she accepted her job with Wally's that she had to tell Ms. Conrad or Mr. Duccini about her experience with Manager Doe, and if possible, make a request to work shifts that Manager Doe was not scheduled on because Manager Doe had and would continue to make Ms. Victor uncomfortable.

70. Ms. Victor had made it known during her interview process that she had done several reality TV shows, including a show on Oxygen Network, NBC Universal, entitled, *Bad Girls Club*. Ms. Victor also made it known during her interview process that her time on television resulted in her having a large and decent Social Media following on Instagram, Twitter, SnapChat, and YouTube.  Ms. Victor had asked Ms. Conrad and Mr. Duccini if someone coming into Wally's and recognizing her would be an issue. Both Ms. Conrad and Mr. Duccini were intrigued with this newly disclosed information about Ms. Victor and assured the Plaintiff that it would not be a problem because Wally's had,

48

and possibly still has, lots of well known people and/or celebrities come in to eat or drink at their establishment. Ms. Conrad and Mr. Duccini ensured Ms. Victor that her being somewhat known could only "help" Wally's, not the opposite.

71. After Ms. Victor's interview, and prior to leaving Wally's, Ms. Victor approached Mr. Duccini and asked if there was a Manager who worked there, who was French and had a "heavy" accent" she described. Ms. Victor informed Mr. Duccini about the awful encounter she had with Manager Doe and his harassment during her visit to Wally's the month prior. Mr. Duccini told Ms. Victor that Manager Doe was terminated after multiple customers and employees had complained about him and his behavior. Ms. Victor was relieved she would not have to see or deal with that manager in a work environment as it was already hostile as a paying customer.

72. It is important to answer the question one may ask while reading these allegations, as to why Ms. Victor would seek employment at Wally's, an establishment that had already discriminated against her and harassed her. Ms. Victor, prior to building the presence she now has on Social Media, did not work full time on Social Media. When Ms. Victor moved to California

49

she made an assumption that finding a job in a club as a bartender or bottle service would be easy especially with her history in that field of employment, however, that assumption was wrong. Things got so bad for the Plaintiff that at one point she had made a YouTube video begging the internet for money to help her pay her rent because she did not want to leave California; a moment of time she still gets harassed about on Social Media. Wally's was the first job interview and first job offer the Plaintiff had received in a long, bad, period of time, so despite her hesitation and her terrible prior experience, she had no choice but to take the job. Ms. Victor was in survival mode and that included accepting a job position at Wally's which will prove to be one of the worst mistakes she has made in her lifetime.

73. February 15, 2019, was Ms. Victor's first training shift at Wally's and the day she had filled out the paperwork required for her employment with the Company. Upon request from Mr. Duccini, Ms. Victor arrived to Wally's a half hour prior to the start of her training work shift as requested, arriving at 4pm. The half hour she was filling out paperwork she was not clocked in. Upon arrival, Ms. Victor was sat in the private dining room in the back of Wally's and was given the Wally's

50

Employee Handbook ("Handbook"), which was over seventy pages long. Ms. Victor was expected to read this entire Handbook in addition to reading and signing a separate pile of multiple papers, that required Ms. Victor's signature and/or initials, prior to her training shift which was scheduled to start in thirty minutes. It was impossible for Ms. Victor to read everything in full detail in thirty minutes on top of the expectation to complete a large pile of paperwork.

74. After thirty minutes had passed, at 430PM, Mr. Duccini came into the private dining room and told the Plaintiff it was time for her shift to begin. Ms. Victor quickly signed the remaining paperwork and handed it to Mr. Duccini. It is important to note that the Employee Acknowledgement and Arbitration Agreement signed by Ms. Victor was a separate document given to her with all other paperwork and the signed agreement was not torn or taken out of the Handbook after she signed her signature.

75. It is also important to note that these documents were received by Ms. Victor on June 8, 2020 by her prior legal counsel referenced by their fictitious business name, Mosley & Associates ("Mosley & Associates" or "prior legal counsel"), and

51

she was never given or able to receive a copy of any of the documentation she had signed that day prior to June 8, 2020. An email correspondence between Ms. Victor and Mosley & Associates began on June 8, 2020 in regards to Mosley & Associates sending Ms. Victor a copy of her employee file via a drop box link, a drop box link that is now very much expired.

76. Ms. Victor had asked Mr. Duccini if she could keep the Handbook, as she barely got half way through reading it in the short amount of time that was given to her to complete such a task. Mr. Duccini informed Ms. Victor that "they were low on copies" but he would get her one by her next shift. Ms. Victor was **never** given a copy of the Handbook, not on her next shift, not in future write ups over dress code, and not even upon her *wrongful* termination. Ms. Victor was never given a copy of the Handbook to keep, nor was she ever given a copy to borrow for review with the promise that the Handbook would be returned to Wally's Management.  Access to the Handbook, which stated all the rules and regulations, was limited to the half hour time slot Ms. Victor was given prior to her first training shift on February 15, 2019. It was impossible to ask any questions or to discuss concerns about the Handbook to Management or Supervisors when Ms. Victor was denied the opportunity to keep a copy. Ms.

52

Victor, as well as other new Employees of Wally's, should have been able to take the Handbook home to read it in full, and then, only after agreeing to its entirety, should new employees been authorized to sign and return the Employee Acknowledgement & Agreement Form to the Company.

77. Once Ms. Victor had handed Mr. Duccini the Handbook and her pile of signed paperwork, Mr. Duccini walked Ms. Victor to the front of the restaurant, to the hostess stand, and clocked Ms. Victor into her shift on the hostess computer, using a computer key that all Managers at Wally's had. Ms. Victor worked and trained until 1030PM on the evening of February 15, 2019, making the total work shift six hours, excluding the additional half hour she had filled out paperwork. During this training shift the Plaintiff received no meal break, nor any ten minute breaks, despite working a total of 6 hours. The work shift would have been 6.5 hours if the additional half hour for paperwork completion had been included, as it should have been.

78. On February 16, 2019, the Plaintiff had her second training shift and arrived at Wally's at 3PM. Mr. Duccini was the manager on duty during the Plaintiff's training shift. Ms. Victor asked Mr. Duccini if a copy of the Handbook had been made

for her yet and he told her "Not yet." How is supplying a copy

of the Handbook to an employee such a difficult task, especially

if they had a computer and access to a printer in the office in

the back of Wally's? Not giving Ms. Victor her employee handbook

was an intentional act.

79. The Plaintiff wore black jeans, tan leopard print

combat boots, a black one shoulder crop top, and gold drop

earrings, to Wally's that evening. Plaintiff asked Mr. Duccini

if the outfit she had on was acceptable and Mr. Duccini

confirmed that "It was great." That evening the Plaintiff worked

with hostesses Ms. Conrad, Veronica Prince ("Ms. Prince"), and

Carolina Banks ("Ms. Banks"). All of the hostesses were in crop

tops showing mid drift and skin and they were all wearing heels.

The Plaintiff was the only hostess wearing flat combat boots.

Looking at the other hostesses' attire, the Plaintiff was

learning what she could wear to work through her fellow

employees "approved" and "acceptable" attire. The closing

manager clocked Ms. Victor out of her second training shift at

11PM, making the training shift a total of 7.5 hours. Once

again, Ms. Victor did not receive a meal break nor a rest period

during her 7.5 hours of training at Wally's.

80. On February 17, 2019, the Plaintiff worked her final training shift at Wally's and was introduced to Manager Mina Jones ("Ms. Jones"), a manager who would soon become one of the Plaintiffs' most malicious and persistent harassers. Ms. Victor arrived to Wally's for her final training shift at 930AM. Although the Plaintiff told Ms. Conrad and Mr. Duccini, at her hiring interview, that she was unable to work mornings, Ms. Victor was still required to train for the morning shift as standard procedure.

81. Ms. Victor wore a Motel Rocks printed dress, Dr. Martin boots, and a long black maxi cardigan over her dress to Wally's that morning. Ms. Victor kept the cardigan on over her dress for the entire training shift. At the end of the shift Ms. Jones called the Plaintiff into the back office. Ms. Jones asked the Plaintiff if she knew where she was. Ms. Victor, confused by the question, asked Ms. Jones what she meant by her question. Ms. Jones explained to the Plaintiff that she was in Beverly Hills, that wearing an outfit like the one the Plaintiff had on, was not acceptable for work especially since families attend Wally's on Sunday mornings for their brunches. The Plaintiff asked Ms. Jones why the outfit wasn't acceptable and stated that she would wear it to brunch with her own family. Ms. Victor also attempted

55

to explain to Ms. Jones that she merely dressed like she was going to a night shift as she wouldn't be covering morning shifts and had not received a copy of the Handbook and did not know the rules and regulations surrounding dress code for hostesses that work morning vs. night shifts. Ms. Jones did not give a proper explanation as to how or why Ms. Victor's attire was unacceptable or not "Beverly Hills" worthy, but only stated to not have bare legs showing again with a dress "that length". The Plaintiff was confused by these demands because on her prior training shift, on February 16, 2019, Ms. Conrad had on a mini skirt with her legs exposed that was much shorter than the dress the Plaintiff had on for the morning shift. However, the Plaintiff agreed to not show her legs again in the workplace with any dress "too short".  Feeling not only insulted but humiliated after her conversation with Ms. Jones, Ms. Victor left Wally's and her final training shift at 3PM that afternoon, making the total shift a total of 5.5 hours. Again, Ms. Victor did not receive any rest or meal periods during this training shift.

82. February 18, 2019, was the Plaintiffs' first shift as a hostess after completing the necessary three training shifts. Ms. Victor arrived to her shift at 4PM. Ms. Victor wore large

rhinestone ball detailed hoops with a black turtleneck and jeans
to Wally's that evening. Midway through the Plaintiff's shift
she was summoned to the office again by Ms. Jones, where Ms.
Jones told her that she was not going to write the Plaintiff up
"this time" but Ms. Victor was required to take her earrings off
immediately as they were "distracting to customers" and
"unacceptable for work." Ms. Jones then handed Ms. Victor four
images of models who were modeling for the brand GUESS?, INC.
("GUESS"), which is owned by Defendant Mr. Marciano and Maurice,
principal owners of Wally's. Ms. Jones asked Ms. Victor to study
the images of the GUESS models and told her that maybe she could
learn a thing or two about how to dress to a job in Beverly
Hills. Every image shown to Ms. Victor was a white model who was
tall and skinny, which is the polar opposite of Ms. Victor's
race, color, size, and shape and no studying of these photos
would change that. Completely disgusted by Ms. Jones statements,
rude behavior, direct racism and discrimination towards Ms.
Victor, Ms. Victor knew that she needed money and she needed a
job, so Ms. Victor complied with Ms. Jones' demands and removed
her earrings before returning to the hostess stand.

83. The Plaintiff was the only hostess employed at Wally's
who got in trouble for all of her attire, even her jewelry, and

this was only her fourth shift since her employment with Wally's began. After her second, unpleasant, insulting, and discriminatory conversation with Ms. Jones, Ms. Victor became self-aware that working at this restaurant was probably going to give her issues. However, at this time Ms. Victor had not been doing Social Media full time and she desperately needed employment. Unfortunately, since Wally's was the first job offer the Plaintiff had received, she promised herself that she was going to deal with any and all the hostility that would be thrown her way and attempt to suck it up because she learned the hard way that California is an expensive state, Los Angeles is an expensive city, and Ms. Victor had bills to pay. Ms. Victor left her first official shift as a non-training hostess of Wally's at 12AM, midnight. Ms. Victor had worked a full 8 hour work shift, and although she received a half hour meal break, she did not receive any rest or recovery periods.

84. On February 20, 2019, Ms. Victor arrived to work at Wally's at 1PM in the afternoon. Ms. Victor wore black jeans, a black ribbed body suit, a long black maxi cardigan, and black boots. The Plaintiff recalls sighing in relief on her way home at 9PM that evening as it was the first shift, since her employment began, that Ms. Jones or any other manager hadn't

58

harassed her about one thing if not the other. Ms. Victor's work shift was 8 hours, she did get a half hour meal break, but again, did not have any rest of recovery periods.

85. On February 22, 2019, Ms. Victor arrived to work at Wally's at 1PM, wearing a cropped, off white knit sweater with a black faux leather midi skirt, black tights (so her legs were not exposed), a leather jacket, and combat boots. Although the Plaintiff was not sent home, Ms. Jones made it a duty to approach the hostess stand and start a conversation with the Plaintiff about how she doesn't understand the style of "young America" and how women dress differently in France. Ms. Jones proceeded to go on and on and on about how women in France wouldn't wear the Plaintiff's style clothing to work or in general, maliciously, and intentionally insulting Ms. Victor. Ms. Victor was put in a very uncomfortable situation being judged, ridiculed, and humiliated once again on her appearance and outfit by Ms. Jones. Ms. Victor took notice that Ms. Jones was not making comments or striking similar conversations with any of the other hostesses that evening. Ms. Victor did not leave work that evening until 945PM, making her shift a total of 8.75 hours worked. Again, Ms. Victor did not get any rest or recovery periods during this shift.

86. February 22, 2019 concluded Ms. Victor's work shifts for her first pay period at Wally's, this pay period was for the dates February 11, 2019 to February 24, 2019. Ms. Victor recorded her working shifts as February 15, February 16, February 17, February 18, February 20, and February 22 of 2019, these do not included any dates or times in which she could have picked up a shift or added hours or failed to keep or failed to receive accurate payroll records date and times from Wally's. The total hours that the Plaintiff knows she had worked, not including any missing hours, or undocumented hours, for the pay period of 02/11/2019- 02/24/2019 was 42.75 hours. The Regular pay rate for Ms. Victor during her employment at Wally's was $14 an hour and the overtime pay rate was $21 an hour. At $14 an hour for 40 hours and $21 an hour for 2.75 overtime hours, the total amount of the check should have been $617.75, minus the appropriate taxes and fees.

87. Ms. Victor was issued a check on March 6, 2019 for the amount of $469.25. The check was issued by Wally's Wine & Spirits. The address for Wally's Wine & Spirits on the check was 10459 Jefferson Blvd., Culver City, CA 90232. The phone number listed on the check was (310)-475-0805. The check was issued by Bank of America, check number 53034. The routing number on the

check was 12100035, the account number was 00000325017209061, and the sequence number was 000574431014. In the employee file sent to Ms. Victor on June 8, 2020, by her prior legal counsel, Wally's had marked Ms.Victor's first shift as February 28, 2019 and did not include her entire first pay period which is falsified information and fraud on the court. This check was short hours, hours that have never been paid to Ms. Victor.

88. Ms.Victor's next pay period, and the pay period Wally's attempted to state was Ms. Victors first week, to deceive the court, was from 2/25/19 - 3/15/19. Ms. Victor worked on February 25th, 2019 from 5PM to 12AM, midnight, and she did not take her dinner meal break until 1030PM that evening. This shift was seven hours, minus a half hour meal break, making the time clocked in for Ms. Victor six and half hours. Ms. Victor was unable to take any rest or recovery periods this shift.

89. Employees of Wally's were required to download an app where they could chat with management or other employees about switching shifts, ask questions, or voice their comments and/or concerns, etc. Manager Ms. Jones contacted Ms. Victor on the app following her shift and stated that she was changing the time frame of her meal period so that the Human Resources Department

("HR") did not fine Wally's for Ms. Victor taking her break past the five hour required time. Ms. Victor did not fully understand what Ms. Jones meant by penalties but what Ms. Victor did understand is that Ms. Jones had it out for her and if she didn't comply she would only become a bigger target for Ms. Jones to bully, harass, or retaliate against, so Ms. Victor agreed to have Ms. Jones adjust her time sheet.

90. Ms. Victor worked from 5PM to close on February 16, 2019. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

91. Ms. Victor worked from 1PM to 945PM on February 28, 2019, working a total of eight hours and forty-five minutes. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

92. Ms. Victor wore an expensive bustier, embellished top from the brand Nasty Gal, black jeans, and boots to work that evening. The embellishments on Ms. Victor's top had sequins and embellishments that resembled what someone would have worn to a Great Gatsby themed party, a top that got more than enough

compliments from customers that dined at Wally's that evening. However, Ms. Jones, per usual, made it a point to find her way to the host stand to make insulting commentary towards Ms. Victor and her attire. At one point while a customer was complimenting Ms. Victor's top stating it was "gorgeous", Ms. Jones interjected into the conversation stating "Gorgeous? It is distracting." Both Ms. Victor and the customer looked at each other in discomfort before Ms. Victor walked her and her party to their table. Ms. Jones, yet again, humiliated, embarrassed, and degraded Ms. Victor but this time did so in front of customers, maliciously and with pleasure.

93. Ms. Victor arrived to work at 1PM on March 1, 2019, wearing a tan jumpsuit, black Dr. Martin boots, a gold necklace, and a leather thick jacket to wear in and out of work to keep warm. After about twenty minutes of being at Wally's, Ms. Jones approached Ms. Victor while seating a group of customers and told her "Meet me at the hostess stand." Ms. Victor met Ms. Jones at the host stand and she was scolded harshly again in front of customers about how she needed to go home immediately to change or just leave for the entire shift. Ms. Victor again embarrassed and humiliated asked Ms. Jones, why?, as she did not see what could possibly be wrong with her outfit. Ms. Jones told

her that her "bottom" was not appropriate in her jumpsuit and that she received complaints from customers wives that "Ms. Victor's bottom was making them uncomfortable." Horrified by what Ms. Jones was saying but even more horrified that Ms. Jones was saying such things in front of customers at the host stand instead of in the office, Ms. Victor was at a loss for words. Ms. Jones demanded she leave immediately and change or leave and not come back. Ms. Victor left Wally's at 140PM to head back to her apartment via Uber to change. At this point Ms. Victor had not begun driving herself to work and was taking Ubers to and from, which was an additional cost that had been stressing Ms. Victor out. Mr. Duccini who had heard of Ms. Jones decision to send Ms. Victor home to change ensured Ms. Victor that she would be reimbursed for that time but never was.

94. Ms. Victor arrived back to work at 256PM and had changed into a black long sleeve body suit with black jeans and black boots, and was more than highly upset about the entire situation. Upon arriving back to Wally's the entire staff at Wally's took amusement discussing Ms. Victor's situation and everyone kept coming up to her, even staff members she did not know, making comments like "damn girl, you got sent home for that ass!" Ms. Victor was absolutely mortified.

95. Defendant Matt Marciano had called Ms. Victor over to a table he was sitting at with his friends and informed her he had heard about what happened. Matt Marciano then told Ms. Victor his nickname for her would be "tiny". Ms. Victor asked Matt Marciano why that would be his nickname for her where he responded "because your ass is big but you are small," and then him and his friends all had a nice laugh at Ms. Victor's expense while drinking their alcoholic drinks. Keep in mind, Matt Marciano was drinking while on the clock as a Manager, a pattern he repeats the entire time Ms. Victor was employed at Wally's. Ms. Victor at this point had just about enough of everyone at Wally's and of how she was being treated during this shift. At 930PM, which could not have come soon enough, Ms. Victor's shift had ended and she went home. On the Uber drive home Ms. Victor realized that this job was going to be very difficult for her and that she had, in the short amount of time of being employed, been through more discrimination and harassment than she had ever experienced at a job, ever. Wally's had begun to take its emotional toll on Ms. Victor and would continue to do so up until her wrongful termination and continue even further throughout this three year litigation.

96. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

97. Ms. Victor's next shift would be no different, and the harassment would only progress. Ms. Jones attempted to send Ms. Victor home yet again for her attire. Ms. Victor arrived to Wally's at 1PM on March 4, 2019, wearing a black turtle neck jumpsuit with a gold and black belt around her waist for accessory detailing and again had a thick leather jacket with leopard faux fur detailing to wear outside going to and from work. Ms. Jones walked right up to Ms. Victor with her own sweater/cardigan and told Ms. Victor she needed to put her sweater on or leave because her "bottom" was "too much" in the black jumpsuit she was wearing to work. Ms. Victor refused to put on Ms. Jones cardigan and was infuriated by the demand. Ms. Jones threatened that if she didn't cover up her "bottom" then she will be asked to leave work for the entire shift. Ms. Victor was forced to wear her thick leather and faux fur jacket for her entire shift which was eight hours and forty five minutes which caused Ms. Victor to overheat. Ms. Victor received no rest or recovery period which was a pattern repeated every shift she worked for Wally's.

97. Ms. Victor left work at 945PM that evening, again she was upset, humiliated, embarrassed, and retaliated against. All other hostesses wore crop tops, mini skirts, thigh high boots, mesh dresses, bright colors, hoop earrings, everything and anything Ms. Victor could not dare attempt to wear. Ms. Victor was being discriminated against not only for her race and ethnicity but for sex and for her genetic information.

98. Ms. Victor arrived to work on March 6, 2019 at 1PM, she recalls that it had been raining because she wore a rain jacket to work. After the last prior two traumatizing work shifts Ms. Victor decided to wear a simple black long sleeve and black jeans to her shift so Ms. Jones, nor any other manager, could possibly target her for her attire or her body. The restaurant was quiet that afternoon due to the weather.

99. Ms. Victor went to the ladies room in the back and upon exiting the restroom, to go back to the host stand, DefendantMr. Navarro, whom had been sitting next to Defendant Mr. Kachani, yelled out to Ms. Victor, "*I have been stalking your social media.*" Ms. Victor walked over to the island table Mr. Navarro and Mr. Kachani had been sitting at and asked Mr. Navarro if he would ask Mr. Marciano and Maurice if she could be a brand

ambassador model for GUESS. Remember, Ms. Victor has a large following on social media from doing reality TV and was a brand ambassador model for many brands such as PrettyLittleThing, FashionNova, My Mum Made It, MissGuided, AKIRA, and many more brands, so asking that question to Mr. Navarro was not outlandish. Mr. Navarro laughed at Ms. Victor's request and stated, "*Honey, you are not tall, you are not white, you are not skinny, and you are not blonde. You would never be a brand model for GUESS.*" Both Mr. Navarro and Mr. Kachani laughed at Mr. Navarro's response as if his remark was comedy or humor. Ms. Victor, insulted and disgusted, simply stated "*Wow*" before deciding not to engage in the conversation any further and walked back to the hostess stand. Can you image how hard it must have been for a black female to be blatantly discriminated against at the beginning of a work shift and be forced to maintain composure, class, and professionalism while suffering internally? It is unimaginable.

100. Around 3PM, Mr. Marciano came into Wally's to prepare for a lunch meeting he had scheduled at Wally's. Mr. Navarro and Mr. Marciano were engaging in a conversation in front of the host stand when Mr. Navarro told Mr. Marciano about Ms. Victor's request and his response to such request and both him and Mr.

Marciano bursted out laughing. Mr. Marciano then confirmed "*Sorry you wouldn't model for my brand. Clean the front door glass before my guests arrive.*" Ms. Victor grabbed windex and rags to do as she was told like a slave. Standing in front of these two men who were still engaging in conversation, Mr. Marciano told Ms. Victor to "*clean the bottom of the glass doors*", which required Ms. Victor to bend over in front of the two men. She heard nothing but creepy silence behind her as she was doing such. After she was done cleaning the doors Mr. Marciano told Ms. Victor that he didn't like her jeans and to not wear them again. Ms. Victor could not believe it. Not only were these black jeans she wore almost every shift to be safe from getting in trouble, but how could there be anything wrong with simple black jeans?

101. There was not a single shift, since Ms. Victor began her employment, where she wasn't getting in trouble for baseless reasons, or walking on egg shells petrified she was going to be harassed. Ms. Victor realized this day, that the Manager Doe who targeted her as a customer prior to her employment must have learned his discriminatory behavior from the owner's and principals directly because Mr. Navarro and Mr. Marciano had

absolutely no issue showing their clear prejudice towards blacks, especially black females, to a black female, Ms. Victor.

102. Towards the end of Ms. Victor's shift that evening, Ms. Conrad told Ms. Victor to set up a specific table for Maurice who had been marked down for dinner on the calendar with a party of people. Ms. Conrad had explained to Ms. Victor that Maurice was "Me Too'd" during the "Me Too" movement and was only allowed to come into the restaurant once a month and only with supervision. Ms. Victor could not believe how racist and predatory the owners of the job she was working at were, but again, at the time was desperate for a job and money and couldn't afford to quit. Ms. Victor left work at 930PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

103. Ms. Victor's next work shift was March 9, 2019, where she arrived to work at 1PM. Ms. Victor had her hair big and curly with added curly hair extensions. Ms. Victor wore different black jeans, a black top, with a gold and black embellished tuxedo jacket, black combat boots, and a red lip. Ms. Jones approached Ms. Victor at the hostess stand and stared

70

at her uncomfortably for a minute or so prompting Ms. Victor to ask, "What?" Ms. Jones stated, "This is the first shift you don't look terrible, good job." Ms. Victor, in shock, just dropped her jaw in amazement at how rude and cruel Ms. Jones was while Ms. Jones simply walked away from the host stand satisfied at her harassment towards Ms. Victor. Ms. Victor worked till 930PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

104. Ms. Victor received her second pay check from Southwest Wine and Spirits LLC on March 15, 2019 for the pay period from 2/25/19 - 3/10/2019. The address on the paycheck was 2107 Westwood Blvd., Los Angeles, CA 90025 and there was no phone number on this check. The check# was 100515280 issued from Bank Of America. The routing number was listed as 06300004, the account number was listed as 00000005505975677, and the sequence number was listed as 000577840256. Not only was Ms. Victor's missing wages from the previous pay period not applied for this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's. This check, which was check# 100515280, was only for $533.61, which was not even

remotely close to what Ms. Victor was owed in back pay and current pay.

105. Ms. Victor's next work shift was March 11, 2019, she arrived to work at Wally's at 430PM wearing a black turtleneck long sleeve top, black jeans, and small gold hoop earrings. Ms. Victor was working alongside Ms. Banks. During Ms. Victor's eight hour work shift, Ms. Banks confessed to Ms. Victor about her sexual and romantic relationship with Mr. Navarro and asked Ms. Victor to keep it a secret as their relationship was not allowed. Ms. Banks went into full details about her sex with Mr. Navarro, her trips with Mr. Navarro, and how she gets upset about other females, especially those who are also employed with Wally's who were sleeping with him too. Ms. Victor was taken back by this information but could see how such is possible as Mr. Navarro had often times approached Ms. Victor discussing her social media and her photos, highly suggestive commentary.

106. One shift Mr. Navarro had approached Ms. Victor stating he was "shocked" to see Ms. Victor clothed because she was always "so naked" on her Instagram, a possible remark used strategically by Mr. Navarro to see if he could sleep with Ms.

Victor as he had slept with Ms. Banks and other females who have been employed at Wally's.

107. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020, which to Ms. Victor's belief, had been amended and changed strictly because of her lawsuit, as the entire Handbook, even the dress code section has been altered. At the bottom of the Handbook given to Ms. Victor by her prior legal counsel in June of 2020 it had a copyright symbol next to "2019 Ervin Cohen & Jessup LLP" which was not on the original Handbook. If need be Ervin Cohen & Jessup LLP can be subpoenaed, under oath, under penalty of perjury, to provide the court exact dates in which the Handbook was amended, which should have been told to all employee's past and current pursuant to California Labor law.

108. Under this new Handbook Wally's added a section entitled "*Conflict of Interest and Outside Business Activities*". This section states the following, "*Employees are expected to avoid any conflict of interest during their employment by Wally's…An employee should immediately disclose any relationship described in the foregoing paragraph to his or her supervisor…An employee's failure to disclose any of the relationships set*

73

*forth in this policy shall be subject to discipline, up to and including termination.*" Ms. Banks and Mr. Navarro did not disclose to anyone of their sexual and/or romantic relationship, in fact, Ms. Banks was imperative that Ms. Victor keep what she was told confidential to avoid Mr. Navarro and herself being subjected to any repercussions from said relationship. Mr. Navarro's other relationships were also not disclosed nor subject to discipline, suggesting that sleeping with your boss allows you to break the rules and not be subjected to the discipline of such rules. So had Ms. Victor slept with Mr. Navarro, her boss, who made sexual commentary often, would the harassment, bullying, retaliation, and discrimination ended? And was such harassment, bullying, retaliation, and discrimination a result of Ms. Victor not being interested in any man at Wally's, including Mr. Navarro?

109. This Handbook, the one given to Ms. Victor in June of 2020, also had a section entitled "Off-Duty Conduct" that was absolutely added into the Handbook after Ms. Victor's termination. However, this section states the following, "*Involvement in off-duty conduct that adversely affects Wally's legitimate business interests or an employee's ability to perform him or her work may result in discipline up to and*

*including termination.*" Ms. Banks was affected by her off-duty conduct and relationship with Mr. Navarro. Many shift Ms. Banks' mood would be ruined or she would be sad and struggle through her shift because Mr. Navarro had disrespected her, ignored her, or would be all over female customers in front of her during her shifts as a hostess. Due to Mr. Navarro breaking the rules of his company's own Handbook, neither him nor Ms. Banks were disciplined for their relationship that not only affected Ms. Banks but other hostesses around her who had to see her suffer from said relationship.

110. Another female, an employee of the Wally's located in Santa Monica, CA, Martina Nucheva ("Ms. Nucheva"), came into the Beverly Hill's location for dinner and drinks. Ms. Banks was working as well as Ms. Victor during the shift when Ms. Nucheva came into the Beverly Hills location. Mr. Navarro was attentive to Ms. Nucheva, caressing her back, etc., while she was dining at the restaurant. Ms. Banks began discreetly crying at the host stand so Ms. Victor asked Ms. Banks what was wrong. Ms. Banks then pointed to Ms. Nucheva and disclosed to Ms. Victor that Mr. Navarro was indeed sleeping with her too and she hated working while she was in the restaurant and also hated seeing Mr. Navarro interacting with her.

75

111. In the Handbook given to Ms. Victor in June of 2020 there was a section entitled "*Non-Fraternization*". This section stated the following, "*The company desires to avoid misunderstanding, complaints of favoritism, possible claims of sexual harassment and the employee morale and dissension problems that can potentially result from relationships between employees. Accordingly, all employees, both management and non-management, are prohibited from fraternizing or becoming romantically involved with other employees when, in the sole opinion of the Company, their personal relationships create a potential conflict of interest, cause disruption, create a negative or unprofessional work environment, or present concerns regarding supervision, safety, security, or morale.*" Further this section states, "*In the case where the Company determines, in its sole discretion, that a relationship between two employees…presents an actual or potential conflict of interest, the Company may take whatever action it determines to be appropriate to avoid actual or potential conflict of interest. Such action may include, but is not necessarily limited to, transfers, reassignments, changing shifts, or where deemed appropriate, disciplinary action up to and including possible termination. Employees who have questions about whether a*

*particular romantic relationship violates this policy should contact the Director of Human Resources.*" Ms. Banks was indeed subjected to favoritism because she was sleeping with the boss, in fact, one shift Ms. Victor covered for Ms. Banks because she went away with Mr. Navarro. Ms. Victor eventually made a complaint to Manager Ms. Jimenez, Manager Ms. Baker whom were all aware of Mr. Navarro's sexual relationships with employees. Again, Mr. Navarro violated the rules of his companies own Handbook to satisfy his own predatory sexual demands.

112. Mr. Navarro often times drank, especially at night, at Wally's. On evenings that he was extremely intoxicated he would walk to the hostess stand and tell the hostesses to keep him away from the females because he didn't want to get in trouble. Mr. Navarro himself knew of his own capability to become completely out of line and turn to predatory behavior, especially with liquor in his system.

113. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020 also had a section entitled "*Equal Employment Policy/Policy Against Discrimination*". This section has a paragraph that states, "*Managers and supervisors are prohibited from providing favorable treatment to employees with*

77

*whom they are involved in a consensual sexual relationship (and should consult with the Director of Human Resources regarding any such relationship prior to its inception or as soon as possible).*" Again, Mr. Navarro and multiple managers, supervisors, and employees all violated the rules they were meant to follow in the Handbook to satisfy their own sexual needs. Not only did Mr. Navarro target his female employees, he also provided the females that did sleep with him favorable treatment, then advised his managers and supervisors to not report any of his conduct that was clearly known throughout the restaurant. Ms. Victor did not sleep with Mr. Navarro nor any man at Wally's and did not receive favoritism but rather retaliation for not sleeping with Mr. Navarro, other male employees, or the customers the Defendants allowed to harass and assault Ms. Victor. I guess when you are the President and the Principal of Wally's or the Owner you can not only break the rules but tell your employees to not do a thing about you breaking the rules.

114. On March 11, 2019, Ms. Victor worked until 1215AM. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

78

115. On March 13, 2019, Ms. Victor arrived to work at Wally's at 1PM wearing black leather pants, black studded boots from EGO, and a black turtleneck bodysuit. Both Ms. Baker and Ms. Jones felt it necessary to tell Ms. Victor how much they did not approve of her footwear, but Ms. Victor was not sent home. Ms. Jones called her boots "*a hazard*" due to the spike and stud detailing and "*ugly*". While Ms. Baker walked to the hostess stand and uncomfortably stared at Ms. Victor's shoes for what felt like a lifetime, finally stating, "*those are interesting.*" Ms. Victor did not respond to either Ms. Jones or Ms. Baker's disrespect while Ms. Conrad who has witnessed all of the Ms. Victor's abuse, asked Ms. Victor how she takes it and said, "*I would quit if I were you.*" Unsure if Ms. Conrad was making that comment on behalf of the management and employees who have continuously bullied, harassed, discriminated against, and retaliated against Ms. Victor, so that Ms. Victor would be convinced to quit allowing the Defendants to avoid a wrongful termination suit, or if Ms. Conrad was genuinely making such statement in concern and/or disbelief.

116. Ms. Victor left work at 915PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal

break this shift, but does know she was not given any rest or recovery periods.

117. Ms. Victor worked on March 14, 2019 beginning her shift at 1PM. In the middle of her shift Manager Walter Merida ("Mr. Merida") came up to Ms. Victor to ask her how she was doing, concluding the conversation by telling Ms. Victor "*to hang in there*" and he advised Ms. Victor to not let Ms. Baker or Ms. Jones get under her skin. Mr. Merida would be the only male employee, manager, supervisor who remained professional throughout Ms. Victor's employment and who did not harass, discriminate against, or retaliate against Ms. Victor whatsoever.

118. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

119. At this point, Ms. Victor began texting Mr. Duccini all her outfits prior to going to work to ensure that she would no longer be told to leave work because of her attire. On March 16, 2019, Ms. Victor texted an image of her outfit, which was a one shoulder long sleeve silver maxi dress and heels, to Mr. Duccini asking if her outfit was "*acceptable*". Mr. Duccini

confirmed that her outfit was acceptable so Ms. Victor headed to work at Wally's and arrived at 1PM. Hours into her shift Ms. Baker approached the hostess stand and told Ms. Victor that she got complaints from women who were in the restaurant about Ms. Victor's attire. Ms. Victor told Ms. Baker that her outfit was approved by Mr. Duccini and was highly confused by her remarks. At this point the weather was warmer and Wally's had their air conditioning on full blast so the establishment was ice cold. Ms. Victor does not wear bras, never has, never will, as she believes that they cause breast cancer. Ms. Baker told Ms. Victor that her "*hard nipples*" in her clothing were "*unacceptable*" to "*classy*" families that were at the establishment dining and that her "*nipple rings*" were causing women's husbands to stare. Ms. Victor was completely mortified, humiliated, and embarrassed yet again by the management of this company. Ms. Baker told Ms. Victor that she wouldn't be sending Ms. Victor home this time but rather warned her that she better start wearing bra's now that the AC is on and it will be "*cold*" inside. Ms. Victor told Ms. Baker that she would not be wearing bras due to her beliefs leaving Ms. Baker to shrug her shoulders prior to walking away from the hostess stand. Ms. Victor then

witnessed Ms. Baker huddle up into a group of other managers and/or supervisors including Ms. Jimenez.

120. Ms. Jimenez, who Ms. Victor relatively got along with, later approached Ms. Victor and told her that all the managers were looking for any reason to fire Ms. Victor and "*hated*" that she worked there, proving that Ms. Victor was right with her assumptions that the management was harassing her intentionally in hopes that she will quit without having to terminate her, a termination which would be wrongful any which way they did such as it was fueled with "*hate*", coercion, and discrimination.

121. Ms. Victor worked till 930PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

122.   March 18, 2019 would be another brutal work shift Ms. Victor would be forced to struggle through. Ms. Victor wore black fitted pants that had a black waist band and white pin stripe detailing, a white top and gold jewelry. Only about twenty minutes into her shift Mr. Merida came up to the hostess stand and told Ms. Victor that Ms. Jones wanted to see Ms. Victor in the office now. Ms. Victor already knew it was going

82

to be about her looks, body, or attire, a pattern the Defendants repeated during her entire employment. Ms. Victor walked into the back management office of Wally's and was greeted by Ms. Jones asking the question, "*Do you think you are in a nightclub?*" Ms. Victor stated no. Ms Jones continued to state that Ms. Victor "*was in Beverly Hills not a cheap club and her outfit made the restaurant look trashy which was strictly prohibited.*" Ms. Jones then continued to insult Ms. Victor by saying, "*You don't look like you belong in Beverly Hills*". Ms. Victor completely infuriated and at her wits end finally stood up to Ms. Jones and defended her clothes, her body, and her looks, and demanded to file her own complaint about the persistent harassment she had been enduring every shift especially by Ms. Jones and Ms. Baker. Mr. Merida did take Ms. Victor's complaint while Ms. Jones wrote Ms. Victor up for her clothing, but these documents would not be in any of the employment files received by Ms. Victor is 2020 or 2021.

123. Ms. Jones then decided to pull out pictures of GUESS models wearings GUESS, again, and told Ms. Victor "*You don't look like them and if you don't start looking like them you will continue to be sent home and written up and your third write up will lead to a termination.*" Ms. Victor snapped back and told

Ms. Jones that she is not a white girl who was tall or slim and she cannot change the way her body is shaped. Ms. Victor was ordered to go home and change or leave and not come back for the remainder of her shift. In tears, Ms. Victor left the back office with Mr. Merida, who told Ms. Victor to "*hang in there*" and "*to not take it personally, it is not personal it is business*". No, it was discrimination, harassment, and retaliation.

124. As Ms. Victor was waiting for her car to go home Matt Marciano asked her where she was going and she explained how she was being sent home again for her attire. Matt Marciano told Ms. Victor that he didn't see anything wrong with her outfit but to make Ms. Jones "*shut up*" it was best to just go home and change. Then Matt Marciano said, in what he thought was a joking manner, "*start wearing clothes that don't focus on your ass*" then started laughing. Ms. Victor wanted to quit in this very moment but did not want these people to win so she went home, changed, and came back to finish what felt like the longest shift of her life.

125. Upon arriving back to Wally's, Ms. Victor saw Ms. Conrad who had arrived to work after Ms. Victor had left to

change, wearing a crop top, a mini skirt, and thigh high boots. Ms. Victor immediately went up to Ms. Jones and asked her if Ms. Conrad would be sent home for her attire as she was previously and Ms. Victor was more clothed. Ms. Jones told Ms. Victor to worry about herself and not other employees. Infuriated beyond belief, Ms. Victor found Mr. Merida and asked him the same question in regards to Ms. Conrad and her attire. Mr. Merida shrugged his shoulders and said "*Remember, it's not personal, it's just business*." Ms. Victor stated "*No it's racist!*" Ms. Victor was the only female employee who got in trouble for her attire while all the Caucasian hostesses never got in trouble for their outfits that barely covered them. Ms. Victor was a target and would continue to be a target until her wrongful termination in June of 2019.

126. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

127. On March 21, 2019, Ms. Victor went to an event with her friend Cassie at Delilah, located at 7969 Santa Monica Blvd., West Hollywood, CA 90046. After the event concluded Ms. Victor and Cassie went to Wally's for a small appetizer and a

drink. Employees were allowed to go to Wally's on non-work shifts as long as it was approved by management prior. Ms. Victor got it approved by management to come March 21st and March 22, 2019 to Wally's for an appetizer and drink, which were non-work shifts for Ms. Victor. Ms. Victor had no issues with going to Wally's on March 21, 2019 as Ms. Victor was never treated poorly or discriminated against by Mr. Merida who was the manager on duty that evening.

128. However, on March 22, 2019, Ms. Victor's treatment at Wally's, while attending, on a non-work shift, would be entirely different and per usual… unlawful. Ms. Victor went to Wally's with her girlfriend Cassie prior to their dinner reservation at Mastro's Steakhouse, located at 246 N Cannon Drive, Beverly Hills, CA 90210. Ms. Victor was wearing a grey turtleneck long sleeve dress and snake print thigh high boots. While at Wally's, Ms. Victor and her girlfriend Cassie received a lot of attention from other customers, especially their male customers. Ms. Victor did not stay at Wally's long, however, she did see Ms. Baker meeting with other management, whispering, pointing, and discussing Ms. Victor while she was simply enjoying food and drinks at the restaurant she was employed with. After this date, Ms. Victor was the only employee banned from coming into Wally's

on non-work shifts, and was provided no explanation as to why. Ms. Victor knew that such decision was not only based on the constant harassment and retaliation she had received every shift and now non-shift, but because, from the beginning of her employment, Ms. Victor was discriminated against and treated unequal compared to her other co-workers. Co-workers who would be allowed to attend Wally's on non-work shifts for dinner and drinks.

129. On March 24, 2019, Ms. Victor picked up someone else's morning shift as Ms. Victor never usually worked morning shifts. Ms. Victor knew she would be working with Ms. Jones and decided to wear a simple button down top, black jeans, black boots, her hair in a low pony, and a red lipstick. Ms. Jones just couldn't stop herself from harassing Ms. Victor and made sure to yell at Ms. Victor for something prior to her shift ending. Ms. Jones told Ms. Victor that she should not wear red lipstick to morning shifts as it may give customers the "wrong idea". The wrong idea? How could a shade of lip stick give customers or anyone the wrong idea? Ms. Victor wore red lipstick often to her work shifts at Wally's but this was the first time she had gotten scolded for such. Blatant harassment, retaliation, and discrimination.

130. On March 29, 2019, Ms. Victor received her third pay check from Wally's for the pay period from 3/11/2019 - 3/24/2019. The check was written out by Southwest Wine And Spirits LLC. The address on the check was 2307 Westwood Blvd., Los Angeles, CA 90025. There was no phone number on this check. The check number was 100515490. The routing number on the check was 06300004, the account number was 00000005505975677, and the sequence number was 000574022361. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's. The check was written out for the amount of $572.06, not even remotely close to what Ms. Victor was owed in back pack and current pay.

131. On March 25, 2019  Ms. Victor was working the mid afternoon shift at Wally's. Ms. Jimenez approached Ms. Victor and asked her if she was looking for any side jobs to make extra cash, Ms. Victor undoubtedly said yes. Ms. Jimenez said her friend was looking for "*bartenders*" to work his "*private*" events and if Ms. Victor would be interested in bartending for any of them, again Ms. Victor said yes. Ms. Jimenez told Ms. Victor she was allowed to leave work early to go home and get into

88

something "*sexier*" and to head to her friends mansion to have an

interview. So Ms. Victor left her work shift early, headed back

to her apartment to change, then headed to an address provided

by Ms. Jimenez to meet with her friend for an interview. Upon

arriving to the address given to Ms. Victor, she was put into a

room to await an interview by Ms. Jimenez's friend. Ms. Victor

was hired on the spot and was told she would be working his next

event as a trial run to see if it was a good fit for both of

them. Ms. Victor ended up working Ms. Jimenez's friends

"*private*" party on April 6, 2019. These "*private*" events are

actually called "*poker*" nights where celebrities and/or wealthy

men come to a mansion to play poker while expecting the women

employees at the event to provide them sexual gratification in

exchange for poker chips as "*tips*" or payment. All this

information was not told to Ms. Victor by Ms. Jimenez and she

was thrown into an extremely uncomfortable situation. Ms. Victor

brought her friend Lala Craig ("Ms. Craig") and they were both

ordered to sign Non-Disclosure agreements prior to working. Ms.

Victor stayed at the bar all night and was horrified to witness

women under the table performing actions such as fellatio to men

at the poker table. Ms. Victor texted Ms. Jimenez immediately,

texts that were given to Ms. Victor's prior legal counsel as

evidence, evidence that was intentionally lost by her prior legal counsel in order to help the Defendants conceal more of their unlawful behavior. Ms. Victor told Ms. Jimenez what was going on and Ms. Jimenez told her "*to do what was comfortable*" for her, meaning perform the sexual favors you are okay performing… which was absolutely NONE for Ms. Victor. Ms. Victor proceeded to tell Ms. Jimenez about how uncomfortable she was and asked her to text her friend to let her leave early. Ms. Victor ended up leaving the party as soon as it became an orgy.

132. On April 12, 2019, Ms. Jimenez gave Ms. Victor an envelope of cash in the amount of one thousand three hundred and eighty dollars from working her friends poker night. Ms. Jimenez proceeded to tell Ms. Victor not to tell anyone about her side business and advised Ms. Victor to let her know if she had any friends that were "*into those type of jobs*". While the Defendants and their legal counsel have attempted to accuse Ms. Victor of extortion, prostitution, amongst other things, Ms. Jimenez, a manager of the Defendants establishment, was literally looking to prostitute females for her own cash benefit. Mosley & Associates knew of this information and told Ms. Victor it was an amazing argument they could present in her favor before they conveniently lost all of Ms. Victor's text

message evidence. Mosley & Associates eventually told Ms. Victor that she was unable to present nor discuss Ms. Jimenez's actions and illegal behavior attempting to get Ms. Victor or anyone Ms. Victor knows to be sex trafficked at private Hollywood events due to her signing an NDA. This information provided by Mosley & Associates to Ms. Victor was in fact untrue and in complete violation of California State law and a lie. All intentional and malicious actions done in conspiracy with the Defendants were done in order to conceal more and all of the Defendants unlawful, disgusting, predatory behavior. A concealment that allows the Defendants to not be held accountable or legally liable, saving them costs and a criminal prosecution.

133. On March 29, 2019, Ms. Victor wore a red and black midi dress, black tights, and black boots to her work shift at Wally's. Defendant Mr. Turner knew a group of men who were considered "*VIP*" customers of Wally's. This group regularly came into Wally's and always spent a large amount of money when they did come in. This group of men always sat in the main dining room of Wally's at a large island table. Mr. Turner would always come into the main dining room to present and attempt to sell, this group of men, expensive bottles of wine or liquor, and often times would be successful at making said sales. This group

of men would stay at Wally's for hours and always left the establishment extremely intoxicated.

134. On March 29, 2019, Ms. Victor fell victim to the sexual harassment of these customers, harassment that was not only allowed but encouraged by the Defendants. These men grabbed Ms. Victor's buttocks, arms, and other body parts, and even hollered at her every time she would walk by their table. Mr. Turner took it upon himself to tell the customers of Ms. Victor's Podcast which was entitled "Swallow It" leaving the intoxicated customers to begin calling her "*Ms. Swallow It*" in front of other customers and employees. Ms. Victor told Mr. Turner to tell his little group of friends to stop touching her and he responded by saying "*they spend thousands, suck it up.*" Ms. Victor, in tears, went to the back office to file a complaint that would never make it to the HR department nor her employee file given to her in 2020 and 2021 by her prior legal counsel.

135. The Defendants, through their counsel, have taken pleasure in accusing Ms. Victor of prostitution, yet on nights like March 29, 2019, Ms. Victor was advised by the Defendants to "*suck it up*" and to be "*extra*" nice to their VIP customers.

Basically, telling Ms. Victor to enjoy their sexual harassment as the harassment makes the customers want to spend more money which is only beneficial for the Defendants. If the customers are convinced they have a shot with Ms. Victor then they will spend more money which works out for the Defendants but makes Ms. Victor suffer. In fact, the Defendants refusal to stop such harassment, their encouragement of such harassment, and their instructions to Ms. Victor to "*take it*" and to be "*extra*" nice to VIP customers, is the equivalent to the Defendants forcing Ms. Victor to be behave like a prostitute, where her body is the entertainment, and the Defendants are the ones reaping the reward. Borderline sex trafficking.

136. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

137. On March 30, 2019, Ms. Victor wore a black tube top midi dress, black tights, a gold belt for detail, and black boots to her shift at Wally's. At this point, Ms. Victor had been employed with Wally's for over two months and her tattoo's were never covered nor were they a big secret. However, during this shift Ms. Victor was brought into the back office and told

that her shoulder tattoo's showing was "*unacceptable*", tattoo's that she had displayed more than often. The Defendants were so desperate to get Ms. Victor to quit that they began to nit-pick every little detail of Ms. Victor's being. Whatever they choose to nit-pick was how they would harass, retaliate, and discriminate against Ms. Victor. Why would Ms. Victor's tattoos just now be an "*unacceptable*" issue for the Defendants but during the prior two months of employment had not been? Malicious and intentional harassment, retaliation, and discrimination by the Defendants to make Ms. Victor suffer. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

138. On March 31, 2019, Ms. Victor wore a black sleeveless turtleneck maxi dress that had slits on the side with combat boots to her work shift at Wally's. Although not sent home, Ms. Baker asked Ms. Victor if she thought the slits in her dress were "*too high*". Ms. Victor firmly said no. Management at this point was trying to break Ms. Victor in hopes that she would quit, they were relentless and work had become intolerable for Ms. Victor.

94

139. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

140.  There was a customer who often came to Wally's to just stare and look at Ms. Victor. Prior to his creepy, inappropriate behavior, Ms. Victor exchanged numbers with this man in hopes to establish more business connections for her entertainment and social media career aspirations, Ms. Victor would learn this was a mistake. This man abused the right to contact Ms. Victor, sending her insane and creepy messages and voicemails at all hours of any night. Ms. Victor made the management of Wally's aware of her issues with this customer and asked them, for her safety, to ensure that he was not allowed into Wally's while she was on shift. Management agreed to comply with Ms. Victor's request which she learned was a lie on April 1, 2019.

141. This man came to Wally's on April 1, 2019, while Ms. Victor was working on shift, and was allowed into the restaurant. This man ordered one drink at the bar before standing diagonally across from the hostess stand, where Ms. Victor was, and he just stared at Ms. Victor for over an hour.

This man sent Ms. Victor multiple text messages about how a black car would be outside waiting for her when she got off her shift and that she'd "*better*" get into the car, followed by forty-two more text messages which forced Ms. Victor to block his number.

142. In the Handbook given to Ms. Victor by her prior legal counsel in 2020, it had a section entitled "*Physical Security*", which states the following: "*Security and safety in the workplace is every employees responsibility.*" "*The welfare of our employees and the security of the Company facilities require that every individual be aware of the potential risks. Immediately notify your manager if you see any person acting in a suspicious manner, in or around Company premises.*" "*Our workplace safety program is top priority at the restaurant. We want the restaurant to be a safe and healthy place for employees, customers, and visitors. A successful safety program depends on everyone being alert and committed to safety.*" "*Full cooperation by all employees is necessary for the Company to accomplish its goal of maximizing the security and safety of its employees.*" Again Ms. Victor was subjected to unequal treatment and accommodations in her own workplace as the Defendants rules for "*Physical Security*" only applied to anyone but Ms. Victor.

96

143. Despite Ms. Victor's request to not have this man attend the restaurant while she was working, for her safety, the Defendants allowed him to come. Despite, the other hostesses, servers, and managers that had witnessed this man stand diagonal from the hostess stand for over an hour, stalking Ms. Victor, the Defendants did absolutely nothing to ensure Ms. Victor's safety. It was as though the Defendants took pleasure in watching Ms. Victor being in an uncomfortable and unsafe situation that could have been avoided had the Defendants followed the law and their own Handbook.

144. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

145. On April 3, 2019, Ms. Victor wore a leopard striped dress, black tights, a black cardigan, and black boots to her shift at Wally's. Ms. Victor was ridiculed so badly about her appearance on this day that she actually posted on her Instagram ("IG") story, "*I'm not even remotely close to being in the mood today*". At one point Ms. Jimenez told Ms. Victor that the other management was in the office discussing how her outfit was not "*Beverly Hills equivalent*", whatever that even means. The

97

Defendants harassment and retaliation was getting progressively more intense and worse every work shift as an attempt to try and force Ms. Victor to give up and quit to avoid a wrongful termination. Not a shift would go by where Ms. Victor was not subjected to extreme retaliation, harassment, or discrimination but Ms. Victor refused to let the Defendants win and she refused to quit.

146. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

147. Ms. Victor received her fourth check from Wally's on April 12, 2019, for the pay period of 3/25/2019 - 4/7/2019. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian Tax Service ("Ceridian"), which is a

98

corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings, Inc., which is also a corporation operating under Delaware law. The check number was 730223195. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000571865394. The check was issued for the amount of $564.73. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

148. Ms. Victor experienced the raft of all Defendants working together to hate, blame, and harass her fully during her work shift on April 12, 2019. Ms. Victor was working the mid afternoon shift, Ms. Conrad, who, as stated previously, was the head hostess, told Ms. Victor to put a customer into the wine room to be sat at the private table. This customer was not a VIP customer of Wally's but Ms. Conrad thought the customer and his friends were attractive and said, "*he looks like a black guy with money, seat him in the wine room*." Ms. Victor did as she was told, as always. Keep in mind that the only person who was able to make decisions on seating was Ms. Conrad, no one else.

The only other, and second, private dining room that was located in the back of the restaurant was also taken by customers.

149. The Jonas Brothers, including Nick Jonas, celebrity musicians and entertainers, soon came into Wally's, surprisingly, with no reservation, looking to be sat somewhere secluded and private. However, both private dining areas were currently filled. Mr. Kachani and all other upper management that was on duty came to the hostess stand freaking out, swearing, and yelling at all of the hostesses about who the random person was in the wine room and who sat them in there. Ms. Victor told management that she had sat the man in there under the orders of Ms. Conrad, who then denied making such orders, throwing Ms. Victor under the bus. The Jonas Brothers bought a few bottles of wine and then left Wally's due to the dining rooms not being available, which left the Defendants infuriated and somehow Ms. Victor was to blame. Ms. Victor was ordered to go home early for "*f&%king up*" Wally's opportunity to make a large sale off the Jonas Brothers. Ms. Victor, in tears, left early, shocked at how she was treated for a decision made by Ms. Conrad not herself.

150. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

151.  On April 15, 2019, Ms. Victor wore a long red maxi dress, a choker necklace, and combat boots to her work shift at Wally's. Matt Marciano frequently sat on the outdoor patio with his friends and girlfriend on what should have been working hours and they would all drink and get intoxicated. When Ms. Victor arrived to work Matt Marciano in front of his group of friends and girlfriend screamed, "*Now Tiny, that ass in that dress!*" He then proceeded to call Ms. Victor over to his table where he told Ms. Victor all his friends were still doubting that her "*ass*" was real. Annoyed Ms. Victor proceeded to go back inside only to be approached by Ms. Jimenez who assured Ms. Victor she didn't have an issue with her outfit but other management had an issue with the "*tightness*" of the dress on her body because it focused on her "*shape*". Ms. Victor wanted to scream, this job became a literal nightmare for her. Ms. Victor was not sent home for her attire because the restaurant was too busy but she received unwelcoming looks by management all night every time she left the host stand and walked someone to their table.

152. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

153. On April 17, 2019, Ms. Victor wore red lipstick and lip gloss to her shift at Wally's and was not scolded or yelled at for doing such. Which proved to Ms. Victor that Ms. Jones' prior remarks about her red lipstick was Ms. Jones' personal opinion and bias and not a Company policy or rule that was being unfollowed by Ms. Victor. Ms. Jones' behavior, amongst other individual Defendants was, and has always been, discriminatory against Ms. Victor.

154. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

155. Ms. Victor wore a black dress and combat boots to her work shift at Wally's on April 19, 2019. Upon walking into Wally's, Ms. Victor was greeted by manager and Defendant Mr. Poulin who said, "*Must be cold outside huh?*" It took Ms. Victor a second to realize that Mr. Poulin was referring to Ms. Victor's breasts as her nipples were hard. Despite Mr. Poulin not only making inappropriate comments about Ms. Victor's

breasts and letting it be known he was examining Ms. Victor's breasts, he was not reprimanded for such actions, but Ms. Victor was told never to wear that dress to work again by Ms. Baker. Ms. Baker's personal distain for Ms. Victor and Ms. Victor's protected characteristics caused her to completely ignore a male managers blatant sexual harassment and focused only on Ms. Victor's body in her outfit yet again.

156. Ms. Victor was not sent home because the restaurant had reservation after reservation that evening, including one for the RYU's. Ms. Ryu, Ms. Victor unsure of her first name, was a VIP customer, an awful one. Every time she came into Wally's she would get drunk and then abuse all the hostesses, calling them ugly, whores, classless, amongst other things. The hostesses, including Ms. Victor, were told to ignore Ms. Ryu's abuse as she was a high paying customer and could do and say as she pleased. Employees of Wally's could be subjected to sexual harassment, sexual battery, discrimination, verbal abuse, etc., as long as the Defendants reaped the reward.

157. Ms. Ryu's son is Royce Ryu ("Mr. Ryu"), who was in Wally's almost every single day, and always left extremely intoxicated. Mr, Ryu will also be the VIP customer the

Defendants have attempted to say Ms. Victor solicited for sex despite Ms. Victor barely speaking more than ten words to Mr Ryu during her entire employment. Ms. Ryu's behavior was to be expected but she was exceptionally harsh to Ms. Conrad who fought back tears after being called ugly by Ms. Ryu.

158. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

159. Matt Marciano's drinking during his work shifts or at the establishment on non-work shifts was known by all employees, including Ms. Victor. Matt Marciano was reckless, angry, and a complete mess most of the time when he drank, even if he was the manager on duty. Matt Marciano's girlfriend Bonnie Rotten ("Ms. Rotten") was a pornstar and Matt Marciano would brag about this often while at the restaurant, he also treated Ms. Rotten… rotten. Abusive in so many ways including verbally, which was triggering for Ms. Victor as she too had been in an abusive relationship.

160. On April 20, 2019, Matt Marciano got drunk on the outside patio and began screaming at Ms. Rotten, unsure over what, but in such a way it was triggering for Ms. Victor. Matt

Marciano's behavior caused PTSD in Ms. Victor, making her suffer from a severe anxiety attack while at work. Ms. Victor had to ask to leave work early due to this anxiety attack that was triggered by Matt Marciano's abusive behavior toward's his girlfriend Ms. Rotten, an altercation that was viewed by paying customers as well. This wasn't the first time and it would not be the last time such an altercation happens at Wally's between Matt Marciano and Ms. Rotten or Matt Marciano and any other third party that pissed him off.

161. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

162. Ms. Victor was issued her fifth paycheck from Wally's on April 26, 2019 for the pay period from 4/8/2019 - 4/21/2019. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When

Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730339466. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000477956127. The check was issued for the amount of $627.68. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

163. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this pay period on a print out entitled "*Payroll Register Report*" which was run by Defendant Ms. Hunter. This print out document had the employee information, including social security numbers and earnings, of not only Ms. Victor but other Wally's employees, including Gilleschrist Zamba ("Mr. Zamba"), Jennifer Carmody ("Ms. CARMODY"), and Natasha Marc ("Ms. Marc"). The private information of Mr. Zamba, Ms. Carmody, and Ms. Marc, including their yearly earnings and their social

security numbers, was NEVER information the Defendants had legal right to disclose to Ms. Victor and yet they did so carelessly.

164. On April 22, 2021, Ms. Victor wore a blue ribbed dress that had button detailing and boots to her work shift at Wally's. Matt Marciano, Mr. Navarro, and Mr. Kachani were all seated on the outside patio dining area. Matt Marciano called Ms. Victor over to their table and stated how the weather was bringing attention to her "*boobs*" making Mr. Navarro laugh. Ms. Victor rebutted by telling them that she had zero control over the weather. Mr. Kachani told her to think about "*wearing bras or sweaters on chillier days*". Annoyed Ms. Victor went back to the host stand.

165. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

166. On April 27, 2019, Ms. Victor wore a black dress from Motel Rocks that had chain detailing and her Doc Marten boots. This shift was no different than every other shift where she was harassed about her appearance. Ms. Victor was so upset she posted on her IG story, "*I need to pray about the anger in my veins tonight.*" The Defendants were intentionally, unlawfully,

107

and with malice, trying to make Ms. Victor suffer every time she went to work. The Defendants wanted Ms. Victor's work shifts to be insufferable, they wanted her to QUIT.

167. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

168. Ms. Victor wore a black bodysuit, a black cardigan, and black jeans to her work shift at Wally's on May 4, 2019. Even with Ms. Victor having a cardigan on, Ms. Baker still pulled Ms. Victor aside stating that her side "*boob*" area was still noticeable to customers and advised Ms. Victor to not wear that bodysuit again. Ms. Victor wanted to say, "*are you serious?*", to Ms. Baker. However, Ms. Jimenez made it known to Ms. Victor about managements plan to get rid of her and did not want to give them an opportunity to do such, so she agreed not to wear the bodysuit again. The harassment, retaliation, and discrimination against Ms. Victor was so evident across the restaurant that servers, bartenders, and other employees, who Ms. Victor barely engaged with or knew, would ask Ms. Victor if she was okay. The Defendants behavior towards Ms. Victor created

a hostile environment not equal nor free of harassment or discrimination.

169. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

170. Ms.Victor was issued her sixth check from the Defendants on May 10, 2019 for the pay period of 4/22/2019 - 5/5/2019. The check was issued through Bank of America. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730456378. The routing number was 06111278, the account number was 00000003299020208, and the

sequence number was 000475280373. The check was issued for the amount of $511.37. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

171. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this pay period on a print out entitled "*Payroll Register Report*" which was run by Ms. Hunter. This print out document had the employee information, including social security numbers and earnings, of not only Ms. Victor but other Wally's employees. This time the employees included Ms. Victor, Ms. Carmody, Ms. Marc, Mr. Poulin, and Marco Osorno ("Mr. Osorno"). The private information of these employees, including their yearly earnings and their social security numbers, was NEVER information the Defendants had legal right to disclose to Ms. Victor and yet they did so carelessly.

172. On May 6, 2019, Ms. Victor wore a black crop top, black jeans, and boots to her work shift at Wally's, she had been working the closing shift that evening. Mr. Poulin was the

closing manager that evening. The restaurant was a lot slower than usual and not busy. Mr. Poulin engaged in a conversation with Ms. Victor discussing how he has told other managers to "*back off*" and they needed to "*chill*" harassing Ms. Victor about her clothes and body because Ms. Victor would sue them and would have just cause. Ms. Victor thought it was funny that Mr, Poulin made such remarks when he was one of the worst predators employed with the Company. Ms. Victor ensured Mr. Poulin that if their behavior continued and/ or they fired her wrongfully, as she had been warned to expect, then she absolutely would be suing Wally's.

173. It is important to note again, that Mr. Poulin, warned the other Defendants, each of them, to stop their harassment, despite himself being one of the harassers, and even his own suggestion was ignored as their behavior did not seize.

174. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

175. On May 10, 2019, Mr. Turner told Ms. Victor that he had spent a lot of his time watching her YouTube videos and listening to her podcast, which is not something Ms. Victor

111

asked him, or any of the Defendants to do. Mr. Turner brought up Ms. Victor's story about her encounter with NBA player Blake Griffin ("Mr. Griffin"), and told Ms. Victor that he had every intention of asking him about it next time he came into Wally's, Mr. Griffin came in often. Ms. Victor told him "*absolutely not*" and stated her life outside of work is completely different than here at work nor would it be professional to bother a customer about their past encounter with an employee. Mr. Turner laughed and as he walked away from the hostess stand yelled, "*I can't wait*". The other hostesses at the stand, curious of Mr. Turners remarks, asked Ms. Victor a million annoying and harassing questions about her personal YouTube videos, videos she never wanted to discuss while at work.

176. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

177. On May 13, 2019, Ms. Victor went to work and was awaiting on Management to give her an answer about having her birthday dinner with her girlfriends in the private dinner room. Multiple employees including Ms. Jimenez and Ms. Conrad had their birthday dinners and engagement lunches in the private

112

dining room so Ms. Victor wanted to enjoy the same luxury with her girlfriends for her birthday. However, Ms. Victor was denied by management to host her birthday party in the back dining area and was not provided a reason why. This is now the second time Ms. Victor was not offered equal accommodations by the Defendants.

178. On May 17, 2019, the day before Ms. Victor's birthday, upset she had to make new plans after being denied having her birthday dinner in Wally's private dining room, Ms. Victor worked the closing shift at Wally's. Ms. Victor wore a bra for the first time while being employed at Wally's because her shirt was white. Ms. Victor was told by not just one but multiple Defendants, "*Wow, wearing a bra for once?*", "*Wearing a bra? Shocking*", etc. That many people, including named Defendants, had been paying such close attention to Ms. Victors breasts that it was noticeable to them when she put on a bra. During this shift Ms. Conrad used Ms. Victor's birthday as an excuse to "*celebrate*" and by celebrating Ms. Conrad was drinking and taking explicit drugs with customers who were supplying them for her. Ms. Conrad attempted to encourage Ms. Victor to join the celebrating but failed in her attempts.

179. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

180. Ms. Victor's seventh paycheck from Wally's was issued on May 24, 2019 for the pay period from 5/6/2019 – 5/19/2019. The check was issued from Bank of America. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730575789. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000573739260. The check was issued for the amount of $642.35. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages,

a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

181. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this pay period on a print out which was run by Ms. Hunter. This print out document had a section entitled "*Cash Tips*" and someone put on the line that Ms. Victor received $5.00 in cash tips which was an absolute lie, nor did Ms. Victor or any of the hostesses ever report how much tips they made at the end of the evening to management, ever, despite it being California law to do such.

182. On May 23, 2019, Mr. Turner crossed more than enough lines that would call for disciplinary action by the Defendants, yet nothing would be done. Ms. Victor was standing at the hostess stand with the other hostesses, Ms. Baker was also standing at the hostess stand. Mr. Turner approached the hostess stand with a smug look on his face staring at Ms. Victor with disgust. Mr. Turner blurted out, "*if I was a manager and I saw your social media you would have never gotten a job here. One look at your social media and you can tell you don't belong in Beverly Hills.*" Ms. Victor looked at Ms. Baker, who was laughing

VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF

at Mr. Turners remarks, and asked her to write him up. Ms. Baker refused stating, "*he's just joking*". Ms. Baker failed to prevent and participated in Ms. Victor's harassment.

183. That same night Mr. Griffin was reserved in the private dinning room, Mr. Turner, prior to leaving the hostess stand told Ms. Conrad that Ms. Victor wasn't allowed to seat Mr. Griffin's table. Upon Mr. Griffin's arrival Mr. Turner went to the door to greet him and his party and while passing the host stand asked Mr. Griffin if he "*remembered this psycho*". Ms. Victor was not only humiliated and embarrassed, she was pissed. Mr. Turner had NO right. Ms. Victor left her shift in tears, which happened often.

184. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

185. On May 25, 2019, Ms. Victor wore a bright neon lime green, one shoulder long sleeve dress with tights, and boots to her work shift at Wally's. Despite getting more than enough compliments from customers, management again had an issue with Ms. Victor's attire, stating that the color was "*distracting*" to their guests. Ms. Conrad, amongst other hostesses, always wore

116

bright colors, it was only an issue when Ms. Victor did. Conveniently, for the Defendants, in the Handbook Ms. Victor received from Mosley & Associates in June of 2020, the Defendants changed their entire section in regards to work attire, stating hostesses could only wear neutral colors which was absolutely NOT the case when Ms. Victor was employed, proving fraud.

186. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

187. On May 26, 2019, Ms. Conrad introduced Ms. Victor to a good friend of Mr. Marciano's who was visiting from France and who had taking a liking to Ms. Victor's appearance. Ms. Conrad told Ms. Victor that they were all going to grab drinks at the Highlight Room after the shift had ended and to meet her there. Ms. Victor went home changed and went to the highlight room to meet them all, however, Ms. Conrad, nor anyone else was in site, only this man who was visiting Mr. Marciano from France. Ms. Victor felt tricked and entrapped in what felt like a set up by Ms. Conrad to sleep with Mr. Marciano's friend who was married and had multiple children. Ms. Victor went right home and did

not entertain him nor the situation. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

188. June was repetitive but had gotten progressively worse for Ms. Victor, in fact, there was a shift she walked into work and the other hostesses starting hugging her telling Ms. Victor how much they were going to miss her. Confused by such interactions, Karissa Yates ("Ms. Yates"), another hostess, texted Ms. Victor that management had told everyone that she was being fired. Can you imagine how awful it must have been for Ms. Victor to walk into that ambush and hold it together professionally and emotionally for a shift? The Defendants always wanted Ms. Victor fired, for no legitimate reason, other than pure racism, discrimination, and retaliation.

189. One shift, in June, Ms. Victor was standing beside Ms. Conrad who was wearing a crop top, the type of top that always use to get Ms. Victor in trouble or sent home. A customer arrived at the restaurant and was awaiting to be sat by the hostesses and during her wait began to engage in conversation with Ms. Victor and Ms. Conrad. Prior to the customers table

being ready Ms. Conrad had been asked by the customer "*how far along are you?*", the customer had thought that Ms. Conrad was pregnant. The customer proceeded to say, "*I could have never worn crop tops during my pregnancy*," then chuckled. Ms. Conrad, upset, told the customer that she was not pregnant and proceeded to tell Ms. Victor where to seat her. Ms. Victor walked back to the hostess stand and asked Ms. Conrad if she was okay as her mood had clearly changed. This is being mentioned to show that Ms. Victor always got in trouble for her outfits while Ms. Conrad did not, even when such outfits of Ms. Conrad's were non-flattering or inappropriate. Ms. Conrad could do as she pleased as the rest of the Defendants. She wore mini skirts, bright colors, low v-neck tops, mesh dresses, thigh high boots, you name it, and she never got sent home to change or written up. Ms. Victor would wear a classy one piece turtleneck jumpsuit and be written up and sent home because her "*body*" was distracting to "*wives husbands*".

190. Ms. Conrad had received terrible reviews on Yelp, that described her rudeness and unfriendliness as the front of Wally's. Ms. Conrad with all the Defendants, each of them, organized a meeting with Yelp and paid the women that came in a

decent amount of money to get rid of all bad reviews on the Wally's Yelp page, including, the reviews about Ms. Conrad.

191. Ms.Victor received her next pay check, which would be the last time the Defendants issued her a check, on June 7, 2019. The check was issued by Bank of America. Despite this NOT being Ms. Victor's last check, the Defendants, unlawfully made it so. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730695307. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000479928459. The check was issued for the amount of $669.78. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this

paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

192.  On June 10, 2019, Ms. Victor was scheduled to work the closing shift at Wally's, however, she would leave early by her own decision, a decision that would be the beginning of the end of her employment with Wally's. Matt Marciano and his girlfriend Ms. Rotten had been sitting in the main dining room, drinking, per usual. They began to argue violently in the middle of the restaurant in front of other employees and customers. Matt Marciano was screaming at the top of his lungs at Ms. Rotten, so loudly that the veins in his neck had swelled up and expanded. Matt Marciano tossed his drink on Ms. Rotten and then choked her out. All employees, customers, and staff just stood there watching this horrible interaction. Ms. Victor asked the managers on shift if they were going to stop Matt Marciano from hurting his girlfriend, and no one did a thing… NO ONE.

193. Weeks prior to this night Ms. Victor had been on shift when Mr. Kachani, Matt Marciano, and Ms. Baker all got into an argument at the host stand. Matt Marciano who, at the time, was intoxicated on the job, was being yelled at by Mr. Kachani, that

his behavior while on the work premises was not acceptable. The two men went back and forth aggressively and angrily in front of the hostesses on shift and Ms. Baker. They did not seize their arguments, not even for customers that were walking in and out of the restaurant. Matt Marciano's behavior did not change, now he was comfortable enough to choke out his girlfriend in the middle of the restaurant.

194. Ms. Victor went to the host stand, explained her severe PTSD to her co-workers, clocked out and left Wally's for the night, refusing to stand by and do nothing like all other management.

195. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

196.  On June 12,  2019, Ms. Victor wore a blue midi turtleneck dress with her hair curled to her work shift at Wally's. Asha Abdella ("Ms. Abdella") was working the morning shift 930AM - 3PM, while Ms. Victor came in to work the 1PM to 9PM shift. Wally's was beyond slow, so Ms. Victor asked Ms. Abdella to take photos of her for her IG, photos that remained posted on her IG for two years. After Ms. Abdella took Ms.

Victor's photos she asked Ms. Victor if she could see how the photos came out. Ms. Victor handed Ms. Abdella her phone to look. Ms. Abdella began scrolling too far in Ms. Victor's camera roll and landed on personal photos of Ms. Victor that exposed her breast area, Ms. Victor immediately snatched her phone from Ms. Abdella. Ms. Abdella began discussing how she doesn't take such photos of herself and Ms. Victor responded "*to each their own*". However, Ms. Abdella kept going and going and going about the topic which resulted in Mr. Poulin overhearing the conversation and interjecting with the statement, "*Tit pics? I used to love getting tit pics when I was single*". Mr. Poulin went on and on and on at the host stand about breasts and photos of breasts which was completely inappropriate, unwelcome, and unwanted by both Ms. Abdella and Ms. Victor.

197. This wasn't the first nor the last time Mr. Poulin as well as the other Defendants used the hostess stand to voice their sexual opinions about sexual topics or customers. Mr. Poulin was the king of coming to the host stand to discuss customers that had just come into the restaurant, with comments like "*Did you see the rack on her?*" Nothing was off limits to Mr. Poulin, a woman's entire physique was up for discussion when he deemed it fit. In fact, there was one afternoon a group of

woman had been dining on the outdoor patio and had drank a bit too much. Matt Marciano, Mr. Poulin, and Mr. Navarro were all staring through the host stand window at the group of women, commenting on all of them and what they would do to them, sexually. At one point one of the women's breast fell out of her top and none of her friends let her know. Mr. Navarro, Mr. Poulin, and Matt Marciano lost their minds. Eventually the customer saw the three men disgustingly and creepily staring at her through the window making her realize that her breasts had fallen out of her top. The three men all jolted away from the window with Mr. Poulin yelling "*She caught us!*" Followed by all them having a nice laugh over their predatory behavior.

198.  Another instance when Mr. Poulin took it upon himself to have the hostesses listen to him at the host stand was when the actress Amber Meade ("Ms. Meade") came into the restaurant with one of her girlfriends. Ms. Meade was wearing a dark teal mesh and sheer top with no bra so her nipples were exposed. Ms. Meade looked beautiful as Ms. Victor recalls, however, Mr. Poulin focused only on her exposed nipples. The entire hour or two Ms. Meade was at the restaurant Mr. Poulin walked up to the host stand no less than five times talking about her breast and how he "*can't stop staring*". Making Ms. Victor, the other

124

hostesses, and possibly Ms. Meade, if she overheard, uncomfortable.

199. At the end of Ms. Abdella's shift she hugged Ms. Victor, asked Ms. Victor if they could go out soon, and then left the restaurant. Half way through Ms. Victor's shift, Ms. Jimenez approached Ms. Victor and asked her if she could work on Saturday even though she was not scheduled to work. Ms. Victor said sure and asked who she was covering. Ms. Jimenez explained to Ms. Victor that they planned on making Ms. Abdella work her entire shift on Friday then they were going to terminate her. Ms. Victor, a bit shocked, asked why she was being terminated. Ms. Jimenez responded by stating, "*She doesn't fit the vibe of the restaurant.*" Ms. Victor, disgusted, asked, "*You mean she's too black?*" Ms. Jimenez laughed and confirmed the reasoning. Ms. Abdella did absolutely nothing to warrant being fired from Wally's, other than being too dark skinned for the Defendants. Ms. Victor firmly believes that they hire ethnic employees to pretend they are hiring enough people to create diversity, however, they intentionally and maliciously would immediately plan how to fire them or terminate them.

200. There was once a mixed race ethnic server, who had loyal customers, and was a great server, however, she stood up for herself when the Defendants came at her wrongfully like they had done to Ms. Victor. One lunch break, when Ms. Victor had been working, this server along with two others had gone next door to the restaurant called Gratitude. Ms. Baker, without the knowledge of the employees, including the ethnic server, told the management of Gratitude to refuse cash and have them pay with their credit cards, which they had done. Ms. Baker then retrieved those credit card statements from the management of Gratitude which showed that the servers had alcoholic beverages on their lunch breaks, terminating all of them on the spot. The Defendants are not new to using deception, fraud, and malice to retaliate against any employees they wanted to get rid of which Ms. Victor would soon fall victim too.

201. On June 12, 2019, Ms. Victor worked her last shift before her wrongful termination. Ms. Victor was called into the office soon after her shift began and Mr. Poulin explained to her that all employees needed to sign a new waiver for taking late meal breaks and she too was require to sign one. Ms. Victor did such, however, this documentation, nor any documentation or

complaints would be in the employee file given to Ms. Victor by her prior legal counsel in 2020 or 2021.

202. On June 14, 2019, Ms. Jimenez had texted Ms. Victor to confirm that Ms. Victor would still be covering Ms. Abdella's shift the following day, Saturday June 15, 2019. Ms. Victor texted Ms. Jimenez back and confirmed that she would be there for the work shift.  At 4:12pm Ms. Victor received a voicemail on her cellphone from Ms. Baker. In the voicemail Ms. Baker told Ms. Victor that she received a complaint of "*pornographic images*" that were seen on Ms. Victor's phone and that Ms. Victor was suspended "*pending*" investigation. Ms. Baker again made sure to say that Ms. Victor was suspended immediately and to not come into her shift tomorrow. Ms. Baker told Ms. Victor that they would give her a call back to let her know how the investigation panned out but "*as of right now"* Ms. Victor was not allowed to go to Wally's. Ms. Baker ended the voicemail by telling Ms. Victor to give her a call if she had any questions.

203. Minutes after the voicemail was left on Ms. Victor's phone and was listened to, Ms. Victor immediately called the Defendants. Ms. Conrad answered the reception at the host stand and Ms. Victor told Ms. Conrad that it was her. Ms. Conrad

127

immediately said "*I am so sorry baby, I can't believe they fired you*." Ms. Conrad said fired, not suspended, fired. Flabbergasted, Ms. Victor asked Ms. Conrad if the managers were already telling other employees that she was fired. Ms. Conrad confirmed that it was circulating around the restaurant and everyone was talking about it. Ms. Victor asked Ms. Conrad to transfer her to the office to speak to Ms. Baker. Ms. Conrad transferred the call.

204. Ms. Baker and Ms. Victor got on the phone with one another. Not once did Ms. Baker mention to Ms. Victor that she was on speaker or that there was any other managers present to bear witness to their phone call. Ms. Victor asked Ms. Baker what the ridiculous voicemail was. Ms. Baker told Ms. Victor that she received a complaint from another employee about Ms. Victor having pornographic images on her phone that made the other employee feel uncomfortable. Ms. Baker then told Ms. Victor that she was suspended pending an investigation. Ms. Victor asked Ms. Baker how an investigation works and what to expect and Ms. Baker provided no information to Ms. Victor whatsoever. Ms. Baker did tell Ms. Victor that she would be contacted once the investigation was complete. Ms. Victor asked if it was Ms. Abdella who made the complaint against her as she

was being fired. Ms. Baker confirmed that it had been Ms. Abdella. Ms. Victor attempted to explain what happened with Ms. Abdella to Ms. Baker but Ms. Baker would try and talk over her every other word. Ms. Victor asked Ms. Baker if Ms. Abdella had made a complaint against Mr. Poulin as well, as he was fully engaged in the conversation that made Ms. Abdella "*extremely uncomfortable*". Ms. Victor asked Ms. Baker if Mr. Poulin was also suspended pending an investigation. Ms. Baker became flustered and agitated with Ms. Victor asking questions that Ms. Victor felt she deserved the answers too. Ms. Baker did not answer any. Ms. Victor then asked Ms. Baker why she was being suspended after one complaint from a disgruntled employee who just got terminated, but not a single person that Ms. Victor filed a complaint against had ever been looked into, written up, suspended, or punished in the same manner as Ms. Victor was for her first and only complaint.

205. Ms. Victor expressed to Ms. Baker her feelings of being targeted and how management, including her, we're all looking for any reason to fire her and that Ms. Abdella's termination and complaint was the perfect way to get rid of the two black girls that "*didn't fit the vibe of the restaurant*." Ms. Baker did not deny any of Ms. Victor's allegations nor did

she answer any of Ms. Victor's questions. Ms. Baker just kept
saying that Ms. Victor would be called when the investigation
was complete.

206. It is important to keep in mind that Ms. Baker is the
same manager who had stood at the hostess stand and laughed as
another employee insulted, degraded, judged, bullied, and
humiliated Ms. Victor followed by Ms. Bakers failure to prevent
such and failure to report, despite Ms. Victor asking her to
report Mr. Turner. Ms. Baker is also the manager who came up to
Ms. Victor on several occasions and commented on the Plaintiffs
nipples, outfits, social media, how she made mens wives feel,
and much more throughout her entire employment. Ms. Jimenez had
previously told Ms. Victor that management, including Ms. Baker,
wanted Ms. Victor fired from the restaurant because of Ms.
Victor's protected characteristics. Ms. Bakers entire motivation
to terminate Ms. Victor was fueled and motivated by her own
personal judgements and biases of Ms. Victor. Ms. Victor's
complaints that she had previously made, often times directly to
Ms. Baker that were against Ms. Victor's superiors were never
investigated nor reported to the HR department. But Ms. Victor
was immediately suspended off a single complaint of an employee
who just got fired. Ms. Victor's "*suspension pending*

130

*investigation*" was bias, malicious, unlawful, and done with extreme malice. It was a personal attack against Ms. Victor and in no way professional or legal.

207. Ms. Victor demanded the contact information for the HR department, whom Ms. Victor would later learn in this litigation was Ms. Hunter and Defendant Ms. Burns. Ms. Baker refused to give Ms. Victor any email address that was a reliable number for the HR Department. Ms. Baker only provided Ms. Victor with a phone number to call. Once Ms. Victor ended the call with Ms. Baker, she immediately began calling the number provided to her from Ms. Baker for HR. Ms. Victor got the numbers voicemail box and left a voicemail asking to be called back to discuss details of the complaint made against her and to ask why none of her complaints had ever been handled in this same exact way. Over a period of days, and then weeks, Ms. Victor continued to call and continued to leave voicemails. Till this day, Ms. Victor has never spoken to Ms. Hunter, Ms. Burns, nor anyone from the HR Department. Ms. Victor was never given any answers as to why none of her numerous complaints were taken as seriously as the complaint made against her.  There was never an "*investigation*" against Ms. Victor, it was a simple and blatant wrongful

termination based on pure hate and discrimination against her for Ms. Victor's protected characteristics.

208. Ms. Victor had texted Ms. Jimenez soon after Ms. Baker's voicemail was received and let her know that she would be seeking legal counsel and would be suing. Ms. Victor, who had a personal and friendly relationship with Ms. Jimenez outside of work, expressed to Ms. Jimenez her disappointment on how she could allow this to happen to her especially since she is the one who constantly warned her about management wanting to fire her. Ms. Jimenez also complained often about how unethical she thought the behavior of all Defendants was, which now includes herself.

209. Ms. Conrad, later that evening, sent Ms. Victor a long text message, apologetic, and Ms. Victor also let Ms. Conrad know that she would be seeking legal counsel. In one of the many voicemails, that Ms. Victor left for the number provided to her for the HR Department, she had also stated that she would be seeking legal counsel for wrongful termination, sexual harassment, and discrimination, amongst other things. Which gave the Defendants more than enough notice and time to use their power and connections to ensure Ms. Victor's litigation was doomed from the start. For example, they had more than enough

time to change their entire Handbook, including the Arbitration section, to ensure that it minimized Ms. Victors opportunity to have an equal and fair chance at due process and the Defendants could avoid a jury trial where they know Ms. Victor would win on the merits.

210. On June 17, 2019, Ms. Victor contacted attorney Mr. Mosley, and by July 2, 2019, her retainer to sue the Defendants was signed, which would turn out to be a terrible mistake as Mr. Molsey, Mosley & Associates, The Dominguez Firm ("TDF"), Thompson Coburn, and all attorney's and associates of each firm had been working together since the beginning to ensure that the Defendants got a quick and cheap litigation. Ms. Victor has NEVER had full and equal access to the judicial system, especially within the Los Angeles Superior Court.

211. Ms. Victor has yet, to this day, received her final paycheck nor all back pay, overtime pay, vacation pay, penalties, etc., that is owed to her from the Defendants. But that didn't stop the Defendants, Thompson Coburn, Mosley & Associates, and TDF from conspiring together when a copy of the Handbook was emailed to Ms. Victor in June of 2020 which was almost an entire year after she signed a retainer to sue the Defendants. The Defendants and their co-conspirators had

doctored fraudulent paperwork in her employee file, that showed two fake payments the Defendants supposedly FedEx'd to Ms. Victor after refusing to provide check numbers and Fed Ex tracking information. The Defendants sent a print out for the check they had allegedly sent for the pay period from 6/3/2019 - 6/16/2019 that was issued by Wally's on 6/21/2019 for the amount of $667.44. These fake printed pieces of paper are only evidence in support of Ms. Victor's allegations that the Defendants broke the law, many laws, anytime they deemed it fit, to conceal their unlawful behavior without suffering the consequences and legal liability.

212. The Defendants and their co-conspirators printed out a second piece of paper for a check for the pay period from 6/17/2019 - 6/30/2019. A pay period that began three days after Ms. Victor's wrongful termination and a pay period that Ms. Victor did not work at all as she was told by Ms. Baker to NOT step foot in Wally's, not even to get her final payment nor wages owed in back pay, etc. This print out states that the check was issued on July 5, 2019, almost an entire month after Ms. Victor got wrongfully terminated, and just days after she signed her retainer with Mr. Mosley. This check states that Ms. Victor worked thirteen hours during this pay period and the

check was issued in the alleged amount of $172.47. These print outs are entirely fake and having them presented to Ms. Victor was insulting to her intelligence but having them presented in a litigation was fraud on the court. The Defendants have not paid Ms. Victor a single penny she is owed and has gone to extreme unlawful measures to conceal that truth.

213. Emails in the employee file sent over to Ms. Victor by Mosley & Associates containing incriminating evidence against the Defendants trying to not only conceal their wrongful termination but a pathetic and malicious tactic to paint Ms. Victor in a false light. These emails show that the Defendants broke California laws as if doing such was acceptable or normal. Here are just a few of the things said in the emails that are not only contradicting but prove the Defendants broke many sections of law: "*I did some digging. It turns out Danielle Victor had shown a few of the hosts naked pictures of herself which in turn had made Asha feel uncomfortable*". "*I will suspend her this afternoon and send you final check details next week*". "*I'll cut the check on Monday*". "*I told her according to the handbook, we do not tolerate any harassment and take all complaints very seriously*". And these are just some of the many

lies that the Defendants nor Thompson Coburn could keep up with or maintain throughout the litigation.

214. Mosley & Associates kept telling Ms. Victor to postpone filing a labor and wage complaint with the Labor Commissioner until Ms. Victor took it upon herself to file such claim on August 9, 2019, which was almost two months since her wrongful termination and non payment of wages, In the employee file given to Ms. Victor in June 2020, Defendants Mr. Bjelajac and Ms. Burns began communication with the Labor Commissioners office with the email of <laborcomm.WCA.LAO@dir.ca.gov> on April 21, 2020. These email correspondence with the Labor Commissioner as well as Ms. Victor's scheduled hearing were almost an entire year after she filed her complaint in the Labor Commissioner's office on August 9, 2019. With that being said, the Defendants had an opportunity to compel arbitration about this dispute and did not, again waiving their legal right to do so, that is why the Defendants and their co-conspirators had gone to outlandish lengths to ensure that the case had gone to arbitration, even if it got there illegally.

215. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020 had the following sections that were violated by the Defendants themselves: Under *Discrimination and*

*Harassment* the Defendants violated the following sections: *Equal Employment Policy*/*Policy Against Discrimination*, *Policy Against Harassment*, *Harassment Training*, *Manager Training*, and *Investigation of Reported Misconduct*. Under *Confidentiality And Conflict Of Interest* the Defendants violated the following sections: *Confidentiality of Business Information*. *Under Payroll Practices* the Defendants violated the following sections: *Pay Days*, *Payroll Corrections*, and *Request for Payroll Records*. Under *Hours Of Operation*, *Work Schedules and Compensation* the Defendants violated the following sections: *Meal and Rest Periods*, *Recovery Periods*, *Time Records*, *Accuracy Of Time*, *Overtime*, *Tip Reporting*, and *Guest Tips*. Under *Personnel Records* the Defendants violated the following sections: *Personnel Records*, *Personnel Data Changes*, and *Confidentiality of Medical Records*.

216. Under Company Policies and Procedures, the section entitled "*General Rules of Conduct*", the Defendants violated the following conduct: 1) Dishonesty in any form; 7) Unauthorized use of Company equipment, time, materials, or facilities; 9) Use, possession, or sale of unlawful drugs or alcohol while on Company premises, while in a Company vehicle, or while on duty, or reporting to work under the influence of alcohol or any

unlawful drugs; 11) Failure to observe safety regulations; 12) Failure to report any unsafe conditions, damage to equipment or machinery, job-related traffic accidents or violations to your manage; 13) Carelessness or negligence while performing duties; 16) Destruction or damage to the property of the Company, another employee, a client/customer, independent contractor, vendor or a visitor; 17) Unlawful harassment, discrimination or retaliation, including sexual harassment, against another employee, a client/customer, independent contractor, vendor or a visitor; 18) Disruptive horseplay on Company time or property; 19) Threatening, intimidating, or covering other employees, client/customers, independent contractors, vendors, or visitors; 20) Insubordination; 22) Disrespect or discourtesy to managers/ supervisors, co-workers, and/or clients/customers; 23) Failure to immediately and properly report a job-related injury, no matter how minor; 24) Making or receiving excessive personal telephone calls or text messages, other than emergency calls, during working hours; 25) Falsifying, altering, destroying, or willfully omitting information from any time card or Company record (including employment applications); 28) Using the confidential information of a prior employer for your own or the Company's benefit; and 32) Improper use of and/or failure to use

timecards appropriately. Under this same Chapter the sections Discipline, Alcohol And Drug Policy, Social Media Policy were all violated by the Defendants.

217. The entire section entitled "*Employee Appearance*" was changed in its entirety prior to it being given to Ms. Victor by her prior legal counsel in June of 2020. However, the portion entitled "*Reporting Unsafe Conditions*" was violated by the Defendants.

218. Under *Alcohol and Service Policies*, the defendants violated the following sections: *Alcohol Service Policies*, *Alcohol Awareness Policy*, and *Intoxicated Guests*.

219. The Defendants violated *Vacation* and *Vacation Pay* sections of their own Handbook, as well as *Sick Leave*. The entire portion of the Handbook in regards to *The End of the Employment Relationship* was violated by the Defendants. In conclusion, their entire arbitration portion of their handbook, its rules and regulations, has never been enforceable, yet The Defendants, each of them, had unlawfully, in civil conspiracy, worked together to throw the Plaintiff's prior case into arbitration on the basis of fraud and manipulation.

220. Ms. Marc had contacted Ms. Victor and told her that several employees, including bus boys, servers, and bartenders

were being sat down and coerced by the Defendants to allege that Ms. Victor would walk around the restaurant showing off private videos and body parts. Ms. Victor had given this text message evidence to Mr. Mosley and his associates whom had told Ms. Victor, conveniently, that they lost such evidence right before Ms. Victor terminated their legal services for extreme unethical misconduct.

221. A week after Ms. Victor's "*suspension pending investigation*", Ms. Victor's twin sister Gabrielle Victor ("Gabi" or "twin sister") and Gabi's son Marcellus Victor ("Marcellus" or "nephew"), came to visit Ms. Victor in Los Angeles. They had gone to the Whole Foods located in Beverly Hills a few streets over from Wally's. While they were walking out of Whole Foods, Mr. Zamba had been walking into Whole Foods in his Wally's uniform, clearly on his lunch break. Ms. Victor had a friendly yet uncomfortable and humiliating encounter with Mr. Zamba as he apologized to her for what had happened and confirmed the entire restaurant was discussing her "*pornographic images*". Not only did the Defendants coerce almost the entire staff at Wally's but they defamed Ms. Victor by telling everyone her private business in regards to her employment. Their

unlawful behavior never seized, not even after she was wrongfully terminated.

222. Ms. Victors prior legal counsel withdrew her Labor Complaints from the Labor Commissioners office without her knowledge, consent, or signature in May of 2020 to help all the Defendants, each of them, in civil conspiracy to conceal their unlawful conduct and avoid legal and financial accountability for this unlawful conduct.

223. Ms. Victor's prior legal counsel, intentionally, delayed the filing of Ms. Victor's complaint over an entire year to try and ensure the Defendants could not be held liable for certain claims Ms. Victor alleged against them and the Defendants wanted to ensure that the timing of Ms. Victor's complaint allowed them to have a fraudulent response arguing affirmative actions. Such affirmative actions that only worked in the Defendants favor because Ms. Victor's prior legal counsel intentionally, maliciously, recklessly, with oppression, malice, and extreme hate, waited to file her complaint. Ms. Victor's prior legal counsel and the Defendants needed the statute of limitations to be in affect for more than half of Ms. Victor's alleged claims. Intentional actions taken to conceal the Defendants unlawful conduct and steps necessary to ensure the

141

Defendants avoid legal and financial liability and accountability for such unlawful conduct.

224. The California Department of Human Resources divides progressive discipline into two phases, the "*corrective phase*" and the "*formal adverse action*" phase. In the corrective phase Ms. Victor had the right to be made aware of performance deficiencies and given an opportunity to correct them. During the formal adverse action phase, Ms. Victor should have had the right to respond to Wally's HR department and also the chance to appeal to the State Personnel Board.

225. The State employer must provide due process before it can deprive an employee of their property, in this case, Ms. Victor's pay, back pay, overtime pay, etc., are her property. Wally's should have provided Ms. Victor a written notice that fully explained the adverse action, which was her "*suspension pending investigation*", a minimum of five days prior to the date of the adverse action which would have been Sunday June 9, 2019, since the adverse action took place on June 14, 2019. Ms. Victor had worked with her co-worker and also terminated employee of Wally's, Ms. Abdella, on June 12, 2019.

226. In some emails in the employment file given to Ms. Victor by her prior legal counsel in June of 2020, it was stated

that Ms. Abdella made her complaint on June 12, 2019, and other emails state that she made her complaint on June 14, 2019 while she was being terminated. Either way a written notice should have been made immediately and given to Ms. Victor so that she could have responded to the charges at a Skelly hearing. Ms. Victor was never informed that she had the right to appeal to the State Personnel Board nor did she have a clue of the State Personnel Board's existence prior to legally representing herself. Ms. Victor was never informed that she had the right to inspect any and all evidence upon which the employer relied to take the adverse action against her.

207. The most simple minimum due process rights that Ms. Victor should have been granted, including the right to a Skelly hearing, were denied to her. Ms. Victor must have received a notice of proposed discipline from Wally's, however, all she received was a voicemail from Ms. Baker on June 14, 2019. A proper notice needed to identify the specific rule or policy that Ms. Victor had violated that warranted a suspension and an investigation. A proper notice must have had a factual basis for taking disciplinary action. A proper notice must have been served with all documents, including a signed complaint from Ms. Abdella and her accusations against Ms. Victor, that warranted

143

Wally's to take such disciplinary action. A proper notice must have included the effective date of the discipline. And lastly, a proper notice must have provided Ms. Victor with a deadline to any response to their claims. NONE of this was done properly or at all by the Defendants, therefore denying Ms. Victor her rights to defend herself, a repeated pattern that has been continued throughout the Plaintiff's prior bias, prejudicial, and unethical litigation.

228. Defendant's cannot provide the Court a substantial motivating reason for any behavior or actions done by Ms. Victor that contributed or led to her being "*suspended pending investigation*". However, Ms. Victor can clearly prove to the Court and to the Public that such adverse action taken by the Defendants was solely discriminatory and that their decision to suspend Ms. Victor was based on her protected characteristics and the Defendants hate for Ms. Victor for her protected characteristics. "*While a complainant need not prove that racial animus was the sole motivation behind the challenged action, he must prove by a preponderance of the evidence that there was a "casual connection" between the employee's protected status and the adverse employment decision.*'" (Clark v. Claremont University Center (1992) 6 Cal.App.4th 639, 665 [8 Cal.Rptr.2d

151]). "*Substantial motivating reasoning has been held to be the appropriate standard under the Fair Employment and Housing Act to address the possibility of both discriminatory and nondiscriminatory motives*. (Harris v. City of Santa Monica (2013) 56 Cal.4th 203, 232.)

229. The Defendants all rallied together, and often, to figure out a plan that could be executed successfully, where the end result would be the Plaintiff's permanent exit from the company. Whether it would be from getting the Plaintiff to quit voluntarily by intentionally and maliciously being persistent in ongoing harassment, hostile bullying, or any other reason they could fabricate a termination.

230. The Defendants, each of them, did, and continue to make false and malicious statements about the Plaintiff, her work ethics, and her morals, a prime example is when the Defendants told the entire staff why Ms. Victor was terminated, how they were "*glad*" she is no longer employed at Wally's, working with her was a "*nightmare*", etc. The Defendants had been targeting and retaliating against Ms. Victor for multiple different reasons: The women working in management and other female staff members, for their own personal bias, racism, discrimination, or possible envy. The men working in management

and other male staff members for the Plaintiff showing zero interest in sexual advances, sexual derogatory comments, and for complaining and having a voice that became more vocal, each and every time Ms. Victor felt uncomfortable in the work environment at Wally's.

231. CA Labor Code §216 states, "*in addition to any other penalty imposed by this article, any person, or any agent, manager, superintendent, or officer thereof is guilty of a misdemeanor, who… had the ability to pay, willfully refuses to pay wages due and payable after demand has been made.*" The Defendants, each of them, have now, on more than a hundred occasions, conspired together with oppression, malice, and extreme hate, to ensure that they do not and will not pay Ms. Victor the wages she is owed.

232. And those who "*falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself, his employer, or other person, any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due.*" The Defendants, each of them, in civil conspiracy with all other co-conspirators, and all other known and unknown defendants; helped one another, and each other, to deny, oppress, annoy,

harass, and hinder, Ms. Victor from obtaining the debt she is owed. They are also all guilty of bringing fraud upon the court and are all equally guilty of misdemeanors.

233. During Ms. Victor's employment at Wally's she got in trouble multiple times, both verbal complaints and written complaints, for her dress code and in return to these corrective actions, Ms. Victor also filed both written and verbal rebuttal's to management's complaints, especially the ones that violated Wally's own Handbook directly discriminating against her.

234. When Ms. Victor received a copy of her Employee file in 2020 by Mosley & Associates, there were no copies of her written write ups nor her rebuttals, and most importantly no copies of any of her written complaints against several different managers.  All of these are required to be placed in any employees official personnel file and yet the Defendants had and have no copies and a clear lack of care to provide such documents during an entire fraudulent litigation.

235. Ms. Victor is informed and believes that Mr. Marciano is affiliated and is a manager of a business under the name of Palma Fiduciary, LLC, which begs the question, what fiduciary's are associated with this business and so affiliated with Mr.

147

Marciano, principal of Wally's and a defendant in Ms. Victor's litigation.

236. On over a dozen occasions, Ms. Victor, especially when working the closing shift, took her meal breaks after peak busy hours, resulting in her taking such break past the five hour deadline. In the Wally's phone app, where managers could contact employees, Ms. Victor was often told her meal period would be changed to reflect an earlier time for her break to help Wally's avoid any penalties with their HR department, not understanding such request at the time, and in fear of more retaliation and losing her job, Ms. Victor told them every time that such change was fine by her.

237. CA Labor Code Section 246.5, subdivision (b), states, "*an employer shall not require a condition of using paid sick days that the employee search for or find a replacement worker to cover the days during which the employee uses paid sick days.*" Ms. Victor herself, picked up multiple shifts that were the shifts of other hostesses who asked Ms. Victor to work for them in replacement of themselves in order to use a sick day. The Defendants would not allow their employees to call out without being penalized for such actions unless they could find someone else to cover their shift, in violation of this Section

and also against subdivision (c)(1) which states, "*an employer shall not deny an employee the right to use accrued sick days, discharge, threatens to discharge, demote, suspend, or in any manner discriminate against an employee for using accrued sick days, attempting to exercise the right to use accrued sick days, filing a complaint with the department or alleging a violation of this article, or opposing any policy or practice or act this is prohibited by this article.*" Not only did Ms. Victor witness her co-workers being forced to go against this Section, but for years now, Ms. Victor herself has been retaliated against by the Defendants for her repeated attempts to report violations of this Section made by the Defendants. Paragraph (2) of this section further states, "*there shall be a rebuttable presumption of unlawful retaliation if an employer denies an employee the right to use accrued sick days, discharges, threatens to discharge, demotes, suspends, or in any manner discriminates against an employee…*"

238. During Ms. Victor's employment with the Defendants, artist and celebrity Post Malone ("Mr. Malone") attended the restaurant and had a dinner party in the private dinning area. When his dinner concluded, he left a tip of $60,000 which was advised to be split evenly amongst all employees of the

restaurant whom were working that evening, which included Ms. Victor who had been working the host stand. Everyone who had been working that night received their portion of the tip that was given by Mr. Malone, except Ms. Victor, who to this day, has never received her portion of the tip owed her from that evening, which was obligated to be given within the next regular payday.

239. Ms. Victor, many times, worked, and is owed, compensation for overtime pay, which has still yet to be paid by the Defendants.

240. Almost every single work shift that Ms. Victor had worked at Wally's, she was harassed by management or other employee's about her personal social media accounts or her podcast entitled "*Swallow It*". In fact, multiple times, management, or Wally's principal, Mr. Navarro, would approach Ms. Victor, pulling up an image of her from her personal social media page(s) to harass Ms. Victor. Mr. Navarro, amongst others, also, would make comments about "*stalking*" Ms. Victor's social media, while liking all of, what Thompson Coburn referred to as, "*Ms. Victor's "half dressed" photos*" or "*adult content*". Mr. Navarro had left comments on Ms. Victor's social media content

such as the fire flame emoji or drool face emoji that have an underlying sexual tone.

241. Ms. Victor's social media was a topic of conversation amongst all employees of Wally's and was one of the main reasons management, especially Ms. Baker and Ms. Jones, targeted and retaliated against Ms. Victor in hopes that she would quit her job and they could avoid a wrongful termination lawsuit. Comments made by management and other employees were always in front of other staff and other management and despite Ms. Victor making multiple complaints about her social media becoming an everyday topic at work, nothing was ever done to stop the harassment.

242. Ms. Victor never received a written notice when the Wally's Handbook was changed and amended. Ms. Victor was never given a written notice with Wally's "*doing business as*" business names, in fact, Ms. Victor did not even know that Wally's went by the legal entity name of *Southwest Wine & Spirits, LLC*; nor did Ms. Victor know that *Southwest Wine & Spirits, LLC* **was a limited liability company doing business under Delaware law**, until she began representing herself and doing her own research. In fact, Ms Victor's prior legal counsel filed her complaint in the Los Angeles Superior Court naming *Southwest Wine & Spirits,*

151

*LLC, a California limited liability company*, as a defendant, which is false and fraudulent information. Ms. Victor, technically, had never been suing any real person, entity, or corporation with her Los Angeles Superior Court case which was an intentional act done by all Defendants with oppression, malice, and extreme hate. And upon doing her own research Ms. Victor discovered that *Southwest Wine & Spirits, LLC, a Delaware Limited Liability Company* also does business as *Mel-Jen* and *Wally's Auction House, LLC*. Southwest Wine & Spirits, LLC*,* the location in California, is a foreign branch of the Delaware limited liability company, licensed to do intrastate business in California. All this information was information Ms. Victor discovered only after being forced to represent herself in her own litigation. This was **not** information given to her as an employee from her employer. Wally's is actually a trademark name for Southwest Wine & Spirits, LLC, not a real business name.

243.  Ms. Victor had been denied the right to amend her complaint by both Judge Yolanda Orozco and arbitrator Judge Miller and therefore denied the opportunity to tell the court of each and every time the Defendants allowed themselves or their customers to make physical invasions and physical intrusions of sexual nature while Ms. Victor was working as a hostess. Ms.

Victor was denied the right to tell the court or a jury of her peers about each time she had to tell a customer of Wally's to not touch her bottom or her breasts after the customer was encouraged to do so by management.

244. Throughout the Plaintiff's prior litigation multiple emails and documents had been presented that were on the basis of fraud. For example, the two fabricated and fraudulent pay stubs created by the Defendants to argue that Ms. Victor received her last pay check and missing wages, when she indeed never received what she is owed. Multiple decisions made by the Defendants, each of them, were made fraudulently that would intentionally lead to Ms. Victor's complete duress. The stipulation to bind that case to arbitration was not only a mistake but was fraud, amongst many other legal documents, making the Defendants in violation of CA Civil Code §1567.

245. On June 17, 2019, Ms. Victor was referred to attorney, Mr. Mosley(SBN 244169) whom she contacted for legal services. On July 2, 2019, Ms. Victor signed a retainer with Mosley & Associates to take on her employment and labor complaint. Ms. Victor signed her retainer with Mosley & Associates with her free hand signature but then Mr. Mosley required her to sign her retainer again with DocuSign, an electronic signature. Not

thinking much of this request, Ms. Victor complied, only to realize that Mr. Mosley wanted her to sign with DocuSign so he could later forge her signature on documents, including authorization forms, and a retainer dated January 3, 2019, which was a month before she began her employment at Wally's, and six months prior to Ms. Victor contacting Mr. Mosley for legal services.

246. On August 5, 2019, Mr. Mosley sent Ms. Victor a new retainer for TDF with attorney Mr. Kim (SBN 282039). Ms. Victor was under the impression that Mr. Mosley worked for TDF and Mr. Kim was his boss. It was not once explained to Ms. Victor that she was obtaining co-counsel or that Mr. Mosley and Mr. Kim agreed on a fee split in regards to her litigation. In fact, to this day, Ms. Victor has never even had a single correspondence in person, on the phone, or by email with Mr. Kim.

247. On August 5, 2019, Ms. Victor also signed an Employee Records Authorization Form and a HIPAA form for TDF; Ms. Victor never signed these forms for Mr. Mosley or Mosley & Associates, in fact, Mr. Mosley and Mosley & Associates, forged Ms. Victor's signature on a HIPAA form and an Authorization for Employees Records for Mosley & Associates when Ms. Victor only ever signed such documentation for TDF. Ms. Victor never signed a co-counsel

agreement nor did she ever sign a fee-split agreement, TDF, Mr. Kim, Mosley & Associates, and Mr. Mosley, once again forged Ms. Victor's signature on a co-counsel agreement and a fee split form. A form Ms. Victor did not see until Defendant Ms. Headworth accidentally sent Ms. Victor a copy of such record in a OneDrive client file in June of 2021.

248. The Defendants, each of them, have been, and continue to be, careless about their blatant conspiracy and corruption. Ms. Victor believes that they behave in such a way because their criminal organization contains so many people, including members of the State Bar of California who fail to suspend, disbar, nor investigate attorney misconduct complaints they receive from Plaintiff's such as Ms. Victor. Matter of fact, Ms. Victor has submitted several complaints against each individual attorney named on this Complaint with evidentiary support of their criminal conduct and the State Bar of California has not investigated a single incident. The Defendants, each of them, have come to believe that they are fully protected and their actions are above the laws, laws the Judicial officers they bribe, are meant to uphold.

249. From July 2, 2019 to August of 2019, Ms. Victor constantly asked Mr. Mosley when she could go to the Labor

Commissioner's Office to file her Labor Complaint against the Defendants in addition to a retaliation complaint. Mr. Mosley constantly told Ms. Victor to hold off on filing the complaint in the Labor Commissioner's officer until they got things going in the Superior Court. Often time months and months would go by without any contact from the Plaintiff's attorney's, in fact, the only time she was provided an update on her case was when she had to reach out to them first for an update.

250. On August 9, 2019, Ms. Victor went into the Labor Commissioner's office on her own accord to file her complaint against Wally's, as nearly three months had gone by without payment from Wally's. Wally's was required by California State law to give Ms. Victor all wages due upon her separation of employment, but they did not, and still have not. At the Labor Commissioner's office, Ms. Victor was told by a woman at the clerks desk to fill out a handwritten form and put such form in a bin upon completion, Ms. Victor complied. A year would pass and Ms. Victor never received a letter or mailing from the Labor Commissioner's office, in fact, she had to go in to get a copy of documents in regards to her hearing with Deputy Commissioner Cathy Ray ("Deputy Cathy Ray"), who is a named Defendant on the separate case Ms. Victor has filed in the United States District

Court for the District of Massachusetts. On the paperwork Ms. Victor retrieved the Labor Commissioner's office did not even have Ms. Victors apartment unit number in the address portion, which was provided to them upon completion of her original paperwork.

251. The California Labor Commissioner's involvement, as well as the involvement of their Deputy Commissioner's, in this civil conspiracy, and their role in this criminal organization has been addressed in a separate complaint filed by the Plaintiff in the United States District Court for the District of Massachusetts. However, Deputy Cathy Ray and Mosley & Associates dismissed Ms. Victor's original complaint to their office without her consent, approval, signature, or acknowledgement. This was a calculated and pre-meditated plan done by the Defendants, each of them.

252. Six months after Mr. Mosley had Ms. Victor sign multiple documents for TDF, TDF sent Ms. Victor a letter of termination of services, that stated no other explanation other than goodbye and good-luck. Such letter of termination of services was received only after TDF received a signed HIPAA form and an Authorization for Employment Records. Mr. Kim did not provide Ms. Victor her client file, did not offer any

detailed explanation for his sudden need to end representation, nor was it explained how her HIPAA or other authorization forms were used or could be used in the future. Mr. Kim and TDF did nothing they were obligated to due under the Rules of Professional Conduct of the State Bar of California.

253. Freaking out and panicking, Ms. Victor had called Mr. Mosley and told him about the termination letter from TDF. Mr. Mosley offered to continue representing Ms. Victor through his own firm and with his associates, "Mosley & Associates" which, as mention previously, is a fictitious business name. Ms. Victor complied as she believed there was no other option. Later, Ms. Victor would discover that TDF's termination of services was also a pre-meditated, calculated, willful, and malicious move made by the Defendants, each of them, to solidify the end result of a litigation which they needed for their criminal organization to be successful and for the Plaintiff to be in delusion and unsuccessful in any litigation.

254. Ms. Victor constantly called, emailed, and texted Mosley & Associates asking for an update on the status of her case as months would pass by and Ms. Victor's attorney's would never make contact with her. When Mosley & Associates did make contact with Ms. Victor they would provide no explanation as to

VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF

the delay in filing her case only that it was happening soon.
Ms. Victor would later realize that the delay in the filing of
her lawsuit against the Defendants was also pre-meditated,
calculated, willful, and malicious. Such delay was done by
Mosley & Associates to help their partners, in this criminal
organization, be able to argue statute of limitations against
Ms. Victor's legal claims/ allegations, ensuring an unethical,
unlawful, and easy win through criminal activity and
manipulation.

   255. On September 9, 2020, almost a year and a half after
Ms. Victor signer her retainer for legal representation on her
employment matter, Ms. Victor's prior legal counsel Mosley &
Associates, and attorney's Mr. Mosley, Ms. Contreras (SBN
322545), and Mr. Montoya (SBN 317057) filed the complaint (the
"Complaint") in the LASC, Stanley Mosk Courthouse, Los Angeles
County, styled as *DANIELLE VICTOR, an individual v. SOUTHWEST
WINE & SPIRITS, LLC, a California limited liability company;
WALLY's VIONTECA, a California business entity form unknown;
WALLY'S WINE & SPIRITS, a California business entity form
unknown; WALLY'S BEVERLY HILL'S, a California business entity
form unknown; CHRISTIAN EDUARDO NAVARRO, an individual; MATTHEW
MARCIANO, an individual; and DOES 1 through 20, inclusive*, with

eleven causes of action, State Court Case No. 20STCV34566 ("the State Court Action"). The jurisdiction of this State Court Action are fraudulent and the case should have NEVER been filed in the Los Angeles Superior Court because the case includes parties of several different jurisdictions and the Plaintiff has always sought relief in an amount that exceeded well over seventy-five thousand dollars ($75,000). The factual allegations made by Mosley & Associates in this Complaint, in addition to the Prayer for Relief, were entirely vague and fraudulent and were submitted to the Court as true and genuine without the approval or knowledge of the Plaintiff.

266. Mr. Mosley submitted Proof Of Service of Summons to the LASC, this was in conspiracy with One Legal LLC ("One Legal"), who is a named Defendant on Ms. Victor's separate case filed in the United States District Court for the District of Massachusetts. In multiple of these documents, not only are their fraudulent signatures, spelling mistakes, but not all of the incorrectly named Defendants were served… in fact, absolutely no one was served by Mosley & Associates on behalf of the Plaintiff nor did One Legal ever serve anyone in a legal way. Both One Legal in conspiracy with the Defendants, each of

them, submitted fake legal documents to the Court as genuine and true which is a felony in the State of California.

267. In multiple of the "*Proof of Service*" documents the location states CENTRAL DISTRICT with the Stanley Mosk Courthouse address, 111 N. Hill Street, Los Angeles, CA 90012, not the correct address of the United States District Court, Central District of California which should have been listed as First Street Courthouse Building, 350 W 1st Street, Suite 4311, Los Angeles, CA 90012-4565 or the Edward R. Royal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, CA 90012-3332, because this case was always meant to be filed in a Federal court but was thrown into the LASC with intention, malice, calculation, oppression, extreme hate, and on the grounds of public corruption by the Defendants, each of them, in civil conspiracy.

268. Multiple papers that had been fraudulent provided to the court as a "*Proof of Service of Summons*" by One Legal and Mosley & Associates displayed how careless both One Legal and Mosley & Associates had been, they did not even care to spell the Defendants company name correctly, putting "OUTHWEST" instead of "SOUTHWEST". One Legal and Mosley & Associates claimed they served WALLY'S WINE & SPIRITS, a California

161

business entity form unknown, WALLY'S VINOTECA, a California business entity form unknown, WALLY's BEVERLY HILLS, a California business entity form unknown, all at 447 N. Canon Drive, Beverly Hills, CA 90210. Wally's Vinoteca is not a real business name nor a fictitious business name and the same goes for Wally's Wine & Spirits, and Wally's Beverly Hills, so a company that doesn't exist cannot be served. And if all these fake businesses were served to the same address, by the same company, One Legal, why were they served by different process servers on different days?

269.  One Legal and Mosely & Associates had Southwest Wine & Spirits, LLC, a California limited liability company, served at Incorporating Services, Ltd. to a Jennifer Lee at 7801 Folsom Blvd., 202, Sacramento, CA 95826. First obvious problem is Southwest Wine & Spirits, LLC is a Delaware limited liability company and they have it listed as a California LLC, false information on a document filed with the court that is meant to be true and correct in direct violation of *California Rule of Court*, **Rule 2.132,** which states that a party or attorney who files a form certifies by filing the form that it is a true copy of the form, in addition to multiple violations of Federal codes of law.

270. Furthermore, the registered agent and address for Southwest Wine & Spirits, LLC, where they must be served, is William F. Payne ("Mr. Payne") to 144 S Beverly Dr., Suite 600, Beverly Hills, CA 90212, not to Incorporating Services in Sacramento. There is a business called *SOUTHWEST SPIRITS & WINE, LLC*, which has absolutely no relation to Wally's, whose agent of service process is Incorporating Services, Ltd. This is more evidence of how careless both One Legal and Mosley & Associates, had been handling Ms. Victor's paperwork and their lack of care to even attempt to look non-fraudulent. Their unlawful conduct must be behavior they engage in often, as both One Legal and Mosley & Associates were comfortable in doing such fraudulent and unlawful conduct. California Code of Civil Procedure, section 415.95, subdivision (b), states that "*service of a summons pursuant to this section is not valid for a corporation with a registered agent for service of process listed with the Secretary of State*". Well, Southwest Wine & Spirits, LLC, a Delaware limited liability company, does have a registered agent for service of process listed with the Secretary of State, and therefore, the summons submitted to the Court by Mosley & Associates on behalf of Southwest Wine & Spirits, LLC, a California limited liability company (which does not exist and

163

is fraudulent), is not valid, therefore the correct Defendants have never been served a complaint on behalf of Ms. Victor.

271. Defendant Mr. Navarro was listed on the State Court Action as "Christian "Eduardo" Navarro", which is incorrect, as there is no legal proof his middle name is Eduardo. In fact, even on the Wally's website he is referred to by Christian Navarro. Mosley & Associates never served Christian "Eduardo" Navarro, yet his name was on the answer/denial filed to the LASC by Thompson Coburn on December 23, 2020, over three months after such complaint was allegedly received. In fact, every fraudulent name was on one answer/denial submitted to the court, however, each individual Defendant is required, by law, to respond to the complaint. Again, this was a calculated, malicious, and intentional move done by the Defendants, each of them, to put fraud upon the court and to move a litigation in favor of the Defendants without Ms. Victor's knowledge or consent. How can companies that do not exist and Defendants that have not been served respond to a legal complaint? It is not a possibility, it is simply fraud.

272. In addition, Matt Marciano and Mr. Navarro are individual Defendants Ms. Victor claims and alleges are personal liable for her pain, suffering, and holds responsible for

damages, and they would have needed to be personally served. There were no documents submitted to the LASC by Mosley & Associates under California Code of Civil Procedure, section 1011(b), stating that these individual Defendant's addresses were unknown. Nor did at any point in the past three years during that fraudulent litigation had there been a declaration of compliance with fictitious business name laws been made available to Ms. Victor by any court clerk as required by the California Rules of Court.

273. All of the "*Proof of Service*" submitted to the LASC by Mosley & Associates and One Legal have **"BY FAX"** on them but there is no court order approving that such documents, or any documents, were allowed to be sent or served via fax. There is also no fax transmission receipts that show the number which was faxed and if such fax transmission was delivered in error, because these documents were not served nor were they ever faxed because the Proof of Service's submitted to the LASC were fraud on the court. *California Rules of Court*, **Rule 2.304,** subdivision (b) requires that any party filing a document by fax must use the Facsimile Transmission Cover Sheet (Fax Filing)(form-MC-005). Further, *California Rules of Court*, **Rule 2.306,** subdivision (a)(1) only permits service by fax if both parties

have agreed and if that agreement is confirmed in writing, which was not done. Ms. Victor believes that Mr. Mosley did not maintain a list of parties and their fax numbers because it is impossible to fax a company that does not exist. This is violation of subdivision (b)(1) of this rule. Subdivision (h) of this Rule states that service by fax may be used except that: "*(1) the date and sending fax machine telephone number must be used instead of the date and place of deposit in the mail; (2) the name and fax machine telephone number of the person served must be used instead of the name and address of the person served as shown on the envelope; (4) a copy of the transmission report must be attached to the proof of service and the proof of service must declare that the transmission report was properly issued by the sending fax machine; and (5) service of papers by fax is ineffective if the transmission does not fully conform to these provisions*." The date and fax machine telephone number were not used on any of the Proof of Service of Summons submitted by Mosley & Associates and One Legal, in fact, they used the date and address of N. Cannon Drive, which is in direct violation of this rule. Mosley & Associates and One Legal did not attach a copy of the transmission report of each of these alleged faxes that shows that each alleged fax was properly

issued by the sending fax machine. Since Mosley & Associates and One Legal did not fully conform to the provisions of this Rule of Court, the service of papers they allegedly sent via Fax, to companies that don't exist, are ineffective. No one has been legally nor properly served in Ms. Victor's case.

274. On December 23, 2020, attorney Ms. Riccomini") and attorney Mr. Silbergeld (SBN 81093), on behalf of Thompson Coburn, filed an answer "*general denial*" in response to the Complaint filed by Mosley & Associates in September of 2020. Thompson Coburn's Answer/General Denial was filed over three months after Mosley & Associates had filed a complaint on behalf of Ms. Victor in the LASC. Thompson Coburn and the Defendants had thirty days to respond to Ms. Victor's Complaint but instead they filed their Answer/General Denial on the same day that both Thompson Coburn and Mosley & Associates filed their case management statements to the LASC. Judge Yolanda Orozco did not issue an order to show cause why the Defendants and Thompson Coburn should not be imposed with sanctions for their failure to submit an answer to the Court. There was no court order for an extension of time for the Defendants and Thompson Coburn to answer. Mosley & Associates did not file a Motion asking the Court nor Judge Yolanda Orozco to set the Defendants into

default for their failure to respond to the Complaint. All these "*failures*" made by Thompson Coburn, Mosley & Associates, and Judge Yolanda Orozco were a result of them working together, in conspiracy, to ensure they had the results they wanted for the Defendants, each of them, in Ms. Victor's prior litigation. Ms. Victor was provided, at no time, by Mosley & Associates an update on her case or documents being filed on behalf of her case. In fact, Ms. Victor was completely unaware of the laws that allow Defendants and their legal counsel to be set in default if they failed to respond to a Complaint in a timely fashion, until she was forced to represent herself in her prior litigation.

275. More importantly, how did Thompson Coburn file an answer and general denial on behalf of Defendants if no one was properly legally served Ms. Victor's complaint if not on the basis of fraud? Thompson Coburn's Answer/General Denial filed in the LASC listed fifty affirmative defenses against Mosley & Associates eleven allegations. It was the Defendants, each of them, pathetic attempt to make a victim into a villain, a pattern that the Defendants, each of them, have disgustingly continued throughout the past three years during the Plaintiff's fraudulent prior case.

276. Ms. Victor, prior to representing herself, and prior to Mosley & Associates filing a complaint on her behalf in 2020, would constantly ask her attorneys for an update on her legal case and would constantly ask why a suit was not yet filed in the court. Ms. Victor eventually came to the realization that Mosley & Associates timing on filing her Complaint was an intentional, calculated, and malicious move made in the chess game the Defendants played, that molded their civil conspiracy. Mosley & Associates filed Ms. Victor's Complaint over a year after she signed a retainer to ensure that the Defendants and Thompson Coburn could use affirmative defenses to sabotage Ms. Victor's legal claims/allegations, a list that was entirely incorrect and lacked almost eighty percent of the real legal claims the Plaintiff has made against the Defendants, each of them.

277. In Thompson Coburn's Answer/General Denial, attorney Mr. Silbergeld, when discussing judgement, stated, "*for such other and further relief as the Arbitrator may deem proper*". Why would Mr. Silbergeld mention an arbitrator in their Answer/ General Denial which was submitted to the LASC prior to the case being fraudulently thrown into arbitration, if such decision for arbitration was not made prior between all the Defendants and

the court? Ms. Victor had always demanded a jury trial, never once, did Ms. Victor agree to arbitration, yet Thompson Coburn's Answer/General Denial was focused on the results of an arbitration. Grounds for fraud and deceit.

278. Ms. Victor was never told by Mosley & Associates about Case Management or Case Management Statements which had been filed without Ms. Victor's knowledge, in the LASC, by both Mosley & Associates and Thompson Coburn. Ms. Victor was never told by Mosley & Associates about the Case Management Conference nor the Case Management Order made by Judge Yolanda Orozco after an alleged hearing was held on January 7, 2021. *California Rules of Court*, **Rule 3.812**, provides that if parties in a lawsuit stipulate to arbitration then said stipulation must be filed no later than the time the initial case management statement is filed, unless the Court orders otherwise. Mosley & Associates and Thompson Coburn both filed their Case Management Statements on December 23, 2020, allegedly had a Case Management hearing with Judge Yolanda Orozco on January 7th, 2021 where Judge Yolanda Orozco issued a Case Management Order, followed by both Mosley & Associates and Thompson Coburn both posting Jury fee's for a trial, a trial Ms. Victor has always demanded. After both counsels allegedly posted Jury Fees they then, collectively,

signed a fraudulent Stipulation to Arbitration binding Ms. Victor to an arbitration without Ms. Victor's knowledge, consent, and despite Ms. Victor always demanding a Jury trial. This Stipulation to Arbitration was fraudulently produced by attorney Ms. Contreras on a document with the header for Thompson Coburn. In fact, this fraudulent Stipulation for Arbitration was signed by Ms. Contreras days prior to Thompson Coburn ever signing such documentation. Ms. Contreras on behalf of Mosley & Associates signed this Stipulation to Arbitration on January 22, 2021, while Thompson Coburn signed this stipulation on January 26, 2021. What this means is that Mosley & Associates signed such stipulation fifteen days after the Case Management Conference and Thompson Coburn signed such stipulation nineteen days after the Case Management Conference. Judge Yolanda Orozco nor the Court ordered "otherwise" allowing an extension of time so both Counsels and the Court had violated their own Rules of Court to benefit this civil conspiracy and their own personal interests.

279. The Case Management Statement that was submitted on Ms. Victor's behalf to the LASC by Ms. Contreras and Ms. Headworth on December 23, 2020, was submitted without Ms. Victor's consent, knowledge, or approval. Such Case Management

Statement was signed by both Ms. Contreras and Ms. Headworth, under the penalty of perjury, that all information was true and correct when all information was not true nor correct.

280. Here is each invalid and false statement made by Mosley & Associates on the Case Management Statement they submitted to the LASC, on Ms. Victor's behalf, under penalty of perjury: Question one asked and was answered that the statement was submitted by Ms. Victor, the Plaintiff, however Ms. Victor was unaware of Case Management or such statement until she began representing herself in June of 2021 and had printed all Court documents for her own records.

281. On question three of the Case Management Statement submitted to the LASC by Mosley & Associates, Ms. Contreras answered that "*all parties named in the Complaint and Cross Complaint have been served, have appeared, or have been dismissed.*" Such answer is invalid, false, and fraudulent as the Defendants which had been named on the Complaint, submitted by Mosley & Associates on behalf of Ms. Victor in September of 2020 to the LASC, were intentionally and maliciously named incorrectly or falsely so that Ms. Victor was suing no one in their actuality. As discussed herein and above, the Proof of Service of Summons are all ineffective and non valid and no one

had ever been properly legally served a summons. How could Ms. Contreras have answered this question as true and certified, under the penalty of perjury, if Mosley & Associates did not even serve their own client Ms. Victor, the Plaintiff, any documentation whatsoever? The correct Defendants were not named on the Complaint filed by Mosley & Associates to the LASC so the correct Defendants were never served, never appeared, nor were they dismissed. Ms. Victor, the Plaintiff in this pending LASC matter, was also not served by her own attorney's. Under penalty of perjury, Ms. Contreras and Mosley & Associates, had lied yet again, this will be a continued pattern of all attorney's who are involved in the Plaintiff's prior litigation and civil conspiracy.

282. In further discussion of the Case Management Statement submitted by Mosley & Associates to the LASC on behalf of Ms. Victor, Ms. Contreras barely describes Ms. Victor's damages or reasons for suit in answer 4b. On question 5, they did accurately state that Ms. Victor wanted a Jury Trial. Thompson Coburn, with attorney Ms. Riccomini, being under the penalty of perjury, answered a Jury Trial for question on behalf of the "Defendants". If the Defendants and Thompson Coburn were going to compel arbitration they would have not answered the Complaint

filed by Mosley & Associates and they absolutely would have not answered question 5 of the Case Management Statement with the option of a Jury Trial, yet they did. Both opportunities discussed herein were opportunities that Thompson Coburn had waived their legal right to compel arbitration on behalf of who they represent. On question 7 of the Case Management Statement, which asks what the estimated length of trial would be, Ms. Contreras put seven to ten days. Ms. Riccomini, on behalf of Thompson Coburn, answered five days for an expected trial time for Ms. Victor's prior LASC case. Again, both legal counsels had answered these questions in expectation of a trial, not arbitration, because Mosley & Associates had always told Ms. Victor she would in fact be getting a Jury Trial.

283. Question 10 of the Case Management Statement asks if the client, being represented, has been provided with the ADR information package which is required by *California Rules of Court*, **Rule 3.221**, the question further asks if such package had been reviewed with and by the client. Ms. Contreras signed, under penalty of perjury, that Mosley & Associates had complied with this Rule of Court and that Ms. Victor had been given and reviewed said ADR package. Ms. Victor was **<u>never</u>** given this ADR package from Mosley & Associates nor was ever such package

reviewed by Ms. Victor. Not only was Ms. Victor not given a package that explained alternative dispute resolution but never, not once, did any attorney from Mosley & Associates ever explain, go over, or ask Ms. Victor if ADR would be something she would consider or even agree too, in regards to her prior LASC case. With this being said it makes what Ms. Contreras said, under penalty of perjury, one hundred percent false.

284. Question 11, of the Case Management Statement, which was about insurance, was left unanswered. Question 12, which was about the Court jurisdiction, was also left unanswered, and the Court jurisdiction has also been extremely improper. Question 13, which was in regards to related cases, consolidation and coordination was also left unanswered. However, Ms. Victor, herself, found multiple cases which should have been marked as related, consolidated, or coordinated. Ms. Victor has zero prior legal knowledge, yet those who are licensed with the State Bar of California, have failed to acknowledge related cases which should have been consolidated or coordinated. This question remaining unanswered was intentional, malicious, calculated, and oppressive for all Plaintiff's who have suffered at the hands of the on going civil conspiracy. Thompson Coburn did not want to mark any cases as related, nor did they want to consolidate or

VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF

coordinate them because that would mean more financial and legal accountability for their alleged clients. Question 14 and question 15 were also left unanswered on the Case Management Statement filed by Mosley & Associates on behalf of Ms. Victor.

285. After answering question 5, that the Plaintiff demanded and expected a Jury Trial, Ms. Contreras then answered question 18 that both parties anticipate stipulating to arbitration or the Defendant plans to file a motion to compel arbitration before the Case Management Conference. How can Ms. Contreras answer question 5 with the complete opposite response to her answer in question 18, which was not what was discussed nor agreed upon between Mosley & Associates and Ms. Victor, ever? Ms. Contreras had stated in her answer that Thompson Coburn, on behalf of the Defendants, would be filing a Motion to Compel Arbitration prior to the Case Management Conference, however, no such Motion to Compel was filed within the LASC. In fact, Judge Yolanda Orozco filed a Case Management Order which set the Trial Date for April of 2022. As stated previously, Thompson Coburn had undeniably waived their right to compel arbitration or to bind Ms. Victor to any such stipulation to arbitration. However, Judge Yolanda Orozco, Thompson Coburn, Mosley & Associates, and all said attorney's, worked together in

this civil conspiracy to ensure that the Plaintiff's LASC case would go exactly how they needed it too in order to obtain the financial result that was best suited for every person, corporation, and/or entity within this civil conspiracy.

286. Question 16, which discusses discovery, of the Case Management Statement,Thompson Coburn and Ms, Riccomini, on behalf of their clients, answered that the date for discovery shall be determined by the arbitrator. As did Mr. Silbergeld, Ms. Riccomini had answered this question as if Ms. Victor's case had already been submitted to arbitration and assigned an arbitrator, despite providing trial date times and posting Jury fees on behalf of the Defendants, and despite the fact that Thompson Coburn had never filed a legitimate Motion to Compel Arbitration in the time line that is required by California law.

287. Ms. Contreras, on the Case Management Statement, under question 20, wrote and stated the following, "*I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raided by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required*." This statement was not

only untrue in its entirety but it is unlawful. Ms. Victor never gave anyone from Mosley & Associates the authority to discuss her case without her knowledge, consent, and at minimum her signature. Ms. Contreras was not fully prepared to discuss Ms. Victor's case, the status of discovery and/or ADR, or any other issues raided by the statement she submitted to the LASC. Ms. Contreras, nor anyone from Mosley & Associates, was ever given, nor did they ever possess the authority to make decisions on behalf of Ms. Victor without her knowledge or consent, they did not have the authority to enter to any stipulations at any time during the litigation, and Ms, Victor absolutely never gave them the authority to have "*written authority of the party where required*". In fact, in June of 2021, after Ms. Victor had terminated the legal services of Mosley & Associates, Ms. Victor told Ms. Contreras via email to email her the correspondence between her and anyone from Mosley & Associates that would support her false statements made on the Case Management Statement. Needless to say, Ms. Contreras left such request unanswered and ignored as Ms. Victor had NEVER given anyone from Mosley & Associates any such authority over her case or its outcome.

288. The attorney's of Thompson Coburn and the attorney's of Mosley & Associates who had involved themselves in Ms. Victor's LASC case had, on several different occasions, and continue to, make willful oaths, and/or have submitted material matter which he or she knew to be false, therefore all attorney's are guilty of multiple counts of perjury. The attorney's of both Thompson Coburn and Mosley & Associates have all submitted, to the LASC and to JAMs, evidence knowing that such evidence in which was being submitted as genuine or true was forged, fraudulent, or altered. Such actions in the State of California would make each attorney and their law firms guilty of felonies. These attorney's are each guilty of preparing false documents and they did so with the intention to produce such documents for fraudulent and deceitful purposes but under the illusion of such documents being genuine and true. These attorney's and law firms also conspired with one another and the Court to take such fraudulent and deceitful actions in order to maintain Ms. Victor's LASC case in a position that was victorious for the Defendants, each of them. Thompson Coburn and Ms. Victor's prior legal counsel, had, and continue too, obstruct justice in the most malicious, oppressive and

179

calculated ways, with extreme hate, bias, and prejudice and will continue to do so until the State of California stops them.

289. On January 7, 2021, a Case Management Order was filed in the LASC, which appears to be filled out by Ms. Victor, but was not. Nor did Ms. Victor ever see such Case Management Order until she had to pay for all Court documents herself after Mosley & Associates refusal to give her such documents and after she was forced to represent herself. The question remains, who filled out this case management order pretending to be Ms. Victor, or on behalf of Ms. Victor without the Plaintiff's permission? That is absolutely not Ms. Victor's handwriting on the court document submitted to the Court.

290. Question 1 of the Case Management Order, entitled *"Case Management Conference"* asks if the parties have complied with the *California Rules of Court*, **Rule 3.720** et. seq., and have filed management statements on Judicial Council form CM-110 OR if the Case Management Conference is continued to (a blank space for a new date) at 8:30AM or PM due to one or both parties' non-compliance with California Rules of Court, Rule 3.720 et seq. (Blank space) is ordered to show cause at said conference why monetary sanctions should not be imposed for non-compliance with *California Rules of Court*, **Rule 3.720** et. seq.

This question was unanswered upon submission of this Case Management Order, neither option was checked off as an answer, which would make any person with common sense ask, why? Thompson Coburn and Ms. Contreras/Mosley & Associates, despite it being without Ms. Victor's knowledge, both submitted statements on the required CM-110 forms. Despite Ms. Contreras and Ms. Riccomini committing perjury on the above referenced case management forms, they indeed submitted these forms to the court and to Judge Yolanda Orozco. Did both counsels and the court intentionally leave this answer unanswered because they did not follow the CA Rules of Court? It should be acknowledged by this Court and any Court that the silence on this question of the Case Management Order can be construed in the public eye as evidence of malicious intent or willful non-compliance of a rule of court. Silence can be construed by the public eye as an admission of guilt. The Case Management Conference was not rescheduled nor was an order to show cause ever issued by Judge Yolanda Orozco.

291. Section/ Question 2 of the Case Management Order is entitled "*Parties*". The person who filled out this Case Management Order checked off that there was not a cross-complaint in this matter. They also checked off the box that all

named Defendants/ Cross Defendants had been served, have appeared, been defaulted, or dismissed. How can that information be checked off as a true and correct, under penalty of perjury, when the Defendants named on the complaint filed were fraudulent and no one had ever been served? Mosley & Associates, who had intentionally left off all of the legitimate Defendants, should have known, or should have reasonably known, that none of the Defendants had been served, dismissed, or defaulted. Submitting documents to the Court, knowing such documents are fraudulent, will be a continuous pattern repeated by every attorney involved in the Plaintiff's prior litigation.

292. Section/Question 3 of the Case Management Order, which is entitled "*Alternative Dispute Resolution*", the first portion of this question asks if the case was referred, ordered to arbitration, mediation, or neutral evaluation. Whoever filled out this Case Management Order form, on behalf of Ms. Victor, had added their own check box that said "MSC", meaning Mandatory Settlement Conference. The other portion that is filled out under this section/question asks what date a post-ADR status conference was set for. Again, whoever filled out this form scribbled out ADR and again put MSC and set the Mandatory Settlement Conference for April 1, 2022 at 9AM, with a note to

post fees within 5 days. Ms. Victor was never told nor approved her case being put into the mandatory settlement conference program, nor did the Court or any party file a motion for such request, instead they took it upon themselves to scribble out ADR on a Case Management Conference Form and added their own MSC option. Referrals into the MSC program have to be initiated by a Court Order and submitted with an MSC intake form, a form that must be **JOINTLY** completed and emailed to <SSCMSC@LACourt.org> . Jointly submitted means that Thompson Coburn and Mosley & Associates worked together yet again to do what was best for the Defendants and NOT what was best for Ms. Victor and the justice she was demanding. All forms and emails are required to be lodged with the Court, however, upon representing herself, Ms. Victor emailed SSCMSC@LACourt.org on August 3, 2021, this email stated the following: "*I am the plaintiff in the above named pending case. I would like to see the paperwork and forms that were filed on behalf of me for the MSC program. Attached please find a case management order that was filed on my behalf without my knowledge, nor is Judge Yolanda Orozco listed as one of the judges who works with those submitted to the program. So I am trying to understand how MSC was ordered on the attached form in regards to my case. I discharged my lawyer for misconduct and I*

183

*have not seen a single court document until July 8, 2021, when I had to pay for every document. So I would like to see how I am ordered to MSC if I am one of the parties and I didn't know what MSC was till a few days ago. I also need a clear understanding of who signed on the Judicial Officer line. And why it is dated for 1/7/2021, the same day counsels had a conference, and why the electronic stamp on the side says 1/8/2021. Also how can a jury trial be set for 4/11/2021 and also a final status conference on the same day, with the final status conference scheduled an hour before a jury trial. Wouldn't a jury trial be scheduled prior to a final status conference? I look forward to your swift response. Thank you"* Ms. Victor, despite letting them know she was now representing herself, and despite her signature being needed on all intake forms to be in the MSC program, the person who responded on behalf of the MSC program within the LASC denied answering any of Ms. Victor's questions and did not send any copies of any documents submitted by Mosley & Associates. The person who responded on behalf of the MSC program within the LASC simply stated: *"You will need to contact your former attorney or the trial court regarding your case."* Ms. Victor was absolutely outraged by the court's refusal to give a Plaintiff documents in regards to a case that required

her signature in order to even be in the MSC program. Ms. Victor believes that the refusal of the MSC intake forms and all other related documents was to avoid Ms. Victor obtaining more evidence of her forged signature and/or a copy of additional fraudulent Court documents submitted to the LASC by Thompson Coburn and Mosley & Associates, again in civil conspiracy with each Defendant named herein.

293. Ms. Victor, irate, emailed the MSC program again, stating the following: "*My former attorney will not answer any questions, and I am now representing myself pro per and I have a right to all my files. So how do I get my files that have been drafted through your department as they have been illegally bound to nothing I have agreed with or have seen before prior to July 8, 2021. Thank you*." The person responding on behalf of the MSC program within the LASC denied that they had any of Ms. Victor's documentation stating, "*The Judicial MSC Program does not have any of your documents. Again, you will need to contact your trial court, or you can access your documents online through lacourt.org.*" However, the Case Management Order signed by the Court and date stamped as a conformed copy, states that Ms. Victor's case was in fact in the MSC program and they even set a date for said management settlement conference. So how

does the LASC have a Court order stating Ms. Victor's case is within the MSC program yet the MSC program has no documents on behalf of Ms. Victor or her case that are required for such enrollment into the program. The court intentionally and maliciously, denied Ms. Victor her legal right to see what was signed on her own behalf and what terms were agreed upon by Thompson Coburn and Mosley & Associates, terms that were agreed upon WITHOUT Ms. Victor's knowledge or consent. Did Mr. Mosley forge Ms. Victor's signature yet again? This cannot be answered by Ms. Victor because the MSC program denied her the right to see the documentations that involve her case, potentially covering up the unethical criminal activity of multiple individuals involved in this civil conspiracy, which most definitely includes Judge Yolanda Orozco, her Deputy Clerks, Thompson Coburn, and Mosley & Associates. Court staff improperly denied Ms. Victor requested legal documents that could and must contain either Ms. Victor's forged signature or the signature of someone from Mosley & Associates who signed on her behalf without the authority to do so. How can a Plaintiff be denied her right to review the contents of her own court file?

294. In the State of California, a licensed attorney is obligated by State law to communicate with their clients all

amounts, terms, and conditions of any written offer of settlement made by or on behalf of the opposing party. It is also State law that, upon the request of either party, any written offer of settlement or any required communication of a settlement offer shall be discoverable in any action in which the existence or communication of the offer of settlement is an issue before the trier of fact. The court denied Ms. Victor the right to discover these documents to protect themselves and to cover up unlawful conduct engaged in by Thompson Coburn and Mosley & Associates. Discussions of the Mandatory Settlement Conference were not the first nor the last discussion and/or agreements made between Thompson Coburn and Mosley & Associates on behalf of Ms. Victor in regards to a potential settlement of her prior case, discussions that were intentionally and maliciously kept secret from Ms. Victor. It is the duty of the California State Bar, if necessary, to demand that both Thompson Coburn and Mosley & Associates provide all settlement discussions, terms, agreements, they had prior to Ms. Victor's self- representation, discussions that Ms. Victor was unaware of or did not consent to. However, in civil conspiracy, the State Bar of California has intentionally, with malice, and oppression, failed to investigate all of Ms. Victor's complaints

she had filed and has failed to prevent irreparable loss and injury to Ms. Victor. The State Bar of California is a named Defendant on the Plaintiff's separate claim filed in the United States District Court for the District of Massachusetts.

295. Section/Question 4 on the Case Management Order which is entitled "*Trial Setting*" had the first four, out of five, boxes checked off. The first box states "Plaintiff/Defendant has demanded jury and will post jury fees. (Code Civ. Proc., §631.) Plaintiff and Defendant are both circled with this answer and as stated above and herein, both Thompson Coburn and Mosley & Associates filed motions stating they both posted their jury fee's, which waived the Defendants right to compel arbitration and that a jury trial should have been expected. A logical question to be asked is WHY would Thompson Coburn and Mosley & Associates both post jury fee's if their case management statements state they would be stipulating to force arbitration and/or if they were allegedly forcing this case into the MSC program? Only one party is required to post jury fees, which would have been Mosley & Associates since Ms. Victor, from the very beginning, has demanded a jury trial. There was NO obligation for the Defense to pay jury fees or agree to a jury trial on the case management order if they planned to file a

motion to compel arbitration. Thompson Coburn, waived their right and authority to compel or demand an arbitration, yet again. Ms. Victor is informed and believes that every move made by Thompson Coburn and Mosley & Associates had been done with malicious intent in order to benefit themselves and to manipulate the outcome of this litigation. However, a litigation can not be manipulated on the discovery of fraud. Thompson Coburn and Mosley & Associates did not anticipate that Ms. Victor would learn any legal knowledge or simply did not expect that Ms, Victor would have enough intelligence to discover most of their unlawful conduct and then fight endlessly for justice for the pain, suffering, injuries, and damages caused by their past, present, and potential future unlawful conduct in the furtherance of this civil conspiracy.

296. The second checked box in this section states that , "a final status conference is set for April 1, 2022 at 830AM or at 9AM, 830AM is crossed out. The third checked box in this section states, "The case is set for jury/court trial on April 11, 2022 at 10AM. Jury is circled which again means that both Thompson Coburn and Mosley & Associates agreed that a jury trial would be guaranteed to Ms. Victor, and they waived their right to compel arbitration. The last box checked states, "*Time*

*estimated for trial is 7-10 days*." Again, suggesting and acknowledging that Ms. Victor demanded a jury trial and should have reasonably expected to receive such jury trial.

297. The last question in this section was left blank and not answered, which asks 'The identity of the trial counsel is: (blank space). Set forth in parties' case management statements (Form CM-110): (blank space) as follows: For Plaintiff: (blank space). For Defendants: (blank space). If both counsels had a jury trial agreement on this Case Management Order and had allegedly paid jury fees then why would this question remain blank and unanswered? Wouldn't the trial counsel for the Plaintiff, at the time this form was submitted to the court, be named as Mosley & Associates and for the Defendants be named as Thompson Coburn? Instead such question was intentionally unanswered because it was never intended to take Ms. Victor's case to a jury trial. They merely filled out paperwork to file in the Court to make it appear as though they were working on behalf of their client, the victim, and Plaintiff, Ms. Victor, yet the only person they were working for was one another, in an oppressive and malicious civil conspiracy.

298. Section/Question 5 of the Case Management Order is entitled "*Other Issues*". The box checked states, "*The court*

VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF

*further orders as follows: MSC intake form due by January 7, 2022"*. Whoever filled out this form on behalf of Ms. Victor also checked that notice is waived, which waived Ms. Victor's right to see this fraudulent Case Management Order or what was agreed to on her behalf fraudulently by Mosley & Associates in collusion with Thompson Coburn. Waiving the right to notice was an intentional, malicious, and calculated move made by Thompson Coburn, Mosley & associates, and the Court, so that Ms. Victor would not see a document she would surely analyze and question which would stall the activity of their civil conspiracy. The Case Management Order was signed by a Scribbled name on the Judicial Officer line, however, that is not Judge Yolanda Orozco's official signature nor her Court stamp which is presented on several other court documents, so what Judicial Officer signed this Case Management Order? Why is this Case Management Order not stamped with Judge Yolanda Orozco's official court stamp like all of the other malicious orders the Judge has stamped throughout Ms. Victor's prior litigation?

299. On January 12, 2021, Mr. Mosley & Ms. Contreras had a phone call with Ms. Victor, days after they submitted their fraudulent Case Management Statement to the LASC, on Ms. Victor's behalf without her knowledge or consent. This phone

call did not discuss the Case Management Statement, nor was Ms. Victor made aware of such statement on this phone call. This phone call was a threat by Mosley & Associates who refused to accept Ms. Victor's decision to not do arbitration and her persistence on filing an opposition to a motion to compel, that eventually never came. Mr. Mosley made the remark, "*It's real cute you think you're f&%king Kim Kardashian and everything with your legal notes but why don't you let the actual lawyers do their job.*" At one point in the conversation, Ms. Contreras threatened Ms. Victor that she would need to find new legal counsel if Ms. Victor did not start doing what her and Mr. Mosley told her to do. Ms. Victor, being a woman who has a strong sense of self-will, did not care if her decision would mean finding new legal counsel, and still proceeded to tell Mr. Mosley and Ms. Contreras that she wanted her day in court. Later that day, Ms. Victor emailed Mosley & Associates that her decisions for a jury trial remained the same after discussing arbitration with her mother who works in a courthouse. Ms. Contreras told Ms. Victor the next step would me the Defense counsels motion to compel arbitration which they would then oppose, however, that motion to compel never came, rather Thompson Coburn and Mosley & Associates submitted to the court a

VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF

stipulation binding Ms. Victor to arbitration which was granted by Judge Yolanda Orozco. However, since no actual Defendants had ever been served and since no Defendants had actually been named correctly, the stipulation binding Ms. Victor to arbitration is void on its face and fraudulent. The entire litigation in the LASC has no legal merit or standing.

300. Ms. Victor could present further fraudulent documents, further unethical misconduct that had flooded her prior litigation but then this Complaint would be thousands of pages long. However, Ms. Victor has no problem submitted to this Court, on a motion for good cause, any or all documents necessary for evidentiary support.

301. Evidence of fraud, forgery, and other shockingly bad attorney misconduct had been presented to both Judge Yolanda Orozco and arbitrator Judge Miller on several different occasions. Both Judge Yolanda Orozco and Judge Miller had failed to take any corrective actions which they are obligated to do under the Code of Judicial Ethics. Ms. Victor is informed and believes that such failure to take corrective actions is due to their bias and prejudice against the Plaintiff, their complete lack of impartiality, and their social, political, financial, or personal investment into Ms. Victor's case. Judge Yolanda Orozco

and Judge Miller can now be individually liable for any further damages and/or irreparable injury caused to Ms. Victor because they had acted in their full capacity under color of the law. Both Judge Orozco and Judge Miller are named Defendants on the Complaint Ms. Victor filed in the United States District Court for the State of Massachusetts.

302. On January 28, 2021, Judge Orozco ordered a Stipulation binding Ms. Victor to arbitration that was done by all attorneys mentioned herein without Ms. Victor's consent or knowledge and on the basis of fraud. There would be absolutely no movement on the LASC court docket until July of 2021 after Ms. Victor fired Mosley & Associates and was forced to represent herself. Ms. Victor being put in that position by her prior legal counsel goes directly against the Professional Rules of Conduct which is meant to be enforced by the State Bar of California but is clearly not.

303. The end of May 2021 and beginning of June 2021, Ms. Victor suspected unethical misconduct by Mosley & Associates, whom she since had found out had, and has, colluded with the prior Defense Counsel, Thompson Coburn. Mosley & Associates and Thompson Coburn had colluded with one another to help all the named Defendants, sabotage Ms. Victor's prior litigation for an

194

easy and illegal win in the LASC through an arbitration with JAMs. Such unethical misconduct, includes, but is not limited too, Ms. Victor being put into therapy sessions by Mr. Mosley with Dr. Sally D. Greig ("Dr. Greig"), whom was hired and referred to Mosley & Associates by Thompson Coburn using the signed HIPAA form that was received and later altered by TDF. An unethical and illegal action taken for the Defendants to discover Ms. Victor's deepest, darkest secrets to then attempt to use such secrets against her in Court. To this day, Dr. Greig has refused to give Ms. Victor a copy of her records or to provide information on who referred her to the Plaintiff's legal matter.

304. After such unethical misconduct was discovered, Ms. Victor had sent Mosley & Associates a termination letter, a letter they refused to sign. Instead, they informed Ms. Victor that they had filed a Motion to Be Relieved as Counsel to Judge Orozco of Department 31, of the Stanley Mosk Courthouse. Ms. Victor requested a hearing on this Motion. In Ms. Victor's Motion, presented to Judge Orozco and the Court, Ms. Victor provided evidence of Mosley & Associates, Thompson Coburn, and TDF criminal activity including forgery. Judge Orozco ignored all of Ms. Victor's evidence of unethical misconduct by ALL of

the attorney's involved in her prior litigation and took no corrective actions as required under the Code of Judicial Ethics. In fact, Judge Orozco allowed and witnessed Mr. Montoya commit perjury, under oath, on the stand, about events that had taken place prior to this hearing. Judge Orozco then granted Mosley & Associates an order to be relieved as counsel on the grounds that Ms. Victor had become "*too difficult to work with*". Judge Orozco also stated that it was not her job to look into attorney misconduct, such as forgery or perjury, and if Ms. Victor had a complaint against said attorneys then such complaint would need to be filed with the State Bar of California. Judge Orozco made this suggestion knowing damn well that her affiliates at the State Bar of California would never investigate Ms. Victor's claims and that no one in their criminal organization would be subjected to any such consequences for any of their unlawful conduct.

305. Ms. Victor had requested in writing to TrustPoint One for the court reporters final product on this hearing and all hearings and such copies were NEVER given to Ms. Victor, hence, they covered up and/or destroyed evidence of Mr. Montoya committing perjury on the stand. This unlawful conduct is just

the beginning of what the Defendants, each of them, have put Ms. Victor through in the past three years.

306. This was not the first nor the last time Judge Orozco had, and has, aided and abetted the Defendants throughout this litigation, ensuring that the Defendants conceal their criminal activity and that Ms. Victor is silenced, denied due process, denied a jury trial, and imprisoned in the most bias and prejudicial litigation; and it will not be the last time Judge Orozco aids and abets each named Defendant unless she is immediately investigated and benched. Some examples of how Judge Orozco has helped the Defendants in their civil conspiracy is as follows: Motion for a Peremptory Challenge filed by Ms. Victor on July 9, 2021 concurrently with Declaration in Support, denied by Judge Orozco and she refused to recuse herself from the case; Motion to Disqualify Counsel filed on July 9, 2021 by the Plaintiff denied by Judge Orozco despite being presented evidence of criminal activity; Motion to Disqualify Defendants Counsel & Motion to Dismiss Counsels Motion to be Relieved as Counsel filed on July 16, 2021 by the Plaintiff was also denied by Judge Orozco despite receiving further evidence of criminal activity; all oppositions for these motions submitted to the LASC on July 16, 2021 was again denied by Judge Orozco; the

Defense Counsel attempted to file a TRO request against Ms. Victor on July 30, 2021 named as a "Status Report" which attempted to get Ms. Victor's case dismissed for her social media, the entire pleading was a violation of Ms. Victor's First Amendment rights and Judge Orozco allowed the Defense to hold three separate hearings entertaining the idea of dismissal and allowed Thompson Coburn to filed a second Status Report against the Plaintiff; On August 2, 2021 Mr. Montoya filed a Declaration in support of their request to be relieved as counsel and on August 3, 2021 Judge Orozco allowed Mr. Montoya to commit perjury on the stand in her courtroom; On August 3, 2021, Judge Orozco also allowed Thompson Coburn to hire and use court reporters who refused and still to this day refuse to give Ms. Victor a copy of any and all of the Court proceedings done in Judge Orozco's Courtroom as it would be solid evidence against each named Defendant herein; Ms. Victor submitting to the Court a Request for a Statement of Decision on August 12, 2021 and Judge Orozco not only denied it, refused to provide a copy to the Attorney General of the State of California, which is required by law, but she had the entire Motion deleted from the Court record which is against Federal law; Judge Orozoco made the mistake of leaving Ms. Victor's second filing on August 16,

2021 on the court docket which was an opposition and demand for a statement of decision after the original request was denied, this again was denied by Judge Orozco; Ms. Victor filed a request for immediate recusal of Judge Orozco pursuant to CCP 170.1 on August 19, 2021 which obtained Ms. Victor's social security number, the Deputy clerks of her office filed the pages incorrectly, left Ms. Victors Social Security Number, and filed this complaint via CCP 170.3 not 170.1, Judge Orozco answered the request for recusal herself and "striking" it from the record; Ms. Victor filed a motion on August 26, 2021 to have Judge Orozco and her Deputy Clerks fix the filing and remove her private information as people were using her social security number to apply for apartments, cars, etc. The Deputy clerks re-uploaded the new Motion, however, intentionally, as retaliation kept Ms. Victor's original filing with her SSN exposed to cause her intentional and direct harm, loss, and injury; Ms. Victor submitted to the LASC on August 26, 2021 that Judge Orozco state the record of whether she was a referee, arbitrator, or private judge hired by the Defendants for this case, Judge Orozco did not respond or acknowledge this Motion by the Plaintiff; Ms. Victor filed a request to remove Walter Mosley as the attorney of record as she told the court he was terminated for unethical

conduct and she was representing herself, this too was ignored by Judge Orozco and to this day Mr. Mosley has never been removed from the record; Ms. Victor submitted a fee waiver to the court of August 26, 2021 which was granted by Judge Orozco and two days later Wells Fargo wiped all of the money from Ms. Victor's bank account clean, this was NOT an accident; on September 1, 2021 Judge Orozco ordered Ms. Riccomini to "do what she needed to do" to get Ms. Victor's case into arbitration and so the case was unlawfully and illegally thrown into JAMS; the rest of the LASC court docket is evidentiary support of the civil conspiracy between the Defendants, Judge Orozco, and her Deputy Clerks, whom were acting in their full capacity, under color of law.

307. After Judge Yolanda Orozco's wildly incorrect orders, Ms. Victor was then forced to represent herself in what has become a completely bias, prejudice, and unethical legal litigation where Ms. Victor was technically suing no real person, corporation, or entity. The entire year and half Ms. Victor was forced to represent herself in a bogus and fraudulent litigation resulted in extreme suffering for the Plaintiff.

308. Beginning in June of 2021, escalating in September of 2021, and ongoing, Ms. Victor's life has been at risk while

attempting to access her right to due process against the Defendants, each of them. From her technology devices being hacked, an attempt on her life, and corrupt judges and federal agencies conspiring together to ensure Ms. Victor is silenced and unable to receive a fair and speedy trial, all of which has been addressed in the Plaintiffs separate action that was filed in the United States District Court for the District of Massachusetts.

309. Mr. Marciano, Maurice, and Mr. Navarro, their multiple attorneys, and their connections to other law firms, and the money they have, and use, to pay said attorney's and law firms is how they have reeked havoc on the Plaintiff's life and so many other Plaintiff's lives and continue to not be held accountable nor punished to the full extent of the law. Wally's, Mr. Navarro, Mr. Marciano, and Maurice hired and utilized Thompson Coburn, TDF, and Mosley & Associates to ensure that Ms. Victor's case was handled incorrectly so that they could avoid legal accountability, financial accountability, and possible jail time for their repeated pattern of criminal behavior. What is meant by "repeated pattern of behavior" is that these men are named in multiple complaints within the LASC, for similar causes of action, none of which has been marked as related. These men

also have related cases in District Courts spread out through the United States, none of which have been marked as related nor coordinated. With each separate case these frauds use different law firms and lawyers and pay these lawyers and law firms to ensure their cases never make it to Federal Court, are not investigated by any Federal agency, and never go to trial, which saves them money, avoids investigations, and ensures that they have no moral and legal accountability for their disgusting unlawful conduct.

310. Their disgraceful behavior continued with Judge Orozco, the Deputy Clerk's in Department 31 of the Stanley Mosk Courthouse, and the Deputy Clerks in the Civil Clerks office, Room 102 of the Stanley Mosk Courthouse, and has since continued through the U.S. District Court, Central District of California, the California Labor Commissioners Office, the State Bar of California, The U.S. District Attorney's office in Los Angeles County, the Los Angeles Attorney General's Office, and all other third party affiliations, in fact Ms. Victor named two hundred and sixteen Defendants on the complaint she filed in the United States District Court for the District of Massachusetts.

311. Ms. Victor's fraudulent case was thrown into arbitration, unlawfully with JAMS, INC. ("JAMs") but only after

Thompson Coburn and Mosley & Associates failed to throw the Plaintiff's case unlawfully into arbitration with the American Arbitration Association ("AAA"). The JAMs reference number to the discussed arbitration is **1220071214**. In fact, Ms. Riccomini attempted to send Ms. Victor an Offer to Compromise on December 24, 2021, under penalty of perjury, they put AAA and an entirely different case number and then ignored answered all of Ms. Victor's questions asking, demanding, for an explanation why Ms. Riccomini committed perjury once again. Was Ms. Victor's case always open with AAA and they just worked with JAMs to cover up their fraud and corruption? Why did Ms. Riccomini send an offer to compromise on behalf of AAA and with an entirely different case number?

312. Thompson Coburn and Mosley & Associates worked together with Judge Orozco to put Ms. Victor's case illegally into arbitration with AAA. However, their attempts failed because Ms. Victor caught on to their colluding and unethical conduct and stopped AAA, Thompson Coburn, and Mosley & Associates from putting her case with AAA.

313. Ms. Victor requested to exercise her right to amend her complaint, as the complaint filed by Mosley & Associates was entirely incorrect, the Defendants were not properly named nor

203

was anyone ever served, but Judge Orozco refused to allow Ms. Victor the opportunity to exercise her legal right to amend her complaint. Instead Judge Orozco ordered Thompson Coburn "*to do what they needed to do to get this arbitration done*." Ms. Victor frantically attempted to send multiple emails to JAMS and the Defense Counsel to stop the arbitration, when those emails were ignored, Ms. Victor then attempted to reach out to multiple federal agencies for help, which resulted in Ms. Victor's technology devices being hacked. Weeks later, an attempt on Ms. Victor's life was made, and unfortunately, for the Defendants, each of them, *Ms. Victor survived*. All of these events are being presented in Ms. Victor's separate action filed in Massachusetts.

314. After Ms. Victor survived the attack on her life she had, and has, worked tirelessly trying to get help from all California Courts and has been denied such help. Keep in mind, Ms. Victor is in pro se, not by choice, but as a result of a litigation full of discrimination, bias, and outright public corruption. Ms. Victor has been a victim of this criminal organization that has multiple leaders and followers that extends throughout the entire Los Angeles County, an organization that will stop at nothing to silence Ms. Victor.

315. Judge Miller was chosen by Thompson Coburn and the Defendants as the "*neutral*" arbitrator for JAMs. Ms. Victor was not involved in the decision of this arbitrator as such decision was made, conveniently, when her technology devices were hacked and Ms. Victor had no computer, no phone, and no access to her email. Judge Miller had ignored all of Ms. Victor's motions including requests for protection orders against all Defendants, each of them, and a motion to stay proceedings to give her time to amend her Complaint, which has been incorrect since Mosley & Associates filed it on September 9, 2020. Despite being denied more rights, that should be guaranteed to Ms. Victor, she amended her complaint and sent such amended Complaint to Judge Miller and Thompson Coburn. Ms. Riccomini actually wrote an "*opposition*" to Ms. Victor being allowed to amend her complaint, JAMs and Judge Linda Miller actually allowed this. Ms. Victor's amended complaint included over two hundred pages of factual allegations and over one hundred pages of legal claims, resulting in over fifty causes of action, including civil rights violations and questions of Constitutional law.

316. Judge Miller should have read and acknowledged the drastic changes in Ms. Victor's legal claims, and should have allowed Ms. Victor's amended complaint, which is guaranteed by

California State law, and then Judge Miller should have removed Ms. Victor's case to the Court of proper jurisdiction. However, Judge Miller, denied Ms. Victor the opportunity to amend her complaint and Judge Miller refused to remove the case to a Court of proper jurisdiction. This is after Thompson Coburn filed a doomsday motion for terminating sanctions against Ms. Victor. Thompson Coburn had asked Judge Miller to dismiss Ms. Victor's pending case with prejudice and demanded a judgement in favor of the Defendants in her pending case. Thompson Coburn even went as far as to ask that Ms. Victor be sanctioned from giving testimony in HER OWN TRIAL. It is the most outrageous and ridiculous thing to witness, a victim being subjected to the powers and unlawful conduct of a criminal organization that can bend the rules as they deem fit.

317. The Defendants, each of them, have mastered victimizing themselves to minimize the pain and suffering of the actual victim, Ms. Victor. Thompson Coburn had intentionally and with pleasure caused Ms. Victor endless pain and suffering and Judge Orozco, Judge Miller, the Court, and JAMs had allowed this pain and suffering to protect themselves, their assets, and their reputation, alongside the other Defendants, each of them.

318. Once Ms. Victor realized that Judge Miller was not going to allow her to amend her complaint, grant her protection orders, or move her case to the proper court of jurisdiction, Ms. Victor attempted to file a Notice of Removal to the U.S. District Court, Central District of California, Los Angeles County. This case was filed by the Civil Clerk of the U.S. District Court, Central District of California, as a "*Real Property: Other*" case which is entirely incorrect and insulting to what Ms. Victor has been through as a United States American Citizen. This case is a civil and criminal case and has NOTHING to do with "*real property: other*". Ms. Victor believes that such classification was done intentionally and maliciously by the Civil Clerks in the U.S. District Court, Central District of California, Los Angeles County, all members of this criminal organization, doing what they need to do to protect themselves and deny Ms. Victor her guaranteed rights.

319. The District Court Case No. was **2:2022cv03312**, and this case was assigned to Judge Dale S. Fischer ("Judge Fischer") and Magistrate Judge Kim, both are named Defendants on Ms. Victors separate case filed in the United States District Court for the District of Massachusetts. Ms. Victor filed a motion to disqualify both federal judges on several reasons,

this motion was not added to the Federal Court docket, nor did Ms. Victor ever receive an acknowledgement or response. In fact, when Ms. Victor had called the Civil Clerk's desk of the U.S. District Court, Central District of California, they stated that a team "*behind the scenes*" of Judge Fischer received her Motion to Disqualify and once her team finds a Judge to rule on her motion then Ms. Victor would get a response. So a team "*behind the scenes*" of the Judge Ms. Victor is trying to disqualify is finding a new Judge to make a decision on her Motion to Disqualify? That is bias and prejudicial in and of itself. Needless to say, Ms. Victor's Motion to Disqualify these Judges was never posted to the Court docket and the Plaintiff never received any acknowledgement or response to her Motion to Disqualify.

320. Further, this same Civil Clerk told Ms. Victor that her case was opened, ordered to be remanded in the LASC, and then closed on May 19, 2022, offering no opportunity for Ms. Victor to oppose or respond. This same Civil Clerk could not provide a single reason or explanation as to why her case was classified as a "*real property: other*". Judge Fischer and Judge Orozco were both in the Federal Bar Association with one another. Judge Fischer and Judge Kim did not uphold the laws of

the United States of America instead they did what was beneficial to them and for the Defendants, each of them.  Their actions as Federal judges were, and are, despicable and against the very oath they took while being sworn into Judicial office.

321. For over a year, since Ms. Victor began self-representing herself, the Defendants, each of them, have continued to interfere with Ms. Victors right to due process, robbed her of her civil rights, in addition to their continued harassment, discrimination, and retaliation against her.

322. Ms. Victor then attempted to file a new and second Notice of Removal to the U.S. District Court, Central District of California which was processed and assigned to Judge Birotte Jr. and Magistrate Judge Audero, both are named Defendants in Ms. Victors case filed in the United States District Court for the District of Massachusetts. The case number was *2:22-cv-03995-AB-MAA*.

323. On June 21, 2022, Ms. Victor filed an Emergency Motion for an injunction, restraining orders, and immediate relief to Judge Birotte Jr. at the Central District Court in California. Ms. Victor emailed this to the emergency email at 5AM EST and also filed the Motion with the online system EDSS. That afternoon Ms. Victor called asking for an update because

Emergency Motion's are answered the same day they are submitted to the Court. After a brief hold, Ms. Victor was told her brief was given to the Judge and would be answered that same day. However, Judge Birotte Jr. did not respond or acknowledge Ms. Victor's Emergency Motion. Ms. Victor called the Clerks desk over thirteen times in one day before someone answered, as if they were intentionally avoiding her call. Ms. Victor emailed the Emergency email for the Central District Court looking for an answer as to why she had not obtained a response, in addition to sending multiple emails to the chambers of Judge Birotte Jr. None of Ms. Victor's calls or emails were acknowledged or responded to by the Central District Court. They maliciously, intentionally, with oppression, and extreme hate, collectively had made it an objective to treat Ms. Victor as less than; less than a human being and less than an American Citizen who has equal opportunities and rights. A week would pass before any motion would be done on the Federal court docket and it would not be any acknowledgement of Ms. Victor's Emergency Motion, in fact, her Motion was never added to the Court docket, as if it was never submitted to the Court. Done by the Defendants, each of them, to protect themselves and the interests of all involved in this criminal organization.

324. On June 28, 2022 Judge Fischer, the Judge who took Ms. Victor's Motion to Disqualify and tossed it in the trash, filed an order remanding Ms. Victor's action to the LASC. Judge Birotte Jr. never made an appearance, never filed an order, he just handed Ms. Victor's case over to Judge Fischer and told her to handle it. Judge Fischer stated that a plaintiff is not allowed to remove a state court action and if Ms. Victor attempted to remove it again within their Federal District Court then Ms. Victor would be subjected to sanctions. I have honestly never seen such blatant public corruption in my life and everyone involved in this criminal organization does such criminal activity with ease because they believe they are protected by their robes, connections, and money. It is a disgrace to the entire Judicial system and it is sickening. Ms. Victor's case was then remanded to the LASC then closed again by Judge Fischer, the same Judge who refused to acknowledge or respond to Ms. Victor's request for disqualification, as if such was not submitted, just as they did with Ms. Victor's Emergency Motion. All of these Orders and Motions made by the Defendants were only made to protect themselves and their criminal organization, not for the furtherance of justice, especially not Ms. Victor's justice.

211

325.    On June 15, 2022, Ms. Victor filed a Notice of Related Cases in the LASC to Judge Orozco as well as Department 1 of the LASC, which was also served to Thompson Coburn, which had every case that Ms. Victor discovered on her own that should have been marked as related or coordinated to hers but was not. There is potentially many more cases to be discovered that should be related and are not. These cases all had discrepancies in how Defendants were named. These cases all had similar causes of action. These cases all had similar Defendants. Yet none of them were marked as related. This was an intentional and calculated move made by the Defendants, each of them, to profit within their criminal organization which involves server processors, arbitrators, arbitration companies, lawyers, law firms, corporations, and Judges. Justice was not given to a single victim or Plaintiff in any of these cases. On July 7, 2022, Judge Orozco filed a minute order within the LASC stating that the Court did not find the cases related. The actions of the judicial system in the Los Angeles Superior Court are a horror.

326. On July 28, 2022, Ms. Victor, intentionally, emailed Thompson Coburn and JAMs an email stating that even if Judge Miller dismisses her case tomorrow by granting Ms. Riccomini's

disgusting motion for terminating sanctions, it wouldn't matter, as Ms. Victor was technically not suing any real person, corporation, or entity, and she would just refile and reopen her case again (which is what Ms. Victor is doing now with this Complaint). Ms. Victor predicted that, prior to this email being sent, that Judge Miller would have made a judgement that benefited the Defendants, just as all prior decisions by Judge Miller had been made to benefit the Defendants and/or herself. Ms. Victor knew that her email would cause Thompson Coburn and Judge Miller to engage in ex parte communications to plan their next unlawful moves accordingly. As expected on July 29, 2022, Judge Miller agreed with Thompson Coburn's motion but denied Thompson Coburn's Motion on the grounds of it being "harsh". Judge Miller also denied Ms. Victor's Motion for monetary and non-monetary sanctions against the Defendants and Thompson Coburn for their harassing and frivolous motion, begging the question, how is it possible to deny both?

327. During this hearing Judge Miller told Ms. Victor that she would be allowed to amend the Defendants but refused to allow Ms. Victor to add Defendants Delta, Christies, Christie's Christie's Wine, 3900 WA, Wally's Auction House, LLC and Mel-Jen ("Wally's"), nor any other partner or affiliate of Wally's on the

grounds that they are not "*liable*" for the actions of their partners or affiliates. This is false as a Plaintiff can hold partners, affiliates, and subsidiaries personally liable for the actions of her employer Wally's. Judge Miller kept stating, "*these businesses will not be coming into __my__ arbitration*". Judge Miller's decision was bias not correct. Further, Judge Miller refused to allow Ms. Victor to add Defendants Mr. Bejelajac, Ms. Burns, Ms. Hunter, Ms. Jimenez, Mr. Poulin, Ms. Jones, and Ms. Fromer, stating they were witnesses and cannot be held personally liable. Ms. Victor argued that these people are NOT witnesses and she does hold them personally liable and Judge Miller refused to allow them to be added to her complaint, again a decision made out of bias, not an accurate or lawful one, nor one that has any legal standing. Judge Miller then stated that she would allow all forty-four of Ms. Victor's legal claims to be arbitrated by her because all of the legal claims have to do with her employment with Wally's. These legal claims included sexual harassment, assault, battery, gender violence, and civil rights violations. During this hearing attorney Ms. Riccomini and Judge Miller shared multiple laughs amongst each other at Ms. Victor's expense. At one point Ms. Victor had asked both Judge Miller and Ms. Riccomini what was so funny because she too

214

wanted to laugh. Judge Miller stated nothing was funny nor was there a joke, yet they were engaging in laughter together. Judge Miller, as usual, lacked impartiality.

328. On Monday August 1, 2022, Ms. Victor sent JAMs and Thompson Coburn an email. Ms. Victor followed up on her prior email in regards to JAMs rules and how her case was open in arbitration with JAMs with no commencement letter, no arbitration agreement, nor Ms. Victor's acknowledgement or consent. This was never answered because the arbitration was fraudulent. Ms. Victor also presented her argument on how all the Defendants she held personally liable for ALL of her damages needed to be added, this too was ignored and denied. Further, Ms. Victor let Thompson Coburn and JAMs know that Judge Miller had allowed all forty-four of her legal claims to be arbitrated in her forum which included sexual harassment and sexual assault. With that being said, Under the Federal Laws of the United States, Chapter 9, section 402, which states "*at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect*

215

*to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.*" The legal claims approved for amendment by Judge Miller including sexual harassment and sexual assault, amongst other things, cannot be arbitrated pursuant to the Federal laws of this country, giving JAMs and Judge Miller no jurisdiction over Ms. Victor's legal claims nor can such legal claim be disputed in any arbitration, anywhere in the United States. However, Thompson Coburn began to argue that Judge Miller did not agree to arbitrate Ms. Victor's claims. Judge Miller, JAMs, and Thompson Coburn were actively working together to pretend that Judge Miller did not SAY Ms. Victor could amend her legal claims nor that she would arbitrate them because they all know that Judge Miller cannot arbitrate Ms. Victor's claims nor does she have jurisdiction to make a single decision over Ms. Victor's case, now, or ever. Ms. Victor moved to have Judge Miller disqualified and her case removed from arbitration effective immediately, which was denied by JAMs, what a shocker…

329. On August 2, 2022, Ms. Victor filed a Notice of Intent to Move for a New Trial to the LASC which was also served on Thompson Coburn and JAMs. Thompson Coburn filed their opposition to this Motion in the LASC. However, Judge Orozco filed a minute

216

order denying the Notice of Intent to Move for a New Trial on the grounds that the Defendants need to be served and had not been served. Well, Thompson Coburn, who represents the "fake" defendants that were named on Ms. Victor's complaint, were served so the only Defendants that had not been served yet, is everyone… cause the case was a fraud and never had any legal standing. Judge Orozco would only know this if she engaged in ex parte communications with Thompson Coburn. Further, in Judge Orozco's minute order, she denied a new trial on the grounds that per a hearing on July 14, 2022 it was agreed that the case was still being arbitrated with JAMs. On July 14, 2022, Thompson Coburn submitted to the court that Ms. Victor made a telephonic appearance in front of Judge Orozco with Thompson Coburn where they pushed the hearing back until March of 2023. Ms. Victor did not make an appearance at this hearing nor did Ms. Victor have any acknowledgement that a hearing was being held. So not only did Thompson Coburn commit blatant perjury but this further proves what Ms. Victor has been arguing all along, that Judge Orozco was engaging in clear ex parte communications with Thompson Coburn and the Defendants, which is prohibited by the Code of Judicial Ethics. When you make telephonic appearances in the LASC you have to file online and receive a confirmation

VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF

number and pay fifteen dollars if you do not have a fee waiver, which Ms. Victor did not do because she was not present at this hearing. Judge Orozco also would have started the hearing by confirming the presence of all parties and in doing so would have known Ms. Victor was not present because she was indeed not present. Again Judge Orozco, Thompson Coburn, JAMs, and all other Defendants worked together to protect themselves and their personal interests by denying Ms. Victor her guaranteed right to due process and while committing unlawful crimes such as perjury.

330. After every hearing with JAMs a memorandum was sent out that recapped what was discussed on each phone call. Weeks had passed by and Ms. Victor contacted JAMs asking why the memorandum had not been released. The hesitation came after Ms. Victor's email on August 1, 2022, which let Thompson Coburn and JAMs know that Ms. Victor was well aware that Judge Miller could not arbitrate the claims she agreed to arbitrate and asked for her case to be removed immediately from arbitration. Alison Sprague ("Ms. Sprague"), the case coordinator for JAMs, stated that the Memorandum could not be released until Thompson Coburn paid a bill of over six thousand dollars to JAMs and Judge Miller and JAMs could not release such memorandum until they

VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF

received their payment… how convenient. Ms. Riccomini of Thompson Coburn told Ms. Victor that such memorandum was not necessary because Judge Miller did not agree to arbitrate Ms. Victor's amended claims and if she did not engage in deposition by September 3, 2022 they would file a second Motion for Terminating Sanctions on the grounds that Ms. Victor was intentionally not engaging in discovery. Ms. Victor was suing no real entity, corporation, or person. There had been no legal amendments to her complaint. So Ms. Riccomini and JAMs were threatening and harassing Ms. Victor to engage in a discovery with non-legitimate corporations, entities, businesses, and/or individuals. Ms. Victor would not do such, in fact, Ms. Victor made the decision that moving forward she would not respond to Thompson Coburn or JAMs because the actions of the Defendants are borderline domestic terrorism. Ms. Victor would not engage or be threatened by their terrorism. Ms. Sprague is a named Defendants in Ms. Victors Complaint filed in the United States District Court for the District of Massachusetts.

331. On August 11, 2022, Ms. Victor filed a Motion to Leave to Amend Her First Complaint in the LASC, which was concurrently filed with her First Amended Verified Complaint. That Motion explained multiple acts of fraud and perjury committed by Mosley

& Associates, TDF, and Thompson Coburn including their conspiracy with server processor One Legal, LLC ("One Legal") who had NEVER served any one in Ms. Victor's case, therefore the case had legitimately not even begun. This Motion to Leave also discusses the blatant and horrific judicial misconduct of Judge Orozco and Judge Miller and their refusal to recuse themselves. Why do you think they both wouldn't recuse themselves? It is because they both had, and have, personal and/or financial interests in the outcome of Ms. Victor's case. Whether that be financially, politically, or socially, Judge Orozco and Judge Miller were, and are, invested in Ms. Victor's case for themselves NOT for justice. The civil clerks of the Stanley Mosk Courthouse added Ms. Victor's Motion to Leave to the court docket but had refused to add Ms. Victor's First Amended Verified Complaint which was filed concurrently with her Motion to Leave. Such refusal to post to the court docket was intentional. Ms. Victor could not get a date earlier then November 10, 2022 for a hearing on her Motion to Leave, which was cancelled by the Deputy clerks of Department 31 prior to the hearing date for non-legitimate reasons, simply just public corruption on display for the public.

332. The Plaintiff stopped engaging with the Thompson Coburn and JAMs and filed a separate action in the United States District Court for the District of Massachusetts against two hundred and sixteen (216) Defendants for a multitude of federal crimes including her attempted murder which all was a result for her demanding justice IN THIS CASE. Ms. Victor waited on Judge Miller to dismiss her case in favor of the Defendants which she was always going to do so that she could file a real case against the actual Defendants for true allegations made against them.

333. On August 30, 2022, the day Ms. Victor filed her complaint in the United States District Court for the District of Massachusetts, two cars with out of state license plates blocked Ms. Victor in the parking garage at her sister's apartment complex in Lawrence, Massachusetts. One of the drivers threatened Ms. Victor telling her "why doesn't she just die", "die already". She went into the Lawrence Police Department to file a report of the threat and stated that she filed a case for federal corruption and believed the threat was no accident the day of her filing. Officers of the Lawrence Police Department attempted to take Ms. Victor into a back room privately, despite doing that with NO other people filing a complaint that day,

221

where they asked her repeatedly if she was on medication, which Ms. Victor is not. The officers then attempted to get her locked up on a 72 hour hold just as the Defendants, Los Angeles Police Department, the Los Angeles Fire Department, and all other two hundred and sixteen Defendants in her Massachusetts complaint attempted to do while Ms. Victor was living on the property of Zen Hollywood. This was an attempt to either murder Ms. Victor in an unlawful custody or to deem her non-credible in a court of law, both times their attempts had failed and NOW here we ARE.

334. Ms. Victor received an email from Ms. Sprague on January 12, 2023, with Judge Miller's Arbitration Reward which stated that Ms. Riccomini's terminating sanctions against the Plaintiff would be so ordered, including banning her from giving REAL testimony, and ordering Ms. Victor to pay the Defendants an amount of money, the actual audacity.

## STATUE OF LIMITATIONS

335. CA Government Code section 19635 allows all of Ms. Victor's claims in this action to be valid, "*adverse action based on fraud, embezzlement, or the falsification of records shall be valid, if notice of the adverse action is served within three years after the discovery of the fraud, embezzlement, or falsification.*" Only after Ms. Victor was forced to represent

herself in the Summer of 2021 did she discover that her entire litigation against the Defendants was based on fraud, including falsified records and documents, which was done to help the Defendants, each of them, not lose their money or their "*reputation*", after a jury trial where Ms. Victor would have most definitely won on the merits. Had Ms. Victor's prior legal counsel, Mosley & Associates filed her complaint in July of 2019 like they were suppose to, but intentionally did not, due to fraud, then there would be no argument on the statute of limitations by the Defense. Ms. Victor realized the fraud, embezzlement, and falsifications and is filing a legitimate complaint and allegations in the valid three year window of time.

### CONTINUING VIOLATIONS DOCTRINE

336. Any, and all conduct by the Defendants, each of them, constitutes, or is part of acts of illegal harassment, discrimination, and/or retaliation, and which predates any applicable statutory period, occurred in such a way as to be subject to the continuing violation doctrine. All Defendants are liable for the entire course of conduct of each Defendant, including those acts that predate any applicable statutory period (if there were any). The conduct occurred within a year

of the date that Ms. Victor's prior legal counsel filed a complaint with the DFEH and was similar or related to the conduct that occurred earlier; the conduct was reasonably frequent; and the conduct had not yet become permanent.

## **IRREPARABLE INJURY**

It was presented too, both Judge Miller and Judge Orozco, evidence of perjury and forgery committed by Thompson Coburn, Mosley & Associates, The Dominguez Firm, and all attorney's that have played an active participation in the Plaintiff's previous litigation. Evidence was also provided to both Judge Orozco and Judge Miller of false records being submitted under oath to the court as true and genuine. Both Judge Miller and Judge Orozco both ignored and allowed such attorney misconduct by the attorney's involved in this case in addition to not reporting or stopping criminal activity and malicious unlawful conduct by the attorney's involved in this case and the Defendants, each of them.

An amended complaint, which was hundreds of pages long, was submitted to both Judge Orozco and Judge Miller that was valid and had all true factual allegations of the Plaintiff but was denied by both Judges to be amended in a court of proper jurisdiction because Judge Orozco and Judge Miller are one of

the many state Judges on the payroll of the Defendants, each of them, committing acts of profiteering and racketeering for their own financial, social, and political benefits. Judge Miller and Judge Orozco have worked against the laws of the State of California, as well as the Constitution of the United States, to aid and abet the Defendants, each of them, Mosley & Associates, Thompson Coburn, The Dominguez Firm, Dr. Sally Greig, the California Labor Commissioner's officer including the agents assigned to the Plaintiff's case and related cases, the Department of Fair Housing and Employment and the officers and agents assigned to the Plaintiff's case and similar related cases, and many many more, as the web of corruption is on going and continuing through out the entire state of California. It is despicable and a crime to witness, let alone be a victim too.

Judge Miller and Judge Orozco under their full capacity, under color of law, had, and continue to, aid and abet, the Defendants, each of them, to deny Ms. Victor her constitutional rights and civil rights with oppression, malice, discrimination, and extreme hate, which includes the insane arbitration reward order that was issued by Judge Miller issuing sanctions against the Plaintiff and an award in favor of the Defendants, with a dismissal of the Plaintiff's fraudulent case WITH PREJUDICE.

Judge Miller and Judge Orozco don't hide their corruption and they have no shame nor remorse for such corruption. Judge Miller and Judge Orozco's actions are less than admirable and are a disgrace to every court of law in the United States of America. Judge Orozco should be benched immediately and indefinitely and Judge Miller should remain retired never to be given an opportunity to harm another Plaintiff again in her life, but that is neither here nor there.

In the Plaintiff's amended complaint, which was presented to both Judge Miller and Judge Orozco, the Plaintiff described in full detail each count of sexual assault, harassment, discrimination that was made against the Defendants during her employment, in addition to the non payment of all wages owed Ms. Victor, including state fines and penalties, which was ignored by both Judges intentionally, with malice, with oppression, and with extreme hate. Sexual assault cannot be arbitrated which was presented to Judge Miller and ignored by Judge Miller again with malice, oppression, and extreme hate. This is not the first rape and/or sexual assault case that Paul Marciano, nor Christian Navarro, nor Wally's, has thrown in JAMs or any other arbitration company to quiet their on going criminal activity,

and it wont be the last. And JAMs, with pleasure, aided and abetted these crimes.

Ms. Victor demanded that her previous case be moved to a proper court of jurisdiction as her arbitration agreement was forged by Mosley & Associates in collusion with Thompson Coburn, evidence was presented, and again ignored by both Judges intentionally, with malice, oppression, and with extreme hate.

Ms. Victor let it be known that she would not be forced to engage in any deposition or arbitration that was forced upon her by the acts of criminals and their criminal activities. Instead of reporting all illegal and unlawful behavior of every attorney involved in this case Judge Orozco and Judge Miller aided and abetted the actual act of terrorism on the Plaintiff's life and well being by ignoring such criminal activity, allowing such criminal activity, and then having the audacity to expect an American Citizen, who knows her rights, to continue engaging in their unlawful and criminal activity… it was **NEVER** going to happen. Ms. Victor did not need to attend the deposition as the deposition was set up and forced on the grounds of perjury, forgery, and by crooks, this evidence was also presented and ignored by both Judges intentionally, with malice, with oppression, and with extreme hate.

The Plaintiff was sexual assaulted, the Plaintiff was sexually harassed, the Plaintiff was discriminated against, the Defendants, each of them, did subject, and continue to subject, Ms. Victor to multiple hate crimes, the Plaintiff was never paid her last wages, amongst other things and it is appalling that Judge Miller and Judge Orozco have attempted to defraud Ms. Victor of the justice and reward she has always deserved, in civil conspiracy with Thompson Coburn, Mosley & Associates, The Dominguez Firm, and the Defendants, each of them.

Judge Miller, Thompson Coburn, Judge Orozco, Mosley & Associates, The Dominguez Firm, with the Defendants, each of them, have, and continue to add irreparable loss and injury to Ms. Victor's life including her mental and physical well being as well as her finances.

Ms. Victor also asked the Defendants to be amended as was technically suing no one, and this too had been denied by Judge Miller and Judge Orozco. Instead of attempting an appeal with more Judges that are part of this corruption Ms. Victor has decided to exercise her right to file a brand new legitimate case against the real and true Defendants with her real and true factual allegations.

Ms. Victor expects that the fraudulent behavior, in regards to her previous case will continue which will only help the Plaintiff's case which she has opened against JAMS, Judge Miller, Judge Orozco, Thompson Coburn, and over two hundred and sixteen defendants, including DOES 1-100, inclusive, and INDIVIDUAL DOES 1-100, inclusive, for their civil conspiracy, her attempted murder, the hacking of her devices, amongst other heinous crimes committed by Judicial officers, federal agencies, and their accomplices, with extreme hate, malice, and oppression. This case was opened in Boston, Massachusetts and Ms. Victor is expecting an entirely different reward and justice for this case, in addition, to now expecting an immediate award for this litigation that has been fraudulent and corruptly on going since September of 2020. Each individual who has participated in causing the Plaintiff harm, pain, loss, and suffering in this case will be held accountable now and again in her separate legal action. So any further corruption will simply help the Plaintiff in her case against each and every single one of the people named herein.

The Defendants, each of them, have worked together, and will continue to work together to help their personal interests financially, socially, or politically. They will go to any

229

length, at any time, and use any available resources to ensure that Ms. Victor does not get equal access to due process and that Ms. Victor's case does not get the trial or justice it deserves. The Defendants, each of them, have forced Ms. Victor, for over the course of a year, to be in a bias and prejudicial battle with the same people that took oaths to protect this country and uphold the laws of the State of California and the laws of the United States. The Defendants, each of them, have taken extreme and unethical measures to sabotage Ms. Victor's case and her fair and equal chance at due process of law. Ms. Victor has sustained, is sustaining, and will continue to sustain irreparable harm and injuries from the Defendants as a result of the events described herein. The compensation for such injuries, as a result of the events described herein, cannot be measured. To constitute irreparable harm, an injury must be certain and actual and of such imminence that there is a clear and present need for equitable relief to prevent the harm. Without injunctive relief, the risk is great and imminent that most or all of Ms. Victor's legal claims against the Defendants, each of them, will be dismissed with prejudice, thereby depriving Ms. Victor of a remedy and then Ms. Victor will suffer irreparable injury.  The actions of the Defendants mentioned

herein, and their continuous actions, have become a direct and immediate threat against Ms. Victor obtaining a remedy in her case.

Granting of this Emergency Motion will not harm third parties and the Public interest favors the requested Emergency Motion. Ms. Victor believes that her Emergency Motion must be treated as mandatory and such decision on granting such Motion be done on an expedited basis, delay will cause Ms. Victor further irreparable injury.

## CONCLUSION & IMMEDIATE RELIEF

WHEREFORE PLAINTIFF DANIELLE VICTOR respectfully prays for immediate judgement and relief against the DEFENDANTS, each of them, and DOES 1-100, inclusive, and each of them, and individual DOES 1-100, inclusive, as follows:

1. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code sections 201-203;

2. That the court award Ms. Victor for all of the Plaintiff's regular wages which were unpaid, from the period of February 15, 2019 to June 14, 2019, at a rate of $14.25 per hour. Ms. Victor seeks an award for two hundred and thirty two (232) regular hours worked. Plaintiff claims overtime wages at

the rate of $21.74 per hour for fifty-four (54) hours of unpaid overtime. Ms. Victor seeks award of $4,533.96 in relief for all of her unpaid regular and overtime wages which the Defendants, each of them, have intentionally and maliciously refused to pay Ms. Victor;

3. That the court award Ms. Victor meal period premium wages based on a regular rate of pay of $14.25 per hour, for forty-five (45) workdays, where a meal period was not provided to Ms. Victor as required by law. The Plaintiff seeks an award in the amount of $641.25;

4. That the court award Ms. Victor rest period premium wages based on a regular rate of $14.25 per hour, for ninety (90) workdays, where a rest period was not provided as required by law. The Plaintiff seeks an award in the amount of $1,282.50;

5. That the court award Ms. Victor liquidated damages, for Labor Code violations, as follows: Minimum wages earned at $12.00 per hour, for a total of two hundred and eighty-six (286) hours where at least minimum wage was not paid as required by law. The Plaintiff seeks an award in the amount of $3,432.00;

6. That the court award Ms. Victor waiting time penalties. Ms. Victor was discharged from Wally's on June 14, 2019, on which date wages were due to Ms. Victor. Plaintiff claims

waiting time penalties for thirty days (30) worth of wages, based on rate of pay of $179.22 per day. Daily rate of pay is calculated as follows: eight (8) regular hours at $14.25 per hour, which is $114.00, three (3) overtime hours at a rate of $21.74 per hour, which is $65.22, totaling $179.22. The Plaintiff seeks an award in the amount of $5,376.60;

7. That the court award Ms. Victor compensation for all accrued sick days. Ms. Victor began accruing sick days beginning on February 15, 2019 until her suspension on June 14, 2019. Ms. Victor has accrued, at minimum, forty eight (48) hours (six days) of paid sick leave per month of her employment, totaling two hundred and forty (240) hours of paid sick leave during her five month employment with the Defendants. Pursuant to CA Labor Code, section 246, the Plaintiff was owed compensation for such accrued sick days at the time of her separation of employment from the Defendants. Plaintiff claims waiting time penalties for thirty days worth of wages, based on a rate of pay of $114.00 per day. Daily rate of pay is calculated as follows: eight regular hours at the pay rate of $14.25 per hour, totaling $114.00. The Plaintiff seeks an award in the amount of $6,840.00;

VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF

8. That the court award Ms. Victor compensation for all accrued vacation time. Ms. Victor began accruing vacation time beginning on February 15, 2019 until her suspension on June 14, 2019. Ms. Victor had accrued, at minimum, six days of vacation time for her employment. Ms. Victor was owed compensation for such accrued vacation days at the time of her separation of employment from Wally's. The Plaintiff claims wages earned at the rate of $14.25 per hour, for forty-eight (48) hours worked. Plaintiff was discharged on June 14, 2019, on which date these wages were due. In addition, the Plaintiff claims waiting time penalties for thirty days worth of wages, based on a rate of pay of $114.00 per day. Daily rate of pay is calculated as follows: eight regular hours at the rate of $14.25 per hour, totaling $114.00. The Plaintiff seeks an award in the amount of $4,104.00;

9. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code section 210, The Defendants are liable for one hundred dollars ($100) for their initial failure to pay the Plaintiff and two hundred dollars ($200) for each additional, willful, and intentional, failure to pay the Plaintiff. The Defendants failed to pay the Plaintiff, initially, upon her suspension on June 14, 2019 making them

VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF

liable for the one hundred dollar ($100) penalty. The Defendants then intentionally and willfully, failed to pay the Plaintiff on August 9, 2019 when her Labor Claim was initially filed, on May 20, 2020 when Deputy Ray and the Plaintiff's previous counsel closed the claim without the Plaintiff's knowledge, on September 9, 2020 when a complaint was filed in the Los Angeles Superior Court, and through multiple hearings, two unlawful arbitrations, plus meet and confers, the Defendants intentionally and willfully failed to pay the Plaintiff what she was owed, dragging the non-payment of such wages for three years, resulting in approximately 50 subsequent failures to pay Ms. Victor her owed compensation. In addition, Ms. Victor is owed twenty-five percent (25%) of the amount that was withheld from her, which is $26,210.31 The Plaintiff seeks an award in the amount of $16, 652.58;

10. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code section 226, and to penalize the Defendants with an infraction for such violation;

11. The Defendants are liable for fifty dollars ($50) for their initial failure to comply with CA Labor Code section 226, subdivision (a), and the Defendants are liable to pay one hundred dollars ($100) for each additional, willful, and

intentional, failure to comply with CA Labor Code subdivision (a), in an amount not to exceed four thousand dollars ($4,000). The Plaintiff seeks immediate judgement in the amount of $4,050.00;

12. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code section 204, an award penalties for each violation, in the amount of one hundred dollars ($100) and two hundred dollars ($200) for each subsequent violation;

13. That the court award Ms. Victor the maximum number of hours accruable pursuant to CA Labor Code section 247.5. The Defendants were obligated by law to maintain accurate employment records for a minimum of three years, however, they have never, nor do they still have accurate records. The Defendants do not have accurate time stamps for the Plaintiff's missing hours, missing meal/rest periods, vacation time, sick time, etc. Due to their failure to maintain accurate records, the Plaintiff is owed the maximum number of hours available pursuant to this section. The Plaintiff worked for five months with the Defendants, therefore the Plaintiff wants the maximum number of hours to be accrued pursuant to this section to be 150 hours

with her daily rate of pay, $14.25. The Plaintiff seeks an award in the amount of $17,100.00;

14. That the court award Ms. Victor a civil penalty of seven hundred and fifty dollars ($750). The Defendants willfully, intentionally, and maliciously violated CA Labor Code section 226, pursuant to subdivision (f) the Defendants are liable to pay the Plaintiff a penalty of seven hundred and fifty dollars ($750);

15. That the court award Ms. Victor penalties, pursuant to CA Labor Code section 226.3, of two hundred and fifty dollars ($250) for each violation of CA Labor Code section 226, subdivision (a), and one thousand dollars ($1,000) for each subsequent violation; and any and all other civil penalties available pursuant to CA Labor Code section 226.3;

16. That the court find and declare that the Defendants, each of them, guilty of a misdemeanor pursuant to CA Labor Code section 226.6, and may the court award Ms. Victor any civil penalties applicable by law in addition to, including any other penalty provided by law;

17. That the court award the penalty of seven hundred and fifty dollars ($750) as well as injunctive relief, and any

237

additional interest thereon, pursuant to CA Labor Code section 1198.5;

18. That the court prohibit the Defendants from introducing any evidence, books, documents, or records that can add further fraud on the court, pursuant to CA Labor Code section 1174.1;

19. That the court award the civil penalty of five hundred dollars ($500) to Ms. Victor, pursuant to CA Labor Code section 1174.5;

20. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to CA Labor Code 1175;

21. That the court award Ms. Victor compensation of one additional hour of pay for every meal or rest or recovery period that the Defendants did not provide to Ms. Victor, pursuant to CA Labor Code 226.7, subdivision (c);

22. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to CA Labor Code section 351 and 354; and award Ms. Victor a civil penalty of a minimum of one thousand dollars ($1,000); The Defendants failed to pay the Plaintiff owed gratuities. Pursuant to CA Labor Code Section 354, the Defendants are guilty of a

misdemeanor. The Plaintiff claims one thousand dollars ($1,000) as a civil penalty.

23. Pursuant to CA Labor Code section 356, every department of the State of California is bound, as part of the social public policy of the State of California, to prevent fraud upon the public in connection with the practice of tipping. The Defendants have attempted to use a private arbitration to fraud the public and Ms. Victor from gratuity she has earned and was denied. Ms. Victor moves the court to enforce such public policy and prevent the Defendants from further fraud on the court and upon the public;

24. That the court award Ms. Victor compensation for all said gratuity, plus interest thereon; The Defendants owed the Plaintiff a two thousand dollar tip which has still not being given to the Plaintiff. In addition to the civil penalty of one thousand dollars ($1,000), the Plaintiff claims the two thousand dollars ($2,000) gratuity she is owed, and waiting time penalties for their failure to pay such gratuity. The Plaintiff seeks an award in the amount of $6,420.00 and any additional interest thereon;

25. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to both CA Labor Code section 510 and CA Labor Code section 553;

26. That the court award Ms. Victor all interest, plus prejudgement interest, and further all fees and costs for enforcing a court order for such compensation, pursuant to CA Labor Code section 1194, subdivision (a) and CA Labor Code section 1194.3; Pursuant to CA Labor Code section 1194.3, the Plaintiff may recover costs of suit, to enforce the court judgement for all unpaid wages. The Plaintiff claims costs of suit for her one year of self representation at the rate of her former attorney Walter Mosley of eight hundred dollars ($800) per hour, for eight hours a day, five days a week, for one year and a half, as the Plaintiff has worked tirelessly and effortlessly to obtain her unpaid compensation from the Defendants, amongst other things. The Plaintiff seeks an award in the amount of three million five hundred and four thousand dollars ($3,504,000.00);

27. That the court order an injunction against the Defendants, each of them, to stop any further violations of any such laws, regulations, or orders by the Defendants, pursuant to CA Labor Code section 1194.5;

28. That the court award Ms. Victor all civil penalties available pursuant to CA Labor Code section 558, subdivisions (a) and (c); in addition to any other civil or criminal penalties provided by law; Pursuant to CA Labor Code section 558, any person who violates, or causes to be violated, any provisions of the CA Labor Code Chapter are held liable for civil penalties. The Plaintiff holds forty three (43) corporations, entities, and/or individuals liable for each and every violation. The Defendants are liable for fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. The Defendants are also liable for each subsequent violation, for one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. The Plaintiff seeks an award in the amount of forty five thousand one hundred and fifty dollars ($45,150.00) and any additional amount the court deems proper;

29. That the court award Ms. Victor all compensation owed, plus interest thereon, including prejudgement interest to the extent of the law;

30. That the court award Ms. Victor a civil penalty of ten thousand dollars ($10,000) for each separate violation, pursuant to CA Labor Code section 1102.5, subdivision (f); in an amount no less than four hundred and thirty thousand dollars ($430,000);

31. That the court enforce an injunction restraining the Defendants, each of them, from the use or operation thereof until their working conditions are no longer a serious menace to the life and safety of Ms. Victor and the lives and safety of the public;

32. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to CA Labor Code section 1199;

33. That the court award Ms. Victor three times the maximum amount of actual damages for the Defendants violations of the Unruh Civil Rights Act, CA Civil Code section 51;

34. That the court order injunctive relief for the Defendants, each of them, discrimination and violations of the Unruh Civil Rights Act; in addition to damages for past harm;

35. That the court award Ms. Victor a civil penalty of twenty-five thousand dollars ($25,000) at all times applicable,

pursuant to CA Civil Code section 52; in an amount no less than one hundred seventy-five thousand dollars ($175,000);

36. That the court grant Ms. Victor all statutory damages, including actual and exemplary damages pursuant to CA Civil Code section 52; in an amount no less than three million dollars ($3,000,000);

37. That the court award Ms. Victor all general, special, and punitive damages available under each cause of action, pursuant to CA Civil Code section 3294; in an amount no less than three million dollars ($3,000,000);

38. That the court award Ms. Victor three times the amount of any general and special damages; in addition to a civil penalty of fifty thousand dollars ($50,000) for each responsible person, pursuant to CA Civil Code section 1708.8, subdivision (e); in an amount no less than two million one hundred and fifty thousand dollars ($2,150,000);

39. That the court award Ms. Victor all damages applicable by law plus prejudgement interest, pursuant to CA Civil Code sections 3287 and 3288; and any other provisions of law providing for prejudgement interest;

40. That the court order the Defendants, each of them, enjoined, pursuant to the police power granted by CA Government

Code sections 12920 and 12920.5 for failing and refusing to comply with the mandates of FEHA;

41. That the court order the Defendants, each of them, enjoined, pursuant to CA Government Code, section 12965, subdivision (c), for failing and refusing to comply with the mandates of FEHA;

42. That the court award Ms. Victor a civil penalty of ten thousand dollars ($10,000) for each person who intentionally engaged in acts of reprisal, retaliation, threats, coercion, or similar acts against Ms. Victor for making protected disclosures, pursuant to CA Government Code section 8547.8, subdivision (b); in an amount no less than four hundred and thirty thousand dollars ($430,000);

43. That the court award Ms. Victor a civil penalty of ten thousand dollars ($10,000) for each person who intentionally engaged in acts of reprisal, retaliation, threats, coercion, or similar acts against Ms. Victor for making protected disclosures, pursuant to CA Government Code section 8547.13, subdivision (d); in an amount no less than four hundred and thirty thousand dollars ($430,000);

44. That the court find and declare that the Defendants, each of them, are guilty of a felony, for each separate

244

violation, pursuant to CA Penal Code section 115, subdivision (a);

45. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor pursuant to CA Penal Code section 133;

46. That the court find and declare that the Defendants, each of them, are guilty of perjury pursuant to CA Penal Code section 118;

47. That the court find and declare that the Defendants, each of them, are guilty of subornation of perjury pursuant to CA Penal Code section 127;

48. That the court find and declare that the Defendants, each of them, are guilty of a felony pursuant to CA Penal Code section 132;

49. That the court find and declare that the Defendants, each of them, are guilty of a felony pursuant to CA Penal Code section 134;

50. That the court find and declare that the Defendants, each of them, are guilty of a public offense pursuant to CA Penal Code section 136.1;

51. That the court find and declares that the Defendants, each of them, are guilty of a felony pursuant to CA Penal Code section 182;

52. That the court award Ms. Victor a civil penalty of twenty-five thousand dollars ($25,000) pursuant to CA Penal Code section 182;

53. That the court enforce an order protecting Ms. Victor from any further acts of violence, threats, stalking, or harassment by each Defendant, including DOES 1-100, inclusive, pursuant to CA Penal Code section 422.85;

54. That the court issue declaratory and injunctive relief, immediately, against the County of Los Angeles for the above violations of federal and state laws;

55. That the court issue injunctive relief, immediately, against the Defendants for the above violations of federal and state laws;

56. That the court award Ms. Victor all loss of earnings; in an amount no less than one million dollars ($1,000,000);

57. That the court award Ms. Victor all future loss of earnings; in an amount no less than one million dollars ($1,000,000);

58. That the court award Ms. Victor all economic and non-economic damages; in an amount no less than three million dollars ($3,000,000);

59. That the court award Ms. Victor all past and future medical and related expenses; in an amount no less than three million dollars ($3,000,000);

60. That the court award Ms. Victor all monetary damages; in an amount no less than three million dollars ($3,000,000);

61. That the court award Ms. Victor all punitive and exemplary damages, in a sum appropriate to pushes the Defendants, each of them, including DOES 1-100, inclusive, and set an example for others; in an amount no less than nine million dollars ($9,000,000);

62. That the court award Ms. Victor all special damages, in an amount no less than three million dollars ($3,000,000);

63. That the court award Ms. Victor all general damages, in an amount no less than three million dollars ($3,000,000);

64. That the court issue an order imposing all statutory and/or civil penalties provided by law, together with interest on these amounts; in an amount no less than three million dollars ($3,000,000);

65. That the court issue a declaratory judgement that the Defendants, each of them, have violated the CA Labor laws and public policy as alleged herein;

66. That the court issue a declaratory judgment that the Defendants, each of them, have violated CA Civil laws and public policy as alleged herein;

67. That the court issue a declaratory judgement that the Defendants, each of them, have violated CA Government laws and public policy as alleged herein;

68. That the court issue a declaratory judgement that the Defendants, each of them, have violated the laws of the State of California and of the CA Constitution as alleged herein;

69. That the court issue a declaratory judgement that the Defendants, each of them, have violated the laws of the United States and of the United States Constitution as alleged herein;

70. That the court issue a declaratory judgement that the Defendants, each of them, have violated CA Penal laws and public policy as alleged herein;

71. That the court order the Defendants, each of them, enjoined and to cease and desist from unlawful and/or unfair business activities in violation of CA Business and Professions

Code section 17200, pursuant to CA Business and Professions Code section 17203;

72. That the court award Ms. Victor restitution of the funds improperly obtained by the Defendants, each of them in an amount no less than one million dollars ($1,000,000);

73. That the court award Ms. Victor restitution of all monies due to Ms. Victor from the unlawful business practices of the Defendants, each of them in an amount no less than one million dollars ($1,000,000);

74. That the court award Ms. Victor all consequential damages applicable by law; in an amount no less than three million dollars ($3,000,000);

75. That the court award Ms. Victor for all prejudgement interest, available by law, at the prevailing legal rate;

76. That the court award Ms. Victor for all post judgement interest, available by law, at the prevailing legal rate;

77. That the court award Ms. Victor any further equitable relief that the court may deem just and proper;

78. That the court award Ms. Victor any further available statutory penalties, together with interest, that the court may deem just and proper;

79. That the court award of such other and further relief that the court may deem appropriate;

80. That that court award or issue all other available remedies applicable by law;

81. That the court award Ms. Victor all reasonable fees and costs of suit, including any additional expenses; in an amount no less than three million dollars ($3,000,000);

82. That the court grant the Plaintiff monetary and non-monetary sanctions against the Defendants, each of them, in an amount no less than two million dollars, five hundred thousand dollars ($2,500,000);

83. That the court subject the Defendants, each of them, to a civil penalty of one thousand dollars ($1,000) pursuant to 18 U.S.C §35. The Defendants, each of them, willfully, maliciously, and with reckless disregard for the safety of the Plaintiff's life, imparted and conveyed or caused to be imparted or conveyed false information, knowing the information to be false; in an amount no less than forty-three thousand dollars ($43,000);

84. That the court subject the Defendants, each of them, to a fine that is three times the monetary equivalent of the thing in value, pursuant to 18 U.S.C §201; in a sum amount to be

determined by this court but in a sum amount no less than one million dollars ($1,000,000);

85. That the court subject each Defendant, whom acting in their full capacity, under color of law, be fined a civil penalty of fifty thousand dollars ($50,000) for each violation, pursuant to 18 U.S.C §208; in a sum amount no less than eight hundred thousand dollars ($800,000); the final sum to be determined by this court;

86. That the court subject the Defendants, each of them, to a fine, pursuant to 18 U.S.C §241, for their conspiracy against Ms. Victor's rights; in a sum amount to be determined by this court but the sum amount of no less than one million dollars ($1,000,000);

87. That the court subject the Defendants, each of which, whom were acting in their full capacity, under color of law, to a fine pursuant to 18 U.S.C §242, who deprived the Plaintiff of her rights; in a sum amount to be determined by this court, but a sum amount of no less than three million dollars ($3,000,000);

88. That the court subject the Defendants, each of them, to a fine substantial enough for their multiple hate crimes against Ms. Victor; in a sum amount to be determined by this court but a sum amount no less than three million dollars ($3,000,000);

89. That the court find the Defendants, each of them, guilty of committing or attempting to commit sexual abuse against the Plaintiff and fine each Defendant for such offenses; in a sum amount to be determined by this court but in a sum amount no less than three million dollars ($3,000,000);

90. The the court subject the Defendants, each of them, to a fine for taking or using papers related to the Plaintiff's claim by unlawful means to help benefit themselves which caused more irreparable injury to Ms. Victor, pursuant to 18 U.S.C §285; in a sum amount to be determined by this court but a sum amount no less than one million dollars ($1,000,000);

91. That the court find the Defendants, each of them, guilty of conspiring with one another to defraud the United States, in respect to the Plaintiff's claim, pursuant to 18 U.S.C §286; and that the court fine the Defendants, each of them, for such conspiracy; in a sum amount to be determined by this court but in an amount no less than six million dollars ($6,000,000);

92. That the court find the Defendants, each of them, guilty of conspiracy to commit offense or to defraud the United States, pursuant to 18 U.S.C §371; and that the court fine the Defendants, each of them, for such conspiracy; in a sum amount

to be determined by this court but a sum amount of no less than one million dollars ($1,000,000);

93. That the court find the Defendants, each of them, guilty of falsely making, forging, and/or altering any obligation or other security of the United States, pursuant to 18 U.S.C §471; and that the court fine the Defendants, each of them, in a sum amount to be determined by this court but a sum amount of no less than one million dollars ($1,000,000);

94. That the court find the Defendants, each of them, guilty of, with the intention to defraud the United States, passing, uttering, publishing, or selling or have attempted to pass, utter, publish, or sell any obligation or other security of the United States, pursuant to 18 U.S.C §472; and that the court fine the Defendants, each of them, in a sum amount to be determined by this court but in a sum amount of no less than one million dollars ($1,000,000);

95. That the court find that the Defendants, each of them, have violated the statue 18 U.S.C §494, on several occasions; and that the court fine the Defendants, each of them, in a sum amount to be determined by this court but in a sum amount of no less than one million dollars ($1,000,000);

96. Pursuant to 18 U.S.C §495, that the court subject the Defendants, each of them, to a fine; in a sum amount to be determined by this court but in a sum amount of no less than one million dollars ($1,000,000);

97. That the court find the Defendants, each of them, guilty of embezzlement, pursuant to 18 U.S.C §645; and that the court subject the Defendants, each of them, to a fine double the value of the money so embezzled by each Defendant; in a sum amount to be determined by this court;

98. Pursuant to 18 U.S.C §872, that the court subject the Defendants, each of them; in a sum amount to be determined by this court in a sum amount of no less than one million dollars ($1,000,000); for committing or attempting to commit extortion against the Plaintiff;

99. That the court fine the Defendants, each of them; in a sum amount to be determined by this court in a sum amount of no less than one million dollars ($1,000,000); for blackmailing the Plaintiff, pursuant to 18 U.S.C §873;

100. That the court fine the Defendants whom were acting in their full capacity under the color of law; in a sum amount to be determined by this court in a sum amount of no less than six million dollars ($6,000,000); for falsifying, concealing, or

covering up by any trick, scheme, or device a material fact; and making any materially false, fictitious, fraudulent statement or representation; and for making or using any false writing, or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, pursuant to 18 U.S.C §1001;

101. That the court find the Defendants, each of them, guilty of being in possession of false papers to defraud the United States, pursuant to 18 U.S.C §1002; in a sum amount to be determined by this court but in a sum amount of no less than one million dollars ($1,000,000);

102. That the court find that false statements have been made concerning the appearances made before officers authorized to administer oaths, pursuant to 18 U.S.C §1016; and that the court fine the Defendants, each of them, for making such false statements; in a sum amount to be determined by this court but in an amount no less than one million dollars ($1,000,000);

103. That the court find the Defendants, each of them, guilty of knowingly making and delivering as true any such certificate or writing which contained statements known to be false by said Defendants, pursuant to 18 U.S.C §1018; and that the court subject the Defendants, each of them, to a fine; in a

sum amount to be determined by this court but in a sum amount of
no less than one million dollars ($1,000,000);

104. That the court find the Defendants, each of them,
guilty of obstructing proceedings before departments, agencies,
and committees, pursuant to 18 U.S.C §1505; and that the court
subject the Defendants, each of them, to a fine; in a sum amount
to be determined by this court but in a sum amount of no less
than one million dollars ($1,000,000);

105. That the court find the Defendants, each of them
guilty of the obstruction of court orders, pursuant to 18 U.S.C
§1509; and to subject the Defendants, each of them, to a fine;
in a sum amount to be determined by this court but in a sum
amount of no less than one million dollars ($1,000,000);

106. That the court find the Defendants, each of them,
guilty of the obstruction of criminal investigations, pursuant
to 18 U.S.C §1510; and that the court subject the Defendants,
each of them, to a fine; in a sum amount to be determined by
this court but in a sum amount of no less than three million
dollars ($3,000,000);

107. That the court find the Defendants, each of them,
guilty of committing perjury, pursuant to 18 U.S.C §1621; and
that the court subject the Defendants, each of them, to a fine;

in a sum amount to be determined by this court, but in a sum amount of no less than one million dollars ($1,000,000);

108. That the court find the Defendants, each of them, guilty of the subornation of perjury, pursuant to 18 U.S.C §1622; and that the court subject the Defendants, each of them, to a fine; in a sum amount to be determined by this court but in a sum amount of no less than one million dollars ($1,000,000);

109. That the court find the Defendants, each of them, guilty of making false declarations before the court, pursuant to 18 U.S.C §1623; and that the court subject the Defendants, each of them, to a fine; in a sum amount to be determined by this court but in a sum amount of no less than one million dollars ($1,000,000);

110. That the court find the Defendants, each of them, guilty of the concealment, removal, or mutilation of any record, proceeding, map, book, paper, document, or other thing, pursuant to 18 U.S.C §2071; and that the court subject the Defendants, each of them, to a fine; in a sum amount to be determined by this court but in a sum amount of no less than one million dollars ($1,000,000);

111.That this court make the Defendants, each of them, pay Ms. Victor all potential damages, including liquidated damages

and penalties, of all possible future law suits as their actions, each of them, have made Ms. Victor lose complete faith in the entire judicial system and has instilled extreme fear and PTSD at going through this process ever again; in a sum amount to be determined by this court but in a sum amount of no less than three million dollars ($3,000,000);

112. Any other remedy this court deems just and proper; and

113. That this court make the Defendants, each of them, provide Ms. Victor relief **immediately** following the court order granting the Plaintiff immediate relief, as Ms. Victor will be fearing further retaliation or harm if relief is not granted immediately;

114. That this court remove this case to the court of proper jurisdiction if there is no judge capable of presiding over such case due to personal, financial, social, or political interests;

115. That this court serve the Los Angeles Attorney General a copy of this Complaint as it questions Constitutional law by judicial employees of the County of Los Angeles;

116. That this court serve the United States Attorney General a copy of this Complaint as the United States of America is a named Defendant; and

117. That all attorney's named as Defendants on this complaint be suspended immediately by the State Bar of California pending proper investigation into their attorney misconduct and on going criminal activity.

**DATED:** January 30, 2023

BY: _____

DANIELLE K. VICTOR
PLAINTIFF IN PRO SE

### DECLARATION & VERIFICATION OF DANIELLE K. VICTOR

I am the Plaintiff in this action. I have read the foregoing **VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF** and know its contents.

The matters stated in the foregoing **VERIFIED COMPLAINT & FACTUAL ALLEGATIONS FILED CONCURRENTLY WITH PLAINTIFF'S EMERGENCY MOTION & REQUEST FOR RELIEF** are true of my own knowledge except as to those matters which are alleged on information and belief, and as to those matters I believe them to be true.

I can provide any and all evidentiary support of the disgusting, disgraceful corruption and fraudulent activity that had flooded my previous litigation to this Court or any court if so ordered or requested with good cause.

I believe, with all my heart, that the Defendants, each of them, unlawful conduct is on going and the unlawful conduct will continue to multiple plaintiff's, including employees of Wally's, who are women or people of color, whom the Judges, the Defendants pay off and bribe, WON'T help or provide justice for… unless this behavior is corrected by the State of California and the County of Los Angeles. My case is not the first or last

where the Defendants criminal corruption has destroyed the chance of the Plaintiff obtaining justice. In fact, a Notice of Related Cases was presented to both Judge Miller and Judge Orozco and they denied all cases having any relation. This includes Jane Doe vs. Paul Marciano, Los Angeles Superior Court Case #**21STCV02126**, where the Defendants worked with the courts and all attorney's involved to arbitrate a sexual rape and/or assault, which is forbidden by Federal law. I was also sexually assaulted and harassed and such case could not be arbitrated under Federal law, this was presented to Judge Orozco and Judge Miller, and ignored.

I am well aware that the corruption throughout the Judicial system in California is wide spread and I am prepared to write any legal motions or briefs, to obtain my proper justice and reward, even if that means taking this legal matter all the way to the United States Supreme Court. I am sure that every person who has contributed to this corruption is aware that ***I will not stop at anything till the proper justice and reward is obtained.***

Please note, this case is for my employment matter only, as Judge Miller, Judge Orozco, and all other federal agencies, and judicial officers who I find responsible for my attempted murder, hacking of her devices, and much more hateful and

heinous crimes, are being sued with a separate case I opened in the United States District Court for the District of Massachusetts. THIS CASE IS a separate matter but once I receive a case number I will inform the United States District Court for the District of Massachusetts and the First Circuit Court of Appeals with a Notice of Related Cases, and if it is deemed necessary to mark these cases as related I will move the Court to have the District of Massachusetts make the final judgement as I do not trust anyone in the California Judicial system, and for good reason.

Executed on JANAURY 30, 2023, at Methuen, Massachusetts.

I declare under the penalty of perjury under the laws of the State of Massachusetts, the State of California, and under the laws of the United States of America, that the forgoing is true and correct.

_____
Danielle K. Victor
Plaintiff in Pro Se

262

# EXHIBIT 1

Danielle Victor
4 Loring Road
Methuen, MA 01844
978-857-4885
daniellekvictor@gmail.com
daniellevictorlegal@yahoo.com


Self-Represented- Pro Se


## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES


DANIELLE VICTOR,

               Plaintiff,

    v.

SOUTHWEST WINE & SPIRITS, LLC, a Delaware Limited Liability Company; WALLY'S AUCTION HOUSE, LLC, a California limited liability company; MEL-JEN, a California limited liability Company; PAUL MARCIANO, an individual; MAURICE MARCIANO, an individual; CHRISTIAN NAVARRO, an individual; THOMAS KACHANI, an individual; MATTHEW TURNER, an individual; MATTHEW MARCIANO, an individual; JONATHAN POULIN, an individual; MINA JONES, an individual; NANCY HUNTER, an individual; SAMI FROMER, an individual; TATUM JIMENEZ, an individual; CHRISTIE BAKER, an individual; KEITH BJELAJAC, an individual; LAURA BURNS, an individual; CHRISTIE'S WINE, INC., a corporation operating under Delaware law; CHRISTIE'S INC, a corporation operating under Delaware law; 3900 WA ASSOCIATES, LLC, a Delaware limited liability company; DELTA AIR LINES, INC., a corporation operating under Delaware law; and DOES 1-100, inclusive.

               Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)

*Los Angeles Superior Court Case #: 20STCV34566*

**FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES**

**(1) FAILURE TO PAY ALL WAGES AT PLACE OF DISCHARGE;**
**(2) FAILURE TO PAY WAGES IN A TIMELY MANNER;**
**(3) FAILURE TO PAY WAGES AT PLACE OF DISCHARGE;**
**(4) FAILURE TO FURNISH WAGE AND HOUR STATEMENTS;**
**(5) FAILURE TO PROVIDE MEAL AND REST PERIODS;**
**(6) FAILURE TO PAY GRATUITIES AND UNLAWFUL TAKING OF GRATUITIES;**
**(7) FAILURE TO PAY WAGES;**
**(8) WRONGFUL TERMINATION;**
**(9) UNLAWFUL RETALIATION BASED ON VIOLATIONS OF THE DEFENDANT'S USE OF SOCIAL MEDIA;**
**(10) UNLAWFUL CONTRACTS IN VIOLATION OF PUBLIC POLICY;**
**(11) UNLAWFUL RETALIATION AGAINST A WHISTLEBLOWER;**

(12) **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;**

(13) **DEFAMATION;**

(14) **VIOLATION OF THE UNRUH CIVIL RIGHTS ACT;**

(15) **VIOLATION OF CA CIVIL CODE SECTION 51.5;**

(16) **VIOLATION OF THE RALPH CIVIL RIGHTS ACT;**

(17) **VIOLATION OF THE TOM BANE CIVIL RIGHTS ACT;**

(18) **SEXUAL HARASSMENT IN VIOLATION OF CA CIVIL CODE SECTION 51.9;**

(19) **GENDER VIOLENCE;**

(20) **SEXUAL BATTERY;**

(21) **BATTERY;**

(22) **ASSAULT;**

(23) **RACE DISCRIMINATION;**

(24) **FAILURE TO COMBAT DISCRIMINATION IN VIOLATION OF STATE POLICY;**

(25) **STALKING;**

(26) **UNLAWFUL CONTINUED VIOLATIONS OF THE CA CIVIL CODES;**

(27) **RETALIATION IN VIOLATION OF FEHA;**

(28) **EMPLOYMENT DISCRIMINATION IN VIOLATION OF FEHA;**

(29) **QUID PRO QUO SEXUAL HARASSMENT IN VIOLATION OF FEHA;**

(30) **UNLAWFUL COERCION IN VIOLATION OF FEHA;**

(31) **HOSTILE WORK ENVIRONMENT/ SEXUAL HARASSMENT IN VIOLATION OF FEHA;**

(32) **FAILURE TO PREVENT SEXUAL HARASSMENT IN VIOLATION OF FEHA;**

(33) **FAILURE TO PREVENT DISCRIMINATION IN VIOLATION OF FEHA;**

(34) **NEGLIGENT HIRING AND RETENTION;**

(35) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

**(36) UNLAWFUL EMPLOYMENT CONDITIONS IN VIOLATION OF PUBLIC POLICY;**
**(37) FRAUD;**
**(38) DECEIT;**
**(39) PERJURY;**
**(40) HATE CRIME;**
**(41) VIOLATIONS OF THE UNITED STATES CONSTITUTION AND THE CALIFORNIA CONSTITUTION;**
**(42) NEGLIGENCE;**
**(43) FRAUDULENT & NEGLIGENT MISREPRESENTATION;**
**(44) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND**
**(45) UNFAIR COMPETITION.**

**DEMAND FOR A JURY TRIAL**

*JUDGE YOLANDA OROZCO, DEPT. 31*

_____

    **PLEASE TAKE NOTICE** that Plaintiff, Danielle Victor ("Ms. Victor" or "Plaintiff"), files this First Amended Verified Complaint for damages. Ms. Victor makes such allegations under penalty of perjury pursuant with the laws of the State of California and the laws of the United States of America. The Plaintiff alleges as follows:

## <u>GENERAL ALLEGATIONS</u>

    1. Ms. Victor at all relevant times mentioned herein resided in the county of Los Angeles, State of California before fleeing to Essex County, State of Massachusetts for safety as a direct result of the Defendants unlawful conduct before and within this litigation.

    2. Ms. Victor is informed and believes and based thereon alleges, that Defendant **SOUTHWEST WINE & SPIRITS, LLC**, is a Delaware limited liability company and at all times relevant herein was doing substantial business in the county of Los Angeles, State of

California. Ms. Victor is informed and believes and based thereon alleges, that Defendants Southwest wine & Spirits, LLC was and is doing business as "Wally's".

3. Ms. Victor is informed and believes and based thereon alleges, that Defendant **WALLY'S AUCTION HOUSE, LLC**, is a California limited liability company and at all time relevant herein was doing substantial business in the county of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendants Wally's Auction House, LLC was and is doing business as "Wally's".

4. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MEL-JEN**, is a California limited liability company and at all times relevant herein was doing substantial business in the county of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendants Mel-Jen was and is doing business as "Wally's".

5. Ms. Victor is informed and believes and based thereon alleges, that Defendant **PAUL MARCIANO** is an individual and a citizen of a country outside of the United States, and at all times relevant herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes that at all times relevant herein Defendant Paul Marciano was the Owner and Principal of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

6. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MAURICE MARCIANO** is an individual and a citizen of Italy, and at all times relevant herein was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes that at all relevant times herein mentioned Defendant

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

Maurice Marciano was the Owner and Principal of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

7. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIAN NAVARRO** is an individual who, possibly, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Christian Navarro, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Christian Navarro was the President and Principal of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

8. Ms. Victor is informed and believes and based thereon alleges, that Defendant **THOMAS KACHANI** is a in individual who, possibly, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Thomas Kachani, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Thomas Kachani was the Executive Vice President Of Operations of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

9. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MATTHEW TURNER** is a in individual who, possibly, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Matthew Turner, at all relevant times herein, was an individual

doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Matthew Turner was the Wine Director of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

10.  Ms. Victor is informed and believes and based thereon alleges, that Defendant **MATTHEW MARCIANO** is a in individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Matthew Marciano, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Matthew Marciano was a manager of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

11. Ms. Victor is informed and believes and based thereon alleges, that Defendant **JONATHAN POULIN** is a in individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Jonathan Poulin, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Jonathan Poulin was the Assistant General Manager of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

12. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MINA JONES** is an individual who, at all relevant times herein, resided in the County of Los Angeles,

State of California. Ms. Victor is informed and believes and thereon alleges that Defendant Mina Jones is a citizen of France and not of the United States. Ms. Victor is informed and believes and based thereon alleges, that Defendant Mina Jones, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Mina Jones was a manager of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

13. Ms. Victor is informed and believes and based thereon alleges, that Defendant **NANCY HUNTER** is a in individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Nancy Hunter, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Nancy Hunter was a Human Resources Manager of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

14. Ms. Victor is informed and believes and based thereon alleges, that Defendant **SAMI FROMER** is an individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Sami Fromer, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Sami Fromer was the Director of Events of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

15. Ms. Victor is informed and believes and based thereon alleges, that Defendant **TATUM JIMENEZ** is a in individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Tatum Jimenez, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Tatum Jimenez was a manager of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

16. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIE BAKER** is a in individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Christie Baker, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Christie Baker was the Director of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

17. Ms. Victor is informed and believes and based thereon alleges, that Defendant **KEITH BJELAJAC** is a in individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Keith Bjelajac, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

Keith Bjelajac was the Chief Financial Officer of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

18. Ms. Victor is informed and believes and based thereon alleges, that Defendant **LAURA BURNS** is a in individual who, at all relevant times herein, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Laura Burns, at all relevant times herein, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Laura Burns was the Director of Human Resources of Southwest Wine & Spirits, LLC, a Delaware limited liability company.

19. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIE'S WINE, INC.** is a corporation operating under Delaware law who, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Christie's Wine, Inc., was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

20. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIE'S INC** is a corporation operating under New York law who, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms.

Victor is informed and believes and based thereon alleges that at all relevant times herein,

Defendant Christie's Inc, was the partner, agent, affiliate, joint venturer, controlling shareholder,

subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all

of the other Defendants, and was engaged with some or all of the other Defendants in a joint

enterprise for profit, and bore such other relationships to some or all of the other Defendants so

as to be liable for their conduct with respect to the matters alleged herein.

21. Ms. Victor is informed and believes and based thereon alleges, that Defendant

**CHRISTIE'S INC** is a corporation operating under New Jersey law who, at all relevant times

herein, was doing substantial business in the County of Los Angeles, State of California. Ms.

Victor is informed and believes and based thereon alleges that at all relevant times herein,

Defendant Christie's Inc, was the partner, agent, affiliate, joint venturer, controlling shareholder,

subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all

of the other Defendants, and was engaged with some or all of the other Defendants in a joint

enterprise for profit, and bore such other relationships to some or all of the other Defendants so

as to be liable for their conduct with respect to the matters alleged herein.

22. Ms. Victor is informed and believes and based thereon alleges, that Defendant **3900

WA ASSOCIATES, LLC** is a corporation operating under Delaware law who, at all relevant

times herein, was doing substantial business in the County of Los Angeles, State of California.

Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein,

Defendant 3900 WA Associates, LLC, was the partner, agent, affiliate, joint venturer, controlling

shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest

of some or all of the other Defendants, and was engaged with some or all of the other

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

23. Ms. Victor is informed and believes and based thereon alleges, that Defendant **DELTA AIR LINES, INC.** is a corporation operating under Delaware law who, at all relevant times herein, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein, Defendant Delta Air Lines, Inc., was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

24. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants **DOES 1-100**, inclusive, are unknown to Ms. Victor at this time. Ms. Victor therefor sues said Defendants by such fictitious names. When true names and capacities of said Defendants are ascertained, Ms. Victor will seek leave of court to amend this complaint to allege their true names and capacities. Ms. Victor is informed and believes and thereon alleges that each Defendant designated herein as a Doe is responsible in some manner for each other Defendants acts and omissions, and for the resulting injuries and damages to Ms. Victor, as alleged herein.

25. Ms. Victor is informed and believes and based thereon alleges, that all Defendants are, and at all times relevant herein, were doing substantial business in the county of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

all Defendants, including individuals were either residents or doing substantial business in the county of Los Angeles, State of California.

26. Ms. Victor is informed and believes and based thereon alleges that at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged herein.

27. Ms. Victor is informed and believes and based thereon alleges that at all relevant times, each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, approved, adopted, controlled, and aided and abetted the conduct of all other Defendants.

28. Defendants and each of them, are, and were, the agents of the other Defendants, and in acting as described herein, were acting within the scope of their authority as agents thereof, and with the permission and consent of the other Defendants.

29. Ms. Victor herein was subjected to unlawful behavior by the Defendants.

30. Despite Ms. Victor making multiple verbal and written complaints to several management about sexual harassment, harassment, bullying, retaliation, and discrimination, management failed to do anything to stop such behavior nor report Ms. Victor's complaints to the Defendants Human Resources department. The Defendants failure to report and their failure to prevent further harassment, both sexual and non, bullying, retaliation, and discrimination was

willful, intentional, and in reckless disregard for Ms. Victor's rights, feelings, and over all well being.

31. The Defendants through their counsel have attempted to defame Ms. Victor and have the court perceive her in a false light excusing the Defendants behavior by accusing Ms. Victor of prostitution, extortion, among other things. The Defendants, through their counsel, have used fraudulent means throughout this three year litigation to preserve the Defendants reputation, avoid a jury trial or criminal prosecution, and to minimize all costs, including damages owed to Ms. Victor, in an effort to conceal the Defendants unlawful behavior, all without regard to Ms. Victor's guaranteed rights or feelings.

32. Ms. Victor is informed and believes that the Defendants have sexually assaulted, sexually battered, abused, harassed, discriminated against, and retaliated against multiple victims, such as Ms. Victor, both employees of the Defendants and non-employees of the Defendants. The Defendants behavior toward Ms. Victor was not the first time the Defendants have engaged in unlawful behavior and it certainly will not be the last time the Defendants engage in unlawful behavior.

33. Ms. Victor is informed and believes that the Human Resources department, and all Departments, knew or should have known about the Defendant's unlawful behavior towards female employee's and customers as well as discriminatory behavior toward ethnic employee's and customers because there have been multiple complaints about the Defendants unwarranted and inappropriate behavior, even complaints filed in the Los Angeles Superior Court.

34. Ms. Victor is informed and believes that the Human Resources Department, and all other Departments, intentionally failed to take any appropriate action to protect female

employees or customers and employees and customers of color. Their intentional neglect and cover up of the Defendants unlawful behavior was done to protect the reputation and finances of the Defendants and to ensure the Defendants avoided all legal and financial liability and accountability.

35. Ms. Victor is informed and believes that all Defendants, collectively, decided to conceal the fact that female employees and customers and employees and customers of color were being targeted and treated in ways that violated multiple laws in the State of California as well as the laws of the United States. This concealment was done in order to protect the reputation and finances of the Defendants, collectively, as well as ensure the Defendants avoid legal and financial liability and accountability.

36. Ms. Victor is informed and believes that all Defendants, collectively, entered into a conspiracy, the object of which was to conceal the fact that multiple victims had and continue to complain about sexually inappropriate behavior and commentary by the Defendants, complaints about racism, and complaints about harassment, bullying, and retaliation; to conceal the pattern of the Defendants and to enable the Defendants to continue to behave unlawfully with no accountability or repercussions.

37. Ms. Victor is informed and believes that the Human Resources Department and all management, agents, principals, partners, affiliates, etc., of the Defendants conspired with all Defendants, each of them, to conceal the Defendants negligence while running the business, their complete failure to prevent harm to any and all employees and customers, and acted in furtherance of that conspiracy.

38. In furtherance of that conspiracy the Defendants and their counsel have argued that all of Ms. Victor's claims were baseless and without merit. All of Ms. Victor's claims and others claims were either ignored, not investigated, or falsely found to be without merit, as an intentional and calculated moved made by the Defendants, each of them.

39. Over the years the Defendants have engaged in unlawful behavior that was sexually or racially motivated at the Defendants place of business and all other businesses each individual Defendant is associated with and/or owns. Multiple complaints have been filed by several different Plaintiff's. Ms. Victor learned of these complaints and has discovered that no federal agency has conducted a legitimate or proper investigation in civil conspiracy with the Defendants.

40. In furtherance of the above alleged conspiracy, Ms. Victor is informed and believes that her complaint and any other complaints made by different Plaintiffs, against the Defendants, have not been reported accurately to the Department of Fair Employment & Housing ("DFEH"), the California Department of Industrial Relations, U.S. Equal Employment Opportunity Commission ("EEOC"), or any other legal authority or federal agency, in order to preserve the Defendants reputation and finances. The Defendants behavior not being reported nor their behavior being stopped insured the Defendants constant business occupancy, business sales and revenue, and the Defendants have not been adversely affected by their unlawful behavior.

41. Ms. Victor is informed and believes that no individual defendant has been held accountable for their individual actions and unlawful behavior toward female employees and customers or employees and customers of color.

42. Ms. Victor has suffered emotional distress, humiliation, embarrassment, mental distress, anxiety, depression, illness, shame, sadness, anger, loss of enjoyment of life, personal and physical injuries, and unimaginable financial hardship due to the unlawful behavior by all Defendants, each of them, and their continued unlawful behavior.

## **FACTUAL ALLEGATIONS**

43. On January 11, 2019, prior to being employed at *Southwest Wine & Spirits, LLC*, a **Delaware limited liability company**, doing business as, *Wally's Auction House, LLC* and *Mel-Jen* ("Wallys"), Ms. Victor attended Wally's with some friends, Cassandra Baker ("Cassie") and Dezirae Deitch ("Ms. Deitch").

44. Ms. Victor and her friends checked in at the hostess stand, at Wally's, for a table of three where they were told a wait time of thirty-five minutes and were advised to grab a drink at the bar while they waited. Standing at the host stand was a manager whose name has never been learned by the Plaintiff, ("Manager Doe''), who was a French man, with a heavy French accent. Manager Doe followed Ms. Victor and her friends around the restaurant for several minutes. After ordering and paying for three glasses of wine, Manager Doe tapped Ms. Victor on her shoulder. Ms. Victor turned around and said "Can I help you?" Manager Doe advised Ms. Victor that she needed to leave the restaurant immediately. Plaintiff chuckled and asked "Why?" Manager Doe told Ms. Victor that he could see her nipples through her bodysuit and that she needed to leave Wally's immediately. The Plaintiff and her friends were appalled by his degrading, outlandish, unwarranted, and disgusting remarks and refused to leave. Manager Doe kept harassing Ms. Victor tirelessly for several minutes causing a scene resulting in others in the restaurant to begin onlooking their argument either for curiosity or judgement; either way,

leaving Ms. Victor humiliated and embarrassed. Ms. Victor went to the host stand and asked to speak to a different manager. Another Manager approached the host stand, apologized for what was said and allowed Ms. Victor to file a written complaint against Manager Doe whom had approached and harassed Ms. Victor, a paying customer, for no necessary reason. Ms. Victor and her friends were given three glasses of wine for free and thirty percent (30%) off their meal because of Manager Doe's actions.

45. On the evening of January 11, 2019, Ms. Victor had been wearing a yellow lace bodysuit, a cropped camouflage jacket, black leggings, and black heeled boots. Before attending Wally's, the Plaintiff and her friends had drinks at Harriet's Rooftop ("Harriet's), located at 8490 Sunset Blvd., West Hollywood, CA 90069. Ms. Victor, nor her friends, had issues, especially on dress code, while attending Harriets. After the Plaintiff and her friends had a glass of wine at Harriet's they spontaneously decided to have dinner at Wally's, hence the no reservation and wait time for a table upon their arrival. Ms. Victor had been the only woman of color in the restaurant that evening, and was also the only woman, and person, followed, targeted, and harassed as a paying customer. Keep in mind these are actions taken by Wally's and their employee's **prior to Ms. Victor's employment**, establishing a disgusting, unacceptable, and repeated pattern of racism, discrimination, sexual harassment, and a complete disregard to a person's individual and promised Civil rights.

46. Ms. Victor was not free or treated equal and was maliciously exposed to discrimination and harassment based on her sex, her race, her color, and her genetic information

from Wally's and it's employee's during her terrible experience as a customer on January 11, 2019.

47. On February 14, 2019, the Plaintiff had an interview at Wally's for an open hostess position, a position she learned of through a Craigslist ad. Ms. Victor met with Tomara Conrad ("Ms. Conrad") upon her arrival to Wally's. Ms. Conrad at the time, and possibly may still be, the Maître D, "head hostess", of Wally's. Ms. Conrad hired Ms. Victor on the spot but Ms. Conrad left briefly to get another Manager, Thibaud Duccini ("Mr. Duccini") to begin a second interview with Ms. Victor before the final decision of her hire. After Mr. Duccini conducted a brief second interview, he congratulated Ms. Victor on her hire and informed her that her first training shift would be the following evening on February 15, 2019.

48. At Ms. Victor's interview, Ms. Victor had been wearing an oversized knit sweater from the brand Nasty Gal, with black jeans, and her hair in a slick back low ponytail. Ms. Conrad told Ms. Victor to dress "sexy" for work because the hostesses were the first look of the restaurant and part of the job is looking "attractive". Ms. Conrad advised Ms. Victor to not wear sweaters like the one she had on and stated, "This isn't an office." Ms. Victor took out her cellphone to pull up her Instagram account to show Ms. Conrad pictures of her tattoos and Ms. Conrad's response was "So hot!" Ms. Victor asked if showing her tattoos would be an issue and both Ms. Conrad and Mr. Duccini confirmed that Ms. Victor's tattoos would not be an issue. Ms. Conrad again reminded Ms. Victor about how to dress, advising Ms. Victor to dress like she would if she were going to be coming to Wally's for a night out. However, Ms. Victor, remembers how she dressed for her evening out to Wally's on January 11, 2019, and how she

was treated, and couldn't imagine being treated as such as an employee. Ms. Victor knew that before she accepted her job with Wally's that she had to tell Ms. Conrad or Mr. Duccini about her experience with Manager Doe, and if possible, make a request to work shifts that Manager Doe was not scheduled on because Manager Doe had and would continue to make Ms. Victor uncomfortable.

49. Ms. Victor had made it known during her interview process that she had done several reality TV shows, including a show on Oxygen Network, NBC Universal, entitled, *Bad Girls Club*. Ms. Victor also made it known during her interview process that her time on television resulted in her having a large and decent Social Media following on Instagram, Twitter, SnapChat, and YouTube.  Ms. Victor had asked Ms. Conrad and Mr. Duccini if someone coming into Wally's and recognizing her would be an issue. Both Ms. Conrad and Mr. Duccini were intrigued with this newly disclosed information about Ms. Victor and assured the Plaintiff that it would not be a problem because Wally's had, and possibly still has, lots of well known people and/or celebrities come in to eat or drink at their establishment. Ms. Conrad and Mr. Duccini ensured Ms. Victor that her being somewhat known could only "help" Wally's, not the opposite.

50. After Ms. Victor's interview, and prior to leaving Wally's, Ms. Victor approached Mr. Duccini and asked if there was a Manager who worked there, who was French and had a "heavy" accent" she described. Ms. Victor informed Mr. Duccini about the awful encounter she had with Manager Doe and his harassment during her visit to Wally's the month prior. Mr. Duccini told Ms. Victor that Manager Doe was terminated after multiple customers and employees had complained about him and his behavior. Ms. Victor was relieved she would not

have to see or deal with that manager in a work environment as it was already hostile as a paying customer.

51. It is important to answer the question one may ask while reading these allegations, as to why Ms. Victor would seek employment at Wally's, an establishment that had already discriminated against, and harassed her. Ms. Victor, prior to building the presence she now has on Social Media, did not work full time on Social Media. When Ms. Victor moved to California she made an assumption that finding a job in a club as a bartender or bottle service would be easy especially with her history in that field of employment, however, that assumption was wrong. Things got so bad for the Plaintiff that at one point she had made a YouTube video begging the internet for money to help her pay her rent because she did not want to leave California; a moment of time she still gets harassed about on Social Media. Wally's was the first job interview and first job offer the Plaintiff had received in a long, bad, period of time, so despite her hesitation and her terrible prior experience, she had no choice but to take the job. Ms. Victor was in survival mode and that included accepting a job position at Wally's which will prove to be one of the worst mistakes she has made in her lifetime.

52. February 15, 2019, was Ms. Victor's first training shift at Wally's and the day she had filled out the paperwork required for her employment with the Company. Upon request from Mr. Duccini, Ms. Victor arrived to Wally's a half hour prior to the start of her training work shift as requested, arriving at 4pm. The half hour she was filling out paperwork she was not clocked in. Upon arrival, Ms. Victor was sat in the private dining room in the back of Wally's and was given the Wally's Employee Handbook ("Handbook"), which was over seventy pages long. Ms. Victor

was expected to read this entire Handbook in addition to reading and signing a separate pile of multiple papers, that required Ms. Victor's signature and/or initials, prior to her training shift which was scheduled to start in thirty minutes. It was impossible for Ms. Victor to read everything in full detail in thirty minutes on top of the expectation to complete a large pile of paperwork.

53. After thirty minutes had passed, at 430PM, Mr. Duccini came into the private dining room and told the Plaintiff it was time for her shift to begin. Ms. Victor quickly signed the remaining paperwork and handed it to Mr. Duccini. It is important to note that the Employee Acknowledgement and Arbitration Agreement signed by Ms. Victor was a separate document given to her with all other paperwork and the signed agreement was not torn or taken out of the Handbook after she signed her signature.

54. It is also important to note that these documents were received by Ms. Victor on June 8, 2020 by her prior legal counsel referenced by their fictitious business name, Mosley & Associates ("Mosley & Associates" or "prior legal counsel"), and she was never given or able to receive a copy of any of the documentation she had signed that day prior to June 8. An email correspondence between Ms. Victor and Mosley & Associates began on June 8, 2020 in regards to Mosley & Associates sending Ms. Victor a copy of her employee file via a drop box link, a drop box link that is now very much expired.

55. Ms. Victor had asked Mr. Duccini if she could keep the Handbook, as she barely got half way through reading it in the short amount of time that was given to her to complete such a

task. Mr. Duccini informed Ms. Victor that "they were low on copies" but he would get her one by her next shift. Ms. Victor was **_never_** given a copy of the Handbook, not on her next shift, not in future write ups over dress code, and not even upon her _wrongful_ termination. Ms. Victor was never given a copy of the Handbook to keep, nor was she ever given a copy to borrow for review with the promise that the Handbook would be returned to Wally's Management.  Access to the Handbook, which stated all the rules and regulations, was limited to the half hour time slot Ms. Victor was given prior to her first training shift on February 15, 2019. It was impossible to ask any questions or to discuss concerns about the Handbook to Management or Supervisors when Ms. Victor was denied the opportunity to keep a copy. Ms. Victor, as well as other new Employees of Wally's, should have been able to take the Handbook home to read it in full, and then, only after agreeing to its entirety, should new employees been authorized to sign and return the Employee Acknowledgement & Agreement Form to the Company.

56. Once Ms. Victor had handed Mr. Duccini the Handbook and her pile of signed paperwork, Mr. Duccini walked Ms. Victor to the front of the restaurant, to the hostess stand, and clocked Ms. Victor into her shift on the hostess computer, using a computer key that all Managers at Wally's had. Ms. Victor worked and trained until 1030PM on the evening of February 15, 2019, making the total work shift six hours, excluding the additional half hour she had filled out paperwork. During this training shift the Plaintiff received no meal break, nor any ten minute breaks, despite working a total of 6 hours. The work shift would have been 6.5 hours if the additional half hour for paperwork completion had been included, as it should have been.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

57. On February 16, 2019, the Plaintiff had her second training shift and arrived at Wally's at 3PM. Mr. Duccini was the manager on duty during the Plaintiff's training shift. Ms. Victor asked Mr. Duccini if a copy of the Handbook had been made for her yet and he told her "Not yet." How is supplying a copy of the Handbook to an employee such a difficult task, especially if they had a computer and access to a printer in the office in the back of Wally's? Not giving Ms. Victor her employee handbook was an intentional act.

58. The Plaintiff wore black jeans, tan leopard print combat boots, a black one shoulder crop top, and gold drop earrings, to Wally's that evening. Plaintiff asked Mr. Duccini if the outfit she had on was acceptable and Mr. Duccini confirmed that "It was great." That evening the Plaintiff worked with hostesses Ms. Conrad, Veronica Prince ("Ms. Prince"), and Carolina Banks ("Ms. Banks"). All of the hostesses were in crop tops showing mid drift and skin and they were all wearing heels. The Plaintiff was the only hostess wearing flat combat boots. Looking at the other hostesses' attire, the Plaintiff was learning what she could wear to work through her fellow employees "approved" and "acceptable" attire. The closing manager clocked Ms. Victor out of her second training shift at 11PM, making the training shift a total of 7.5 hours. Once again, Ms. Victor did not receive a meal break nor a rest period during her 7.5 hours of training at Wally's.

59. On February 17, 2019, the Plaintiff worked her final training shift at Wally's and was introduced to Manager Mina Jones ("Ms. Jones"), a manager who would soon become one of the Plaintiffs' most malicious and persistent harassers. Ms. Victor arrived to Wally's for her final training shift at 930AM. Although the Plaintiff told Ms. Conrad and Mr. Duccini, at her hiring

interview, that she was unable to work mornings, Ms. Victor was still required to train for the morning shift as standard procedure.

60. Ms. Victor wore a Motel Rocks printed dress, Dr. Martin boots, and a long black maxi cardigan over her dress to Wally's that morning. Ms. Victor kept the cardigan on over her dress for the entire training shift. At the end of the shift Ms. Jones called the Plaintiff into the back office. Ms. Jones asked the Plaintiff if she knew where she was. Ms. Victor, confused by the question, asked Ms. Jones what she meant by her question. Ms. Jones explained to the Plaintiff that she was in Beverly Hills, that wearing an outfit like the one the Plaintiff had on, was not acceptable for work especially since families attend Wally's on Sunday mornings for their brunches. The Plaintiff asked Ms. Jones why the outfit wasn't acceptable and stated that she would wear it to brunch with her own family. Ms. Victor also attempted to explain to Ms. Jones that she merely dressed like she was going to a night shift as she wouldn't be covering morning shifts and had not received a copy of the Handbook and did not know the rules and regulations surrounding dress code for hostesses that work morning vs. night shifts. Ms. Jones did not give a proper explanation as to how or why Ms. Victor's attire was unacceptable or not "Beverly Hills" worthy, but only stated to not have bare legs showing again with a dress "that length". The Plaintiff was confused by these demands because on her prior training shift, on February 16, 2019, Ms. Conrad had on a mini skirt with her legs exposed that was much shorter than the dress the Plaintiff had on for the morning shift. However, the Plaintiff agreed to not show her legs again in the workplace with any dress "too short".  Feeling not only insulted but humiliated after her conversation with Ms. Jones, Ms. Victor left Wally's and her final training shift at 3PM that

afternoon, making the total shift a total of 5.5 hours. Again, Ms. Victor did not receive any rest or meal periods during this training shift.

61. February 18, 2019, was the Plaintiffs' first shift as a hostess after completing the necessary three training shifts. Ms. Victor arrived to her shift at 4PM. Ms. Victor wore large rhinestone ball detailed hoops with a black turtleneck and jeans to Wally's that evening. Midway through the Plaintiff's shift she was summoned to the office again by Ms. Jones, where Ms. Jones told her that she was not going to write the Plaintiff up "this time" but Ms. Victor was required to take her earrings off immediately as they were "distracting to customers" and "unacceptable for work." Ms. Jones then handed Ms. Victor four images of models who were modeling for the brand GUESS?, INC. ("GUESS"), which is owned by Defendant Paul Marciano ("Mr. Marciano")  and Maurice Marciano ("Maurice"), principal owners of Wally's. Ms. Jones asked Ms. Victor to study the images of the GUESS models and told her that maybe she could learn a thing or two about how to dress to a job in Beverly Hills. Every image shown to Ms. Victor was a white model who was tall and skinny, which is the polar opposite of Ms. Victor's race, color, size, and shape and no studying of these photos would change that. Completely disgusted by Ms. Jones statements, rude behavior, direct racism and discrimination towards Ms. Victor, Ms. Victor knew that she needed money and she needed a job, so Ms. Victor complied with Ms. Jones' demands and removed her earrings before returning to the hostess stand.

62. The Plaintiff was the only hostess employed at Wally's who got in trouble for all of her attire, even her jewelry, and this was only her fourth shift since her employment with

Wally's began. After her second, unpleasant, insulting, and discriminatory conversation with Ms. Jones, Ms. Victor became self-aware that working at this restaurant was probably going to give her issues. However, at this time Ms. Victor had not been doing Social Media full time and she desperately needed employment. Unfortunately, since Wally's was the first job offer the Plaintiff had received, she promised herself that she was going to deal with any and all the hostility that would be thrown her way and attempt to suck it up because she learned the hard way that California is an expensive state, Los Angeles is an expensive city, and Ms. Victor had bills to pay. Ms. Victor left her first official shift as a non-training hostess of Wally's at 12AM, midnight. Ms. Victor had worked a full 8 hour work shift, and although she received a half hour meal break, she did not receive any rest or recovery periods.

63. On February 20, 2019, Ms. Victor arrived to work at Wally's at 1PM in the afternoon. Ms. Victor wore black jeans, a black ribbed body suit, a long black maxi cardigan, and black boots. The Plaintiff recalls sighing in relief on her way home at 9PM that evening as it was the first shift, since her employment began, that Ms. Jones or any other manager hadn't harassed her about one thing if not the other. Ms. Victor's work shift was 8 hours, she did get a half hour meal break, but again, did not have any rest of recovery periods.

64. On February 22, 2019, Ms. Victor arrived to work at Wally's at 1PM, wearing a cropped, off white knit sweater with a black faux leather midi skirt, black tights (so her legs were not exposed), a leather jacket, and combat boots. Although the Plaintiff was not sent home, Ms. Jones made it a duty to approach the hostess stand and start a conversation with the Plaintiff about how she doesn't understand the style of "young America" and how women dress

differently in France. Ms. Jones proceeded to go on and on and on about how women in France wouldn't wear the Plaintiff's style clothing to work or in general, maliciously, and intentionally insulting Ms. Victor. Ms. Victor was put in a very uncomfortable situation being judged, ridiculed, and humiliated once again on her appearance and outfit by Ms. Jones. Ms. Victor took notice that Ms. Jones was not making comments or striking similar conversations with any of the other hostesses that evening. Ms. Victor did not leave work that evening until 945PM, making her shift a total of 8.75 hours worked. Again, Ms. Victor did not get any rest or recovery periods during this shift.

65. February 22, 2019 concluded Ms. Victor's work shifts for her first pay period at Wally's, this pay period was for the dates February 11, 2019 to February 24, 2019. Ms. Victor recorded her working shifts as February 15, February 16, February 17, February 18, February 20, and February 22 of 2019, these do not included any dates or times in which she could have picked up a shift or added hours or failed to keep or failed to receive accurate payroll records date and times from Wally's. The total hours that the Plaintiff knows she had worked, not including any missing hours, or undocumented hours, for the pay period of 02/11/2019-02/24/2019 was 42.75 hours. The Regular pay rate for Ms. Victor during her employment at Wally's was $14 an hour and the overtime pay rate was $21 an hour. At $14 an hour for 40 hours and $21 an hour for 2.75 overtime hours, the total amount of the check should have been $617.75, minus the appropriate taxes and fees.

66. Ms. Victor was issued a check on March 6, 2019 for the amount of $469.25. The check was issued by Wally's Wine & Spirits. The address for Wally's Wine & Spirits on the

check was 10459 Jefferson Blvd., Culver City, CA 90232. The phone number listed on the check was (310)-475-0805. The check was issued by Bank of America, check number 53034. The routing number on the check was 12100035, the account number was 00000325017209061, and the sequence number was 000574431014. In the employee file sent to Ms. Victor on June 8, 2020, by her prior legal counsel, Wally's had marked Ms.Victor's first shift as February 28, 2019 and did not include her entire first pay period which is falsified information and fraud on the court. This check was short hours, hours that have never been paid to Ms. Victor.

67. Ms.Victor's next pay period, and the pay period Wally's attempted to state was Ms. Victors first week, to deceive the court, was from 2/25/19 - 3/15/19. Ms. Victor worked on February 25th, 2019 from 5PM to 12AM, midnight, and she did not take her dinner meal break until 1030PM that evening. This shift was seven hours, minus a half hour meal break, making the time clocked in for Ms. Victor six and half hours. Ms. Victor was unable to take any rest or recovery periods this shift.

68. Employees of Wally's were required to download an app where they could chat with management or other employees about switching shifts, ask questions, or voice their comments and/or concerns, etc. Manager Ms. Jones contacted Ms. Victor on the app following her shift and stated that she was changing the time frame of her meal period so that the Human Resources Department ("HR") did not fine Wally's for Ms. Victor taking her break past the five hour required time. Ms. Victor did not fully understand what Ms. Jones meant by penalties but what Ms. Victor did understand is that Ms. Jones had it out for her and if she didn't comply she would

only become a bigger target for Ms. Jones to bully, harass, or retaliate against, so Ms. Victor agreed to have Ms. Jones adjust her time sheet.

69. Ms. Victor worked from 5PM to close on February 16, 2019. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

70. Ms. Victor worked from 1PM to 945PM on February 28, 2019, working a total of eight hours and forty-five minutes. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

71. Ms. Victor wore an expensive bustier, embellished top from the brand Nasty Gal, black jeans, and boots to work that evening. The embellishments on Ms. Victor's top had sequins and embellishments that resembled what someone would have worn to a Great Gatsby themed party, a top that got more than enough compliments from customers that dined at Wally's that evening. However, Ms. Jones, per usual, made it a point to find her way to the host stand to make insulting commentary towards Ms. Victor and her attire. At one point while a customer was complimenting Ms. Victor's top stating it was "gorgeous", Ms. Jones interjected into the conversation stating "Gorgeous? It is distracting." Both Ms. Victor and the customer looked at each other in discomfort before Ms. Victor walked her and her party to their table. Ms. Jones, yet again, humiliated, embarrassed, and degraded Ms. Victor but this time did so in front of customers, maliciously and with pleasure.

72. Ms. Victor arrived to work at 1PM on March 1, 2019, wearing a tan jumpsuit, black Dr. Martin boots, a gold necklace, and a leather thick jacket to wear in and out of work to keep warm. After about twenty minutes of being at Wally's, Ms. Jones approached Ms. Victor while seating a group of customers and told her "Meet me at the hostess stand." Ms. Victor met Ms. Jones at the host stand and she was scolded harshly again in front of customers about how she needed to go home immediately to change or just leave for the entire shift. Ms. Victor again embarrassed and humiliated asked Ms. Jones, why?, as she did not see what could possibly be wrong with her outfit. Ms. Jones told her that her "bottom" was not appropriate in her jumpsuit and that she received complaints from customers wives that "Ms. Victor's bottom was making them uncomfortable." Horrified by what Ms. Jones was saying but even more horrified that Ms. Jones was saying such things in front of customers at the host stand instead of in the office, Ms. Victor was at a loss for words. Ms. Jones demanded she leave immediately and change or leave and not come back. Ms. Victor left Wally's at 140PM to head back to her apartment via Uber to change. At this point Ms. Victor had not begun driving herself to work and was taking Ubers to and from, which was an additional cost that had been stressing Ms. Victor out. Mr. Duccini who had heard of Ms. Jones decision to send Ms. Victor home to change ensured Ms. Victor that she would be reimbursed for that time but never was.

73. Ms. Victor arrived back to work at 256PM and had changed into a black long sleeve body suit with black jeans and black boots, and was more than highly upset about the entire situation. Upon arriving back to Wally's the entire staff at Wally's took amusement discussing Ms. Victor's situation and everyone kept coming up to her, even staff members she did not

know, making comments like "damn girl, you got sent home for that ass!" Ms. Victor was

absolutely mortified.

74. Defendant Matthew Marciano ("Matt Marciano") had called Ms. Victor over to a

table he was sitting at with his friends and informed her he had heard about what happened. Matt

Marciano then told Ms. Victor his nickname for her would be "tiny". Ms. Victor asked Matt

Marciano why that would be his nickname for her where he responded "because your ass is big

but you are small," and then him and his friends all had a nice laugh at Ms. Victor's expense

while drinking their drinks. Keep in mind, Matt Marciano was drinking while on the clock as a

Manager, a pattern he repeats the entire time Ms. Victor was employed at Wally's. Ms. Victor at

this point had just about enough of everyone at Wally's and of how she was being treated during

this shift. At 930PM, which could not have come soon enough, Ms. Victor's shift had ended and

she went home. On the Uber drive home Ms. Victor realized that this job was going to be very

difficult for her and that she had, in the short amount of time of being employed, been through

more discrimination and harassment than she had ever experienced at a job, ever. Wally's had

begun to take its emotional toll on Ms. Victor and would continue to do so up until her wrongful

termination and continue even further throughout this three year litigation.

75. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this

shift, but does know she was not given any rest or recovery periods.

76. Ms. Victor's next shift would be no different, and the harassment would only

progress. Ms. Jones attempted to send Ms. Victor home yet again for her attire. Ms. Victor

arrived to Wally's at 1PM on March 4, 2019, wearing a black turtle neck jumpsuit with a gold and black belt around her waist for accessory detailing and again had a thick leather jacket with leopard faux fur detailing to wear outside going to and from work. Ms. Jones walked right up to Ms. Victor with her own sweater/cardigan and told Ms. Victor she needed to put her sweater on or leave because her "bottom" was "too much" in the black jumpsuit she was wearing to work. Ms. Victor refused to put on Ms. Jones cardigan and was infuriated by the demand. Ms. Jones threatened that if she didn't cover up her "bottom" then she will be asked to leave work for the entire shift. Ms. Victor was forced to wear her thick leather and faux fur jacket for her entire shift which was eight hours and forty five minutes which caused Ms. Victor to overheat. Ms. Victor received no rest or recovery period which was a pattern repeated every shift she worked for Wally's.

77. Ms. Victor left work at 945PM that evening, again she was upset, humiliated, embarrassed, and retaliated against. All other hostesses wore crop tops, mini skirts, thigh high boots, mesh dresses, bright colors, hoop earrings, everything and anything Ms. Victor could not dare attempt to wear. Ms. Victor was being discriminated against not only for her race and ethnicity but for sex and for her genetic information.

78. Ms. Victor arrived to work on March 6, 2019 at 1PM, she recalls that it had been raining because she wore a rain jacket to work. After the last prior two traumatizing work shifts Ms. Victor decided to wear a simple black long sleeve and black jeans to her shift so Ms. Jones, nor any other manager, could possibly target her for her attire or her body. The restaurant was quiet that afternoon due to the weather.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

79. Ms. Victor went to the ladies room in the back and upon exiting the restroom, to go back to the host stand, Defendant Christian Navarro ("Mr. Navarro"), whom had been sitting next to Defendant Thomas Kachani ("Mr. Kachani"), yelled out to Ms. Victor, "I have been stalking your social media." Ms. Victor walked over to the island table Mr. Navarro and Mr. Kachani had been sitting at and asked Mr. Navarro if he would ask Mr. Marciano and Maurice if she could be a brand ambassador model for GUESS. Remember, Ms. Victor has a large following on social media from doing reality TV and was a brand ambassador model for many brands such as PrettyLittleThing, FashionNova, My Mum Made It, MissGuided, AKIRA, and many more brands, so asking that question to Mr. Navarro was not outlandish. Mr. Navarro laughed at Ms. Victor's request and stated, "Honey, you are not tall, you are not white, you are not skinny, and you are not blonde. You would never be a brand model for GUESS." Both Mr. Navarro and Mr. Kachani laughed at Mr. Navarro's response as if his remark was comedy or humor. Ms. Victor, insulted and disgusted, simply stated "Wow" before deciding not to engage in the conversation any further and walked back to the hostess stand. Can you image how hard it must have been for a black female to be blatantly discriminated against at the beginning of a work shift and be forced to maintain composure, class, and professionalism while suffering internally? It is unimaginable.

80. Around 3PM, Mr. Marciano came into Wally's to prepare for a lunch meeting he had scheduled at Wally's. Mr. Navarro and Mr. Marciano were engaging in a conversation in front of the host stand when Mr. Navarro told Mr. Marciano about Ms. Victor's request and his response to such request and both him and Mr. Marciano bursted out laughing. Mr. Marciano then

confirmed "Sorry you wouldn't model for my brand. Clean the front door glass before my guests arrive." Ms. Victor grabbed windex and rags to do as she was told like a slave. Standing in front of these two men who were still engaging in conversation, Mr. Marciano told Ms. Victor to "clean the bottom of the glass doors", which required Ms. Victor to bend over in front of the two men. She heard nothing but creepy silence behind her as she was doing such. After she was done windexing the doors Mr. Marciano told Ms. Victor that he didn't like her jeans and to not wear them again. Ms. Victor could not believe it. Not only were these black jeans she wore almost every shift to be safe from getting in trouble, but how could there be anything wrong with simple black jeans?

81. There was not a single shift, since Ms. Victor began, where she wasn't getting in trouble for baseless reasons, or walking on egg shells petrified she was going to be harassed. Ms. Victor realized this day, that the Manager Doe who targeted her as a customer prior to her employment must have learned his discriminatory behavior from the owner's and principals directly because Mr. Navarro and Mr. Marciano had absolutely no issue showing their clear prejudice towards blacks, especially black females, to a black female, Ms. Victor.

82. Towards the end of Ms. Victor's shift that evening, Ms. Conrad told Ms. Victor to set up a specific table for Maurice who had been marked down for dinner on the calendar with a party of people. Ms. Conrad had explained to Ms. Victor that Maurice was "Me Too'd" during the "Me Too" movement and was only allowed to come into the restaurant once a month and only with supervision. Ms. Victor could not believe how racist and predatory the owners of the job she was working at were, but again, at the time was desperate for a job and money and

couldn't afford to quit. Ms. Victor left work at 930PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

83. Ms. Victor's next work shift was March 9, 2019, where she arrived to work at 1PM. Ms. Victor had her hair big and curly with added curly hair extensions. Ms. Victor wore different black jeans, a black top, with a gold and black embellished tuxedo jacket, black combat boots, and a red lip. Ms. Jones approached Ms. Victor at the hostess stand and stared at her uncomfortably for a minute or so prompting Ms. Victor to ask, "What?" Ms. Jones stated, "This is the first shift you don't look terrible, good job." Ms. Victor, in shock, just dropped her jaw in amazement at how rude and cruel Ms. Jones was while Ms. Jones simply walked away from the host stand satisfied at her harassment towards Ms. Victor. Ms. Victor worked till 930PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

84. Ms. Victor received her second pay check from Southwest Wine and Spirits LLC on March 15, 2019 for the pay period from 2/25/19 - 3/10/2019.The address on the paycheck was 2107 Westwood Blvd., Los Angeles, CA 90025 and there was no phone number on this check. The check# was 100515280 issued from Bank Of America. The routing number was listed as 06300004, the account number was listed as 00000005505975677,  and the sequence number was listed as 000577840256. Not only was Ms. Victor's missing wages from the previous pay period not applied for this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's. This

check, which was check# 100515280, was only for $533.61, which was not even remotely close

to what Ms. Victor was owed in back pay and current pay.

85. Ms.Victor's next work shift was March 11, 2019, she arrived to work at Wally's at

430PM wearing a black turtleneck long sleeve top, black jeans, and small gold hoop earrings.

Ms. Victor was working alongside Ms. Banks. During Ms. Victor's eight hour work shift, Ms.

Banks confessed to Ms. Victor about her sexual and romantic relationship with Mr. Navarro and

asked Ms. Victor to keep it a secret as their relationship was not allowed. Ms. Banks went into

full details about her sex with Mr. Navarro, her trips with Mr. Navarro, and how she gets upset

about other females, especially those who are also employed with Wally's who were sleeping

with him too. Ms. Victor was taken back by this information but could see how such is possible

as Mr. Navarro had often times approached Ms. Victor discussing her social media and her

photos, highly suggestive commentary.

86. One shift Mr. Navarro had approached Ms. Victor stating he was "shocked" to see

Ms. Victor clothed because she was always "so naked" on her Instagram, a possible remark used

strategically by Mr. Navarro to see if he could sleep with Ms. Victor as he had slept with Ms.

Banks and other females who have been employed at Wally's.

87. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020, which

to Ms. Victor's belief, had been amended and changed strictly because of her lawsuit, as the

entire Handbook, even the dress code section has been altered. At the bottom of the Handbook

given to Ms. Victor by her prior legal counsel in June of 2020 it had a copyright symbol next to

"2019 Ervin Cohen & Jessup LLP" which was not on the original Handbook. If need be Ervin

Cohen & Jessup LLP can be subpoenaed, under oath, under penalty of perjury, to provide the

court exact dates in which the Handbook was amended, which should have been told to all

employee's past and current pursuant to California Labor law.

88. Under this new Handbook Wally's added a section entitled "Conflict of Interest and

Outside Business Activities". This section states the following, "Employees are expected to

avoid any conflict of interest during their employment by Wally's…An employee should

immediately disclose any relationship described in the foregoing paragraph to his or her

supervisor…An employee's failure to disclose any of the relationships set forth in this policy

shall be subject to discipline, up to and including termination." Ms. Banks and Mr. Navarro did

not disclose to anyone of their sexual and/or romantic relationship, in fact, Ms. Banks was

imperative that Ms. Victor keep what she was told confidential to avoid Mr. Navarro and herself

being subjected to any repercussions from said relationship. Mr. Navarro's other relationships

were also not disclosed nor subject to discipline, suggesting that sleeping with your boss allows

you to break the rules and not be subjected to the discipline of such rules. So had Ms. Victor

slept with Mr. Navarro, her boss, who made sexual commentary often, would the harassment,

bullying, retaliation, and discrimination ended? And was such harassment, bullying, retaliation,

and discrimination a result of Ms. Victor not being interested in any man at Wally's, including

Mr. Navarro?

89. This Handbook, the one given to Ms. Victor in June of 2020, also had a section

entitled "Off-Duty Conduct" that was absolutely added into the Handbook after Ms. Victor's

termination. However, this section states the following, "Involvement in off-duty conduct that adversely affects Wally's legitimate business interests or an employee's ability to perform him or her work may result in discipline up to and including termination." Ms. Banks was affected by her off-duty conduct and relationship with Mr. Navarro. Many shift Ms. Banks' mood would be ruined or she would be sad and struggle through her shift because Mr. Navarro had disrespected her, ignored her, or would be all over female customers in front of her during her shifts as a hostess. Due to Mr. Navarro breaking the rules of his company's own Handbook, neither him nor Ms. Banks were disciplined for their relationship that not only affected Ms. Banks but other hostesses around her who had to see her suffer from said relationship.

90. Another female, an employee of the Wally's located in Santa Monica, CA, Martina Nucheva ("Ms. Nucheva"), came into the Beverly Hill's location for dinner and drinks. Ms. Banks was working as well as Ms. Victor during the shift when Ms. Nucheva came into the Beverly Hills location. Mr. Navarro was attentive to Ms. Nucheva, caressing her back, etc., while she was dining at the restaurant. Ms. Banks began discreetly crying at the host stand so Ms. Victor asked Ms. Banks what was wrong. Ms. Banks then pointed to Ms. Nucheva and disclosed to Ms. Victor that Mr. Navarro was indeed sleeping with her too and she hated working while she was in the restaurant and also hated seeing Mr. Navarro interacting with her.

91. In the Handbook given to Ms. Victor in June of 2020 there was a section entitled "Non-Fraternization". This section stated the following, "The company desires to avoid misunderstanding, complaints of favoritism, possible claims of sexual harassment and the employee morale and dissension problems that can potentially result from relationships between

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

employees. Accordingly, all employees, both management and non-management, are prohibited from fraternizing or becoming romantically involved with other employees when, in the sole opinion of the Company, their personal relationships create a potential conflict of interest, cause disruption, create a negative or unprofessional work environment, or present concerns regarding supervision, safety, security, or morale." Further this section states, "In the case where the Company determines, in its sole discretion, that a relationship between two employees… presents an actual or potential conflict of interest, the Company may take whatever action it determines to be appropriate to avoid actual or potential conflict of interest. Such action may include, but is not necessarily limited to, transfers, reassignments, changing shifts, or where deemed appropriate, disciplinary action up to and including possible termination. Employees who have questions about whether a particular romantic relationship violates this policy should contact the Director of Human Resources." Ms. Banks was indeed subjected to favoritism because she was sleeping with the boss, in fact, one shift Ms. Victor covered for Ms. Banks because she went away with Mr. Navarro. Ms. Victor eventually made a complaint to Manager Tatum Jimenez ("Ms. Jimenez"), Manager Christie Baker ("Ms. Baker") whom were all aware of Mr. Navarro's sexual relationships with employees. Again, Mr. Navarro violated the rules of his companies own Handbook to satisfy his own predatory sexual demands.

92. Mr. Navarro often times drank, especially at night, at Wally's. On evenings that he was extremely intoxicated he would walk to the hostess stand and tell the hostesses to keep him away from the females because he didn't want to get in trouble. Mr. Navarro himself knew of

his own capability to become completely out of line and turn to predatory behavior, especially with liquor in his system.

93. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020 also had a section entitled "Equal Employment Policy/Policy Against Discrimination". This section has a paragraph that states, "Managers and supervisors are prohibited from providing favorable treatment to employees with whom they are involved in a consensual sexual relationship (and should consult with the Director of Human Resources regarding any such relationship prior to its inception or as soon as possible)." Again, Mr. Navarro and multiple managers, supervisors, and employees all violated the rules they were meant to follow in the Handbook to satisfy their own sexual needs. Not only did Mr. Navarro target his female employees, he also provided the females that did sleep with him favorable treatment, then advised his managers and supervisors to not report any of his conduct that was clearly known throughout the restaurant. Ms. Victor did not sleep with Mr. Navarro nor any man at Wally's and did not receive favoritism but rather retaliation for not sleeping with Mr. Navarro, other male employees, or the customers the Defendants allowed to harass and assault Ms. Victor. I guess when you are the President and the Principal of Wally's or the Owner you can not only break the rules but tell your employees to not do a thing about you breaking the rules.

94. On March 11, 2019, Ms. Victor worked until 1215AM. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

95. On March 13, 2019, Ms. Victor arrived to work at Wally's at 1PM wearing black

leather pants, black studded boots from EGO, and a black turtleneck bodysuit. Both Ms. Baker

and Ms. Jones felt it necessary to tell Ms. Victor how much they did not approve of her

footwear, but Ms. Victor was not sent home. Ms. Jones called her boots "a hazard" due to the

spike and stud detailing and "ugly". While Ms. Baker walked to the hostess stand and

uncomfortably stared at Ms. Victor's shoes for what felt like a lifetime, finally stating, "those are

interesting." Ms. Victor did not respond to either Ms. Jones or Ms. Baker's disrespect while Ms.

Conrad who has witnessed all of the Ms. Victor's abuse, asked Ms. Victor how she takes it and

said, "I would quit if I were you." Unsure if Ms. Conrad was making that comment on behalf of

the management and employees who have continuously bullied, harassed, discriminated against,

and retaliated against Ms. Victor, so that Ms. Victor would be convinced to quit allowing the

Defendants to avoid a wrongful termination suit, or if Ms. Conrad was genuinely making such

statement in concern and/or disbelief.

96. Ms. Victor left work at 915PM that evening. Ms. Victor to the best of her knowledge,

is unsure when she took her meal break this shift, but does know she was not given any rest or

recovery periods.

97. Ms. Victor worked on March 14, 2019 beginning her shift at 1PM. In the middle of

her shift Manager Walter Merida ("Mr. Merida") came up to Ms. Victor to ask her how she was

doing, concluding the conversation by telling Ms. Victor "to hang in there" and he advised Ms.

Victor to not let Ms. Baker or Ms. Jones get under her skin. Mr. Merida would be the only male

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

employee, manager, supervisor who remained professional throughout Ms. Victor's employment and who did not harass, discriminate against, or retaliate against Ms. Victor whatsoever.

98. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

99. At this point, Ms. Victor began texting Mr. Duccini all her outfits prior to going to work to ensure that she would no longer be told to leave work because of her attire. On March 16, 2019, Ms. Victor texted an image of her outfit, which was a one shoulder long sleeve silver maxi dress and heels, to Mr. Duccini asking if her outfit was "acceptable". Mr. Duccini confirmed that her outfit was acceptable so Ms. Victor headed to work at Wally's and arrived at 1PM. Hours into her shift Ms. Baker approached the hostess stand and told Ms. Victor that she got complaints from women who were in the restaurant about Ms. Victor's attire. Ms. Victor told Ms. Baker that her outfit was approved by Mr. Duccini and was highly confused by her remarks. At this point the weather was warmer and Wally's had their air conditioning on full blast so the establishment was ice cold. Ms. Victor does not wear bras, never has, never will, as she believes that they cause breast cancer. Ms. Baker told Ms. Victor that her "hard nipples" in her clothing were "unacceptable" to "classy" families that were at the establishment dining and that her "nipple rings" were causing women's husbands to stare. Ms. Victor was completely mortified, humiliated, and embarrassed yet again by the management of this company. Ms. Baker told Ms. Victor that she wouldn't be sending Ms. Victor home this time but rather warned her that she better start wearing bra's now that the AC is on and it will be "cold" inside. Ms. Victor told Ms. Baker that she would not be wearing bras due to her beliefs leaving Ms. Baker to shrug her

shoulders prior to walking away from the hostess stand. Ms. Victor then witnessed Ms. Baker

huddle up into a group of other managers and/or supervisors including Ms. Jimenez.

100. Ms. Jimenez, who Ms. Victor relatively got along with, later approached Ms. Victor

and told her that all the managers were looking for any reason to fire Ms. Victor and "hated" that

she worked there, proving that Ms. Victor was right with her assumptions that the management

was harassing her intentionally in hopes that she will quit without having to terminate her, a

termination which would be wrongful any which way they did such as it was fueled with "hate",

coercion, and discrimination.

101. Ms. Victor worked till 930PM that evening. Ms. Victor to the best of her knowledge,

is unsure when she took her meal break this shift, but does know she was not given any rest or

recovery periods.

102.  March 18, 2019 would be another brutal work shift Ms. Victor would be forced to

struggle through. Ms. Victor wore black fitted pants that had a black waist band and white pin

stripe detailing, a white top and gold jewelry. Only about twenty minutes into her shift Mr.

Merida came up to the hostess stand and told Ms. Victor that Ms. Jones wanted to see Ms. Victor

in the office now. Ms. Victor already knew it was going to be about her looks, body, or attire, a

pattern the Defendants repeated during her entire employment. Ms. Victor walked into the back

management office of Wally's and was greeted by Ms. Jones asking the question, "Do you think

you are in a nightclub?" Ms. Victor stated no. Ms Jones continued to state that Ms. Victor "was

in Beverly Hills not a cheap club and her outfit made the restaurant look trashy which was

strictly prohibited." Ms. Jones then continued to insult Ms. Victor by saying, "You don't look like you belong in Beverly Hills". Ms. Victor completely infuriated and at her wits end finally stood up to Ms. Jones and defended her clothes, her body, and her looks, and demanded to file her own complaint about the persistent harassment she had been enduring every shift especially by Ms. Jones and Ms. Baker. Mr. Merida did take Ms. Victor's complaint while Ms. Jones wrote Ms. Victor up for her clothing, but these documents would not be in any of the employment files received by Ms. Victor is 2020 or 2021.

103. Ms. Jones then decided to pull out pictures of GUESS models wearings GUESS, again, and told Ms. Victor "You don't look like them and if you don't start looking like them you will continue to be sent home and written up and your third write up will lead to a termination." Ms. Victor snapped back and told Ms. Jones that she is not a white girl who was tall or slim and she cannot change the way her body is shaped. Ms. Victor was ordered to go home and change or leave and not come back for the remainder of her shift. In tears, Ms. Victor left the back office with Mr. Merida, who told Ms. Victor to "hang in there" and "to not take it personally, it is not personal it is business". No, it was discrimination, harassment, and retaliation.

104. As Ms. Victor was waiting for her car to go home Matt Marciano asked her where she was going and she explained how she was being sent home again for her attire. Matt Marciano told Ms. Victor that he didn't see anything wrong with her outfit but to make Ms. Jones "shut up" it was best to just go home and change. Then Matt Marciano said, in what he thought was a joking manner, "start wearing clothes that don't focus on your ass" then started

laughing. Ms. Victor wanted to quit in this very moment but did not want these people to win so she went home, changed, and came back to finish what felt like the longest shift of her life.

105. Upon arriving back to Wally's, Ms. Victor saw Ms. Conrad who had arrived to work after Ms. Victor had left to change, wearing a crop top, a mini skirt, and thigh high boots. Ms. Victor immediately went up to Ms. Jones and asked her if Ms. Conrad would be sent home for her attire as she was previously and Ms. Victor was more clothed. Ms. Jones told Ms. Victor to worry about herself and not other employees. Infuriated beyond belief, Ms. Victor found Mr. Merida and asked him the same question in regards to Ms. Conrad and her attire. Mr. Merida shrugged his shoulders and said "Remember, it's not personal, it's just business." Ms. Victor stated "No it's racist!" Ms. Victor was the only female employee who got in trouble for her attire while all the Caucasian hostesses never got in trouble for their outfits that barely covered them. Ms. Victor was a target and would continue to be a target until her wrongful termination in June of 2019.

106. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

107. On March 21, 2019, Ms. Victor went to an event with her friend Cassie at Delilah, located at 7969 Santa Monica Blvd., West Hollywood, CA 90046. After the event concluded Ms. Victor and Cassie went to Wally's for a small appetizer and a drink. Employees were allowed to go to Wally's on non-work shifts as long as it was approved by management prior. Ms. Victor got it approved by management to come March 21st and March 22, 2019 to Wally's for an

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

appetizer and drink, which were non-work shifts for Ms. Victor. Ms. Victor had no issues with going to Wally's on March 21, 2019 as Ms. Victor was never treated poorly or discriminated against by Mr. Merida who was the manager on duty that evening.

108. However, on March 22, 2019, Ms. Victor's treatment at Wally's, while attending, on a non-work shift, would be entirely different and per usual… unlawful. Ms. Victor went to Wally's with her girlfriend Cassie prior to their dinner reservation at Mastro's Steakhouse, located at 246 N Cannon Drive, Beverly Hills, CA 90210. Ms. Victor was wearing a grey turtleneck long sleeve dress and snake print thigh high boots. While at Wally's, Ms. Victor and her girlfriend Cassie received a lot of attention from other customers, especially their male customers. Ms. Victor did not stay at Wally's long, however, she did see Ms. Baker meeting with other management, whispering, pointing, and discussing Ms. Victor while she was simply enjoying food and drinks at the restaurant she was employed with. After this date, Ms. Victor was the only employee banned from coming into Wally's on non-work shifts, and was provided no explanation as to why. Ms. Victor knew that such decision was not only based on the constant harassment and retaliation she had received every shift and now non-shift, but because, from the beginning of her employment, Ms. Victor was discriminated against and treated unequal compared to her other co-workers. Co-workers who would be allowed to attend Wally's on non-work shifts for dinner and drinks.

109. On March 24, 2019, Ms. Victor picked up someone else's morning shift as Ms. Victor never usually worked morning shifts. Ms. Victor knew she would be working with Ms. Jones and decided to wear a simple button down top, black jeans, black boots, her hair in a low

pony, and a red lipstick. Ms. Jones just couldn't stop herself from harassing Ms. Victor and made sure to yell at Ms. Victor for something prior to her shift ending. Ms. Jones told Ms. Victor that she should not wear red lipstick to morning shifts as it may give customers the "wrong idea". The wrong idea? How could a shade of lip stick give customers or anyone the wrong idea? Ms. Victor wore red lipstick often to her work shifts at Wally's but this was the first time she had gotten scolded for such. Blatant harassment, retaliation, and discrimination.

110.  On March 29, 2019, Ms. Victor received her third pay check from Wally's for the pay period from 3/11/2019 - 3/24/2019. The check was written out by Southwest Wine And Spirits LLC. The address on the check was 2307 Westwood Blvd., Los Angeles, CA 90025. There was no phone number on this check. The check number was 100515490. The routing number on the check was 06300004, the account number was 00000005505975677, and the sequence number was 000574022361. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's. The check was written out for the amount of $572.06, not even remotely close to what Ms. Victor was owed in back pack and current pay.

111.  On March 25, 2019  Ms. Victor was working the mid afternoon shift at Wally's. Ms. Jimenez approached Ms. Victor and asked her if she was looking for any side jobs to make extra cash, Ms. Victor undoubtedly said yes. Ms. Jimenez said her friend was looking for "bartenders" to work his "private" events and if Ms. Victor would be interested in bartending for any of them, again Ms. Victor said yes. Ms. Jimenez told Ms. Victor she was allowed to leave work early to

go home and get into something "sexier" and to head to her friends mansion to have an interview. So Ms. Victor left her work shift early, headed back to her apartment to change, then headed to an address provided by Ms. Jimenez to meet with her friend for an interview. Upon arriving to the address given to Ms. Victor, she was put into a room to await an interview by Ms. Jimenez's friend. Ms. Victor was hired on the spot and was told she would be working his next event as a trial run to see if it was a good fit for both of them. Ms. Victor ended up working Ms. Jimenez's friends "private" party on April 6, 2019. These "private" events are actually called "poker" nights where celebrities and/or wealthy men come to a mansion to play poker while expecting the women employees at the event to provide them sexual gratification in exchange for poker chips as "tips" or payment. All this information was not told to Ms. Victor by Ms. Jimenez and she was thrown into an extremely uncomfortable situation. Ms. Victor brought her friend Lala Craig ("Ms. Craig") and they were both ordered to sign Non-Disclosure agreements prior to working. Ms. Victor stayed at the bar all night and was horrified to witness women under the table performing actions such as fellatio to men at the poker table. Ms. Victor texted Ms. Jimenez immediately, texts that were given to Ms. Victor's prior legal counsel as evidence, evidence that was intentionally lost by her prior legal counsel in order to help the Defendants conceal more of their unlawful behavior. Ms. Victor told Ms. Jimenez what was going on and Ms. Jimenez told her "to do what was comfortable" for her, meaning perform the sexual favors you are okay performing… which was absolutely NONE for Ms. Victor. Ms. Victor proceeded to tell Ms. Jimenez about how uncomfortable she was and asked her to text her friend to let her leave early. Ms. Victor ended up leaving the party as soon as it became an orgy.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

112. On April 12, 2019, Ms. Jimenez gave Ms. Victor an envelope of cash in the amount of one thousand three hundred and eighty dollars from working her friends poker night. Ms. Jimenez proceeded to tell Ms. Victor not to tell anyone about her side business and advised Ms. Victor to let her know if she had any friends that were "into those type of jobs". While the Defendants and their legal counsel have attempted to accuse Ms. Victor of extortion, prostitution, amongst other things, Ms. Jimenez, a manager of the Defendants establishment, was literally looking to prostitute females for her own cash benefit. Mosley & Associates knew of this information and told Ms. Victor it was an amazing argument they could present in her favor before they conveniently lost all of Ms. Victor's text message evidence. Mosley & Associates eventually told Ms. Victor that she was unable to present nor discuss Ms. Jimenez's actions and illegal behavior attempting to get Ms. Victor or anyone Ms. Victor knows to be sex trafficked at private Hollywood events due to her signing an NDA. This information provided by Mosley & Associates to Ms. Victor was in fact untrue and in complete violation of California State law and a lie. All intentional and malicious actions done in conspiracy with the Defendants were done in order to conceal more and all of the Defendants unlawful, disgusting, predatory behavior. A concealment that allows the Defendants to not be held accountable or legally liable, saving them costs and criminal prosecution.

113. On March 29, 2019, Ms. Victor wore a red and black midi dress, black tights, and black boots to her work shift at Wally's. Defendant Matthew Turner ("Mr. Turner") knew a group of men who were considered "VIP" customers of Wally's. This group regularly came into Wally's and always spent a large amount of money when they did come in. This group of men

always sat in the main dining room of Wally's at a large island table. Mr. Turner would always come into the main dining room to present and attempt to sell, this group of men, expensive bottles of wine or liquor, and often times would be successful at making said sales. This group of men would stay at Wally's for hours and always left the establishment extremely intoxicated.

114. On March 29, 2019, Ms. Victor fell victim to the sexual harassment of these customers, harassment that was not only allowed but encouraged by the Defendants. These men grabbed Ms. Victor's buttocks, arms, and other body parts, and even hollered at her every time she would walk by their table. Mr. Turner took it upon himself to tell the customers of Ms. Victor's Podcast which was entitled "*Swallow It*" leaving the intoxicated customers to begin calling her "Ms. Swallow It" in front of other customers and employees. Ms. Victor told Mr. Turner to tell his little group of friends to stop touching her and he responded by saying "they spend thousands, suck it up." Ms. Victor, in tears, went to the back office to file a complaint that would never make it to the HR department nor her employee file given to her in 2020 and 2021 by her prior legal counsel.

115. The Defendants, through their counsel, have taken pleasure in accusing Ms. Victor of prostitution, yet on nights like March 29, 2019, Ms. Victor was advised by the Defendants to "suck it up" and to be "extra" nice to their VIP customers. Basically, telling Ms. Victor to enjoy their sexual harassment as the harassment makes the customers want to spend more money which is only beneficial for the Defendants. If the customers are convinced they have a shot with Ms. Victor then they will spend more money which works out for the Defendants but makes Ms. Victor suffer. In fact, the Defendants refusal to stop such harassment, their

encouragement of such harassment, and their instructions to Ms. Victor to "take it" and to be "extra" nice to VIP customers, is the equivalent to the Defendants forcing Ms. Victor to behave like a prostitute, where her body is the entertainment, and the Defendants are the ones reaping the reward. Borderline sex trafficking.

116. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

117. On March 30, 2019, Ms. Victor wore a black tube top midi dress, black tights, a gold belt for detail, and black boots to her shift at Wally's. At this point, Ms. Victor had been employed with Wally's for over two months and her tattoo's were never covered nor were they a big secret. However, during this shift Ms. Victor was brought into the back office and told that her shoulder tattoo's showing was "unacceptable", tattoo's that she had displayed more than often. The Defendants were so desperate to get Ms. Victor to quit that they began to nit-pick every little detail of Ms. Victor's being. Whatever they choose to nit-pick was how they would harass, retaliate, and discriminate against Ms. Victor. Why would Ms. Victor's tattoos just now be an "unacceptable" issue for the Defendants but during the prior two months of employment had not been? Malicious and intentional harassment, retaliation, and discrimination by the Defendants to make Ms. Victor suffer. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

118. On March 31, 2019, Ms. Victor wore a black sleeveless turtleneck maxi dress that had slits on the side with combat boots to her work shift at Wally's. Although not sent home, Ms.

Baker asked Ms. Victor if she thought the slits in her dress were "too high". Ms. Victor firmly said no. Management at this point was trying to break Ms. Victor in hopes that she would quit, they were relentless and work had become intolerable for Ms. Victor.

119. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

120. There was a customer who often came to Wally's to just stare and look at Ms. Victor. Prior to his creepy, inappropriate behavior, Ms. Victor exchanged numbers with this man in hopes to establish more business connections for her entertainment and social media career aspirations, Ms. Victor would learn this was a mistake. This man abused the right to contact Ms. Victor, sending her insane and creepy messages and voicemails at all hours of any night. Ms. Victor made the management of Wally's aware of her issues with this customer and asked them, for her safety, to ensure that he was not allowed into Wally's while she was on shift. Management agreed to comply with Ms. Victor's request which she learned was a lie on April 1, 2019.

121. This man came to Wally's on April 1, 2019, while Ms. Victor was working on shift, and was allowed into the restaurant. This man ordered one drink at the bar before standing diagonally across from the hostess stand, where Ms. Victor was, and he just stared at Ms. Victor for over an hour. This man sent Ms. Victor multiple text messages about how a black car would be outside waiting for her when she got off her shift and that she'd "better" get into the car, followed by forty-two more text messages which forced Ms. Victor to block his number.

122. In the Handbook given to Ms. Victor by her prior legal counsel in 2020, it had a section entitled "Physical Security", which states the following: "Security and safety in the workplace is every employees responsibility." "The welfare of our employees and the security of the Company facilities require that every individual be aware of the potential risks. Immediately notify your manager if you see any person acting in a suspicious manner, in or around Company premises." "Our workplace safety program is top priority at the restaurant. We want the restaurant to be a safe and healthy place for employees, customers, and visitors. A successful safety program depends on everyone being alert and committed to safety." "Full cooperation by all employees is necessary for the Company to accomplish its goal of maximizing the security and safety of its employees." Again Ms. Victor was subjected to unequal treatment and accommodations in her own workplace as the Defendants rules for "Physical Security" only applied to anyone but Ms. Victor.

123. Despite Ms. Victor's request to not have this man attend the restaurant while she was working, for her safety, the Defendants allowed him to come. Despite, the other hostesses, servers, and managers that had witnessed this man stand diagonal from the hostess stand for over an hour, stalking Ms. Victor, the Defendants did absolutely nothing to ensure Ms. Victor's safety. It was as though the Defendants took pleasure in watching Ms. Victor being in an uncomfortable and unsafe situation that could have been avoided had the Defendants followed the law and their own Handbook.

124. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

125.  On April 3, 2019, Ms. Victor wore a leopard striped dress, black tights, a black

cardigan, and black boots to her shift at Wally's. Ms. Victor was ridiculed so badly about her

appearance on this day that she actually posted on her Instagram ("IG") story, "I'm not even

remotely close to being in the mood today". At one point Ms. Jimenez told Ms. Victor that the

other management was in the office discussing how her outfit was not "Beverly Hills

equivalent", whatever that even means. The Defendants harassment and retaliation was getting

progressively more intense and worse every work shift as an attempt to try and force Ms. Victor

to give up and quit to avoid a wrongful termination. Not a shift would go by where Ms. Victor

was not subjected to extreme retaliation, harassment, or discrimination but Ms. Victor refused to

let the Defendants win and she refused to quit.

126. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this

shift, but does know she was not given any rest or recovery periods.

127. Ms. Victor received her fourth check from Wally's on April 12, 2019, for the pay

period of 3/25/2019 - 4/7/2019. The check was issued by Southwest Wine & Spirits LLC. The

address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver

City, CA 90232. There was no phone number on the check. However, there was another

company under the name "Payment Solutions Support" listed on the check, additionally. This

company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the

check. When Ms. Victor googled this address the Company that resulted in the search was

Ceridian Tax Service ("Ceridian"), which is a corporation operating under Delaware law. The

holding company for Ceridian was Ceridian HCM Holdings, Inc., which is also a corporation

operating under Delaware law. The check number was 730223195. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000571865394. The check was issued for the amount of $564.73. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

128. Ms. Victor experienced the raft of all Defendants working together to hate, blame, and harass her fully during her work shift on April 12, 2019. Ms. Victor was working the mid afternoon shift, Ms. Conrad, who, as stated previously, was the head hostess, told Ms. Victor to put a customer into the wine room to be sat at the private table. This customer was not a VIP customer of Wally's but Ms. Conrad thought the customer and his friends were attractive and said, "he looks like a black guy with money, seat him in the wine room." Ms. Victor did as she was told, as always. Keep in mind that the only person who was able to make decisions on seating was Ms. Conrad, no one else. The only other, and second, private dining room that was located in the back of the restaurant was also taken by customers.

129. The Jonas Brothers, including Nick Jonas, celebrity musicians and entertainers, soon came into Wally's, surprisingly, with no reservation, looking to be sat somewhere secluded and private. However, both private dining areas were currently filled. Mr. Kachani and all other upper management that was on duty came to the hostess stand freaking out, swearing, and yelling at all of the hostesses about who the random person was in the wine room and who sat them in there. Ms. Victor told management that she had sat the man in there under the orders of

Ms. Conrad, who then denied making such orders, throwing Ms. Victor under the bus. The Jonas Brothers bought a few bottles of wine and then left Wally's due to the dining rooms not being available, which left the Defendants infuriated and somehow Ms. Victor was to blame. Ms. Victor was ordered to go home early for "f&%king up" Wally's opportunity to make a large sale off the Jonas Brothers. Ms. Victor, in tears, left early, shocked at how she was treated for a decision made by Ms. Conrad not herself.

130. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

131. On April 15, 2019, Ms. Victor wore a long red maxi dress, a choker necklace, and combat boots to her work shift at Wally's. Matt Marciano frequently sat on the outdoor patio with his friends and girlfriend on what should have been working hours and they would all drink and get intoxicated. When Ms. Victor arrived to work Matt Marciano in front of his group of friends and girlfriend screamed, "Now Tiny, that ass in that dress!" He then proceeded to call Ms. Victor over to his table where he told Ms. Victor all his friends were still doubting that her "ass" was real. Annoyed Ms. Victor proceeded to go back inside only to be approached by Ms. Jimenez who assured Ms. Victor she didn't have an issue with her outfit but other management had an issue with the "tightness" of the dress on her body because it focused on her "shape". Ms. Victor wanted to scream, this job became a literal nightmare for her. Ms. Victor was not sent home for her attire because the restaurant was too busy but she received unwelcoming looks by management all night every time she left the host stand and walked someone to their table.

132. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

133. On April 17, 2019, Ms. Victor wore red lipstick and lip gloss to her shift at Wally's and was not scolded or yelled at for doing such. Which proved to Ms. Victor that Ms. Jones' prior remarks about her red lipstick was Ms. Jones' personal opinion and bias and not a Company policy or rule that was being unfollowed by Ms. Victor. Ms. Jones' behavior, amongst other individual Defendants was, and has always been, discriminatory against Ms. Victor.

134. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

135. Ms. Victor wore a black dress and combat boots to her work shift at Wally's on April 19, 2019. Upon walking into Wally's, Ms. Victor was greeted by manager and Defendant Jonathan Poulin ("Mr. Poulin") who said, "Must be cold outside huh?" It took Ms. Victor a second to realize that Mr. Poulin was referring to Ms. Victor's breasts as her nipples were hard. Despite Mr. Poulin not only making inappropriate comments about Ms. Victor's breasts and letting it be known he was examining Ms. Victor's breasts, he was not reprimanded for such actions, but Ms. Victor was told never to wear that dress to work again by Ms. Baker. Ms. Baker's personal distain for Ms. Victor and Ms. Victor's protected characteristics caused her to completely ignore a male managers blatant sexual harassment and focused only on Ms. Victor's body in her outfit yet again.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

136. Ms. Victor was not sent home because the restaurant had reservation after reservation that evening, including one for the RYU's. Ms. Ryu, Ms. Victor unsure of her first name, was a VIP customer, an awful one. Every time she came into Wally's she would get drunk and then abuse all the hostesses, calling them ugly, whores, classless, amongst other things. The hostesses, including Ms. Victor, were told to ignore Ms. Ryu's abuse as she was a high paying customer and could do and say as she pleased. Employees of Wally's could be subjected to sexual harassment, sexual battery, discrimination, verbal abuse, etc., as long as the Defendants reaped the reward.

137. Ms. Ryu's son is Royce Ryu ("Mr. Ryu"), who was in Wally's almost every single day, and always left extremely intoxicated. Mr, Ryu will also be the VIP customer the Defendants have attempted to say Ms. Victor solicited for sex despite Ms. Victor barely speaking more than ten words to Mr Ryu during her entire employment. Ms. Ryu's behavior was to be expected but she was exceptionally harsh to Ms. Conrad who fought back tears after being called ugly by Ms. Ryu.

138. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

139. Matt Marciano's drinking during his work shifts or at the establishment on non-work shifts was known by all employees, including Ms. Victor. Matt Marciano was reckless, angry, and a complete mess most of the time when he drank, even if he was the manager on duty. Matt Marciano's girlfriend Bonnie Rotten ("Ms. Rotten") was a pornstar and Matt Marciano would

brag about this often while at the restaurant, he also treated Ms. Rotten… rotten. Abusive in so many ways including verbally, which was triggering for Ms. Victor as she too had been in an abusive relationship.

140. On April 20, 2019, Matt Marciano got drunk on the outside patio and began screaming at Ms. Rotten, unsure over what, but in such a way it was triggering for Ms. Victor. Matt Marciano's behavior caused PTSD in Ms. Victor, making her suffer from a severe anxiety attack while at work. Ms. Victor had to ask to leave work early due to this anxiety attack that was triggered by Matt Marciano's abusive behavior toward's his girlfriend Ms. Rotten, an altercation that was viewed by paying customers as well. This wasn't the first time and it would not be the last time such an altercation happens at Wally's between Matt Marciano and Ms. Rotten or Matt Marciano and any other third party that pissed him off.

141. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

142. Ms. Victor was issued her fifth paycheck from Wally's on April 26, 2019 for the pay period from 4/8/2019 - 4/21/2019. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was

Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730339466. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000477956127. The check was issued for the amount of $627.68. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

143. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this pay period on a print out entitled "Payroll Register Report" which was run by Defendant Nancy Hunter ("Ms. Hunter"). This print out document had the employee information, including social security numbers and earnings, of not only Ms. Victor but other Wally's employees, including Gilleschrist Zamba ("Mr. Zamba"), Jennifer Carmody ("Ms. CARMODY"), and Natasha Marc ("Ms. Marc"). The private information of Mr. Zamba, Ms. Carmody, and Ms. Marc, including their yearly earnings and their social security numbers, was NEVER information the Defendants had legal right to disclose to Ms. Victor and yet they did so carelessly.

144. On April 22, 2021, Ms. Victor wore a blue ribbed dress that had button detailing and boots to her work shift at Wally's. Matt Marciano, Mr. Navarro, and Mr. Kachani were all seated on the outside patio dining area. Matt Marciano called Ms. Victor over to their table and stated how the weather was bringing attention to her "boobs" making Mr. Navarro laugh. Ms. Victor

rebutted by telling them that she had zero control over the weather. Mr. Kachani told her to think about "wearing bras or sweaters on chillier days". Annoyed Ms. Victor went back to the host stand.

145. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

146. On April 27, 2019, Ms. Victor wore a black dress from Motel Rocks that had chain detailing and her Doc Marten boots. This shift was no different than every other shift where she was harassed about her appearance. Ms. Victor was so upset she posted on her IG story, "I need to pray about the anger in my veins tonight." The Defendants were intentionally, unlawfully, and with malice, trying to make Ms. Victor suffer every time she went to work. The Defendants wanted Ms. Victor's work shifts to be insufferable, they wanted her to QUIT.

147. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

148. Ms. Victor wore a black bodysuit, a black cardigan, and black jeans to her work shift at Wally's on May 4, 2019. Even with Ms. Victor having a cardigan on, Ms. Baker still pulled Ms. Victor aside stating that her side "boob" area was still noticeable to customers and advised Ms. Victor to not wear that bodysuit again. Ms. Victor wanted to say, "are you serious?", to Ms. Baker. However, Ms. Jimenez made it known to Ms. Victor about managements plan to get rid of her and did not want to give them an opportunity to do such, so she agreed not to wear the bodysuit again. The harassment, retaliation, and discrimination against Ms. Victor was so

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

evident across the restaurant that servers, bartenders, and other employees, who Ms. Victor barely engaged with or knew, would ask Ms. Victor if she was okay. The Defendants behavior towards Ms. Victor created a hostile environment not equal nor free of harassment or discrimination.

149. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

150. Ms.Victor was issued her sixth check from the Defendants on May 10, 2019 for the pay period of 4/22/2019 - 5/5/2019. The check was issued through Bank of America. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730456378. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000475280373. The check was issued for the amount of $511.37. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

151. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this pay period on a print out entitled "Payroll Register Report" which was run by Ms. Hunter. This print out document had the employee information, including social security numbers and earnings, of not only Ms. Victor but other Wally's employees. This time the employees included Ms. Victor, Ms. Carmody, Ms. Marc, Mr. Poulin, and Marco Osorno ("Mr. Osorno"). The private information of these employees, including their yearly earnings and their social security numbers, was NEVER information the Defendants had legal right to disclose to Ms. Victor and yet they did so carelessly.

152. On May 6, 2019, Ms. Victor wore a black crop top, black jeans, and boots to her work shift at Wally's, she had been working the closing shift that evening. Mr. Poulin was the closing manager that evening. The restaurant was a lot slower than usual and not busy. Mr. Poulin engaged in a conversation with Ms. Victor discussing how he has told other managers to "back off" and they needed to "chill" harassing Ms. Victor about her clothes and body because Ms. Victor would sue them and would have just cause. Ms. Victor thought it was funny that Mr, Poulin made such remarks when he was one of the worst predators employed with the Company. Ms. Victor ensured Mr. Poulin that if their behavior continued and/ or they fired her wrongfully, as she had been warned to expect, then she absolutely would be suing Wally's.

153. It is important to note again, that Mr. Poulin, warned the other Defendants, each of them, to stop their harassment, despite himself being one of the harassers, and even his own suggestion was ignored as their behavior did not seize.

154. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

155. On May 10, 2019, Mr. Turner told Ms. Victor that he had spent a lot of his time watching her YouTube videos and listening to her podcast, which is not something Ms. Victor asked him, or any of the Defendants to do. Mr. Turner brought up Ms. Victor's story about her encounter with NBA player Blake Griffin ("Mr. Griffin"), and told Ms. Victor that he had every intention of asking him about it next time he came into Wally's, Mr. Griffin came in often. Ms. Victor told him "absolutely not" and stated her life outside of work is completely different than here at work nor would it be professional to bother a customer about their past encounter with an employee. Mr. Turner laughed and as he walked away from the hostess stand yelled, "I can't wait". The other hostesses at the stand, curious of Mr. Turners remarks, asked Ms. Victor a million annoying and harassing questions about her personal YouTube videos, videos she never wanted to discuss while at work.

156. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

157. On May 13, 2019, Ms. Victor went to work and was awaiting on Management to give her an answer about having her birthday dinner with her girlfriends in the private dinner room. Multiple employees including Ms. Jimenez and Ms. Conrad had their birthday dinners and engagement lunches in the private dining room so Ms. Victor wanted to enjoy the same luxury with her girlfriends for her birthday. However, Ms. Victor was denied by management to

host her birthday party in the back dining area and was not provided a reason why. This is now the second time Ms. Victor was not offered equal accommodations by the Defendants.

158. On May 17, 2019, the day before Ms. Victor's birthday, upset she had to make new plans after being denied having her birthday dinner in Wally's private dining room, Ms. Victor worked the closing shift at Wally's. Ms. Victor wore a bra for the first time while being employed at Wally's because her shirt was white. Ms. Victor was told by not just one but multiple Defendants, "Wow, wearing a bra for once?", "Wearing a bra? Shocking", etc. That many people, including named Defendants, had been paying such close attention to Ms. Victors breasts that it was noticeable to them when she put on a bra. During this shift Ms. Conrad used Ms. Victor's birthday as an excuse to "celebrate" and by celebrating Ms. Conrad was drinking and taking explicit drugs with customers who were supplying them for her. Ms. Conrad attempted to encourage Ms. Victor to join the celebrating but failed in her attempts.

159. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

160. Ms. Victor's seventh paycheck from Wally's was issued on May 24, 2019 for the pay period from 5/6/2019 - 5/19/2019. The check was issued from Bank of America. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street,

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730575789. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000573739260. The check was issued for the amount of $642.35. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

161. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this pay period on a print out which was run by Ms. Hunter. This print out document had a section entitled "Cash Tips" and someone put on the line that Ms. Victor received $5.00 in cash tips which was an absolute lie, nor did Ms. Victor or any of the hostesses ever report how much tips they made at the end of the evening to management, ever, despite it being California law to do such.

162. On May 23, 2019, Mr. Turner crossed more than enough lines that would call for disciplinary action by the Defendants, yet nothing would be done. Ms. Victor was standing at the hostess stand with the other hostesses, Ms. Baker was also standing at the hostess stand. Mr. Turner approached the hostess stand with a smug look on his face staring at Ms. Victor with disgust. Mr. Turner blurted out, "if I was a manager and I saw your social media you would have never gotten a job here. One look at your social media and you can tell you don't belong in

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

Beverly Hills." Ms. Victor looked at Ms. Baker, who was laughing at Mr. Turners remarks, and asked her to write him up. Ms. Baker refused stating, "he's just joking". Ms. Baker failed to prevent and participated in Ms. Victor's harassment.

163. That same night Mr. Griffin was reserved in the private dinning room, Mr. Turner, prior to leaving the hostess stand told Ms. Conrad that Ms. Victor wasn't allowed to seat Mr. Griffin's table. Upon Mr. Griffin's arrival Mr. Turner went to the door to greet him and his party and while passing the host stand asked Mr. Griffin if he "remembered this psycho". Ms. Victor was not only humiliated and embarrassed, she was pissed. Mr. Turner had NO right. Ms. Victor left her shift in tears, which happened often.

164. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

165. On May 25, 2019, Ms. Victor wore a bright neon lime green, one shoulder long sleeve dress with tights, and boots to her work shift at Wally's. Despite getting more than enough compliments from customers, management again had an issue with Ms. Victor's attire, stating that the color was "distracting" to their guests. Ms. Conrad, amongst other hostesses, always wore bright colors, it was only an issue when Ms. Victor did. Conveniently, for the Defendants, in the Handbook Ms. Victor received from Mosley & Associates in June of 2020, the Defendants changed their entire section in regards to work attire, stating hostesses could only wear neutral colors which was absolutely NOT the case when Ms. Victor was employed, proving fraud.

166. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

167. On May 26, 2019, Ms. Conrad introduced Ms. Victor to a good friend of Mr. Marciano's who was visiting from France and who had taking a liking to Ms. Victor's appearance. Ms. Conrad told Ms. Victor that they were all going to grab drinks at the Highlight Room after the shift had ended and to meet her there. Ms. Victor went home changed and went to the highlight room to meet them all, however, Ms. Conrad, nor anyone else was in site, only this man who was visiting Mr. Marciano from France. Ms. Victor felt tricked and entrapped in what felt like a set up by Ms. Conrad to sleep with Mr. Marciano's friend who was married and had multiple children. Ms. Victor went right home and did not entertain him nor the situation. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

168. June was repetitive but had gotten progressively worse for Ms. Victor, in fact, there was a shift she walked into work and the other hostesses starting hugging her telling Ms. Victor how much they were going to miss her. Confused by such interactions, Karissa Yates ("Ms. Yates"), another hostess, texted Ms. Victor that management had told everyone that she was being fired. Can you imagine how awful it must have been for Ms. Victor to walk into that ambush and hold it together professionally and emotionally for a shift? The Defendants always wanted Ms. Victor fired, for no legitimate reason, other than pure racism, discrimination, and retaliation.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

169. One shift, in June, Ms. Victor was standing beside Ms. Conrad who was wearing a crop top, the type of top that always use to get Ms. Victor in trouble or sent home. A customer arrived at the restaurant and was awaiting to be sat by the hostesses and during her wait began to engage in conversation with Ms. Victor and Ms. Conrad. Prior to the customers table being ready Ms. Conrad had been asked by the customer "how far along are you?", the customer had thought that Ms. Conrad was pregnant. The customer proceeded to say, "I could have never worn crop tops during my pregnancy," then chuckled. Ms. Conrad, upset, told the customer that she was not pregnant and proceeded to tell Ms. Victor where to seat her. Ms. Victor walked back to the hostess stand and asked Ms. Conrad if she was okay as her mood had clearly changed. This is being mentioned to show that Ms. Victor always got in trouble for her outfits while Ms. Conrad did not, even when such outfits of Ms. Conrad's were non-flattering or inappropriate. Ms. Conrad could do as she pleased as the rest of the Defendants. She wore mini skirts, bright colors, low v-neck tops, mesh dresses, thigh high boots, you name it, and she never got sent home to change or written up. Ms. Victor would wear a classy one piece turtleneck jumpsuit and be written up and sent home because her "body" was distracting to "wives husbands".

170. Ms. Conrad had received terrible reviews on Yelp, that described her rudeness and unfriendliness as the front of Wally's. Ms. Conrad with all the Defendants, each of them, organized a meeting with Yelp and paid the women that came in a decent amount of money to get rid of all bad reviews on the Wally's Yelp page, including, the reviews about Ms. Conrad.

171. Ms.Victor received her next pay check, which would be the last time the Defendants issued her a check, on June 7, 2019. The check was issued by Bank of America. Despite this

NOT being Ms. Victor's last check, the Defendants, unlawfully made it so. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was Ceridian HCM Holdings Inc., which is also a corporation operating under Delaware law. The check number was 730695307. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000479928459. The check was issued for the amount of $669.78. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

172.  On June 10, 2019, Ms. Victor was scheduled to work the closing shift at Wally's, however, she would leave early by her own decision, a decision that would be the beginning of the end of her employment with Wally's. Matt Marciano and his girlfriend Ms. Rotten had been sitting in the main dining room, drinking, per usual. They began to argue violently in the middle of the restaurant in front of other employees and customers. Matt Marciano was screaming at the top of his lungs at Ms. Rotten, so loudly that the veins in his neck had swelled up and expanded. Matt Marciano tossed his drink on Ms. Rotten and then choked her out. All employees,

customers, and staff just stood there watching this horrible interaction. Ms. Victor asked the managers on shift if they were going to stop Matt Marciano from hurting his girlfriend, and no one did a thing… NO ONE.

173. Weeks prior to this night Ms. Victor had been on shift when Mr. Kachani, Matt Marciano, and Ms. Baker all got into an argument at the host stand. Matt Marciano who, at the time, was intoxicated on the job, was being yelled at by Mr. Kachani, that his behavior while on the work premises was not acceptable. The two men went back and forth aggressively and angrily in front of the hostesses on shift and Ms. Baker. They did not seize their arguments, not even for customers that were walking in and out of the restaurant. Matt Marciano's behavior did not change, now he was comfortable enough to choke out his girlfriend in the middle of the restaurant.

174. Ms. Victor went to the host stand, explained her severe PTSD to her co-workers, clocked out and left Wally's for the night, refusing to stand by and do nothing like all other management.

175. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

176.  On June 12,  2019, Ms. Victor wore a blue midi turtleneck dress with her hair curled to her work shift at Wally's. Asha Abdella ("Ms. Abdella") was working the morning shift 930AM - 3PM, while Ms. Victor came in to work the 1PM to 9PM shift. Wally's was beyond slow, so Ms. Victor asked Ms. Abdella to take photos of her for her IG, photos that remained

posted on her IG for two years. After Ms. Abdella took Ms. Victor's photos she asked Ms. Victor if she could see how the photos came out. Ms. Victor handed Ms. Abdella her phone to look. Ms. Abdella began scrolling too far in Ms. Victor's camera roll and landed on personal photos of Ms. Victor that exposed her breast area, Ms. Victor immediately snatched her phone from Ms. Abdella. Ms. Abdella began discussing how she doesn't take such photos of herself and Ms. Victor responded "to each their own". However, Ms. Abdella kept going and going and going about the topic which resulted in Mr. Poulin overhearing the conversation and interjecting with the statement, "Tit pics? I used to love getting tit pics when I was single". Mr. Poulin went on and on and on at the host stand about breasts and photos of breasts which was completely inappropriate, unwelcome, and unwanted by both Ms. Abdella and Ms. Victor.

177. This wasn't the first nor the last time Mr. Poulin as well as the other Defendants used the hostess stand to voice their sexual opinions about sexual topics or customers. Mr. Poulin was the king of coming to the host stand to discuss customers that had just come into the restaurant, with comments like "Did you see the rack on her?" Nothing was off limits to Mr. Poulin, a woman's entire physique was up for discussion when he deemed it fit. In fact, there was one afternoon a group of woman had been dining on the outdoor patio and had drank a bit too much. Matt Marciano, Mr. Poulin, and Mr. Navarro were all staring through the host stand window at the group of women, commenting on all of them and what they would do to them, sexually. At one point one of the women's breast fell out of her top and none of her friends let her know. Mr. Navarro, Mr. Poulin, and Matt Marciano lost their minds. Eventually the customer saw the three men disgustingly and creepily staring at her through the window making her

realize that her breasts had fallen out of her top. The three men all jolted away from the window with Mr. Poulin yelling "She caught us!" Followed by all them having a nice laugh over their predatory behavior.

178.  Another instance when Mr. Poulin took it upon himself to have the hostesses listen to him at the host stand was when the actress Amber Meade ("Ms. Meade") came into the restaurant with one of her girlfriends. Ms. Meade was wearing a dark teal mesh and sheer top with no bra so her nipples were exposed. Ms. Meade looked beautiful as Ms. Victor recalls, however, Mr. Poulin focused only on her exposed nipples. The entire hour or two Ms. Meade was at the restaurant Mr. Poulin walked up to the host stand no less than five times talking about her breast and how he "can't stop staring". Making Ms. Victor, the other hostesses, and possibly Ms. Meade, if she overheard, uncomfortable.

179. At the end of Ms. Abdella's shift she hugged Ms. Victor, asked Ms. Victor if they could go out soon, and then left the restaurant. Half way through Ms. Victor's shift, Ms. Jimenez approached Ms. Victor and asked her if she could work on Saturday even though she was not scheduled to work. Ms. Victor said sure and asked who she was covering. Ms. Jimenez explained to Ms. Victor that they planned on making Ms. Abdella work her entire shift on Friday then they were going to terminate her. Ms. Victor, a bit shocked, asked why she was being terminated. Ms. Jimenez responded by stating, "She doesn't fit the vibe of the restaurant." Ms. Victor, disgusted, asked, "You mean she's too black?" Ms. Jimenez laughed and confirmed the reasoning. Ms. Abdella did absolutely nothing to warrant being fired from Wally's, other than being too dark skinned for the Defendants. Ms. Victor firmly believes that they hire ethnic

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

employees to pretend they are hiring enough people to create diversity, however, they intentionally and maliciously would immediately plan how to fire them or terminate them.

180. There was once a mixed race ethnic server, who had loyal customers, and was a great server, however, she stood up for herself when the Defendants came at her wrongfully like they had done to Ms. Victor. One lunch break, when Ms. Victor had been working, this server along with two others had gone next door to the restaurant called Gratitude. Ms. Baker, without the knowledge of the employees, including the ethnic server, told the management of Gratitude to refuse cash and have them pay with their credit cards, which they had done. Ms. Baker then retrieved those credit card statements from the management of Gratitude which showed that the servers had alcoholic beverages on their lunch breaks, terminating all of them on the spot. The Defendants are not new to using deception, fraud, and malice to retaliate against any employees they wanted to get rid of which Ms. Victor would soon fall victim too.

181. On June 12, 2019, Ms. Victor worked her last shift before her wrongful termination. Ms. Victor was called into the office soon after her shift began and Mr. Poulin explained to her that all employees needed to sign a new waiver for taking late meal breaks and she too was require to sign one. Ms. Victor did such, however, this documentation, nor any documentation or complaints would be in the employee file given to Ms. Victor by her prior legal counsel in 2020 or 2021.

182. On June 14, 2019, Ms. Jimenez had texted Ms. Victor to confirm that Ms. Victor would still be covering Ms. Abdella's shift the following day, Saturday June 15, 2019. Ms.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

Victor texted Ms. Jimenez back and confirmed that she would be there for the work shift.  At 4:12pm Ms. Victor received a voicemail on her cellphone from Ms. Baker. In the voicemail Ms. Baker told Ms. Victor that she received a complaint of "pornographic images" that were seen on Ms. Victor's phone and that Ms. Victor was suspended "pending" investigation. Ms. Baker again made sure to say that Ms. Victor was suspended immediately and to not come into her shift tomorrow. Ms. Baker told Ms. Victor that they would give her a call back to let her know how the investigation panned out but "as of right now" Ms. Victor was not allowed to go to Wally's. Ms. Baker ended the voicemail by telling Ms. Victor to give her a call if she had any questions.

183. Minutes after the voicemail was left on Ms. Victor's phone and was listened to, Ms. Victor immediately called the Defendants. Ms. Conrad answered the reception at the host stand and Ms. Victor told Ms. Conrad that it was her. Ms. Conrad immediately said "I am so sorry baby, I can't believe they fired you." Ms. Conrad said fired, not suspended, fired. Flabbergasted, Ms. Victor asked Ms. Conrad if the managers were already telling other employees that she was fired. Ms. Conrad confirmed that it was circulating around the restaurant and everyone was talking about it. Ms. Victor asked Ms. Conrad to transfer her to the office to speak to Ms. Baker. Ms. Conrad transferred the call.

184. Ms. Baker and Ms. Victor got on the phone with one another. Not once did Ms. Baker mention to Ms. Victor that she was on speaker or that there was any other managers present to bear witness to their phone call. Ms. Victor asked Ms. Baker what the ridiculous voicemail was. Ms. Baker told Ms. Victor that she received a complaint from another employee about Ms. Victor having pornographic images on her phone that made the other employee feel

uncomfortable. Ms. Baker then told Ms. Victor that she was suspended pending an investigation. Ms. Victor asked Ms. Baker how an investigation works and what to expect and Ms. Baker provided no information to Ms. Victor whatsoever. Ms. Baker did tell Ms. Victor that she would be contacted once the investigation was complete. Ms. Victor asked if it was Ms. Abdella who made the complaint against her as she was being fired. Ms. Baker confirmed that it had been Ms. Abdella. Ms. Victor attempted to explain what happened with Ms. Abdella to Ms. Baker but Ms. Baker would try and talk over her every other word. Ms. Victor asked Ms. Baker if Ms. Abdella had made a complaint against Mr. Poulin as well, as he was fully engaged in the conversation that made Ms. Abdella "extremely uncomfortable". Ms. Victor asked Ms. Baker if Mr. Poulin was also suspended pending an investigation. Ms. Baker became flustered and agitated with Ms. Victor asking questions that Ms. Victor felt she deserved the answers too. Ms. Baker did not answer any. Ms. Victor then asked Ms. Baker why she was being suspended after one complaint from a disgruntled employee who just got terminated, but not a single person that Ms. Victor filed a complaint against had ever been looked into, written up, suspended, or punished in the same manner as Ms. Victor was for her first and only complaint.

185. Ms. Victor expressed to Ms. Baker her feelings of being targeted and how management, including her, we're all looking for any reason to fire her and that Ms. Abdella's termination and complaint was the perfect way to get rid of the two black girls that "didn't fit the vibe of the restaurant." Ms. Baker did not deny any of Ms. Victor's allegations nor did she answer any of Ms. Victor's questions. Ms. Baker just kept saying that Ms. Victor would be called when the investigation was complete.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

186. It is important to keep in mind that Ms. Baker is the same manager who had stood at the hostess stand and laughed as another employee insulted, degraded, judged, bullied, and humiliated Ms. Victor followed by Ms. Bakers failure to prevent such and failure to report, despite Ms. Victor asking her to report Mr. Turner. Ms. Baker is also the manager who came up to Ms. Victor on several occasions and commented on the Plaintiffs nipples, outfits, social media, how she made mens wives feel, and much more throughout her entire employment. Ms. Jimenez had previously told Ms. Victor that management, including Ms. Baker, wanted Ms. Victor fired from the restaurant because of Ms. Victor's protected characteristics. Ms. Bakers entire motivation to terminate Ms. Victor was fueled and motivated by her own personal judgements and biases of Ms. Victor. Ms. Victor's complaints that she had previously made, often times directly to Ms. Baker that were against Ms. Victor's superiors were never investigated nor reported to the HR department. But Ms. Victor was immediately suspended off a single complaint of an employee who just got fired. Ms. Victor's "suspension pending investigation" was bias, malicious, unlawful, and done with extreme malice. It was a personal attack against Ms. Victor and in no way professional or legal.

187. Ms. Victor demanded the contact information for the HR department, whom Ms. Victor would later learn in this litigation was Ms. Hunter and Defendant Laura Burns ("Ms. Burns"). Ms. Baker refused to give Ms. Victor any email address that was a reliable number for the HR Department. Ms. Baker only provided Ms. Victor with a phone number to call. Once Ms. Victor ended the call with Ms. Baker, she immediately began calling the number provided to her from Ms. Baker for HR. Ms. Victor got the numbers voicemail box and left a voicemail asking to be called back to discuss details of the complaint made against her and to ask why none of her

complaints had ever been handled in this same exact way. Over a period of days, and then weeks, Ms. Victor continued to call and continued to leave voicemails. Till this day, Ms. Victor has never spoken to Ms. Hunter, Ms. Burns, nor anyone from the HR Department. Ms. Victor was never given any answers as to why none of her numerous complaints were taken as seriously as the complaint made against her. There was never an "investigation" against Ms. Victor, it was a simple and blatant wrongful termination based on pure hate and discrimination against her for Ms. Victor's protected characteristics.

188. Ms. Victor had texted Ms. Jimenez soon after Ms. Baker's voicemail was received and let her know that she would be seeking legal counsel and would be suing. Ms. Victor, who had a personal and friendly relationship with Ms. Jimenez outside of work, expressed to Ms. Jimenez her disappointment on how she could allow this to happen to her especially since she is the one who constantly warned her about management wanting to fire her. Ms. Jimenez also complained often about how unethical she thought the behavior of all Defendants was, which now includes herself.

189. Ms. Conrad, later that evening, sent Ms. Victor a long text message, apologetic, and Ms. Victor also let Ms. Conrad know that she would be seeking legal counsel. In one of the many voicemails, that Ms. Victor left for the number provided to her for the HR Department, she had also stated that she would be seeking legal counsel for wrongful termination, sexual harassment, and discrimination, amongst other things. Which gave the Defendants more than enough notice and time to use their power and connections to ensure Ms. Victor's litigation was doomed from the start. For example, they had more than enough time to change their entire Handbook, including the Arbitration section, to ensure that it minimized Ms. Victors opportunity

to have an equal and fair chance at due process and the Defendants could avoid a jury trial where they know Ms. Victor would win on the merits.

190. On June 17, 2019, Ms. Victor contacted attorney Walter Mosley ('Mr. Mosley'), and by July 2, 2019, her retainer to sue the Defendants was signed, which would turn out to be a terrible mistake as Mr. Molsey, Mosley & Associates, The Dominguez Firm ("TDF"), Thompson Coburn, LLP ("Thompson Coburn"), and all attorney's and associates of each firm have been working together since the beginning to ensure the Defendants a quick and cheap litigation. Ms. Victor has NEVER had full and equal access to the judicial system.

191. Ms. Victor has yet, to this day, received her final paycheck nor all back pay, overtime pay, vacation pay, penalties, etc., that is owed to her from the Defendants. But that didn't stop the Defendants, their counsel, Mosley & Associates, and TDF from conspiring together when a copy of the Handbook was emailed to Ms. Victor in June of 2020 which was almost an entire year after she signed a retainer to sue the Defendants. The Defendants and their co-conspirators had doctored fraudulent paperwork in her employee file, that showed two fake payments the Defendants supposably FedEx'd to Ms. Victor after refusing to provide check numbers and Fed Ex tracking information. The Defendants sent a print out for the check they had allegedly sent for the pay period from 6/3/2019 - 6/16/2019 that was issued by Wally's on 6/21/2019 for the amount of $667.44. These fake printed pieces of paper are only evidence in support of Ms. Victor's allegations that the Defendants broke the law, many laws, anytime they deemed it fit, to conceal their unlawful behavior without suffering the consequences and legal liability.

192. The Defendants and their co-conspirators printed out a second piece of paper for a check for the pay period from 6/17/2019 - 6/30/2019. A pay period that began three days after Ms. Victor's wrongful termination and a pay period that Ms. Victor did not work at all as she was told by Ms. Baker to NOT step foot in Wally's, not even to get her final payment nor wages owed in back pay, etc. This print out states that the check was issued on July 5, 2019, almost an entire month after Ms. Victor got wrongfully terminated, and just days after she signed her retainer with Mr. Mosley. This check states that Ms. Victor worked thirteen hours during this pay period and the check was issued in the alleged amount of $172.47. These print outs are entirely fake and having them presented to Ms. Victor was insulting to her intelligence but having them presented in this litigation was fraud on the court. The Defendants have not paid Ms. Victor a single penny she is owed and has gone to extreme unlawful measures to conceal that truth.

193. Emails in the employee file sent over to Ms. Victor by Mosley & Associates containing incriminating evidence against the Defendants trying to not only conceal their wrongful termination but a pathetic and malicious tactic to paint Ms. Victor in a false light. These emails show that the Defendants broke California laws as if doing such was acceptable or normal. Here are just a few of the things said in the emails that are not only contradicting but prove the Defendants broke many sections of law: "I did some digging. It turns out Danielle Victor had shown a few of the hosts naked pictures of herself which in turn had made Asha feel uncomfortable". "I will suspend her this afternoon and send you final check details next week". "I'll cut the check on Monday".  "I told her according to the handbook, we do not tolerate any

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

harassment and take all complaints very seriously". And these are just some of the many lies that the Defendants nor their legal counsel could keep up with or maintain throughout this litigation.

194. Mosley & Associates kept telling Ms. Victor to postpone filing a labor and wage complaint with the Labor Commissioner until Ms. Victor took it upon herself to file such claim on August 9, 2019, which was almost two months since her wrongful termination and non payment of wages, In the employee file given to Ms. Victor in June 2020, Defendants Keith Bjelajac ("Mr. Bjelajac") and Ms. Burns began communication with the Labor Commissioners office with the email of <laborcomm.WCA.LAO@dir.ca.gov> on April 21, 2020. These email correspondence with the Labor Commissioner as well as Ms. Victor's scheduled hearing were almost an entire year after she filed her complaint in the Labor Commissioner's office on August 9, 2019. With that being said, the Defendants had an opportunity to compel arbitration about this dispute and did not, again waiving their legal right to do so, that is why the Defendants and their co-conspirators have gone to outlandish lengths to ensure this case goes to arbitration, even if it got there illegally.

195. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020 had the following sections that were violated by the Defendants themselves: Under *Discrimination and Harassment* the Defendants violated the following sections: *Equal Employment Policy/ Policy Against Discrimination*, *Policy Against Harassment*, *Harassment Training*, *Manager Training*, and *Investigation of Reported Misconduct*. Under *Confidentiality And Conflict Of Interest* the Defendants violated the following sections: *Confidentiality of Business Information*. Under *Payroll Practices* the Defendants violated the following sections: *Pay Days*, *Payroll Corrections*, and *Request for Payroll Records*. Under *Hours Of Operation*, *Work Schedules and*

*Compensation* the Defendants violated the following sections: *Meal and Rest Periods*, *Recovery Periods*, *Time Records*, *Accuracy Of Time*, *Overtime*, *Tip Reporting*, and *Guest Tips*. Under *Personnel Records* the Defendants violated the following sections: *Personnel Records*, *Personnel Data Changes*, and *Confidentiality of Medical Records*.

196. Under Company Policies and Procedures, the section entitled "General Rules of Conduct", the Defendants violated the following conduct: 1) Dishonesty in any form; 7) Unauthorized use of Company equipment, time, materials, or facilities; 9) Use, possession, or sale of unlawful drugs or alcohol while on Company premises, while in a Company vehicle, or while on duty, or reporting to work under the influence of alcohol or any unlawful drugs; 11) Failure to observe safety regulations; 12) Failure to report any unsafe conditions, damage to equipment or machinery, job-related traffic accidents or violations to your manage; 13) Carelessness or negligence while performing duties; 16) Destruction or damage to the property of the Company, another employee, a client/customer, independent contractor, vendor or a visitor; 17) Unlawful harassment, discrimination or retaliation, including sexual harassment, against another employee, a client/customer, independent contractor, vendor or a visitor; 18) Disruptive horseplay on Company time or property; 19) Threatening, intimidating, or covering other employees, client/customers, independent contractors, vendors, or visitors; 20) Insubordination; 22) Disrespect or discourtesy to managers/supervisors, co-workers, and/or clients/customers; 23) Failure to immediately and properly report a job-related injury, no matter how minor; 24) Making or receiving excessive personal telephone calls or text messages, other than emergency calls, during working hours; 25) Falsifying, altering, destroying, or willfully omitting information from any time card or Company record (including employment

applications); 28) Using the confidential information of a prior employer for your own or the Company's benefit; and 32) Improper use of and/or failure to use timecards appropriately. Under this same Chapter the sections Discipline, Alcohol And Drug Policy, Social Media Policy were all violated by the Defendants.

197. The entire section entitled "Employee Appearance" was changed in its entirety prior to it being given to Ms. Victor by her prior legal counsel in June of 2020. However, the portion entitled "Reporting Unsafe Conditions" was violated by the Defendants.

198. Under *Alcohol and Service Policies*, the defendants violated the following sections: *Alcohol Service Policies*, *Alcohol Awareness Policy*, and *Intoxicated Guests*.

199. The Defendants violated *Vacation* and *Vacation Pay* sections of their own Handbook, as well as *Sick Leave*. The entire portion of the Handbook in regards to The End of the Employment Relationship was violated by the Defendants. In conclusion, their entire arbitration portion of their handbook, its rules and regulations, has never been enforceable, yet here this case is, being held unlawfully in arbitration, soon to be removed from such arbitration.

200. Ms. Marc had contacted Ms. Victor and told her that several employees, including bus boys, servers, and bartenders were being sat down and coerced by the Defendants to allege that Ms. Victor would walk around the restaurant showing off private videos and body parts. Ms. Victor had given this text message evidence to Mr. Mosley and his associates whom had told Ms. Victor, conveniently, that they lost such evidence right before Ms. Victor terminated their legal services for extreme unethical misconduct.

201. A week after Ms. Victor's "suspension pending investigation", Ms. Victor's twin sister Gabrielle Victor ("Gabi" or "twin sister") and Gabi's son Marcellus Victor ("Marcellus" or

"nephew"), came to visit Ms. Victor in Los Angeles. They had gone to the Whole Foods located in Beverly Hills a few streets over from Wally's. While they were walking out of Whole Foods, Mr. Zamba had been walking into Whole Foods in his Wally's uniform, clearly on his lunch break. Ms. Victor had a friendly yet uncomfortable and humiliating encounter with Mr. Zamba as he apologized to her for what had happened and confirmed the entire restaurant was discussing her "pornographic images". Not only did the Defendants coerce almost the entire staff at Wally's but they defamed Ms. Victor by telling everyone her private business in regards to her employment. Their unlawful behavior never seized, not even after she was wrongfully terminated.

202. Ms. Victors prior legal counsel withdrew her Labor Complaints from the Labor Commissioners office without her knowledge, consent, or signature in May of 2020 to help the Defendants.

203. Ms. Victor's prior legal counsel, intentionally, delayed the filing of Ms. Victor's complaint over an entire year to try and ensure the Defendants could not be liable for certain laws they most definitely broke by given them the chance to claim affirmative actions. Such affirmative actions that only worked in the Defendants favor because Ms. Victor's prior legal counsel intentionally, maliciously, and recklessly waited to file her complaint. Ms. Victor's prior legal counsel and the Defendants needed the statute of limitations to be in affect for more than half of Ms. Victor's causes of action. Intentional actions taken to conceal the Defendants unlawful conduct and steps necessary to ensure the Defendants avoid legal liability and accountability for such unlawful conduct.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

204. The California Department of Human Resources divides progressive discipline into two phases, the "corrective phase" and the "formal adverse action" phase. In the corrective phase Ms. Victor had the right to be made aware of performance deficiencies and given an opportunity to correct them. During the formal adverse action phase, Ms. Victor should have had the right to respond to Wally's Human Resource department and also the chance to appeal to the State Personnel Board.

205. The State employer must provide due process before it can deprive an employee of their property, in this case, Ms. Victor's pay, back pay, overtime pay, etc., are her property. Wally's should have provided Ms. Victor a written notice that fully explained the adverse action, which was her "suspension pending investigation", a minimum of five days prior to the date of the adverse action which would have been Sunday June 9, 2019, since the adverse action took place on June 14, 2019. Ms. Victor had worked with her co-worker and also terminated employee of Wally's, Ms. Abdella, on June 12, 2019.

206. In some emails in the employment file given to Ms. Victor by her prior legal counsel in June of 2020, it was stated that Ms. Abdella made her complaint on June 12, 2019, and other emails state that she made her complaint on June 14, 2019 while she was being terminated. Either way a written notice should have been made immediately and given to Ms. Victor so that she could have responded to the charges at a Skelly hearing. Ms. Victor was never informed that she had the right to appeal to the State Personnel Board nor did she have a clue of the State Personnel Board's existence prior to legally representing herself. Ms. Victor was never informed that she had the right to inspect any and all evidence upon which the employer relied to take the adverse action against her.

207. The most simple minimum due process rights that Ms. Victor should have been granted, including the right to a Skelly hearing, were denied to her. Ms. Victor must have received a notice of proposed discipline from Wally's, however, all she received was a voicemail from Ms. Baker on June 14, 2019. A proper notice needed to identify the specific rule or policy that Ms. Victor had violated that warranted a suspension and an investigation. A proper notice must have had a factual basis for taking disciplinary action. A proper notice must have been served with all documents, including a signed complaint from Ms. Abdella and her accusations against Ms. Victor, that warranted Wally's to take such disciplinary action. A proper notice must have included the effective date of the discipline. And lastly, a proper notice must have provided Ms. Victor with a deadline to any response to their claims. NONE of this was done properly or at all by the Defendants, therefore denying Ms. Victor her rights to defend herself, a repeated pattern that has been continued throughout this entire bias, prejudicial, and unethical litigation.

208. Defendant's cannot provide the Court a substantial motivating reason for any behavior or actions done by Ms. Victor that contributed or led to her being "suspended pending investigation". However, Ms. Victor can clearly prove to the Court and to the Public that such adverse action taken by the Defendants was solely discriminatory and that their decision to suspend Ms. Victor was based on her protected characteristics and the Defendants hate for Ms. Victor for her protected characteristics. "While a complainant need not prove that racial animus was the sole motivation behind the challenged action, he must prove by a preponderance of the evidence that there was a "casual connection" between the employee's protected status and the adverse employment decision.'" (Clark v. Claremont University Center (1992) 6 Cal.App.4th 639, 665 [8 Cal.Rptr.2d 151]). "Substantial motivating reasoning has been held to be the

appropriate standard under the Fair Employment and Housing Act to address the possibility of both discriminatory and nondiscriminatory motives. (Harris v. City of Santa Monica (2013) 56 Cal.4th 203, 232.)

209. The Defendants all rallied together, and often, to figure out a plan that could be executed successfully, where the end result would be the Plaintiff's permanent exit from the company. Whether it would be from getting the Plaintiff to quit voluntarily by intentionally and maliciously being persistent in ongoing harassment, hostile bullying, or any other reason they could fabricate a termination.

210. The Defendants and their legal counsel did and continue to make false and malicious statements about the Plaintiff, her work ethics, and her morals, a prime example is when the Defendants told the entire staff why Ms. Victor was terminated, how they were "glad" she is no longer employed at Wally's, working with her was a "nightmare", etc. The Defendants had been targeting and retaliating against Ms. Victor for multiple different reasons: The women working in management and other female staff members, for their own personal bias, racism, discrimination, or possible envy. The men working in management and other male staff members for the Plaintiff showing zero interest in sexual advances, sexual derogatory comments, and for complaining and having a voice that became more vocal, each and every time Ms. Victor felt uncomfortable in the work environment at Wally's.

211. CA Labor Code §215 states that "any person, or the agent, manager, super intendant or officer thereof, who violates any provision of section 201.3, 204, 204b, 205, 207, 208, 209, or 212 is guilty of a misdemeanor." The Defendants violated section 204, 204b, and 208, making them guilty of multiple misdemeanors.

212. CA Labor Code §216 states, "in addition to any other penalty imposed by this article, any person, or any agent, manager, superintendent, or officer thereof is guilty of a misdemeanor, who… had the ability to pay, willfully refuses to pay wages due and payable after demand has been made." Which was the Defendants on multiple occasions, who, to this day, have refused to pay the wages owed to Ms. Victor.

213. And those who "falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself, his employer, or other person, any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due." The Defendants along with all co-conspirators and all other known and unknown defendants; helped one another, and each other, to deny, oppress, annoy, harass, and hinder, Ms. Victor from obtaining the debt she is owed. They are also all guilty of bringing fraud upon the court and are all equally guilty of misdemeanors.

214. During Ms. Victor's employment at Wally's she got in trouble multiple times, both verbal complaints and written complaints, for her dress code and in return to these corrective actions, Ms. Victor also filed both written and verbal rebuttal's to management's complaints, especially the ones that violated Wally's own Handbook directly discriminating against her.

215. When Ms. Victor received a copy of her Employee file in 2020 by Mosley & Associates, there were no copies of her written write ups nor her rebuttals, and most importantly no copies of any of her written complaints against several different managers.  All of these are required to be placed in any employees official personnel file and yet the Defendants had and have no copies and a clear lack of care to provide such documents during this entire litigation.

216. Ms. Victor is informed and believes that Mr. Marciano is affiliated and is a manager of a business under the name of Palma Fiduciary, LLC, which begs the question, what fiduciary's are associated with this business and so affiliated with Mr. Marciano, principal of Wally's and a defendant in Ms. Victor's litigation, which would violate CA Labor Code section 226.6.

217.    On over a dozen occasions, Ms. Victor, especially when working the closing hostess shift, took her meal breaks after peak busy hours, resulting in her taking such break past the five hour deadline. In the Wally's phone app, where managers could contact employees, Ms. Victor was often told her meal period would be changed to reflect an earlier time for her break to help Wally's avoid any penalties with their HR department, not understanding such request at the time, and in fear of more retaliation and losing her job, Ms. Victor told them every time that such change was fine by her.

218. CA Labor Code Section 246.5, subdivision (b), states, "*an employer shall not require a condition of using paid sick days that the employee search for or find a replacement worker to cover the days during which the employee uses paid sick days.*" Ms. Victor herself, picked up multiple shifts that were the shifts of other hostesses who asked Ms. Victor to work for them in replacement of themselves in order to use a sick day. The Defendants would not allow their employees to call out without being penalized for such actions unless they could find someone else to cover their shift, in violation of this Section and also against subdivision (c)(1) which states, "*an employer shall not deny an employee the right to use accrued sick days, discharge, threatens to discharge, demote, suspend, or in any manner discriminate against an employee for using accrued sick days, attempting to exercise the right to use accrued sick days,*"

*filing a complaint with the department or alleging a violation of this article, or opposing any policy or practice or act this is prohibited by this article.*" Not only did Ms. Victor witness her co-workers being forced to go against this Section, but for years now, Ms. Victor herself has been retaliated against by the Defendants for her repeated attempts to report violations of this Section made by the Defendants. Paragraph (2) of this section further states, "*there shall be a rebuttable presumption of unlawful retaliation if an employer denies an employee the right to use accrued sick days, discharges, threatens to discharge, demotes, suspends, or in any manner discriminates against an employee…*"

219. During Ms. Victor's employment with the Defendants, artist and celebrity Post Malone ("Mr. Malone") attended the restaurant and had a dinner party in the private dinning area. When his dinner concluded, he left a tip of $60,000 which was advised to be split evenly amongst all employees of the restaurant whom were working that evening, which included Ms. Victor who had been working the host stand. Everyone who had been working that night received their portion of the tip that was given by Mr. Malone, except Ms. Victor, who to this day, has never received her portion of the tip owed her from that evening, which was obligated to be given within the next regular payday.

220. Ms. Victor, many times, worked, and is owed, compensation for overtime pay, which has still yet to be paid by the Defendants.

221. Almost every single work shift that Ms. Victor had worked at Wally's, she was harassed by management or other employee's about her personal social media accounts or her podcast entitled "Swallow It." In fact, multiple times, management, or Wally's principal, Mr. Navarro, would approach Ms. Victor, pulling up an image of her from her personal social media

page(s) to harass Ms. Victor. Mr. Navarro, amongst others, also, would make comments about "stalking" Ms. Victor's social media, while liking all of, what the Defense Counsel referred to as, "Ms. Victor's "half dressed" photos" or "adult content". Mr. Navarro had left comments on Ms. Victor's social media content such as the fire flame emoji or drool face emoji that have an underlying sexual tone.

222. Ms. Victor's social media was a topic of conversation amongst all employees of Wally's and was one of the main reasons management, especially Ms. Baker and Ms. Jones, targeted and retaliated against Ms. Victor in hopes that she would quit her job and they could avoid a wrongful termination lawsuit. Comments made by management and other employees were always in front of other staff and other management and despite Ms. Victor making multiple complaints about her social media becoming an everyday topic at work, nothing was ever done to stop the harassment.

223. Ms. Victor never received a written notice when the Wally's Handbook was changed and amended. Ms. Victor was never given a written notice with Wally's "doing business as" business names, in fact, Ms. Victor did not even know that Wally's went by the legal entity name of *Southwest Wine & Spirits, LLC*; nor did Ms. Victor know that *Southwest Wine & Spirits, LLC* **was a limited liability company doing business under Delaware law**, until she began representing herself and doing her own research. In fact, Ms Victor's prior legal counsel filed her complaint in the Los Angeles Superior Court naming *Southwest Wine & Spirits, LLC, a California limited liability company*, as a defendant, which is false and incorrect information. Technically, right now, Ms. Victor's lawsuit is suing no one. And upon doing her own research Ms. Victor discovered that *Southwest Wine & Spirits, LLC, a Delaware Limited Liability*

*Company* also does business as *Mel-Jen* and *Wally's Auction House, LLC*. Southwest Wine & Spirits, LLC*,* the location in California, is a foreign branch of the Delaware limited liability company, licensed to do intrastate business in California. All this information was information Ms. Victor discovered  only after being forced to represent herself in her own litigation. This was **not** information given to her as an employee from her employer. Wally's is actually a trademark name for Southwest Wine & Spirits, LLC, not a real business name.

224.  Ms. Victor had been denied the right to amend her complaint by both Judge Yolanda Orozco and arbitrator Judge Miller and therefore denied the opportunity to tell the court of each and every time the Defendants allowed themselves or their customers to make physical invasions and physical intrusions of sexual nature while Ms. Victor was working as a hostess. Ms. Victor was denied the right to tell the court or a jury of her peers about each time she had to tell a customer of Wally's to not touch her bottom or her breasts after the customer was encouraged to do so by management.

225. Throughout this litigation multiple emails and documents have been presented that were made on the basis of fraud. For example, the two fabricated and fraudulent pay stubs created by the Defendants to argue that Ms. Victor received her last pay check and missing wages, when she indeed never received what she is owed. Multiple decisions made by the Defendants and their counsel were made fraudulently that would intentionally lead to Ms. Victor's complete duress. The stipulation to bind this case to arbitration was not only a mistake but was fraud, amongst many other legal documents, making the Defendants in violation of CA Civil Code §1567.

## CONTINUING VIOLATIONS DOCTRINE

226. Any, and all conduct by the Defendants, each of them, constitutes, or is part of acts of illegal harassment, discrimination, and/or retaliation, and which predates any applicable statutory period, occurred in such a way as to be subject to the continuing violation doctrine. All Defendants are liable for the entire course of conduct of each Defendant, including those acts that predate any applicable statutory period (if there were any). The conduct occurred within a year of the date that Ms. Victor's prior legal counsel filed a complaint with the DFEH and was similar or related to the conduct that occurred earlier; the conduct was reasonably frequent; and the conduct had not yet become permanent.

### STATUE OF LIMITATIONS

227. CA Government Code section 19635 allows all of Ms. Victor's claims in this action to be valid, "*adverse action based on fraud, embezzlement, or the falsification of records shall be valid, if notice of the adverse action is served within three years after the discovery of the fraud, embezzlement, or falsification.*" Only after Ms. Victor was forced to represent herself in the Summer of 2021 did she discover that her entire litigation against the Defendants was based on fraud, including falsified records and documents, which was done to help the Defendants not lose their money or their "reputation", after a jury trial where Ms. Victor would have most definitely won on the merits. Had Ms. Victor's prior legal counsel, Mosley & Associates filed her complaint in July of 2019 like they were suppose to, but intentionally did not, due to fraud, then there would be no argument on the statue of limitations by the Defense. Ms. Victor realized the fraud, embezzlement, and falsifications and is amending her complaint and allegations in the valid three year window of time.

### FIRST CAUSE OF ACTION

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

## FAILURE TO PAY ALL WAGES DUE AT THE TIME OF SEPARATION FROM EMPLOYMENT
### (IN VIOLATION OF CA LAB CODE §201 & §203)
### *AGAINST ALL DEFENDANTS*

228. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

229. CA Labor Code §201, violated by the Defendants, promises every employee that an employer is obligated, at the time of discharge, to pay the employee all wages, earned and unpaid, immediately. An employer is also obligated to pay an employee, **immediately**, upon separation of employment, all compensation due, wages the employee is entitled too.

230. The Defendants did not pay Ms. Victor at the time of her "suspension pending investigation" all compensation due immediately, nor was Ms. Victor ever paid such wages. Nor was Ms. Victor paid, immediately, or ever, accumulated vacation time which she was entitled to.

231. Ms. Baker called Ms. Victor on June 14, 2019, explained that she was suspended effective immediately pending an investigation and told Ms. Victor multiple times that she was **<u>NOT</u>** allowed to come to Wally's but rather Ms. Victor would be contacted when an investigation was completed. Ms. Victor was not contacted ever again by the Defendants nor was she given all compensation owed to her immediately, or ever, which is in violation of CA Labor Code section 201.

232. CA Labor Code §203 states:

*"If an employer willfully fails to pay without abatement or reduction, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action thereof is commenced; but wages shall not continue for more than 30 days."*

233. The Defendants willfully and intentionally failed to pay all wages owed to Ms. Victor. The Labor Commissioner, through Deputy Commissioner Cathy Ray ("Deputy Ray"), in her full capacity, and Deputy Commissioner Francisco Delacruz ("Deputy Delacruz"), in his full capacity, allowed such actions to willfully take place and the non payment of all wages owed to Ms. Victor has now gone unpaid for over three years.

234. By failing to compensate Ms. Victor and by failing to pay Ms. Victor her earned vacation wages immediately upon discharge, the Defendants have willfully failed to make timely payment of full wages due to their employee who was separated from employment in violation of CA Labor Code section 201.

235. As a consequence of the Defendants willful failure to timely pay all wages due, Ms. Victor is entitled to up to a maximum of thirty (30) days' wages pursuant to CA Labor Code §203. Ms. Victor is also entitled to all available statutory penalties, together with interest thereon, as well as other available remedies.

236. As a direct result of the Defendants unlawful actions and omissions, Ms. Victor has been deprived of compensation in an amount according to proof at the time of trial, and is entitled to the recovery of such amounts, plus interest thereon.

237. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

238. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame,

humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

239. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, or employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

240. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

241. WHEREFORE, Ms. Victor requests judgement as is further set below.

<u>**SECOND CAUSE OF ACTION**</u>
**FAILURE TO PAY WAGES IN A TIMELY MANNER**
**(VIOLATION OF CA LABOR CODE §201, §204, §210, §246, §2926)**
**(VIOLATION OF CA GOVERNMENT CODE §19839 §19840)**
*AGAINST ALL DEFENDANTS*

242. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

243. As stated above, CA Labor Code section 201 requires an employer who discharges an employee to pay all compensation due and owed to the employee immediately upon the employee's discharge from employment.

244. CA Labor Code section 204 promises employees that all wages earned for labor in excess of the normal work period must be paid to the employee, no later than the payday for the next regular payroll period. Employers also need to state on the paystub with such corrections, the inclusive dates of the pay period for which the employer is correcting its initial report of hours worked. Such corrections must not be paid more than seven calendar days following the close of the payroll period.

245. Every single pay check that Ms. Victor received from the Defendants was short hours, therefore short the correct amount of compensation owed to Ms. Victor. Management would ask all employees, not just Ms. Victor, if they could add any missing hours to the next paycheck to help the company avoid penalties. Ms. Victor was never paid by the Defendants for any missing hours and wages, in violation of section 204 of the CA Labor Code.

246. CA Labor Code Section 246, subdivision (a), paragraph (1) states:

"*An employee who, on or after July 1, 2015, works in California for the same employer for 30 or more days within a year from the commencement of employment is entitled to paid sick days as specified in this section.*"

247. CA Labor Code Section 246, subdivision (b), paragraph (1) states:

"*An employee shall accrue paid sick days at the rate of not less than one hour every 30 hours worked, beginning at the commencement of employment.*"

248. CA Labor Code Section 246, subdivision (c) states:

"*An employee shall be entitled to use accrued paid sick days beginning on the 90th day of employment, after which day the employee may use paid sick days as they are accrued.*"

249. Ms. Victor began working for the Defendants on February 15, 2019, making ninety days after the commencement of her employment May 15, 2019, in which she should have been

able to use her accrued sick days. Ms. Victor never used a single sick day during her

employment with the Defendants and is owed compensation for her accrued sick days.

250. CA Labor Code section 2926 states:

"*An employee who is not employed for a specific term and who is dismissed by his employer is entitled to compensation for services rendered up to the time of such dismissal.*"

251. CA Government Code section 19839 states:

"*Upon separation from service without fault of his or her part, a person is entitled to a lump-sum payment as of the time of separation from any unused or accumulated vacation or annual leave or for any time off to which he or she is entitled.*"

252. CA Government Code section 19840, subdivision (a), states:

"*Any time off to which an employee is entitled by reason of overtime worked prior to June 9, 1948, may be compensated by a lump sum payment in a manner provided in section 19839 at any time prior to the separation of the employee from service or upon such separation. Payment shall be at the rate established for the position as of the date of payment or the date of separation as the case may be.*"

253. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants intentionally, maliciously, and willfully failed to timely pay all compensation and accrued wages owed to Ms. Victor upon her discharge.

254. By failing to compensate Ms. Victor, as required by law,  the Defendants have willfully failed to make timely payment of full wages due to its employees who have been discharged.

255. Pursuant to CA Labor Code section 210, the failure to pay wages to employees, as required by law, subjects the employer or person that failed to pay such wages to a civil penalty of one hundred dollars ($100) for each failure to pay each employee for any initial non-willful and non-intentional violation, and a civil penalty for any subsequent violation or any willful or

intentional violation of two hundred dollars ($200) for each failure to pay each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee.

256. The Defendants failure to pay the required minimum wages, including but not limited too, rest period premium pay, and overtime wages to Ms. Victor on the pay days for which such wages were due, violated the requirements of this statue, and these violations were willful and intentional, thereby subjecting the Defendants to civil penalties pursuant to section 210 of the CA Labor Code from June 14, 2019 going forward, in the amount of two hundred dollars ($200) for each failure to pay Ms. Victor said wages on the required pay day, plus twenty-five percent (25%) of the amount unlawfully withheld from Ms. Victor.

257. Further, the Defendants violated, and continue to violate CA Labor Code section 2926 by failing to compensate Ms. Victor for services rendered up to the time of dismissal or quitting.

258. In addition, Ms. Victor was not paid all wages owed upon termination of employment. Although CA Labor Code sections 202 and 2927 require an employer to pay an employee within 72 hours all compensation for services rendered up to the time of quitting, Ms. Victor has still not been provided with all or any of her final pay for all wages due and owed, including premium and overtime pay, in an amount according to proof.

259.  As a result of the Defendants unlawful actions and omissions, as alleged herein, Ms. Victor has sustained economic damages, including, but not limited too, unpaid wages and lost interest in an amount to be determined at trial.

260. As a result of the Defendants unlawful actions and omissions, as alleged herein, Ms.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

Victor is entitled to all available statutory penalties, together with interest thereon, as well as other available remedies.

261. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

262. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

263. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

264. Lastly, Ms. Victor is entitled to any further equitable relief this Court may deem just and proper.

265. WHEREFORE, Ms. Victor requests judgement as is further set below.

## THIRD CAUSE OF ACTION
### FAILURE TO PAY WAGES AT PLACE OF DISCHARGE
### (VIOLATION OF CA LABOR CODE §208)
### *AGAINST ALL DEFENDANTS*

266. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

267. CA Labor Code section 208 states:

"*Every employee who is discharged shall be paid at the place of discharge. All payments shall be made in the manner provided by law*."

268. Ms. Victor was not paid at Wally's, by Wally's, or ever. In fact, Ms. Baker told Ms. Victor that she was **not** allowed at Wally's and that they would be in touch with her after an investigation was concluded following her "immediate" suspension. Ms. Victor was not contacted after this pretend investigation. Ms. Victor was never officially terminated nor was she ever paid her owed wages, at Wally's or by Wally's, in violation of section 208 of the CA Labor Code.

269. The Defendants did not make payments to Ms. Victor in the manner provided by law, intentionally and maliciously, in violation of the CA Labor Code mentioned above.

270. The Defendants did not pay Ms. Victor the compensation she was owed, including accrued wages, at Wally's, which would have been the place of discharge, in violation of section 208 of the CA Labor Code.

271. As a result of the Defendants unlawful actions and omissions, as alleged herein, Ms. Victor is entitled to all available statutory penalties, together with interest thereon, as well as other available remedies.

272. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

273. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame,

humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

274. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

275. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

276. WHEREFORE, Ms. Victor requests judgement as is further set below.

## FOURTH CAUSE OF ACTION
### FAILURE TO FURNISH WAGE AND HOUR STATEMENTS
### (VIOLATION OF CA LABOR CODE §226, §226.3, §226.6, §247.5, §558.1 §1198.5, §1174.5, §1175)
### *AGAINST ALL DEFENDANTS*

277. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

278. CA Labor Code section 226, subdivision (a), states:

*"An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by*

*the employee, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid,  (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, "copy" includes a duplicate of the itemized statement provided to an employee or a computer generated record that accurately shows all of the information required by this subdivision.*"

279. CA Labor Code section 226, subdivision (b), states that employees, both current or former, are allowed to inspect and receive a copy of their records from an Employer upon a reasonable request.

280. CA Labor Code section 226, subdivision (c), states that an employer, after receiving a written or oral request from a former employee, must comply with such request no later than twenty-one (21) days after the request was made, and a violation of this subdivision is an infraction.

281. CA Labor Code section 226, subdivision (e), paragraph (1) states:

"*An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.*"

282. CA Labor Code section 226, subdivision (e), paragraph (2) states:

**(A)** "*An employee is deemed too suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.*"

*(B) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:*

*(i)   The amount of the gross wages or net wages paid to the employee during the pay period or any of the information required to be provided on the itemized wage statement…"*

*(ii)  Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period.*

*(iii) The name and address of the employer.*

*(iv) The name of the employee and only the last four digits of his social security number or an employee identification number other than a social security number."*

282. CA Labor Code Section 247.5, subdivision (a), requires that an employer keep, for at least three years, all records that documented the hours an employee worked and paid sick days that the employee had accrued or had been used by an employee, which should be made available to the employee. If an employer does not maintain adequate records, pursuant to this section, then the employee is entitled to the maximum number of hours accruable under this article.

283. The Defendants did not keep, nor provide, at any time, accurate, or detailed records of and to Ms. Victor, Ms. Victor thereby is entitled to the maximum number of hours accruable under this article.

284. The Defendants knowingly and maliciously failed to provide Ms. Victor with timely and accurate wage and hour statements showing the inclusive dates of the pay period, gross wages earned, total hours worked, all deductions made, net wages earned, the name and address of the legal entity employing her, all applicable hourly rates in effect during each pay period, and the corresponding numbers of hours worked at each hourly rate. Ms. Victor, in fact, never received accurate wage statements at all.

285. The Defendants did not keep accurate copies or records to give Ms. Victor, and since three years has not yet surpassed, they should still have accurate duplicate copies to provide Ms. Victor or the court, but do not, in violation of this statue.

286. Ms. Victor filed her labor complaint on August 9, 2019, and she did not receive a copy of her employment file until June 8, 2020. The employee file that was given to Ms. Victor's previous legal counsel, and then to Ms. Victor, was incomplete, inaccurate, and sent months after the obligated twenty-one days in violation of this statue.

287. The Defendants systematically failed to accurately itemize the total hours worked by Ms. Victor on a check issued for work performed in accordance with the requirements of CA Labor Code section 226.

288. The Defendants failed to provide an accurate employee file, provided inaccurate wage statements, and made not one, but two falsified and fraudulent printed documents about payments made to Ms. Victor to fraudulently support their denial of not paying Ms. Victor. The Defendants are in violation of this statue and Ms. Victor has suffered unimaginably.

289. The Defendants, each of them, are guilty of an infraction.

290. CA Labor Code section 226, subdivision (f) states:

"*A failure by an employer to permit a current or former employee to inspect or receive a copy of records within the time set forth, entitles the current or former employee to recover seven-hundred fifty dollars ($750) penalty from the employer.*"

291. Ms. Victor did not receive nor was she able to inspect a copy of her employment records from the Defendants in the time required by this statue. Ms. Victor is entitled seven-hundred and fifty dollars ($750) as a penalty from the Defendants for violating this subdivision.

292. CA Labor Code section 226.3 states:

*"Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee for each violation in an initial citation and one thousand dollars ($1000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep records. The civil penalties provided in this section are in addition to any other penalty provided by law."*

293. The Defendants are in violation of subdivision (a) of Section 226 of the California Labor Code making them liable to pay the correct civil penalties in compliance with this subdivision, in addition to all other penalties provided by the law.

294. As set forth herein, Ms. Victor was entitled to one additional hour of premium wages at her regular rate of compensation for each day in which the Defendants failed to provide all required off-duty meal periods.

295. The Defendants failed to include premium wages for missed off-duty meal periods in the pay statements provided to Ms. Victor, in violation of CA Labor Code section 226, subdivision (a).

296. Because the Defendants failure to include premium wages in the itemized pay statements provided to Ms. Victor was malicious, intentional, and knowing, the Defendants owe Ms. Victor fifty dollars ($50) for the initial pay period in which there was a violation of CA Labor Code section 226, subdivision (a), and one hundred dollars ($100) for each subsequent pay period in which there was a violation, pursuant to CA Labor Code section 226, subdivision (e).

297. CA Labor Code section 226.6 states:

*"Any employer who knowingly and intentionally violates the provisions of Section 226, or any officer, agent, employee, fiduciary, or other person who has the control, receipt, custody, or disposal of, or pays, the wages due any employee, and who knowingly and intentionally participates or aids in the violation of any provision of Section 226 is guilty*

*of a misdemeanor and, upon conviction thereof, shall be fined not more than ($1000), or imprisoned not to exceed one year, or both, at the discretion of the court. That fine or imprisonment, or both, shall be in addition to any other penalty provided by law.*"

298. The Defendants knowingly and intentionally violated Section 226 of the CA Labor Code on multiple different occasions. The Defendants are liable to all penalties and fines in compliance with this statue.

299. CA Labor Code section 1198.5 focuses on current and former employees of an employer and their right to their personal records, including any grievances concerning the employee, and the process and time in which the process may take place to receive such records. Subdivision (k), of this section, allows Ms. Victor to recover seven hundred and fifty dollars ($750) from the employer for violating this statue. And subdivision (l) allows a current or former employer to bring an action for injunctive relief to make sure the Employer who has violated this section complies with this section, in addition to reasonable attorney's fees and costs, interest thereon, and costs of suit. Ms. Victor is entitled to such injunctive relief, interest thereon, and additional costs of suit, including the fine of seven hundred and fifty dollars ($750).

300. CA Labor Code section 1174, also obligates Employers in this state to keep a record, for a minimum of three years, that shows the employee's name and address, payroll records with wages and hours worked, etc. No employer shall prohibit an employee requesting such records, access to such records, and accurate records. The Defendants, each of them, for three years, not only kept inaccurate records that did not show the correct wages and hours worked but they intentionally and maliciously refused to allow Ms. Victor access to such records upon her request to receive such records. The records given to Ms. Victor, that were given to her in an

untimely manner, were and are completely inaccurate. The Defendants are in violation of this statue.

301. CA Labor Code section 1174.1, subdivision (a), states that any employer, person, or entity who may be held liable for a violation of ANY provision of this code shall be prevented from introducing into evidence any books, documents, or records. The Defendants, each of them, can be held liable for multiple violations of the provisions of this code and may the court declare that the Defendants are prohibited from introducing any evidence, books, documents, or records that can add further fraud on the court.

302. Furthermore, CA Labor Code, section 1174.5, states:

 "*Any person employing labor who willfully fails to maintain the records or accurate and complete records, shall be subject to a civil penalty of $500.*"

303. The Defendants are thereby liable for paying Ms. Victor a civil penalty of five hundred dollars ($500) for failure to maintain her records or accurate and complete records.

304. CA Labor Code section 1175, which holds "*any person, or officer, or agent thereof*" who refused to supply proper and accurate records or failed to keep such accurate records, guilty of a misdemeanor. The Defendants refused to supply Ms. Victor proper and accurate records and failed to keep such accurate records, thereby the Defendants are guilty of yet another misdemeanor.

305. CA Labor Code section 558.1, subdivision (a) states:

"*Any employer or other person acting on behalf of an employer, who violates or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order, sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.*"

306. The Defendants, each of them, can be held liable for violating CA Labor code 226. The Defendants, through their officers, managing agents, affiliates, partners, and/or their supervisors authorized, condoned, and/or ratified the unlawful conduct described herein. Thereby, such officers, agents, affiliates, partners, etc, may be held liable as the employer for the Defendants violations of CA Labor Code 226.

307. Ms. Victor has suffered injuries from the Defendants unlawful actions, as stated above, each paycheck Ms. Victor received was missing hours and had unpaid wages and thus Ms. Victor was unable to determine whether she was paid properly and/ or did not receive pay for all hours current and past worked, and thus suffered monetary damages due to the Defendants actions described herein.

308. Based on the Defendants unlawful conduct alleged herein, Ms. Victor is entitled to statutory damages, in addition to interest, and the expenses and costs of suit.

309. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

310. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

311. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

312. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

313. WHEREFORE, Ms. Victor requests judgement as is further set below.

### FIFTH CAUSE OF ACTION
### FAILURE TO PROVIDE MEAL AND REST PERIODS
### (VIOLATION OF CA LABOR CODE §226.7, §512, §558.1)
### *AGAINST ALL DEFENDANTS*

314. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

315. At all relevant times mentioned herein, the Defendants were aware of and were under the duty to comply with CA Labor code section 226.7.

316. CA Labor Code section 226.7, subdivision (b), states:

"*An employer shall not require an employee to work during a meal or rest or recovery period.*"

317. CA Labor Code section 226.7, subdivision (c) states:

"*If an employer fails to provide an employee a meal or rest period in accordance with a State law, the employer shall pay the employee one additional hour of pay at the*

*employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.*"

318. CA Labor Code section 226.7, subdivision (d) states:

"*A rest or recovery period is mandated pursuant to a State Law, shall be counted as hours worked, for which there shall be no deduction from wages.*"

319. CA Labor Code section 512, subdivision (a), states:

"*An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of no less than 30 minutes, except if the total work period per day of the employee is no more than 6 hours, the meal period may be waived by mutual consent of both the employer and employee.*"

320. On over a dozen occasions, Ms. Victor, especially when working the closing hostess shift, took her meal breaks after peak busy hours, resulting in her taking such break past the five hour deadline. In the Wally's phone app, where managers could contact employees, Ms. Victor was often told her meal period would be changed to reflect an earlier time for her break to help Wally's avoid any penalties with their HR department. In fear of further retaliation and an even more hostile work environment Ms. Victor allowed the individual Defendants, and supervisors, to change her timesheet.

321. During Ms. Victor's employment the Defendants routinely required Ms. Victor to work at least three and one-half hours without a rest period of at least ten minutes and failed to compensate Ms. Victor for said missed rest periods, as required by CA Labor Code section 226.7.

322. The Defendants routinely required Ms. Victor to work more than six hours without without a second rest period of at least ten minutes and failed to compensate Ms. Victor for said missed rest periods, as required by CA Labor Code section 226.7.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

323. The Defendants routinely required Ms. Victor to work more than five hours without a meal period of at least thirty minutes and failed to compensate Ms. Victor for said missed meal periods, as required by CA Labor Code section 226.7.

324. By requiring Ms. Victor to attend business and failing to consistently provide meal breaks within the first five hours of a work shift, provide uninterrupted thirty minute meal periods, and/or authorize and permit ten minute rest periods to Ms. Victor, the Defendants violated CA Labor Code section 226.7.

325. Ms. Victor did not willfully waive, through mutual consent with the Defendants, any such meal and rest periods.

326. The Defendants did not pay premium payments to Ms. Victor for missed meal periods. The Defendants did not pay premium payments to Ms. Victor for missed rest periods.

327. CA Labor Code section 226.7, subdivision (c), requires that an employer who fails to provide a meal period must pay that employee an additional hour of premium pay for each workday that the meal period is not provided.

328. The Defendants did not maintain a policy of providing an off-duty meal period for Ms. Victor who worked between five and six hours per day or of paying premium pay for missed meal periods.

329. As set forth above, Ms. Victor regularly worked between five and six hours per day without being provided a meal period or recovery rest periods.

330. Because the Defendants failed to provide Ms. Victor with off-duty meal periods, which is required under CA Labor Code section 512, subdivision (a), the Defendants are

required to pay premium wages to Ms. Victor, pursuant to CA Labor Code section 226.7, subdivision (c).

331. As a result, Ms. Victor is entitled to one additional hour of premium wages at her regular rate of compensation for each day that the Defendants failed to provide all required off-duty meal periods. The Defendants did not provide these premium wages to Ms. Victor.

332. CA Labor Code section 558.1, subdivision (a) states:

"*Any employer or other person acting on behalf of an employer, who violates or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order, sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.*"

333. The Defendants, each of them, can be held liable for violating CA Labor code 226.7. The Defendants, through their officers, managing agents, affiliates, partners, and/or their supervisors authorized, condoned, and/or ratified the unlawful conduct described herein. Thereby, such officers, agents, affiliates, partners, etc, may be held liable as the employer for the Defendants violations of CA Labor Code 226.7.

334. Ms. Victor has been deprived of her rightfully earned compensation for rest periods as a direct result of the Defendants failure and refusal to pay said compensation. Ms. Victor is entitled to recover such amounts pursuant to CA Labor Code section 226.7, plus interest thereon, and costs of suit.

335. Ms. Victor has been deprived of her rightfully earned compensation for meal periods as a direct result of the Defendants failure and refusal to pay said compensation. Ms. Victor is

entitled to recover such amounts pursuant to CA Labor Code section 226.7, plus interest thereon, and costs of suit.

336. As a direct result of the Defendants unlawful actions and omissions, as set forth herein, Ms. Victor has sustained damages, including lost compensation, resulting from missed meal and/or rest periods, in an amount to be determined at trial.

337. As a further direct result of the Defendants unlawful actions and omissions, as set forth herein, Ms. Victor is entitled to recover "waiting time" and other penalties, in an amount to be determined at trial, as well as all fess, costs, and restitution, pursuant to these statues.

338. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

339. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

340. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and

exemplary damages in a sum appropriate to punish and make an example of the Defendants,

each of them.

341. WHEREFORE, Ms. Victor requests judgement as is further set below.

## SIXTH CAUSE OF ACTION
### FAILURE TO PAY GRATUITIES & UNLAWFUL TAKING OF GRATUITIES
### (VIOLATION OF CA LABOR CODE  §351, §354, §356)
### *AGAINST ALL DEFENDANTS*

342. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as

though fully set forth herein.

343. CA Labor Code Section 351, focuses on gratuity in an Employer and employee

relationship. It states that:

> "*Payment of gratuities made by patrons using credit cards shall be made to the employees no later than the next regular payday following the date the patron authorized the credit card payment.*"

344. Section 354 of the CA Labor Code states:

> "*Any employer who violates any provision of this article is guilty of a misdemeanor, punishable by a fine exceeding ($1000) or imprisonment of 60 days, or both.*"

345. The Defendants maliciously and intentionally failed to pay Ms. Victor gratuity owed

to her from Mr. Malone's visit to Wally's. In fact, Ms. Victor was the only employee who did not

receive her gratuity from his tip. Ms. Victor did not receive the tip because the Defendants

discriminated against Ms. Victor because of her protected characteristics as well as further

retaliation against Ms. Victor to create a hostile work environment for her.

346. CA Labor Code Section 356, states:

> "*The Legislature expressly declares that the purpose of this article is to prevent fraud upon the public in connection with the practice of tipping and declares that this article is passed for a public reason and cannot be contravened by a private agreement. As part of*

*the social public policy of this State, this article is binding upon all departments of the
State.*"

347. The Court must find and declare that section 356 is enforced as the Defendants have

attempted to use a private arbitration to fraud the public and Ms. Victor from the gratuity she

had earned and was denied based solely on the Defendants hate of her protected characteristics.

Such statue must be enforced to prevent any further fraud.

348. By taking and keeping the above-described gratuities, the Defendants unlawfully

took and kept customer gratuities from Ms. Victor, and thereby violated CA Labor Code section

351.

349. Ms. Victor has been deprived of her rightfully earned gratuity as a direct result of the

Defendants failure and refusal to pay said gratuity. Ms. Victor is entitled to recover such

amounts pursuant, plus interest thereon, and costs of suit.

350. By engaging in the above described conduct the Defendants engaged in extreme and

outrageous conduct with the intention of causing, or reckless disregard of the possibility of

causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of

the emotional distress caused by the Defendants outrageous conduct.

351. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered

emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame,

humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct

result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an

amount to be determined at trial.

352. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

353. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

354. WHEREFORE, Ms. Victor requests judgement as is further set below.

<u>**SEVENTH CAUSE OF ACTION**</u>
**FAILUE TO PAY WAGES**
**(IN VIOLATION OF LABOR CODE §510, §558, §558.1)**
***AGAINST ALL DEFENDANTS***

355. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

356. At all times relevant, CA Labor Code section 510 applied to Ms. Victor's work with the Defendants.

357. CA Labor Code Section 510, subdivision (a), constitutes a work day as 8 hours of labor, and any work in excess of those 8 hours should be compensated. At the rate of no less than one and one-half times the regular rate of pay for an employee.

358. Section 553 of the CA Labor Code states that any person who violates this chapter is guilty of a misdemeanor. The Defendants, each of them, have violated this chapter and thereby are guilty of a misdemeanor.

359. In compliance with CA Labor Code, Section 1194, subdivision (a), Ms.Victor may recover her unpaid balance for all overtime compensation, including interest, and reasonable fees and costs.

360. Further, CA Labor Code section 1194.3, states:

"*An employee may recover attorney's fees and costs incurred to enforce a court judgement for unpaid wages due pursuant to this code.*"

361. Thereby Ms. Victor is entitled to recover the fees and costs incurred to enforce the court to provide her the judgement of her unpaid wages for overtime compensation, pursuant to these statues.

362. In continuous to above, CA Labor Code section 1194.5 states:

"*In any case in which a person employing an employee has willfully violated any of the laws, regulations, or orders governing the wages, hours of work, or working conditions of such employee, the division may seek, in a court of competent jurisdiction, and the court may grant, an injunction against any further violations of any such laws, regulations, or orders by such person.*"

363. The court must find and declare injunctive relief, including but not limited to, directing the Defendants, each of them, to take the proper steps to stop any further violations of any such laws and regulations. The Defendants must be prevented from any further violations to any future employees who are being mistreated by the Defendants repeated, intentional, and malicious violations of all laws, regulations, and orders governing Ms. Victor, and all other

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

effected employees, past, present, and future, of their wages, hours worked, and their working conditions while employed for the Defendants.

364. Furthermore, CA Labor Code section 558, subdivision (a), states:

"*Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industry Welfare Commission shall be subject to a civil penalty as follows: (1) for any initial violation. $50 for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, $100 for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee.*"

365. Subdivision (d) of the CA Labor Code, section 558, also states:

"*The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law.*"

366. The Defendants are liable to pay Ms. Victor all civil penalties, pursuant to this statue.

367. CA Labor Code section 558.1, subdivision (a) states:

"*Any employer or other person acting on behalf of an employer, who violates or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order, sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.*"

368. The Defendants, each of them, can be held liable for violating CA Labor code 1194. The Defendants, through their officers, managing agents, affiliates, partners, and/or their supervisors authorized, condoned, and/or ratified the unlawful conduct alleged herein. Thereby,

such officers, agents, affiliates, partners, etc, may be held liable as the employer for the Defendants violations of CA Labor Code 1194.

369. Ms. Victor is informed and believes, and based thereon alleges, that during the relevant time period, the Defendants failed to pay Ms. Victor all wages for hours worked which included overtime wages.

370. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants manipulated employee time sheets and altered the number of hours an employee worked to the Defendants advantage, including Ms. Victor. Ms. Victor, many times, worked, and is owed, compensation for overtime pay, which has still yet to be paid by the Defendants.

371. Ms. Victor is informed and believes, and based thereon alleges, that during the relevant time period, Ms. Victor was frequently required to work over eight hours per workday and/or forty (40) hours in a work week. The Defendants failed to compensate Ms. Victor at one and one-half times her regular rate of pay for all overtime hours worked.

372. As a direct result of the Defendants unlawful acts and omissions, as set forth herein, Ms. Victor has sustained and continues to sustain damages, including loss of earnings from overtime compensation due, in an amount to be established at trial, plus prejudgement interest pursuant to statue.

373. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

374. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

375. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

376. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

377. WHEREFORE, Ms. Victor requests judgement as is further set below.

## EIGHTH CAUSE OF ACTION
### WRONGFUL TERMINATION
### (IN VIOLATION OF CA LABOR CODE §6310, §6312)
### *AGAINST ALL DEFENDANTS*

378. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

379. CA Labor Code Section 6310 subdivision (a) states:

"*No person shall discharge or in any manner discriminate against any employee because the employee has made any oral or written complaint to the division, other governmental*

*agencies having statutory responsibility for or assisting the division with reference to employee safety and health, their employer, or their representative.*"

380. The Defendants were prohibited by law to discriminate against Ms. Victor because she had made plans to make oral and/or written complaints to the CA Labor Commissioner's office about the Defendants unlawful actions and omissions but the Defendants did discriminate against Ms. Victor in violation of this statue.

381. The Defendants were prohibited by law to discriminate against Ms. Victor for making oral and/or written complaints to the CA Labor Commissioner's office about the Defendants unlawful actions and omissions but the Defendants have and continue to discriminate against Ms. Victor for Ms. Victor had and is seeking assistance from governmental agencies that have statutory responsibility to help with employee safety and health, including Ms. Victor's safety and health.

382. Further, CA Labor Code section 6312 states:

"*Any employee who believes that he or she has been discharged or otherwise discriminated against by any person in violation of section 6310 or 6311 may file a complaint with the Labor Commissioner…*"

383.  Ms. Victor attempted to file a complaint with the CA Labor Commissioner's office in August of 2019, such complaint was not investigated by the Labor Commissioner's office and was closed by means of negligence or civil conspiracy by the Labor Commissioner's office through Deputy Ray and Deputy DeLaCruz.

384. Since June of 2021, when Ms. Victor began to self-represent herself in her own litigation, the Defendants, each of them, and DOES 1-100, inclusive, have further discriminated

against Ms. Victor for making additional oral and/or written complaints about the Defendants unlawful actions and omissions to governmental agencies that are required to assist Ms. Victor.

385. The Defendants malicious and intentionally acts and omissions are prohibited by law and go against the public policy of the State of California.

386. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants unlawful conduct, as alleged herein, was substantially motivated by Ms. Victor's opposition to and/or reporting of the actual and/or perceived violations alleged herein.

387. Ms. Victor is informed and believes and based thereon alleges that the Defendants, including DOES 1-100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged herein.

388. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

389. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer, emotional distress in an amount to be determined at trial.

390. The Defendants, through their officers, managing agents, affiliates, partners, and/or their supervisors; authorized, condoned, and/or ratified the unlawful conduct alleged herein. By reason thereof, Ms. Victor is entitled to an award of punitive damages in an amount to be determined at trial, and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

391.  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

392. WHEREFORE, Ms. Victor requests judgement as is further set below.

## NINTH CAUSE OF ACTION
### UNLAWFUL RETALIATION BASED ON VIOLATIONS OF THE DEFENDANTS USE OF SOCIAL MEDIA
### *AGAINST ALL DEFENDANTS*

393. Ms. Victor re-alleges and incorporates by reference all previous paragraphs of her as though fully set forth herein.

394. CA Labor Code section 980 focuses on the employers use of social media. This section states that an employer cannot require or request any of the following of an employee; to access personal social media in front of, or in the presence of the employer or divulge any personal social media.

395. Subdivision (e) of the CA Labor Code section 980 states:

 "*An employer shall not discharge, discipline, threaten to discharge or discipline, or otherwise retaliate against employee or applicant for not complying with a request or demand by the employer that violates this section.*"

396. Almost every single work shift that Ms. Victor had worked at Wally's, she was harassed by management, supervisors, or other employee's about her personal social media accounts or her podcast entitled "*Swallow It.*" At one point, individual Defendant, Mr. Turner encouraged guests of Wally's to refer to Ms. Victor as "*Ms. Swallow It*".

397. Multiple times, management, or Wally's principal, Mr. Navarro, would approach Ms. Victor, pulling up an image of her from her personal social media page(s) to harass Ms. Victor. Mr. Navarro, amongst others, also, would make comments about "stalking" Ms. Victor's

social media, while liking all of, what the Defense Counsel has referred to as, "Ms. Victor's "half dressed" photos", or "adult content". Mr. Navarro often times left comments such as the fire flame emoji or drool face emoji that had an underlying sexual tone on Ms. Victor's IG photos. Such actions by the employer, its management, and staff, is in violation of this statue.

398. Ms. Victor's social media was a topic of conversation amongst all employees of Wally's and was one of the main reasons management, especially Ms. Baker and Ms. Jones, targeted and retaliated against Ms. Victor in hopes that she would quit her job and they could avoid a wrongful termination lawsuit.

399. Comments made by management and other employees were always in front of other staff and other management and despite Ms. Victor making multiple complaints about her social media becoming an everyday topic at work, nothing was ever done to stop the harassment, which is in violation of this statue.

400. Due to the Defendants unlawful acts and omissions, Ms. Victor holds the Defendants liable for an invasion of her privacy and thereby Ms. Victor is entitled to all civil penalties and remedies for such invasion of privacy.

401. Due to the Defendant's unlawful acts and omissions, the Defendants can be held liable for wrongful retaliation and termination for their unlawful use of Ms. Victor's social media and for the Defendants intentional and malicious violations of CA Labor Code 980.

402. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, including DOES 1-100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged herein.

403. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

404. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

405. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

406.  The conduct of the Defendants described herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

407. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

408. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

409. WHEREFORE, Ms. Victor requests judgement as is further set below.

### TENTH CAUSE OF ACTION
### UNLAWFUL CONTRACTS IN VIOLATION OF PUBLIC POLICY
### *AGAINST ALL DEFENDANTS*

410. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

411. CA LABOR Code Section 432, states:

*"If an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request."*

412. Ms. Victor requested the Handbook multiple times during her employment with the Defendants, and was not once, not even upon her "suspension pending investigation" given the requested Handbook. The Defendants, each of them, willfully and intentionally, failed to provide Ms. Victor with her Handbook or a copy of any of the documents she had signed, including the employee acknowledgement and arbitration agreement which is in complete violation of this statue.

413. CA Labor Code Section 432.5 states:

*"No employer, or agent, manager, superintendent, or officer thereof, shall require any employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer, or agent, manager, superintendent, or officer thereof to be prohibited by law."*

414. The arbitration agreement that has been submitted to the court on several occasions by the Defense counsel is in fact changed and not the arbitration agreement that Ms. Victor had signed upon her actual employment at Wally's. However, based on the altered arbitration

agreement and employee acknowledgement presented to the court by the Defense counsel, the Defendants prove that they expect employees, including Ms. Victor, to agree, in writing, to terms and/or conditions, to which the Defendants should know or should have reasonably known is prohibited by law.

415. The Defendants arbitration portion of the Handbook tells an employee that they are prohibited from reporting discrimination, sexual harassment, discrimination, and other chargeable offenses when signing such agreement, which is prohibited by law and against public policy of the State of California.

416. The Defendants new arbitration agreement should be null and void, not only for Ms. Victor, but for all current and future employees. The Defendants maliciously, intentionally, and knowingly have and continue to use their arbitration portion of the employee Handbook as a tool of manipulation to ensure past, current, and future employees are unable to report them for chargeable offenses, which is prohibited by law and against public policy of the State of California.

417. CA Labor Code section 432.6 states:

"*A person shall not, as a condition of employment, continued employment, or the receipt of any employment related benefit, require any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act, or this code, including the right to file and pursue a civil action or a complaint with, or otherwise notify, any state agency, other public prosecutor, law enforcement agency, or any court or other governmental entity of any alleged violation.*"

418. The Defendants amended arbitration portion of their amended Handbook states the following, in all caps lock too:

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

"*THE CLAIMS SUBJECT TO THIS PROCEDURE INCLUDE. BUT ARE NOT LIMITED TO, CONTROVERSIES ARISING OUT OF OR RELATING TO; ANY AGREEMENT; ANY POLICY OR PROVISION STATED IN THIS MANUAL; COMPENSATION OR BENEFITS; BREACH OF ANY CONTRACT; TORTS; OR VIOLATION OF ANY FEDERAL, STATE, OR OTHER GOVERNMENTAL LAW, STATUE, REGULATION, OR ORDINANCE, INCLUDING, BUT NOT LIMITED TO, WAGE AND HOUR VIOLATIONS, WRONGFUL TERMINATION, HARASSMENT AND DISCRIMINATION OF ANY TYPE; DISCHARGE IN VIOLATION OF PUBLIC POLICY AND/OR VIOLATION OF ANY STATE AND FEDERAL LAWS, INCLUDING WITHOUT LIMITATION, THE AGE DISCRIMINATION ACT, THE FAIR EMPLOYMENT AND HOUSING ACT, AS AMENDED, THE AMERICANS WITH DISABILITIES ACT, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, THE FAIR LABOR STANDARDS ACTS, AS AMENDED, THE LABOR- MANAGEMENT RELATIONS ACT, AS AMENDED, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT OF 1988, AS AMENDED, THE REHABILITATION ACT OF 1973, AS AMENDED, THE EQUAL PAY ACT, THE PREGNANCY DISCRIMINATION ACT, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED, THE FAMILY MEDICAL LEAVE ACT OF 1993, THE CALIFORNIA FAMILY RIGHTS ACT, AS AMENDED AN THE CALIFORNIA LABOR CODE ("Claim" or "Claims").*"

419. It further states:

"*By signing the acknowledgement and agreement attached to this handbook, employee and employer agree to waive any substantive or procedural rights that they may have to bring an action on a class basis.*"

420. And the last paragraph states:

"*Nothing contained herein shall be construed as precluding an employee from filing a charge with the Department of Fair Employment and Housing ("DFEH"), Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), or other federal, state or local agency, seeking administrative assistance in resolving Claims. However, any Claim that is not resolved administratively through such an agency shall be subject to this agreement and final binding arbitration.*"

421. The DFEH, the EEOC, and the CA Labor Commissioner's office all did not

investigate Ms. Victor's claims, in pure negligence or in civil conspiracy, with the Defendants,

which allows the Defendants to force, or attempt to force, "*any claim that is not resolved*

*administratively through such an agency shall be subject to this agreement and final binding*

*arbitration.*" The DFEH, the EEOC, and the CA Labor Commissioner's office have also not investigated any related case that involve the same named Defendants and similar causes of action.

422. Subdivision (b) of CA Labor Code Section 432.6 states:

"*An employer shall not threaten, discriminate, retaliate, or discriminate, or terminate any application for employment or an employee because of the refusal to consent to the waiver of any right, forum, or procedure for a violation of the California Fair Employment and Housing Act of this code, including the right to file and pursue a civil action or a complaint with, or otherwise notify, any state agency, other public prosecutor, law enforcement agency, or any court or other governmental entity for any alleged violation.*"

423. Ms. Victor has been subjected to retaliation by the Defendants, each of them, for three years now while trying to seek justice for her pain and suffering and damages for such pain and suffering, which is in complete violation of this statue.

424. CA Labor Code section 433 states, that any person violating this article is guilty of a misdemeanor, making the Defendants, each of them, guilty of yet another misdemeanor.

425. The Defendants created an arbitration clause and agreement for employees, including Ms. Victor, in violation of public policy. The Defendants retaliated against Ms. Victor because Ms. Victor has protected characteristics and/or engaged in protected activity.

426. CA Labor Code section 923 states the following:

"*In the interpretation and application of this chapter, the public policy of this State is declared as follows: Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-*

*organization, and designation of representatives for his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in the concerted activities for the purpose of collective bargaining or other mutual aid or protection.*"

427. Ms. Victor, pursuant of section 923 of the CA Labor Code, was guaranteed the protection from any coercion, interference caused by such coercion by the Defendants, each of them.

428. Ms. Victor was denied such protection and mutual aid. The Defendants, each of them, coerced with one another to deny Ms. Victor mutual aid and protection, the right to due process, a trial by jury, and equal protection under the law. These coercions have violated not only Ms. Victor's rights, but the rights of past, current, and future employees who were too denied the chance to be free from interference, restraint, or coercion of the Defendants, and were also denied mutual aid and protection.

429. CA Labor Code Section 2810.5, subdivision (a) states that an employer shall provide to each employee, upon hire, a written notice including multiple things, such as the name of the employer, including any "doing business as" names that the employer may be using, the employers main or principal office, and it's mailing address if it is different from the place of work. This statue also ensures that if any changes are made to any information on the written notice given to the employee from the employer, then it must be given to the employee in writing within seven calendar days of such changes.

430. Ms. Victor never received a written notice when the Wally's Handbook was amended. Ms. Victor was never given a written notice with Wally's "doing business as" business names, in fact, Ms. Victor did not even know that Wally's went by the legal entity name of

*Southwest Wine & Spirits, LLC*; nor did Ms. Victor know that *Southwest Wine & Spirits, LLC* **was a limited liability company doing business under Delaware law**, until she began representing herself and doing her own research in June of 2021.

431. In fact, Ms Victor's prior legal counsel filed her complaint in the Los Angeles Superior Court naming *Southwest Wine & Spirits, LLC, a California limited liability company*, as a defendant, which is false and incorrect information that they filed under the false representation of it being genuine and true. Technically, right now, Ms. Victor's lawsuit is suing no one. And upon doing her own research Ms. Victor discovered that *Southwest Wine & Spirits, LLC, a Delaware Limited Liability Company* also does business as *Mel-Jen* and *Wally's Auction House, LLC*.

432. Southwest Wine & Spirits, LLC, the location in California, is a foreign branch of the Delaware limited liability company, licensed to do intrastate business in California. All this information was information Ms. Victor discovered only after being forced to represent herself in her own litigation. This was **not** information given to her as an employee from her employer. Wally's is actually a trademark name for Southwest Wine & Spirits, LLC, not a real business name.

433. The Defendants malicious and intentionally acts and omissions are prohibited by law and go against the public policy of the State of California.

434. Provisions of the employment contract, as described above, Ms. Victor was required to sign as a condition of employment, explicitly and unquestionably, violate several provisions of California law and public policy. Ms. Victor is informed and believes that the Defendants, each of them, knew that such provisions violated California law and public policy.

435. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants unlawful conduct, as alleged herein, was substantially motivated by Ms. Victor's opposition to and/or reporting of the actual and/or perceived violations alleged herein.

436. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

437. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

438. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

439. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

440. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and

exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

441. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

442. WHEREFORE, Ms. Victor requests judgement as is further set below.

### ELEVENTH CAUSE OF ACTION
**UNLAWFUL RETALIATION IN VIOLATION OF PUBLIC POLICY**
**(IN VIOLATION OF CA LABOR CODE §232.5, §1102.5, §1102.8, §1104)**
***AGAINST ALL DEFENDANTS***

443. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

444. Under California law, there is a fundamental and well-established public policy against harassment or retaliation based on the fact that the employee has a protected characteristic or engaged in a protected activity. Said public policy is embodied in the Constitution of the State of California and CA Labor Code section 232.5, due to disclosure of working conditions, and other sections of the Labor Code. Adverse employment actions taken by an employer motivated by the fact that an employee has a protected characteristic are contrary to said public policy and are thus actionable under the common law of this state.

445. CA Labor Code section 232.5 states:

*"No employer may do any of the following, require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions, require an employee to sign a waiver or other document that purports to deny the employee the right to disclose information about the employer's working conditions, or discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employers working conditions."*

446. The Defendants use arbitration clauses, acknowledgements and/or agreements as a method to silence Ms. Victor, as well as all other employees who have come forward in separate litigations, to avoid being held accountable for their unlawful actions and omissions. Such clauses, acknowledgements and/or agreements allow the Defendants to continue behaving in a disgusting, unethical, and unlawful manner. A pattern that will continue to repeat with future and/or current employees.

447. CA Labor Code section 1102.5, subdivision (b) states:

"*An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information… to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance…if the employee has reasonable cause to believe that the information discloses a violation of state or federal statue, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties*."

448. Under California law, discharge of an employee perceived to have reported an alleged violation of a statue or regulation violates public policy, even if the employee did not actually make the report. Perceived whistleblowers are also protected from retaliatory discharge as are employees who report suspected violations to other employees.

449. Ms. Victor told the Defendants that she planned on making a report. Ms. Victor also told employees of Wally's that she planned on making a report. Ms. Victor was then terminated in retaliation by the Defendants who had believed Ms. Victor had made a report, or planned too, which violates public policy.

450. Ms. Victor was and is a whistleblower and she should have been protected from retaliatory discharge. Ms. Victor was not protected from retaliatory discharge.

451. CA Labor Code section 1102.5, subdivision (f) states:

"*In addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation.*"

452. CA Labor Code section 1102.8 states:

"*An employer shall prominently display in lettering larger than size 14 point type a list of employees rights and responsibilities under the whistleblower laws, including the telephone number of the whistleblower hotline described in section 1102.7.*"

453. The Defendants did not display in lettering larger than size 14 point type, a list of employees rights and responsibilities under the whistleblower laws, nor did they including a telephone number of the whistleblower hotline in violation of this statue.

454. CA Labor Code section 1104 states:

"*In all prosecutions under this chapter, the employer is responsible for the acts of his managers, officers, agents, and employees.*"

455. The Defendants terminated Ms. Victor's employment in violation of public policy. The Defendants retaliated against Ms. Victor because Ms. Victor has protected characteristics and/or engaged in protected activity, in violation of public policy.

456. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants unlawful conduct, as alleged herein, was substantially motivated by Ms. Victor's opposition to and/or reporting of the actual and/or perceived violations alleged herein.

457. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

458. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of

causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

459. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

460. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

461. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

462. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

463. WHEREFORE, Ms. Victor requests judgement as is further set below.

## TWELFTH CAUSE OF ACTION
### UNLAWFUL RETALIATION AGAINST A WHISTLEBLOWER
### (IN VIOLATION OF CA LABOR CODE §1102.5)

### *AGAINST ALL DEFENDANTS*

464. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

465. Ms. Victor engaged in protected activity by reporting the Defendants unlawful actions to her employer thus informing the Defendants, each of them, that illegal activities were occurring in the workplace.

466. Ms. Victor, at various times, made such reports to a person with authority over her and to employees who had the authority to investigate, discover, or correct the violations or noncompliance(s). Directly or indirectly the owners, principals, chief executive officers, and/or the chief financial officer were aware of Ms. Victor's reports of unlawful and illegal activity and failed to take action to stop such activity to the detriment of Ms. Victor.

467. Ms. Victor knew, or reasonably believed, that the acts and omissions of the Defendants, each of them, were in violation of laws that required that she be provided a workplace free of sexual harassment, discrimination, and retaliation. The laws violated, included, but were and are not limited to Article 1, Section 8 of the California Constitution, and multiple CA codes of law.

468. Following Ms. Victor's protected activity, the Defendants retaliated against Ms. Victor as set forth herein, including, but not limited to, making the environment hostile by refusing to take action to stop harassment, discrimination, and retaliation.

469. After Ms. Victor's refusal to quit the Defendants, each of them, were left with no choice but to find and execute a way to wrongfully terminate Ms. Victor.

470. Ms. Victor's protected activity was a motivating reason for the Defendants retaliatory conduct.

471. The Defendants retaliatory conduct was in violation of CA Labor Code 1102.5.

472. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

473. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

474. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

475. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

476. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and

exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

477.  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

478. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRTEENTH CAUSE OF ACTION**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
*AGAINST ALL DEFENDANTS*

479. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

480. At all relevant times herein, a fundamental policy of the State of California was reflected in Labor Code section 1102.5, which prohibits retaliation against an employee who discloses an employers violations or noncompliance with state statues and regulations. This policy was binding on all the Defendants, each of them.

481. A motivating factor in the Defendants in the termination of Ms. Victor's employment, were her complaints relating to sexual harassment and discrimination. The Defendants, each of them, retaliated against Ms. Victor by, for example, sending her home to change constantly despite not breaking dress code while never reprimanding any white hostesses for their dress code violations. Another example is the Defendants denial of accommodations to Ms. Victor on her non-work shifts while such accommodations were not denied to any of the white employees. Another example is the Defendants telling the entire staff, including other hostesses, that Ms. Victor would soon be terminated, resulting in Ms. Victor arriving to work to be greeted with hugs and "We'll miss you" from other employees of Wally's.

482. The Defendants retaliated against Ms. Victor by failing to adequately investigate her claims of sexual harassment and discrimination and failing to take any remedial action.

483. The Defendants knowingly created the working conditions that violated public policy because the Defendants willfully, knowingly, maliciously, and intentionally retaliated against Ms. Victor.

484. The working conditions caused by the Defendants violations of public policy were intolerable for Ms. Victor. When Ms. Victor refused to quit the Defendants wrongfully terminated her.

485. Ms. Victor was harmed by the Defendants working conditions, and the Defendants working conditions were a substantial factor in causing Ms. Victor harm. As a direct result of the Defendants willful, intentional, and malicious violations of public policy, Ms. Victor has suffered and will continued to suffer. Ms. Victor is therefore entitled to general and compensatory damages to an amount to be determined at trial.

486. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

487. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

488. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct

result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

489. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

490. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

491. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

492. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FOURTEENTH CAUSE OF ACTION**
**UNLAWFUL CONTINUED VIOLATIONS OF CA LABOR CODES**
***AGAINST ALL DEFENDANTS***

493. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

494. The pattern of the defendants violating CA Labor Code's is a repeated pattern that has occurred on multiple complaints filed within the Los Angeles Superior Court, including Ms.

Victor's, a pattern that has not changed. The Defendants unlawful violations of all California Labor Codes will not stop until the Defendants are forced to stop such unlawful violations.

495. Section 6323 of the CA Labor Code states:

"*If the condition of any employment or place of employment constitutes a serious menace to the lives or safety of persons about it, the division may apply to the Superior Court of the County in which such place of employment is situated for an injunction restraining the use or operation thereof until such condition is corrected.*"

496. The Defendants, each of them, had made Wally's a place of employment that constitutes a serious menace to the lives and safety of persons about it. The court must declare and enforce and injunction to restrain the Defendants, each of them, from the operation of the place of employment until all conditions are corrected.

497. CA Labor Code Section 1171.5 states:

"*The legislature finds and declares the following: all protections, rights, and remedies available under state law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state.*"

498. The Defendants have engaged in a pattern of behavior where they have discriminated, harassed, and retaliated against employees, especially women, on the basis of their protected characteristics. These employees, which include Ms. Victor, did not have the availability to all protections, all rights, and all remedies that should be available to them under state law, which is in violation of this statue.

499. Further, CA Labor Code section 1199, subdivision (c) states that every member, person, acting either individually or as an officer, agent, or employee of another person who violates or refuses to comply with any provision of the CA Labor Codes, is guilty of a

misdemeanor. The Defendants, each of them, violated almost every single chapter of the CA Labor Codes making them guilty of yet another misdemeanor.

500. The Defendants acted to aid and abet, and/or conspire with the other to violate all of the CA Labor Codes alleged herein. The Defendants actions were willful, cruel, malicious, and intentional. At all relevant times the Defendants acted with complete disregard of Ms. Victor's rights and feelings. The Defendants acted with the knowledge of, or with reckless disregard of the possibility that their conduct was certain to cause injury and humiliation to Ms. Victor.

501. Ms. Victor, as a direct result of the Defendants violating the CA Labor Codes alleged herein, has suffered, and continues to suffer great pain of mind and body, shock, humiliation, embarrassment, emotional distress, physical manifestations, loss of self-esteem, disgrace, loss of enjoyment of life, has developed hypervigilance, loss of professional reputation, loss of future wages, psychological harm, sleeplessness, nervousness, mental anguish, fear, anxiety, constant fear of eminent doom, inconsistent weight loss and gain, and financial turmoil.

502. Ms. Victor constantly has upset stomachs or digestive problems including constipation or constant nausea, low energy, aches, pains, tense muscles, rapid heartbeats, dry mouth and difficulty swallowing, and often grinds her teeth or clenches her jaw when her anxiety is triggered.

503. The Defendants unlawful conduct has affected Ms. Victor's mood leaving her feeling overwhelmed especially with the desire to take control of a bias litigation. Ms. Victor has trouble relaxing and quieting her mind, leaving her to feel the need to avoid others which then results in loneliness, worthlessness, and severe depression.

504. Ms. Victor is constantly worrying and constantly seeing only the negative. The Defendants unlawful conduct has not only made Ms. Victor doubt all of humanity but the entire judicial system which causes her thoughts to race, it also causes both fear and sadness as she has bore witness to the law being broken and corruption covering it up.

505. Ms. Victor has suffered hair loss, bad acne, has developed eczema, struggles to remain focused and motivated, and struggles every day to get through daily activities, all as a direct result of the Defendants unlawful conduct, each of them.

506. Ms. Victor, as a result of the Defendants violations of the CA Labor Codes alleged herein, has suffered and continues to suffer; and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings, and/or incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

507. Due to Ms. Victor's suffering from the damages causes by the Defendants unlawful conduct while violating all of the CA Labor Codes alleged herein, Ms. Victor is entitled to general damages, economic and non economic damages, consequential damages, punitive and exemplary damages, special damages, future damages, and injunctive relief.

508. Ms. Victor has incurred, and will continue to incur, costs and fees in the prosecution of this action and therefore demands such reasonable fees and costs in addition to all penalties she is owed for the Defendants violations of the above mentioned CA Labor Codes.

509. Ms. Victor is entitled to move the Court to issue a stop order on all named Defendants, each of them, from conducting business in the State of California until Ms. Victor receives judgement for all violations of the CA Labor Codes alleged herein.

510. Ms. Victor is entitled to move the Court to grant and enforce permanent restraining orders on the Defendants, each of them, as well DOES 1-100, inclusive, who have a personal interest in this case and would seek to cause further harassment, oppression, discrimination, or harm to Ms. Victor in retaliation for filing her complaint for damages.

511. WHEREFORE, Ms. Victor requests judgement as is further set below.

### FIFTEENTH CAUSE OF ACTION
### DEFAMATION, SLANDER, LIBEL, AND FAILURE TO BE PROTECT FROM DEFAMATION
### *AGAINST ALL DEFENDANTS*

512. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

513. CA Civil Code section 43 states:

"*Every person has…the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations.*"

514. Ms. Victor was harmed by the Defendants, each of them. Ms. Victor has, and continues to be, subjected to personal insult by the Defendants, each of them. Ms. Victor has, and continues to be, defamed by the Defendants, each of them.

515. Ms. Victor as a direct result of the Defendants unlawful actions and omissions has suffered injuries to her personal relations. Thereby Ms. Victor was not protected from bodily restraint or harm, from personal insult, from defamation, or from injury to her personal relations.

516. CA Civil Code section 45 states that:

"*Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.*"

517. The Defendants, each of them, through their email correspondence with one another violated this statue. The Defendants, each of them, used email correspondence, that was submitted to the Court and given to Ms. Victor by her prior legal counsel, that made false accusations against Ms. Victor. These email correspondence between the Defendants was an intentional, calculated, and malicious tactic used by the Defendants to justify their wrongful termination of Ms. Victor. The Defendants, each of them, put their libel down on "paper" through their electronic transmissions and the Defendants even submitted such libel to the courts.

518. CA Civil Code section 46 describes slander as a false and unprivileged publication, orally uttered that charges any person with a crime, tends to directly to injure the person in respect to their office, profession, trade or business, and/or which causes actual damage.

519. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, discussed Ms. Victor's employment and their reasons for the termination of her employment to the entire staff of Wally's, uttering such false accusations to an audience that is prohibited by state law.

520. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, have accused Ms. Victor, orally to others, of the solicitation of prostitution and of extortion, which charges Ms. Victor with not one, but two crimes.

521. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, created such outrageous allegations against Ms. Victor intentionally and with malice. The intention of the Defendants was to harm Ms. Victor's reputation as an employee and to drag her moral compass as a human being through the mud.

522. The Defendants, each of them, defamed Ms. Victor to attempt to justify a clear wrongful termination and to avoid legal accountability and costs if a suit should arise.

523. The private statements made by the Defendants, each of them, concerning Ms. Victor were false. There was and there is no factual basis behind the Defendants false statements that accused Ms. Victor of being a prostitute and an extortion artist. These statements themselves are express false statements of fact, and they falsely implied a knowledge of negative facts about Ms. Victor's professionalism and ability to work with others. These false statements of fact also implied that Ms. Victor walked around Wally's showing off her nude body as an attempt to extort VIP customers for sex, these negative facts about Ms. Victor have been presented to the court as knowledge and are indeed one hundred percent false.

524. All statements made by the Defendants, each of them, both through libel and slander, were complete fiction, crafted to seem credible and to cause maximum damage. Ms. Victor as stated herein, has been on eleven reality tv shows and has a large following on social media. On her social media she has videos dated back prior to her employment at Wally's in which Ms. Victor discusses how she does not masturbate. Yet, the Defendants, each of them, fabricated false statements accusing Ms. Victor of showing masturbation videos to VIP customers as one of their fake reasons for terminating her employment. Ms. Victor's social media alone, demonstrates the falsity of such statements and the Defendants bad faith in making such statements and causing such statements to be made.

525. The Defendants, each of them, made the defamatory statements alleged herein, with actual malice or with knowledge of their falsity, or alternatively, with reckless disregard for their falsity.

526. The Defendants, each of them, made all defamatory statements without privilege or justification.

527. The statements alleged herein concerning Ms. Victor directly injured her by demising her reputation, which had a natural tendency to lessen her profits.

528. The statements described above and herein convey a defamatory meaning. They harm Ms. Victor's reputation as to lower it.

529. It was the Defendants expectation and intent that such defamatory statements would injure Ms. Victor economically, including by lessening her profits.

530. As a result of the Defendants, each of them, slander and libel against Ms. Victor and of the Defendants false and defamatory statements made with actual malice, Ms. Victor has suffered damages, including but not limited to lost compensation, loss to reputation, and increased costs.

531. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

532. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

533. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct

result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

534. The conduct of the Defendants described above herein was outrageous and was executed with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

535. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

536. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

537. WHEREFORE, Ms. Victor requests judgement as is further set below.

### SIXTEENTH CAUSE OF ACTION
### VIOLATION OF UNRUH CIVIL RIGHTS ACT
### (IN VIOLATION OF CA CIVIL CODE §51)
### *AGAINST ALL DEFENDANTS*

538. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

539. Ms. Victor's civil rights were violated by the Defendants through its agents, actors, affiliates, partners, subsidiaries, and employees. Ms. Victor had a right to be free from gender discrimination, abuse, and harassment under the Unruh Civil Rights Act.

540. CA Government Code section 12948 provides that a violation of the Unruh Civil Rights Act, CA Civil Code section 51, is a violation of FEHA.

541. The Unruh Civil Rights Act states:

"*All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color…ancestry…genetic information…are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.*"

542. Southwest Wine & Spirits, LLC, is a "business establishment" operating under the laws of Delaware, but allowed to do intrastate business within the State of California. The Defendants place of business, where their company policies were established, is located in Beverly Hills, California, or in Los Angeles county of the State of California. The Defendants are obligated to comply with the provision of the Unruh Civil Rights Act.

543. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against female employees and/or customers, including Ms. Victor, which deprived them of "*full and equal*" accommodations, advantages, privileges, and/or services when they were employed or attended Wally's.

544. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against employees and customers based on their race, color, or ancestry, including Ms. Victor, which deprived them of

"*full and equal*" accommodations, advantages, privileges, and/or services when they were employed or attended Wally's.

545. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against Ms. Victor based on her genetic information which deprived Ms. Victor of "*full and equal*" accommodations, advantages, privileges, and/or services when she was employed at Wally's.

546. Ms. Victor's civil rights were violated by the Defendants through its agents, principals, actors, affiliates, and employees. Ms. Victor had the right to be free from discrimination based off of her protected characteristics.

547. The Defendants, each of them, including DOES 1-100, inclusive, were acting under the color of authority and in the scope of their employment during the instances when Ms. Victor was employed by the Defendants.

548. The Defendants, each of them, denied Ms. Victor full and equal accommodations, advantages, facilities, and privileges because of her sex, race, color, ancestry, and genetic information.

549. The Defendants committing multiple unlawful acts and omissions that were racially and sexually motivated, to then conceal such unlawful acts and omissions denied Ms. Victor the right to know the Defendants were not only sexual predators but racists.

550. By concealing the Defendants behavior and all reports and/or complaints made against the Defendants, the Defendants allowed Ms. Victor and other female or ethnic employees to work in an environment that subjected them to multiple forms of abuse. The

Defendants employment of Ms. Victor essentially denied Ms. Victor the full and equal access to a safe work environment based on her sex, race, color, ancestry, and genetic information.

551. At all times relevant to this complaint, the Defendants systemic, purposeful, willful, intentional, and malicious discrimination against Ms. Victor and other female employees or customers and other employees and customers of color, violated Ms. Victor's right to be free from discrimination guaranteed by CA Civil Code, section 51, and constitutes intentional and morally offensive conduct.

552. The Defendants, each of them, aided and abetted, incited, and/or encouraged, each other into violating the Unruh Civil Rights Act. By refusing to prevent and/or stop each Defendants unlawful conduct and requiring Ms. Victor to do her job without complaint or she'd face consequences, the Defendants, each of them, incited one another, aided and abetted one another, and/or encouraged one another to violate the Unruh Civil Rights Act.

553. Whoever denies, aids and abets, or incites any discrimination contrary to the Unruh Civil Rights Act, CA Civil Code section 51, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a Court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ($4,000), and any attorney's fees in addition thereto.

554. Consequently, Ms. Victor is entitled to injunctive relief to remedy the Defendants discrimination, as well as damages for past harm, attorney's fees and costs.

555. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

556. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

557. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

558. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

559. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

560. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

561. WHEREFORE, Ms. Victor requests judgement as is further set below.

## SEVENTEENTH CAUSE OF ACTION
## (IN VIOLATION OF CA CIVIL CODE §51.5)
### *AGAINST ALL DEFENDANTS*

562. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

563. CA Civil Code section 51.5, subdivision (a), states:

"*No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed in Section 51... because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics.*"

564. CA Government code section 12948 provides that a violation of CA Civil Code section 51.5 is a violation of FEHA.

565. Southwest Wine & Spirits, LLC, is a "business establishment" operating under the laws of Delaware, but allowed to do intrastate business within the State of California. The Defendants place of business, where their company policies were established, is located in Beverly Hills, California, or in Los Angeles county of the State of California.

566. Ms. Victor was discriminated against by the Defendants, each of them, who have, and continue to, discriminate against, boycott, and blacklist Ms. Victor based on her protected characteristics. Ms. Victor's civil rights were violated by the Defendants through its agents, principals, actors, affiliates, and employees.

567. Ms. Victor had the right to be free from discrimination based off of her protected characteristics.

568. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against female

employees and/or customers, including Ms. Victor, because of her sex, a protected characteristic as defined in CA Civil Code section 51.

569. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against employees and customers, including Ms. Victor, on the basis of their race, color, or ancestry, which are protected characteristics as defined in CA Civil Code section 51.

570. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against Ms. Victor based on her genetic information which is a protected characteristic as defined in CA Civil Code section 51.

571. At all times relevant to this complaint, the Defendants systemic, purposeful, willful, intentional, and malicious discrimination against Ms. Victor and other female employees or customers and other employees and customers of color, violated Ms. Victor's right to be free from discrimination guaranteed by CA Civil Code section 51.5, and constitutes intentional and morally offensive conduct.

572. The Defendants, each of them, aided and abetted, incited, and/or encouraged, each other into violating CA Civil Code section 51.5. By refusing to prevent and/or stop each Defendants unlawful conduct and requiring Ms. Victor to do her job without complaint or she'd face consequences, the Defendants, each of them, incited one another, aided and abetted one another, and/or encouraged one another to violate CA Civil Code section 51.5.

573. The conduct of the Defendants, each of them, as alleged herein, was oppressive, fraudulent, intentional, and malicious, and taken in conscious disregard of the health, safety,

economic condition, and rights of Ms. Victor, a victim of discrimination, in that the Defendants, each of them, intentionally, willfully, and maliciously deprived Ms. Victor of her civil rights under the laws of the State of California.

574. Without the issuance of appropriate injunctive relief and other equitable relief, the Defendants, each of them, will continue to discriminate based on the protected characteristics protected by the Unruh Civil Rights Act and will continue to discriminate against female employees and customers and/or employees and customers of color.

575. Consequently, Ms. Victor is entitled to damages for past harm.

576. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

577. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

578. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

579. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

580. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

581. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

582. WHEREFORE, Ms. Victor requests judgement as is further set below.

**EIGHTEENTH CAUSE OF ACTION**
**VIOLATION OF THE RALPH CIVIL RIGHTS ACT**
**(IN VIOLATION OF CA CIVIL CODE §51.7 & §52(b))**
***AGAINST ALL DEFENDANTS***

583. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

584. CA Civil Code section 51.7 is known, and referred to as the Ralph Civil Rights Act of 1976. Subdivision (b) of this section states:

> "*All persons within this jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed in… Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics.*"

585. At all times mentioned herein, Ms. Victor had the right to be free from any violence, intimidation by threat of violence, committed against her on account of her sex, race, color, ancestry, or genetic information.

586. As alleged herein, each Defendant subjected Ms. Victor to violence, and/or intimidation by threats of violence, against her person, on account of her protected characteristics, and/or acted to aid and abet, incite, and/or conspire with the other Defendants to deny Ms. Victor her right to be free from any violence, or intimidation by threat of violence, committed against her person on the account of her protected characteristics.

587. In doing so, each Defendant violated the civil rights of Ms. Victor, as set forth in the Ralph Civil Rights Act, which is codified in CA Civil Code section 51.7.

588. CA Civil Code section 52, subdivision (b), provides that any person who denies another person the rights guaranteed under CA Civil Code section 51.7, or who aids, incites, or conspires in that denial, shall be liable for damages, including, but not limited to punitive damages, attorney's fees and costs, and a civil penalty of twenty-five thousand dollars ($25,000).

589. Additionally, CA Civil Code section 52, established liability for those who aid and abet, incite, and/or conspire to deny Ms. Victor her rights guaranteed by CA Civil Code section 51.7, in that they knew or should have known that all Defendants were continuing to engage in physical and/or verbal sexual harassment, battery, sexual assault, intimidation, discrimination, and retaliation of Ms. Victor and other women and people of color employed at Wally's or customers of Wally's. By failing to take any prompt effective action to halt these violations, the Defendants, each of them, aided the continued violation of Ms. Victor's civil rights.

590. Ms. Victor was subjected to violence and the intimidation by threat of violence at Wally's, by the Defendants, each of them. The unlawful acts and omissions done by the Defendants, each of them, including DOES 1-100, inclusive, was another attempt to cause irreparable harm to Ms. Victor and such unlawful conduct was intentional, malicious, and done with a conscious disregard to Ms. Victor's rights and feelings.

591. Ms. Victor should have been protected from this intimidation and violence despite her position in this labor dispute, however, this labor dispute is the reason why Ms. Victor's civil rights have been ignored.

592. Therefore, Ms. Victor is informed and believes that the Defendants, each of them, aided and abetted, incited, and/or conspired with all of their known and unknown affiliates in performing the acts described herein and holds them legally liable. Ms. Victor is informed and believes that the Defendants, and their co-conspirators, intended to cause fear, pain, suffering, and/or physical injury to Ms. Victor.

593. As a direct result of these acts, omissions, and ratifications, Ms. Victor has suffered and will continue to suffer pain and suffering, including, but not limited too, emotional and mental anguish, distress, and discomfort. Ms. Victor is thereby entitled to general and compensatory damages in an amount to be determined at trial. Ms. Victor is also entitled to damages for economic harm and other consequential damages.

594. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

595. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

596. Ms. Victor is entitled to receive and hereby seeks statutory damages pursuant to CA Civil Code section 52, subdivision (b), including actual and exemplary damages.

597. The Defendants conduct was malicious, oppressive, fraudulent, and outrageous towards Ms. Victor and done with a conscious disregard of Ms. Victor's rights and feelings, and with the intention of causing, and/or willfully disregarding the probability of causing, unjust and cruel hardship to Ms. Victor. In so acting, the Defendants, each of them, intended to, and did vex, injure, and annoy Ms. Victor. Therefore, an assessment of punitive damages should be made against the Defendants in an amount sufficient to punish them and to prevent them from willfully engaging in future discriminatory and/or retaliatory conduct.

598. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

599. WHEREFORE, Ms. Victor requests judgement as is further set below.

## NINETEENTH CAUSE OF ACTION
### VIOLATION OF THE TOM BANE CIVIL RIGHTS ACT
### (IN VIOLATION OF CA CIVIL CODE §52.1)
### *AGAINST ALL DEFENDANTS*

600. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

601. CA Civil Code section 52.1 is known as the Tom Bane Civil Rights Act.

602. CA Civil Code section 52.1, subdivision (b) provides that any individual whose enjoyment of rights secured by the US Constitution or laws of the United States, or of the rights secured by the CA Constitution or laws of the State of California, has been interfered with, or attempted to be interfered with, by threat, intimidation, or coercion, or attempts thereby, may prosecute a civil action in his own name, and obtain injunctive relief, recover damages, and obtain fees and costs.

603. As alleged herein, the Defendants have denied Ms. Victor her enjoyment of rights secured to her by the U.S. Constitution or laws of the United States, or of the rights secured to her by the CA Constitution or laws of the State of California, through threat, intimidation, and coercion.

604. The Defendants actions as alleged herein, have and will continue too, interfere with Ms. Victor's right to be free from gender, sex, and race discrimination, sexual harassment, and retaliation. Ms. Victor had a right to have the proper agencies and supervisors immediately investigate her sexual harassment, abuse, retaliation, and discrimination claims made against the Defendants.

605. The Defendants engaged in oppressive and unlawful tactics in ignoring, concealing, and ultimately suppressing Ms. Victor's complaints. Ms. Victor was threatened and intimidated for reporting the Defendants conduct. Conspiratorial silence and inaction. These intentional acts of concealment of the Defendants abusive behavior violated Ms. Victor's rights to be free from discrimination of the basis of her sex, race, color, ancestry, and/or genetic information.

606. Ms. Victor was deprived of due process of law, when various complaints to management or supervisors failed to trigger any report, investigation, or other action by Wally's and its managing agents, who were required to do so, both under their own policies and procedures, as well as under federal mandate by Title IX and the 14th Amendment.

607. Furthermore, Ms. Victor was deprived of due process of law, when various complaints to the Labor Commissioner's office failed to trigger any report, investigation, or other action by the Labor Commissioner's office and its managing agents, who were required to do so, both under their own policies and procedures, as well as under federal mandate by Title IX and the 14th Amendment.

608. Furthermore, Ms. Victor was deprived of due process of law, when various complaints to the DFEH failed to trigger any report, investigation, or other action by the DFEH and its managing agents, who were required to do so, both under their own policies and procedures, as well as under federal mandate by Title IX and the 14th Amendment.

609. Furthermore, Ms. Victor was deprived of due process of law, when various complaints to the EEOC failed to trigger any report, investigation, or other action by the EEOC and its managing agents, who were required to do so, both under their own policies and procedures, as well as under federal mandate by Title IX and the 14th Amendment.

610. In addition, these actions were contrary to Ms. Victor's civil rights guaranteed under the Constitution of the State of California.

611. The Defendants wrongful conduct was intended to, and did successfully interfere with Ms. Victor's constitutional rights to be free from discrimination, harassment, violence,

intimidation, and retaliation, as well as interfered with her rights of due process under the United States Constitution, specifically the fifth and fourteenth amendments.

612. The Defendants unlawfully and wrongfully used, or employed others to wrongfully use threats, intimidation, harassment, violence, and coercion over Ms. Victor's person, to which Ms. Victor has no relief except to submit to the Defendants wrongful threats, intimidation, harassment, violence, coercion, which rendered Ms. Victors submission involuntary.

613. The Defendants above noted actions were the legal and proximate cause of physical, psychological, emotional, and economic damages. The actions of the Defendants have resulted in Ms. Victor incurring, and will require her to incur into the future, expenses for medical and psychological treatment, therapy, and/or counseling.

614. In subjecting Ms. Victor to the wrongful treatment described herein, the Defendants acted intentionally, willfully, and maliciously with intent to harm Ms. Victor, and in conscious disregard of Ms. Victor's rights, entitling Ms. Victor to compensatory damages, emotional distress damages, punitive and exemplary damages, fees and costs, and injunctive relief ordering the Defendants to retain from the conduct or activities as alleged herein.

615. In addition to, Ms. Victor is entitled to receive and hereby seeks statutory damages pursuant to CA Civil Code section 52, subdivision (b), including actual and exemplary damages.

616. WHEREFORE, Ms. Victor requests judgement as is further set below.

### TWENTIETH CAUSE OF ACTION
**SEXUAL HARASSMENT**
**(IN VIOLATION OF CA CIVIL CODE §51.9)**
***AGAINST ALL DEFENDANTS***

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

617. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

618. CA Civil Code section 51.9, subdivision (a) states:

"*A person is liable in a cause of action for sexual harassment under this section when the plaintiff proves all of the following: (2) The defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the Plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe. (3) The plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of a statutory or constitutional right, as a result off the conduct described in paragraph (2).*"

619. During Ms. Victor's employment, the Defendants intentionally, recklessly, and with cruelty made sexual advances and commentary of a hostile nature based on Ms. Victor's gender that were unwelcome and severe. This includes, but is not limited to, management allowing their customers to discuss Ms. Victor's body before touching her body. Such disgusting behavior was encouraged and enjoyed by the Defendants. All incidents occurred under the supervision of the Defendants, who were acting in the course and scope of their employment with all Defendants, each of them.

620. The incidents of abuse outlined herein took place while Ms. Victor was employed by the Defendants; and the Defendants, including DOES 1-100, inclusive, in their full capacity, were acting specifically on behalf of the Defendants.

621. During Ms. Victor's employment, the Defendants intentionally, recklessly, and with cruelty engaged in acts or commentary that resulted in harmful and offensive contact with Ms. Victor. Multiple principals, managers, and supervisors employed with the Defendants abused

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

their position of authority to force Ms. Victor to engage in unwelcome conversations about her social media, body, and sex life.

622. Ms. Victor was subjected to severe, pervasive, and unwanted harassing conduct by the Defendants, each of them, in part because she is a woman.

623. Ms. Victor reported individual Defendants and their sexually harassing conduct. Ms. Victor took all reasonable steps to file her reports so that she could avoid a hostile and uncomfortable work environment.

624. Reasonable women, in Ms. Victor's circumstances, would have considered the work environment hostile and abusive. Ms. Victor is a reasonable women and she considered her work environment hostile and abusive.

625. Ms. Victor is informed and believes that the Defendants, each of them, knew or should have known of the Defendants unlawful sexually harassing conduct, yet failed to take immediate and appropriate corrective action. In fact, the Defendants took no appropriate corrective actions.

626. The Defendants failure to take immediate and appropriate corrective action was a substantial factor in causing Ms. Victor harm.

627. Even though the Defendants knew or should have known of the activities and unlawful behavior by individual Defendants, the Defendants did nothing to investigate, supervise, or prevent the Defendants from engaging further in their unlawful behavior. The Defendants did absolutely nothing to ensure Ms. Victor's safety.

628. A corporation is a "person" within the meaning of CA Civil Code section 51.9, which subjects persons or liability for sexual harassment within a business, service, or

professional relationship, and such entity Defendant may be held liable, under this statue, for the acts of its employees.

629. The Defendants conduct and the conduct of their agents, affiliates, partners, managers, subsidiaries, etc., was a breach of their duty to Ms. Victor.

630. As a direct result of the Defendants sexual harassment and the conduct described herein, Ms. Victor has suffered, and will continue to suffer, great pain of mind and body, emotional distress, shock, humiliation, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, and loss of the enjoyment of life; Ms. Victor has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; Ms. Victor has sustained and will continue to sustain loss of earnings and other employment benefits and opportunities; Ms. Victor has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and/or counseling.

631. Ms. Victor is entitled to emotional damages in an amount to be determined at trial.

632. Ms. Victor is entitled to general and compensatory damages in an amount to be determined at trial.

633. The Defendants, each of them, had knowledge that the Defendants were likely to inflict injury on Ms. Victor but continued to employ such Defendants with conscious disregard for the rights, health, or safety of Ms. Victor, and of others, justifying an award of punitive and exemplary damages, in a sum appropriate to punish and make an example of the Defendants, each of them.

634. Subdivision (b) of section 52 of the CA Civil Code states:

"Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied the right."

635. The Defendants, each of them, are liable to pay a civil penalty of twenty-five thousand dollars ($25,000).

636. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

637. WHEREFORE, Ms. Victor requests judgement as is further set below.

### TWENTY FIRST CAUSE OF ACTION
### GENDER VIOLENCE
### (IN VIOLATION OF CA CIVIL CODE §52.4 )
### *AGAINST ALL DEFENDANTS*

638. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

639. CA Civil Code section 52.4 defines "gender violence" as a form of sex discrimination consisting of either: one or more acts that would constitute a criminal offense under state law that has an element of use, or attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim; or, a physical intrusion or physical invasion of a sexual nature under coercive conditions.

640. By engaging in the conduct as alleged herein, the Defendants, each of them, including DOES 1-100, inclusive, committed "gender violence" within the meaning of the above statue.

641. Ms. Victor alleges that the Defendants violated CA Civil Code section 52.4 in that one or more acts the Defendants inflicted on Ms. Victor constituted a criminal offense under

State law that has an element of use, attempted use, or threatened use of physical force against her person, committed at least in part based on Ms. Victor's gender, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

642. Ms. Victor alleges that the Defendants and their customers, with permission from the Defendants, violated this statue in that the Defendants and their customers, with permission from the Defendants, engaged in a physical intrusion or physical invasion of a sexual nature under coercive conditions, even if those acts have not resulted in criminal complaints, charges, prosecution, or conviction.

643. The Defendants committed acts of gender violence upon Ms. Victor through the use, or threatened use of physical force against her person, committed at least in part based on Ms. Victor's gender.

644. The Defendants, each of them, acted to aid and abet, incite, and/or conspire with the other to violate CA Civil Code section 52.4.

645. As a direct result of the Defendants unlawful conduct as alleged herein, Ms. Victor has sustained injuries to her mind and body, shock, humiliation, embarrassment, disgrace, injury to her person including physical injuries and emotional distress and mental anguish, all of which said injuries have caused, and continue to cause, Ms. Victor to suffer damages including, but not limited to, the loss of quality of life, the inability to complete or perform daily activities, the loss of enjoyment of life; Ms. Victor has sustained and will continue to sustain loss of earnings and other employment benefits and opportunities; Ms. Victor has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and/or counseling, in an amount to be determined at trial.

646. As a direct result of the Defendants unlawful conduct as alleged herein, Ms. Victor has suffered economic harm, in an amount to be determined at trial.

647. The Defendants conduct was malicious, intentional, oppressive, and fraudulent, and was done in conscious disregard of Ms. Victor's rights and feelings. Such conduct was done with the intent to cause Ms. Victor harm or the disregard of the probability that such conduct would cause Ms. Victor harm as well others. The Defendants conduct was so outrageous and despicable that such conduct would be looked down upon and despised by decent people. Therefore, Ms. Victor is entitled to recover exemplary damages in an amount to be determined at trial.

648. Ms. Victor is entitled to compensatory damages in an amount to be determined at trial.

649. The Defendants, each of them, had knowledge that the Defendants were likely to inflict injury and violence on Ms. Victor but continued to employ such Defendants with conscious disregard for the rights, health, or safety of Ms. Victor, and of others, justifying an award of punitive damages, in an amount to be determined at trial, in a sum appropriate to punish and make an example of the Defendants, each of them.

650. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

651. WHEREFORE, Ms. Victor requests judgement as is further set below.

### TWENTY SECOND CAUSE OF ACTION
### SEXUAL BATTERY
### (IN VIOLATION OF CA CIVIL CODE §1708.5)
### *AGAINST ALL DEFENDANTS*

652. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

653. CA Civil Code section 1708.5, subdivision (a) provides that a person commits a sexual battery who does any of the following: (1) acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results. (2) Acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results. (3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results.

654. CA Civil Code section 1708.5, subdivision (d) defines "intimate part" as the sexual organ, anus, groin, or buttocks of any person, or the breast of a female.

655. CA Civil Code section 1708.5, subdivision (f) defines "offensive conduct" to mean conduct that offends a reasonable sense of personal dignity.

656. Ms. Victor alleges that the Defendants, and customers of Wally's who were encouraged or given permission from the Defendants, committed the act of civil sexual battery in violation of CA Civil Code 1708.5. The Defendants, and customers of Wally's who were encouraged or given permission from the Defendants, willfully, maliciously, intentionally, and without Ms. Victor's consent, subjected her to the forceful, harmful, and offensive touching of Ms. Victor's "intimate parts".

657. The Defendants, and customers of Wally's who were encouraged or given permission from the Defendants, did, in fact, bring themselves into offensive and unwelcome contact with Ms. Victor as described herein above.

658. At all relevant times, Ms. Victor found the contact by the Defendants to be offensive to her person and dignity. At no time did Ms. Victor knowingly consent to any of the acts done by the Defendants alleged herein. As a result of the Defendants acts as herein alleged, Ms. Victor was physically harmed and/or experienced offensive contact with her person.

659. As alleged herein, each Defendant aided, abetted and/or conspired to sexually batter Ms. Victor.

660. In performing the acts described herein, the Defendants acted with the intent to make harmful and offensive contact with Ms. Victor's person.

661. Pursuant to the above conspiracy, the Defendants, each of them, acted to aid and abet the other Defendants, in fact, the Defendants did bring themselves into offensive and unwelcome contact with Ms. Victor as described herein.

662. As described herein, the Defendants, each of them, subjected Ms. Victor to un-consented and intentional invasions of her right to be free from offensive and harmful physical contact.

663. The Defendants, each of them, abused and betrayed their relationship of trust and confidence with Ms. Victor.

664. As a direct result of the Defendants unlawful conduct as alleged herein, Ms. Victor has sustained injuries to her mind and body, shock, humiliation, embarrassment, disgrace, injury to her person including physical injuries and emotional distress and mental anguish, all of which

said injuries have caused, and continue to cause, Ms. Victor to suffer damages including, but not limited to, the loss of quality of life, the inability to complete or perform daily activities, the loss of enjoyment of life; Ms. Victor has sustained and will continue to sustain loss of earnings and other employment benefits and opportunities; Ms. Victor has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and/or counseling, in an amount to be determined at trial.

665. The aforementioned conduct by the Defendants was cruel, willful, and malicious. At all relevant times the Defendants, each of them, acted with complete disregard of Ms. Victor's rights and feelings. The Defendants, each of them, acted with the knowledge of, or with reckless disregard for the fact that their conduct was certain to cause injury and humiliation to Ms. Victor. Ms. Victor is informed and believes that the Defendants, each of them, intended to cause fear, physical injury, pain, and suffering to Ms. Victor. Ms. Victor is entitled to recover punitive and exemplary damages from the Defendants, in a sum appropriate to punish and make an example of the Defendants, each of them.

666. Ms. Victor alleges that pursuant to the above conspiracy, the Defendants, and customers of Wally's who were encouraged or given permission from the Defendants, each committed acts of civil sexual battery in violation of CA Civil Code section 1708.5.

667. Each Defendant, including DOES 1-100, inclusive, each willfully, maliciously, intentionally, and without Ms. Victor's consent, subjected Ms. Victor to the forceful, harmful, and/or offensive touching of Ms. Victor's buttocks and breasts despite her expressed objection.

668. As a direct result of the Defendants unlawful conduct as alleged herein, Ms. Victor has suffered economic harm, in an amount to be determined at trial.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

669.  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

670. WHEREFORE, Ms. Victor requests judgement as is further set below.

**TWENTY THIRD CAUSE OF ACTION**
**BATTERY**
***AGAINST ALL DEFENDANTS***

671. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

672. In performing the acts described herein, the Defendants acted with the intent to make a harmful and offensive contact with Ms. Victor.

673. The Defendants, each of them, and/ or the customers of Wally's who were encouraged or given permission from the Defendants, did, in fact, bring themselves into offensive and unwelcome contact with Ms. Victor as described herein.

674. At all relevant times, Ms. Victor found the contact by the Defendants to be offensive to her person and dignity. At no time did Ms. Victor knowingly consent to any of the acts by the Defendants, each of them, and/ or the customers of Wally's who were encouraged or given permission from the Defendants, alleged herein.

675. As a result of the Defendants acts as alleged herein, Ms. Victor was physically harmed and/or experienced offensive contact with her person.

676. As alleged herein, each Defendant aided, abetted, and/or conspired to batter Ms. Victor. In performing the acts described herein, the Defendants acted with the intent to make a harmful and offensive contact with Ms. Victor's person.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

677. In doing the acts described herein, the Defendants, each of them, did in fact make physical contact with Ms. Victor with the intent to harm or offend her.

678. As described herein, the Defendants, each of them subjected Ms. Victor to un-consented and intentional violations of her interests in freedom from intentional, unlawful, harmful, and offensive physical contact.

679. A reasonable person in Ms. Victor's position would have been offended by the physical contact that the Defendants subjected Ms. Victor too. Ms. Victor is a reasonable person and was, and is, offended by the physical contact that the Defendants subjected her too.

680. Pursuant to the above conspiracy, the Defendants, each of them, acted to aid and abet the other Defendants, in fact, such individual Defendants did bring themselves into offensive and unwelcome contact with Ms. Victor as described herein and above.

681. The Defendants, each of them, abused and betrayed their relationship of trust and confidence with Ms. Victor.

682. As a direct result of the Defendants unlawful conduct as alleged herein, Ms. Victor has sustained injuries to her mind and body, shock, humiliation, embarrassment, disgrace, injury to her person including physical injuries and emotional distress and mental anguish, all of which said injuries have caused, and continue to cause, Ms. Victor to suffer damages including, but not limited to, the loss of quality of life, the inability to complete or perform daily activities, the loss of enjoyment of life; Ms. Victor has sustained and will continue to sustain loss of earnings and other employment benefits and opportunities; Ms. Victor has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and/or counseling, in an amount to be determined at trial.

683. The aforementioned conduct by the Defendants was cruel, willful, and malicious. At all relevant times the Defendants, each of them, acted with complete disregard of Ms. Victor's rights and feelings. The Defendants, each of them, acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and humiliation to Ms. Victor. Ms. Victor is informed and believes that the Defendants, each of them, intended to cause fear, physical injury, pain, and suffering to Ms. Victor. Ms. Victor is entitled to recover punitive and exemplary damages from the Defendants, in a sum appropriate to punish and make an example of the Defendants, each of them.

684. The above referenced acts of the Defendants were authorized, ratified, and encouraged by each Defendant who were officers, principals, supervisors, affiliates, partners, or managing agents of the Defendants. The Defendants, each of them, are thus liable for the above mentioned battery of Ms. Victor and responsible for damages caused by said conduct under the principals of vicarious liability.

685.  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

686. WHEREFORE, Ms. Victor requests judgement as is further set below.

## TWENTY FOURTH CAUSE OF ACTION
### ASSAULT
### *AGAINST ALL DEFENDANTS*

687. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

688. As alleged herein, each Defendant conspired and/or aided and abetted the other to assault Ms. Victor.

689. The Defendants conspired and/or aided and abetted to intimidate Ms. Victor.

690. The Defendants intended to cause Ms. Victor apprehension or an imminent harmful and offensive contact with her person.

691. Ms. Victor reasonably believed that she was about to be harmed in a physical or offensive manner by the Defendants.

692. As a result of the Defendants conduct, Ms. Victor was, in fact, placed in great apprehension of imminent harmful and offensive contact with her person.

693. In performing the acts alleged herein, the Defendants acted with the intent of making contact with Ms. Victor's person.

694. At no time did Ms. Victor consent to any of the conduct by the Defendants as alleged herein.

695. The Defendants conduct as alleged herein, caused Ms. Victor to be apprehensive that the Defendants would subject her to further intentional invasions of her right to be free from offensive and harmful contact and demonstrated that at all times material herein, the Defendants had a present ability to subject her to intentional offensive and harmful contact.

696. Ms. Victor was harmed as a result of the Defendants conduct.

697. The Defendants conduct was a substantial factor in causing Ms. Victor harm.

698. As a direct result of the Defendants conduct, Ms. Victor was physically and psychologically damaged.

699. Without consent, the Defendants intentionally assaulted Ms. Victor with the intent to harm Ms. Victor as described herein. Such conduct was extreme, outrageous, and done with

malice, and would be deemed highly offensive to a reasonable person. Ms. Victor is a reasonable person and found the Defendants conduct to be highly offensive.

700. Ms. Victor is informed and believes that the Defendants intended to cause fear, physical injury, and/or pain and suffering to Ms. Victor. In committing the acts alleged, the Defendants, each of them, are guilty of fraud, oppression, and malice and therefore Ms. Victor is entitled to an award of punitive and exemplary damages in an amount to be determined at trial, in a sum appropriate to punish and make an example of the Defendants, each of them.

701. As a direct result of the Defendants conduct, each of them, Ms. Victor has suffered and will continue to suffer harm and economic damages. Ms. Victor will incur and will continue to incur damages in the future for the cost of future care, in an amount to be determined at trial.

702.  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

703. WHEREFORE, Ms. Victor requests judgement as is further set below.

## TWENTY FIFTH CAUSE OF ACTION
### STALKING
### (IN VIOLATION OF CA CIVIL CODE 1708.7 AND CA PENAL CODE 646.9)
### *AGAINST ALL DEFENDANTS*

704. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

705. CA Civil Code section 1708.7 holds a person liable for stalking if the Defendant or Defendant(s) engaged in a pattern of behavior with the intent to follow, alarm, place under surveillance, or harass the Plaintiff and as a result of such behavior the Plaintiff reasonably feared for their safety or the safety of their family.

706. The Defendants, each of them, had and continue to stalk Ms. Victor on social media.

707. The Defendants have engaged in a repeated pattern of behavior with the intention to alarm Ms. Victor, place Ms. Victor under surveillance, and to harass Ms. Victor, this includes, but is not limited too, the Defendants stalking Ms. Victor's social media as a weapon to harass her at her place of Employment, Wally's.

708. As a direct result of the Defendants conduct, Ms. Victor reasonable feared for her safety.

709. Without consent, the Defendants intentionally stalked Ms. Victor with the intent to harm Ms. Victor, harass Ms. Victor, or intimidate Ms. Victor as described herein.

710. Such conduct was extreme, outrageous, and done with malice, and would be deemed highly offensive to a reasonable person. Such pattern of conduct would cause a reasonable person to suffer substantial emotional distress. Ms. Victor is a reasonable person and has suffered and will continue to suffer substantial emotional distress.

711. CA Penal Code section 646.9 defines the crime of stalking as following, harassing, and/or threatening someone to the point that the person fears for his or her safety. Committing such crime has a penalty to up to five years in prison.

712. The Defendants, each of them, including DOES 1-100, inclusive, are guilty of the crime of stalking as they have followed, harassed, and intimidated Ms. Victor to the point she was in fear for her safety.

713. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants willfully committed their conduct, willingly, and on purpose.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

714. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants maliciously and intentionally committed such wrongful acts with the unlawful intent to disturb, annoy, intimidate, or injure her.

715. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, harassed her, and continue to harass her, with the intention to annoy, alarm, harass, or disturb her.

716. Pursuant to CA Civil Code section 3294, the Defendants are liable to reward Ms. Victor for damages, including, but not limited too, general damages, special damages, and punitive damages in an amount to be determined at trial.

717. Ms. Victor is entitled to compensatory damages in an amount to be determined at trial.

718. In addition, Ms. Victor demands the court grant her equitable relief, including but not limited too, an injunction to stop the Defendants behavior immediately.

719. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

720. WHEREFORE, Ms. Victor requests judgement as is further set below.

## TWENTY SIXTH CAUSE OF ACTION
### UNLAWFUL CONTINUED VIOLATIONS OF CA CIVIL CODE'S INCLUDING THE PLAINTIFF'S CIVIL RIGHTS
### *AGAINST ALL DEFENDANTS*

721. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

722. The pattern of the defendants violating CA Civil Code's is a repeated pattern that has occurred on multiple complaints filed within the Los Angeles Superior Court, including Ms. Victor's, a pattern that has not changed. The Defendants unlawful violations of all California Civil Codes will not stop until the Defendants are forced to stop such unlawful conduct.

723. The Defendants, each of them, have made Wally's a place of employment that constitutes a serious menace to the lives and safety of persons about it. The court must declare and enforce and injunction to restrain the Defendants, each of them, from the operation of the place of employment until all conditions are corrected and stopped indefinitely.

724. The Defendants have engaged in a pattern of behavior where they have discriminated, harassed, and retaliated against employees, especially women, on the basis of their protected characteristics.

725. The Defendants have engaged in a pattern of behavior where they have sexually harassed, sexually battered, and assaulted employees, especially women, in part, on the basis of their sex. These employees, which include Ms. Victor, did not have the availability to all protections, all rights, and all remedies that should be available to them under state law. These women, which includes Ms. Victor, had their civil rights stolen from them by the Defendants, each of them.

726. The Defendants acted to aid and abet, and/or conspire with the other to violate all of the CA Civil Codes mentioned herein. The Defendants actions were willful, cruel, malicious, and intentional. At all relevant times mentioned herein, the Defendants acted with complete disregard of Ms. Victor's rights and feelings. The Defendants acted with the knowledge of, or

with reckless disregard for the possibility, that their conduct was certain to cause injury and humiliation to Ms. Victor.

727. Ms. Victor, as a direct result of the Defendants violating the CA Civil Codes mentioned herein, has suffered, and continues to suffer great pain of mind and body, shock, humiliation, embarrassment, emotional distress, physical manifestations, loss of self-esteem, disgrace, loss of enjoyment of life, has developed hypervigilance, loss of professional reputation, loss of future wages, psychological harm, sleeplessness, nervousness, mental anguish, fear, anxiety, constant fear of eminent doom, inconsistent weight loss and gain, and financial turmoil.

728. Ms. Victor constantly has upset stomachs or digestive problems including constipation or constant nausea, low energy, aches, pains, tense muscles, rapid heartbeats, dry mouth and difficulty swallowing, and often grinds her teeth or clenches her jaw when her anxiety is triggered.

729. The Defendants unlawful conduct has affected Ms. Victor's mood leaving her feeling overwhelmed especially with the desire to take control of a bias litigation. Ms. Victor has trouble relaxing and quieting her mind, leaving her to feel the need to avoid others which then results in loneliness, worthlessness, and severe depression.

730. Ms. Victor is constantly worrying and constantly seeing only the negative. The Defendants unlawful conduct has not only made Ms. Victor doubt all of humanity but the entire judicial system which causes her thoughts to race, it also causes both fear and sadness as she has bore witness to the law being broken and corruption covering it up.

731. Ms. Victor has suffered hair loss, bad acne,  has developed eczema, struggles to remain focused and motivated, and struggles every day to get through daily activities, all as a direct result of the Defendants, each of them, unlawful conduct.

732. Ms. Victor, as a result of the Defendants continued violations of the CA Civil codes mentioned herein, has suffered and continues to suffer, and was prevented, and will continue to be prevented, from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings, and/or incurred, and will continue to incur, expenses for medical and psychological treatment, therapy, and/or counseling.

733. Due to Ms. Victor's suffering from the damages causes by the Defendants unlawful conduct while violating all of the CA Civil Codes mentioned herein continuously, Ms. Victor is entitled to general damages, economic and non economic damages, consequential damages, punitive and exemplary damages, special damages, future damages, interest, and injunctive relief.

734. Ms. Victor has incurred, and will continue to incur, fess and costs of suit in the prosecution of this action, and therefore demands such reasonable fees and costs in addition to all penalties she is owed for the Defendants violations of the above mentioned CA Civil Codes.

735. Ms. Victor is entitled to move the Court to grant and enforce permanent restraining orders on the Defendants, each of them, as well DOES 1-100, inclusive, who have a personal interest in this case and would seek to cause further harassment, oppression, discrimination, and/or harm Ms. Victor in retaliation for filing her complaint for damages.

736. WHEREFORE, Ms. Victor requests judgement as is further set below.

## TWENTY SEVENTH CAUSE OF ACTION
### DISCRIMINATION ON THE BASIS OF RACE
### (IN VIOLATION OF CA GOVERNMENT CODE 8315)
### *AGAINST ALL DEFENDANTS*

*737.* Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

738. The Defendants, each of them, have discriminated against Ms. Victor, and other employees and customers, on the basis of their race on a variety of occasions. The Defendants racial discrimination is continuous and has yet to be stopped.

739. This statue defines racial discrimination as:

"*Any distinction, exclusion, restriction or preference based on race, color, descent, or national or ethnic origin which has the purpose or effect of nullifying or impairing recognition, enjoyment or exercise, on an equal footing, of human rights and fundamental freedoms in the political, economic, social, cultural, or any other field of public life.*"

740. The Defendants, each of them, discriminated against Ms. Victor on the basis of her race, color, descent, and/or her ethnic origin. The Defendants, each of them, have discriminated against other employees and customers on the basis of their race, color, descent, and/or their ethnic origin. The Defendants engaged in such conduct maliciously and intentionally to ensure Ms. Victor, and other people of color, could not enjoy their equal human rights and fundamental freedoms in every field of public life.

741. The Defendants intentionally racially discriminated against Ms. Victor with the intent to harm Ms. Victor as described herein. Such conduct was extreme, outrageous, and done with malice, and would be deemed highly offensive to a reasonable person. Ms. Victor is a reasonable person and found the Defendants conduct to be highly offensive.

742. Ms. Victor is informed and believes that the Defendants intended to cause fear, physical injury, and/or pain and suffering to Ms. Victor. Ms. Victor is informed and believes that the Defendants took enjoyment and found pleasure in racially discriminating her. In committing the acts alleged, the Defendants, each of them, are guilty of fraud, oppression, and malice and therefore Ms. Victor is entitled to an award of punitive and exemplary damages in an amount to be determined at trial, in a sum appropriate to punish and make an example of the Defendants, each of them.

743. As a direct result of the Defendants conduct, each of them, Ms. Victor has suffered and will continue to suffer harm and economic damages. Ms. Victor will incur and will continue to incur damages in the future for the cost of future care, in an amount to be determined at trial.

744. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

745. WHEREFORE, Ms. Victor requests judgement as is further set below.

## <u>TWENTY EIGHTH CAUSE OF ACTION</u>
### FAILURE TO COMBAT DISCRIMINATION IN VIOLATION OF STATE POLICY
### *AGAINST ALL DEFENDANTS*

746. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

747. CA Government Code section 11139.8, subdivision (a), states:

"*The Legislature finds and declares all of the following: (1) California is a leader in protecting civil rights and preventing discrimination, (2) California's robust nondiscrimination laws include protections on the basis of sexual orientation, gender identity, and gender expression, among other characteristics, (6) it is the policy of the State of California to promote fairness and equality and to combat discrimination.*"

748. The Defendants, each of them, have discriminated against Ms. Victor, and other employees and customers, on the basis of their race, ethnic origin, ancestry, sex, and genetic information on a variety of occasions. The Defendants discrimination is continuous and has yet to be stopped.

749. All of Ms. Victor's civil rights were denied and/or violated during her employment with the Defendants and through the legal process of suing the Defendants for their unlawful conduct. Ms. Victor was discriminated against, and continues to be discriminated against, by the Defendants, each of them, for her specific protected characteristics.

750. Not once during Ms. Victor's employment did the Defendants promote fairness or equality towards Ms. Victor.

751. Not once during this three year litigation did the Defendants or their legal counsel promote fairness and equality.

752. Not once during Ms. Victor's employment with the Defendants, or during this three year litigation, was discrimination combatted, in fact, it escalated, in violation of this statue and against the policies of the State of California.

753. The Defendants intentionally discriminated against Ms. Victor with the intent to harm Ms. Victor as described herein. Such conduct was extreme, outrageous, and done with malice, and would be deemed highly offensive to a reasonable person. Ms. Victor is a reasonable person and found the Defendants conduct to be highly offensive.

754. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants intended to cause fear, physical injury, and/or pain and suffering to Ms. Victor.

755. Ms. Victor is informed and believes that the Defendants took enjoyment and found pleasure in discriminating her for her protected characteristics.

756. In committing the acts alleged, the Defendants, each of them, are guilty of fraud, oppression, and malice and therefore Ms. Victor is entitled to an award of punitive and exemplary damages in an amount to be determined at trial, in a sum appropriate to punish and make an example of the Defendants, each of them.

757. As a direct result of the Defendants conduct, each of them, Ms. Victor has suffered and will continue to suffer harm and economic damages. Ms. Victor will incur and will continue to incur damages in the future for the cost of future care, in an amount to be determined at trial.

758. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

759. WHEREFORE, Ms. Victor requests judgement as is further set below.

## TWENTY NINTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF FEHA
### (IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)
### *AGAINST ALL DEFENDANTS*

760. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

761. At all times relevant herein, the FEHA was in full force and effect and was binding on the Defendants, each of them.

762. This statue requires the Defendants to refrain from retaliating against any employee for opposing practices forbidden by the FEHA or who asserts rights under FEHA, including

complaining of discrimination or harassment on the basis of sex, race, color, national origin, ancestry, or genetic information.

763. The Defendants, each of them, aided and abetted, conspired, and/or encouraged one another to take actions or make comments to and/or about Ms. Victor that exhibited discriminatory, harassing, and retaliatory motivations, intentions, and consciousness.

764. As alleged herein, during Ms. Victor's employment with the Defendants, the Defendants intentionally engaged in discrimination and harassment, about which Ms. Victor complained to the Defendants about being retaliated against, discriminated against, and harassed for her protected characteristics.

765. Ms. Victor reported each individual Defendant to the appropriate supervisors. Ms. Victor reported the Defendants sexual harassment, sexual battery, assault, battery, discrimination, bullying, and retaliation.

766. In response to Ms. Victor's multiple complaints, the Defendants, each of them, subjected Ms. Victor to a torturous work environment and banned her from enjoying accommodations other employees were allowed to enjoy.

767. The Defendants actions and omissions were adverse employment actions because they materially and adversely affected the terms, conditions, or privileges of Ms. Victor's employment and were likely to impair Ms. Victor's job performance.

768. Ms. Victor was subjected to a change in her work schedule, instead of being scheduled for busy evening shifts, she got the less desired shifts where less tips would be made by Ms. Victor. Ms. Victor was threatened verbally multiple times of her future termination, including, but not limited to, the warnings manager Ms. Jimenez gave Ms. Victor of the other

managers goal to fire her, and, the times Ms. Victor would show up to work and other hostesses would hug her and say "goodbye" stating they'll miss her, prior to Ms. Victor's actual wrongful termination.

769. Ms. Victor's multiple complaints against individual Defendants was a substantial motivating reason for the Defendants decision to take adverse actions against Ms. Victor.

770. The decision to terminate Ms. Victor's employment was in retaliation for Ms. Victor engaging in protected activity, including her complaints described herein.

771. By reason of the continuous nature of the Defendants unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

772. Ms. Victor was harmed by the Defendants actions, and the Defendants actions were a substantial factor in causing Ms. Victor pain and suffering. As a direct result of the Defendants willful, knowing, malicious, and intentional retaliation against Ms. Victor, she has suffered and will continue to suffer pain, extreme and severe mental anguish and emotional distress. Ms. Victor has incurred and will continue to incur medical expenses and other incidental expenses. Ms. Victor has suffered a loss of earnings and other employment benefits and job opportunities. Ms. Victor is therefore entitled to general and compensatory damages in an amount to be proven at trial.

773. Ms. Victor is informed and believes that the Defendants outrageous conduct described herein was done with malice, oppression, and fraud and in reckless disregard of Ms. Victor's rights under FEHA.

774. The Defendants, each of them, authorized, condoned, ratified, aided and abetted, and/or conspired with one another or for each other the outrageous and despicable conduct

alleged herein, justifying an award of exemplary and punitive damages owed to Ms. Victor, in a sum appropriate to punish and make an example of the Defendants, each of them.

775.  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

776. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRTIETH CAUSE OF ACTION**
**EMPLOYMENT DISCRIMINATION IN VIOLATION OF FEHA**
**(IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)**
***AGAINST ALL DEFENDANTS***

777. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

778. At all times relevant herein, the FEHA was in full force and effect and was binding on the Defendants, each of them.

779. This statue requires the Defendants to refrain from retaliating against any employee for opposing practices forbidden by the FEHA or who asserts rights under FEHA.

780. CA Government Code section 12940, subdivision (a) states that it is an unlawful employment practice for an employer to discriminate against the person in compensation or in terms, conditions, or privileges of employment because of that persons race, color, ancestry, genetic information, or sex.

781. At all times relevant herein, Ms. Victor was a member of a protected class.

782. During Ms. Victor's employment with the Defendants, Ms. Victor performed her work competently and in a satisfactory manner.

783. During Ms. Victor's employment with the Defendants, the Defendants, each of them, engaged in an ongoing pattern of discrimination.

784. The Defendants intentionally and maliciously discriminated against Ms. Victor for her protected characteristics. The Defendants, each of them, intentionally and maliciously discriminated against other employees based on their sex, race, color, ancestry, and/or genetic information in violation of FEHA.

785. The Defendants have discriminated against Ms. Victor and continue to discriminate against Ms. Victor based on her protected characteristics in violation of the FEHA.

786. As a result of the Defendants unlawful employment practices, Ms. Victor has suffered and continues to suffer harm, including, but not limited to, loss of earnings, loss of future benefits, and other financial losses as well as non-economic damages. Ms. Victor claims such amounts as damages together with prejudgement interest pursuant to CA Civil Code sections 3287 and/or 3288 and/or any other provisions of law providing for prejudgement interest.

787. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered, and will continue to suffer, mental anguish and emotional distress, and has incurred, and will continue to incur, medical expenses as a result. Ms. Victor is informed and believes that she will experience mental anguish and emotional distress, as well as pain and suffering, for a period in the future that she cannot presently ascertain, all in an amount to be determined at trial.

788. The Defendants actions demonstrated that they will continue to engage in the pattern or practice of unlawful employment discrimination prohibited by FEHA unless they are enjoined

pursuant to the police power granted by CA Government Code sections 12920 and 12920.5, from failing or refusing to comply with the mandates of FEHA.

789. The Defendants actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure female employees and employees of color, including Ms. Victor, in conscious disregard of her rights.

790. Unless the Defendants, each of them, are enjoined, pursuant to CA Government Code section 12965, subdivision (c), from failing or refusing to comply with the mandates of FEHA, female employees and employees of color right to seek or hold employment free of unlawful discrimination will continue to be violated.

791. By reason of the continuous nature of the Defendants unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

792. Ms. Victor is informed and believes that the Defendants outrageous conduct described herein was done with malice, oppression, and fraud and in reckless disregard of Ms. Victor's rights under FEHA. The Defendants, each of them, authorized, condoned, ratified, aided and abetted, and/or conspired with one another or for each other's outrageous and despicable conduct alleged herein, justifying an award of exemplary and punitive damages owed to Ms. Victor, in a sum appropriate to punish and make an example of the Defendants, each of them.

793. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

794. WHEREFORE, Ms. Victor requests judgement as is further set below.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

## THIRTY FIRST CAUSE OF ACTION
## QUID PRO QUO SEXUAL HARASSMENT IN VIOLATION OF FEHA
## (IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)
### *AGAINST ALL DEFENDANTS*

795. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

796. At all times relevant herein, the FEHA was in full force and effect and was binding on the Defendants, each of them.

797. This statue requires the Defendants to refrain from retaliating against any employee for opposing practices forbidden by the FEHA or who asserts rights under FEHA.

798. The Defendants, each of them, and customers encouraged by the Defendants, made unwanted sexual advances to Ms. Victor and engaged in physical conduct of a sexual nature.

799. During the five months Ms. Victor worked for Wally's, the Defendants made constant unwelcome sexual advances towards Ms. Victor. The Defendants allowed customers, especially their "VIP" customers, to make constant unwelcome sexual advances towards Ms. Victor.

800. After Ms. Victor denied the Defendants, each of them, sexual advances and after denying the Defendants "VIP" customers sexual advances, Ms. Victor attempted to report multiple complaints to the supervisors at Wally's. Ms. Victor expected that such complaints would be given to the HR department directly and immediately, however, the Defendants, each of them, aided and abetted, coerced, and/or conspired with one another to ensure Ms. Victor's complaints never reached HR. In retaliation for denying the Defendants sexual advances and in retaliation for reporting such sexual advances, the Defendants wrongfully terminated Ms. Victor.

801. The terms of Ms. Victor's employment and favorable working conditions were made contingent, by words and conduct, and Ms. Victor's acceptance of the Defendants sexual advances and conduct and Ms. Victor's acceptance of the sexual advances and conduct of the Defendants "VIP" customers.

802. The Defendants, each of them, committed their tortious and wrongful acts in the course and scope of their employment or in their full capacity, and at the time of the Defendants conduct, each of them, each Defendant was employed with Wally's, and most Defendants were in supervisor roles.

803. The Defendants created, fostered, tolerated, and condoned a work environment that would be considered severely hostile to a reasonable person. Ms. Victor is a reasonable person and is informed and believes that the Defendants intentionally created, fostered, tolerated, and condoned a severely hostile work environment.

804. The Defendants, each of them, participated in, assisted, or encouraged, the harassing conduct of one another.

805. The Defendants ratified the conduct of one another in failing to take immediate and appropriate corrective action.

806. The Defendants are liable and responsible for the acts of their managers, agents, supervisors, and employees under CA Government Code section 12940, subdivision (j) because the Defendants knew of, or had knowledge of, said conduct and failed to take timely and appropriate corrective action by failing and refusing to remedy the hostile work environment and by failing and refusing to take all reasonable steps to prevent harassment from occurring by permitting all Defendants and customers to continuously harass Ms. Victor.

807. Ms. Victor was harmed as a result of the Defendants unlawful and disgraceful conduct.

808. The Defendants conduct, each of them, was a substantial factor in causing Ms. Victor harm.

809. The Defendants, each of them, are also liable for the harassment of Ms. Victor under principals of vicarious liability and are responsible for damages caused by such conduct.

810. As a direct result of the Defendants actions and inactions alleged herein, Ms. Victor has suffered and continues to suffer extreme physical and emotional distress, financial hardship, wage losses, humiliation, embarrassment, shock, mental and physical pain, psychological damage, emotional distress, and other damages in an amount to be proven at trial.

811. The above referenced acts of the Defendants were authorized, condoned, ratified, and encouraged by each Defendant whom were officers, supervisors, or managing agents of all Defendants, and were done intentionally, with malice and cruelty, entitling Ms. Victor to an award of punitive and exemplary damages in an amount appropriate to punish the Defendants and make an example of all Defendants, each of them.

812. As a direct result of the Defendants conduct as alleged herein,  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

813. WHEREFORE, Ms. Victor requests judgement as is further set below.

### THIRTY SECOND CAUSE OF ACTION
### UNLAWFUL COERCION IN VIOLATION OF FEHA
### (IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)
### *AGAINST ALL DEFENDANTS*

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

814. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

815. At all relevant times herein, the FEHA was in full force and effect binding on the Defendants, each of them.

816. CA Government Code section 12940, subdivision (i) makes it unlawful for any person to compel or coerce the doing of any of the acts forbidden under this part, or an attempt to do such.

817. CA Government Code section 12948 provides that a violation of CA Civil Code section 51 or 51.5, is a violation of FEHA. The Defendants, each of them, violated both CA Civil Code section 51 and 51.5, which is a violation of FEHA.

818. The Defendants, each of them, having been informed by Ms. Victor and other employees that its treatment of female employees and employees of color was in violation of the laws of the State of California, knowingly compelled and coerced its employees to engage in practices that violated FEHA, the Unruh Civil Rights Act, and CA Civil Code 51.5.

819. The Defendants, each of them, ignored all complaints by Ms. Victor and other employees that their differential treatment of female employees and employees of color was unlawful. Even after Ms. Victor's objections the Defendants continued to engage in discriminatory conduct and coerced other staff members to do the same.

820. Without the issuance of appropriate injunctive relief and other equitable relief, the Defendants will continue to compel and coerce it's employees to discriminate against employees and customers for their protected characteristics which is protected by the Unruh Civil Rights Act.

821. As a direct result of the Defendants actions and inactions alleged herein, Ms. Victor has suffered and continues to suffer extreme physical and emotional distress, financial hardship, wage losses, humiliation, embarrassment, shock, mental and physical pain, psychological damage, emotional distress, and other damages in an amount to be proven at trial.

822. The above referenced acts of the Defendants were authorized, condoned, ratified, and encouraged by each Defendant whom were officers, supervisors, or managing agents of all Defendants, and were done intentionally, with malice and cruelty, entitling Ms. Victor to an award of punitive and exemplary damages in an amount appropriate to punish the Defendants and make an example of all Defendants, each of them.

823. As a direct result of the Defendants conduct as alleged herein,  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

824. WHEREFORE, Ms. Victor requests judgement as is further set below.

### THIRTY THIRD CAUSE OF ACTION
**HOSTILE WORK ENVIRONMENT - SEXUAL HARASSMENT IN VIOLATION OF FEHA**
**(IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)**
*AGAINST ALL DEFENDANTS*

825. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

826. At all relevant times herein, the FEHA was in full force and effect binding on the Defendants, each of them.

827. Ms. Victor is an "applicant" and a "person providing services pursuant to a contract" under CA Government Code section 12940, subdivision (j).

828. The Defendants are "employers" and each individual Defendant is a "person" under CA Government Code section 12940, subdivision (j).

829. Ms. Victor was subjected to unwanted harassing conduct on the basis of her gender in violation of the FEHA.

830. The Defendants, each of them, participated in, assisted or encouraged the harassing conduct. And each individual Defendant is also personally liable for such harassment under the FEHA.

831. The unlawful conduct of the Defendants, each of them, as alleged herein, was so severe, widespread, or persistent to alter the terms and conditions of employment and was sufficiently severe and/or pervasive such that it created a hostile and abusive work environment.

832. The Defendants created, fostered, tolerated, and condoned a work environment that would be considered severely hostile and abusive to a reasonable person. Ms. Victor is a reasonable person and is informed and believes, and based thereon alleges, that the Defendants intentionally created, fostered, tolerated, and condoned a severely hostile and abusive work environment.

833. The Defendants, each of them, participated in, assisted, or encouraged, the harassing conduct of one another creating a hostile and abusive work environment.

834. The Defendants ratified the conduct of one another in failing to take immediate and appropriate corrective action, to prevent a hostile and abusive work environment.

835. The Defendants are liable and responsible for the acts of their managers, agents, supervisors, and employees under CA Government Code section 12940, subdivision (j) because the Defendants knew of, or had knowledge of, said conduct and failed to take timely and

appropriate corrective action by failing and refusing to remedy the hostile work environment and by failing and refusing to take all reasonable steps to prevent harassment from occurring by permitting all Defendants and customers to continuously harass Ms. Victor.

836. Ms. Victor was harmed as a result of the Defendants unlawful and disgraceful conduct.

837. The Defendants, each of them, unlawful conduct was a substantial factor in causing Ms. Victor harm.

838. The Defendants, each of them, are also liable for the harassment of Ms. Victor and for a hostile and dangerous work environment, under principals of vicarious liability and are responsible for damages caused by such conduct.

839. As a direct result of the Defendants actions and inactions alleged herein, Ms. Victor has suffered and continues to suffer extreme physical and emotional distress, financial hardship, wage losses, humiliation, embarrassment, shock, mental and physical pain, psychological damage, emotional distress, and other damages in an amount to be proven at trial.

840. The above referenced acts of the Defendants were authorized, condoned, ratified, and encouraged by each Defendant whom were officers, supervisors, or managing agents of all Defendants, and were done intentionally, with malice and cruelty, entitling Ms. Victor to an award of punitive and exemplary damages in an amount appropriate to punish the Defendants and make an example of all Defendants, each of them.

841. As a direct result of the Defendants conduct as alleged herein,  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

842. WHEREFORE, Ms. Victor requests judgement as is further set below.

### THIRTY FOURTH CAUSE OF ACTION
### SEXUAL FAVORITISM IN VIOLATION OF FEHA
### (IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)
### *AGAINST ALL DEFENDANTS*

843. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

844. At all relevant times herein, the FEHA was in full force and effect binding on the Defendants, each of them.

845. There was a widespread sexual favoritism in the work environment during Ms. Victor's time as an employee at Wally's.

846. As alleged herein, Mr. Navarro had a sexual relationship with other employees who did not deny his sexual advances and, as a result, they were not denied work opportunities and were not retaliated against.

847. By contrast, when Ms. Victor denied sexual advances from all of the Defendants and the Defendants customers, and by reporting them to the appropriate managers and supervisors, Ms. Victor got less work shifts, and less busy work shifts, until she was wrongfully terminated in retaliation by the Defendants.

848. The sexual favoritism was severe and pervasive.

849. A reasonable person in Ms. Victor's circumstances would have considered the work environment to be hostile or abusive because of the widespread sexual favoritism. Ms. Victor is a reasonable person and considered the work environment to be hostile or abusive because of the widespread sexual favoritism.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

850. The Defendants, each of them, participated in, assisted, or encouraged, the sexual favoritism.

851. The Defendants ratified the conduct of one another in failing to take immediate and appropriate corrective action, to prevent a hostile and abusive work environment because of the sexual favoritism.

852. The Defendants are liable and responsible for the acts of their managers, agents, supervisors, and employees under CA Government Code section 12940, subdivision (j) because the Defendants knew of, or had knowledge of, said conduct and failed to take timely and appropriate corrective action by failing and refusing to remedy the hostile work environment and by failing and refusing to take all reasonable steps to prevent sexual favoritism from occurring.

853. Ms. Victor was harmed as a result of the Defendants unlawful and disgraceful conduct.

854. The Defendants unlawful conduct, each of them, was a substantial factor in causing Ms. Victor harm.

855. As a direct result of the Defendants actions and inactions alleged herein, Ms. Victor has suffered and continues to suffer extreme physical and emotional distress, financial hardship, wage losses, humiliation, embarrassment, shock, mental and physical pain, psychological damage, emotional distress, and other damages in an amount to be proven at trial.

856. The above referenced acts of the Defendants were authorized, condoned, ratified, and encouraged by each Defendant whom were officers, supervisors, or managing agents of all Defendants, and were done intentionally, with malice and cruelty, entitling Ms. Victor to an

award of punitive and exemplary damages in an amount appropriate to punish the Defendants and make an example of all Defendants, each of them.

857. As a direct result of the Defendants conduct as alleged herein, Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

858. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRTY FIFTH CAUSE OF ACTION**
**FAILURE TO PREVENT DISCRIMINATION IN VIOLATION OF FEHA**
**(IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)**
***AGAINST ALL DEFENDANTS***

859. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

860. At all relevant times herein, the FEHA was in full force and effect binding on the Defendants, each of them.

861. FEHA requires the Defendants, among other things, "*to take all reasonable steps necessary to prevent discrimination and harassment from occurring.*"

862. In perpetrating the above described acts and failures to act, the Defendants, each of them, violated these provisions by failing to take all reasonable steps necessary to prevent such discrimination based on race, color, ancestry, genetic information, and/or sex. These acts and failures to act include, but are not limited to: failing to implement policies, practices, and procedures and/or having ineffective policies, practices, and procedures regarding the Defendants obligations to refrain from discrimination; failing to implement policies, practices, and procedures regarding the handling of complaints of discrimination; failing to investigate

when discrimination was reported, despite there being such reports; failing to provide any/or adequate education, training, or information to their personnel, and most particularly to management and supervisory personnel with regard to policies and procedures regarding preventing discrimination; failing to appoint a qualified neutral third party to investigate an employees allegations; and failing to take permanent remedial steps reasonably calculated to end the discrimination and deter future discrimination.

863. The Defendants failed to express strong disapproval of discrimination, inform and explain to Ms. Victor its policies against discrimination and what procedures were available to report discrimination to the Defendants and/or about Ms. Victor's legal rights to a discrimination free workplace, or develop appropriate sanctions for those who commit discrimination.

864. The Defendants knew and/or should have known of the discrimination by such individual Defendants, was informed of the discriminatory conduct of such individual Defendants and ratified, approved, and authorized the conduct. The Defendants failed to take preventative actions to avoid that conduct, and subsequently failed to stop and/or further prevent the same conduct. The Defendants failed to take preventative and corrective steps reasonably calculated to prevent Ms. Victor's discrimination. Such discrimination by the Defendants, each of them, was condoned, encouraged, tolerated, and ratified.

865. Prior to the incidents alleged herein and during all relevant times herein, the Defendants failed to provide to its supervisory employees effective training, education, or information regarding discrimination; the prohibition against the prevention and correction of discrimination; and the remedies available to victims of discrimination; all in violation of its duties as an employer under CA Government Code 12950.1.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

866. During all relevant times alleged herein, the Defendants failed to take reasonable steps to prevent discrimination from being inflicted against Ms. Victor. The Defendants failure to take all reasonable steps to prevent discrimination was a substantial factor in causing Ms. Victor harm.

867. As a direct result of the Defendants unlawful actions, Ms. Victor has suffered and will continue to suffer psychological injuries, extreme and severe mental anguish, and emotional distress. Ms. Victor has incurred and will continue to incur medical expenses and other incidental medical expenses. Ms. Victor has suffered and will continue to suffer loss of earnings and other employment benefits or job opportunities. Ms. Victor is therefore entitled to general and compensatory damages in an amount to be determined at trial.

868. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

869. As a direct result of the Defendants conduct as alleged herein,  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

870. WHEREFORE, Ms. Victor requests judgement as is further set below.

## THIRTY SIXTH CAUSE OF ACTION
## FAILURE TO PREVENT SEXUAL HARASSMENT IN VIOLATION OF FEHA
## (IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)
### *AGAINST ALL DEFENDANTS*

871. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

872. At all relevant times herein, the FEHA was in full force and effect binding on the Defendants, each of them.

873. FEHA requires the Defendants, among other things, "*to take all reasonable steps necessary to prevent discrimination and harassment from occurring.*"

874. In perpetrating the above described acts and failures to act, the Defendants, each of them, violated these provisions by failing to take all reasonable steps necessary to prevent such harassment. These acts and failures to act include, but are not limited to: failing to implement policies, practices, and procedures and/or having ineffective policies, practices, and procedures regarding the Defendants obligations to refrain from harassment; failing to implement policies, practices, and procedures regarding the handling of complaints of harassment; failing to investigate when harassment was reported, despite there being such reports; failing to provide any/or adequate education, training, or information to their personnel, and most particularly to management and supervisory personnel with regard to policies and procedures regarding preventing harassment; failing to appoint a qualified neutral third party to investigate an employees allegations; and failing to take permanent remedial steps reasonably calculated to end the harassment and deter future harassment.

875. The Defendants failed to express strong disapproval of harassment, inform and explain to Ms. Victor its policies against harassment and what procedures were available to report harassment to the Defendants and/or about Ms. Victor's legal rights to a harassment free workplace, or develop appropriate sanctions for those who commit harassment.

876. The Defendants knew and/or should have known of the harassment by such individual Defendants, was informed of the harassing conduct of such individual Defendants and ratified, approved, and authorized the conduct. The Defendants failed to take preventative actions to avoid that conduct, and subsequently failed to stop and/or further prevent the same conduct. The Defendants failed to take preventative and corrective steps reasonably calculated to prevent Ms. Victor's harassment. Such discrimination by the Defendants, each of them, was condoned, encouraged, tolerated, and ratified.

877. Prior to the incidents alleged herein, and during all relevant times herein, the Defendants failed to provide to its supervisory employees effective training, education, or information regarding harassment and retaliation, the prohibition against the prevention and correction of harassment, and the remedies available to victims of harassment; all in violation of its duties as an employer under CA Government Code 12950.1.

878. During all relevant times herein, the Defendants failed to take reasonable steps to prevent harassment from being inflicted against Ms. Victor. The Defendants failure to take all reasonable steps to prevent harassment was a substantial factor in causing Ms. Victor harm.

879. As a direct result of the Defendants unlawful actions, Ms. Victor has suffered and will continue to suffer psychological injuries, extreme and severe mental anguish, and emotional

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

distress. Ms. Victor has incurred and will continue to incur medical expenses and other incidental medical expenses, in an amount to be determined at trial.

880. Ms. Victor has suffered and will continue to suffer loss of earnings and other employment benefits or job opportunities. Ms. Victor is therefore entitled to general and compensatory damages in an amount to be determined at trial.

881. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

882. As a direct result of the Defendants conduct as alleged herein,  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

883. WHEREFORE, Ms. Victor requests judgement as is further set below.

### THIRTY SEVENTH CAUSE OF ACTION
### NEGLIGENT HIRING AND RETENTION
### *AGAINST ALL DEFENDANTS*

884. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

885. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants and its agents, affiliates, subsidiaries, partners, officers, etc., learned that the Defendants, each of them, had been sexually assaulting and harassing female employees and customers; in addition to learning that the Defendants, each of them, had been discriminating against employees and customers because of their race, sex, color, ancestry, and/or genetic information; and failed to take appropriate and corrective action.

886. Ms. Victor is informed and believes, and based thereon alleges, that had the Defendants, the HR department, or any other responsible agents taken prompt and corrective action against the Defendants, that Ms. Victor, and any other Plaintiff who has suffered, would not have been sexually harassed, abused, retaliated against, or discriminated against.

887. The Defendants, each of them, owed Ms. Victor a duty of care to act in a reasonable and ordinary manner so as not to cause Ms. Victor foreseeable harm.

888. The Defendants, each of them, failed to use ordinary and reasonable care in order to avoid injury to Ms. Victor. This includes, but is not limited too, the Defendants failure to exercise a duty of care to avoid the Defendants harassment, retaliation, and discrimination of female or ethnic employees, including Ms. Victor, causing multiple injuries.

889. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants knew or should have known that Ms. Victor was being subjected to sexual harassment, discrimination, among other things because the Defendants had been reported against prior to Ms. Victor's complaint.

890. Ms. Victor is informed and believes, and based thereon alleges that despite being informed of the Defendants unlawful conduct, the Defendants, and each of them, failed to

discipline the Defendants and kept them in their employ, thereby ratifying said unlawful conduct.

891.   The unlawful conduct of the Defendants constitutes negligence and is actionable under the laws of the State of California.

892.   As a direct result of the acts of the Defendants, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. Ms. Victor has incurred and will continue to incur medical expenses and other incidental medical expenses, in an amount to be determined at trial.

893.   Ms. Victor has suffered and will continue to suffer loss of earnings and other employment benefits or job opportunities. Ms. Victor is therefore entitled to general and compensatory damages in an amount to be determined at trial.

894.   The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

895.   As a direct result of the Defendants conduct as alleged herein,  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

896. WHEREFORE, Ms. Victor requests judgement as is further set below.

## FORTIETH EIGTH OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*AGAINST ALL DEFENDANTS*

897. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

898. A person intentionally inflicts emotional distress when he/she engages in extreme and outrageous conduct with either an intent to cause emotional distress or reckless disregard of the probability of causing emotional distress.

899. The Defendants, each of them, owed Ms. Victor a duty of care not to cause Ms. Victor emotional distress.

900. As alleged herein, the Defendants knowingly harassed Ms. Victor, causing her severe emotional distress.

901. The Defendants further caused Ms. Victor severe emotional distress by conspiring against Ms. Victor and terminating her employment for discriminatory and retaliatory reasons.

902. The Defendants were aware that treating Ms. Victor in the manner alleged herein, including depriving Ms. Victor of her livelihood, would devastate Ms. Victor and cause her extreme hardship.

903. The Defendants breached their duty to Ms. Victor by way of their own conduct, as alleged herein.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

904. By engaging in the above described unlawful conduct, the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing emotional distress, and actually did cause severe emotional distress.

905. The Defendants knowing disregard for the safety of Ms. Victor and deliberate failure to monitor or control their behavior caused Ms. Victor to be repeatedly harassed, discriminated against, abused, and retaliated against.

906. As alleged above, the Defendants engaged in extreme and outrageous conduct, including, but not limited to, intentionally, maliciously, and recklessly sexually harassing, sexually assaulting, and discriminating against Ms. Victor; retaliating against Ms. Victor for reporting sexual harassment, sexual assault, sexual battery, and discrimination; conducting flawed and inadequate investigations into Ms. Victor's claims of sexual harassment, sexual assault, sexual battery, and discrimination; prejudicing such investigations by prematurely and incorrectly closing such investigations or never beginning such investigations; refused to discipline the harassers and/or assaulters and instead allowing them to maintain supervisory roles at the company and/or allowed them to continue to dine at Wally's and continue to interact with Ms. Victor and harass her and others; failing to provide resources and adequate lawful procedures for receiving and processing complaints of sexual harassment, sexual assault, sexual battery, and discrimination; failing to provide sexual harassment training for employees that could have mitigated or even prevented the sexual harassment; and creating and perpetuating a hostile work environment in which Ms. Victor did not feel safe.

907. The Defendants knew or should have known that Ms. Victor did not want to engage in any unlawful conduct with them. Each Defendant conspired and/or aided and abetted the

other to harass, abuse, discriminate, and retaliate against Ms. Victor, amongst other things, displaying intimidation in order to harass, abuse, discriminate, and retaliate against Ms. Victor.

908. As a direct result of the acts of the Defendants, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

909. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

910. As a direct result of the Defendants conduct as alleged herein,  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

911. WHEREFORE, Ms. Victor requests judgement as is further set below.

## THIRTY NINTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### *AGAINST ALL DEFENDANTS*

912. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

913. The Defendants, each of them, owed Ms. Victor a duty of care not to cause Ms. Victor emotional distress, including the duty to take all reasonable steps to prevent any discrimination or any harassment.

914. As alleged herein, the Defendants, each of them, engaged in discriminatory, harassing, and retaliatory actions against Ms. Victor with intention and malice and reckless disregard of the probability of causing Ms. Victor to suffer extreme emotional distress.

915. The Defendants breached their duty to Ms. Victor by way of their own conduct, as alleged herein.

916. As alleged herein, the Defendants knowingly harassed Ms. Victor based on her race, sex, color, ancestry, and genetic information, causing her severe emotional distress.

917. The Defendants further caused Ms. Victor emotional distress by conspiring against Ms. Victor and terminating her employment for discriminatory and retaliatory reasons.

918. Such conduct was done in a careless or negligent manner, without consideration for the effect of such conduct upon Ms. Victor's well being.

` 919. The Defendants knew, or should have known, that treating Ms. Victor in the manner alleged herein, including depriving Ms. Victor of her livelihood, would devastate Ms. Victor and cause Ms. Victor extreme hardship.

920. As a direct result of the Defendants negligent conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

921. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

922. As a direct result of the Defendants conduct as alleged herein,  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

923. WHEREFORE, Ms. Victor requests judgement as is further set below.

<u>**FORTIETH CAUSE OF ACTION**</u>
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
**(IN VIOLATION OF GOVERNMENT CODE §12920 & §12920.5, 12921, 12923, 19574, 19574.1, 19574.5, 11440.40)**
***AGAINST ALL DEFENDANTS***

924. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

925. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 12920, which states:

*"It is here by declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry…genetic information…Further, the practice of discrimination because of race, color…sex, gender…national origin, ancestry… or genetic information in housing accommodations is declared to be against public policy…This part shall be deemed an*

*exercise of the police power of the state for the protection of the welfare, health, and peace of the people of this state.*"

926. A motivating factor in the termination of Ms. Victor's employment was the Defendants discriminatory behavior towards Ms. Victor for her protected characteristics.

927. Ms. Victor was discriminated against by the Defendants, each of them, for her race, color, ancestry, and genetic information, not only during her employment at Wally's and throughout this entire three year litigation, which is against the public policy of the State of California.

928. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 12920.5 which states:

"*In order to eliminate discrimination, it is necessary to provide effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons. To that end, this part shall be deemed an exercise of the Legislature's authority pursuant to Section 1, Article XIV of the California Constitution.*"

929. Discrimination has not been eliminated from Wally's nor throughout this labor and employment litigation. Nothing has been done by the Defendants nor the State to prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons, including Ms. Victor. This is in violation of the California Constitution and against public policy of the State of California.

930. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government code section 12921, subdivision (a), which states:

"*The opportunity to seek, obtain, and hold employment without discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender*

*identity, gender expression, age, sexual orientation, or veteran military status is hereby recognized as and declared to be a civil right.*"

931. Ms. Victor did not obtain and hold employment without discrimination, which is a declared civil right.

932. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 12923, subdivision (a), which states:

"*The Legislature hereby declares that harassment creates a hostile, offensive, or intimating work environment and deprives victims of their statutory right to work in a place free of discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well being.*"

933. Every shift Ms. Victor had worked during her employment with the Defendants, Ms. Victor was offended, humiliated, harassed, discriminated against, and always put into a heightened state of distress.

934. As alleged herein, Ms. Victor's employment at Wally's was so hostile that it disrupted her emotional tranquility in the workplace and the Defendants completely undermined Ms. Victor's personal sense of well being. The Defendants harassment was in complete violation of this statue and of the public policy of the State of California.

935. The Defendants retaliated against Ms. Victor by failing to adequately investigate her claims of discrimination and failing to take any remedial action.

936. The Defendants knowingly created the working conditions that violated public policy because the Defendants willfully, knowingly, maliciously, and intentionally discriminated against Ms. Victor.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

937. The working conditions caused by the Defendants violations of public policy were intolerable for Ms. Victor. When Ms. Victor refused to quit the Defendants wrongfully terminated her.

938. CA Government Code section 19574, subdivision (a), states:

"*The appointing power, or its authorized representative, may take adverse action against an employee for one or more causes for discipline. Adverse action is only valid if a written notice shall be served upon the employee either personally or by mail and shall include: (1) a statement of the nature of the adverse action; (2) the effective date of the action; (3) a statement of the reasons therefor in ordinary language; (4) a statement advising the employee of the right to answer the notice orally or in writing; and (5) a statement advising the employee of the time within which an appeal must be filed. The notice shall be filed with the board not later than 15 calendar days after the effective date of the adverse action.*"

939. The Defendants did not do a single thing they were obligated to do to ensure the adverse action against Ms. Victor was valid, only solidifying the truth, which is that Ms. Victor was absolutely, one hundred and ten percent wrongfully terminated.

940. Pursuant to CA Government Code section 19574.1, Ms. Victor should have had the legal right to inspect any documents the Defendants had in their possession at the time of her suspension that would have been considered "relevant evidence" supporting their right to suspend Ms. Victor, but she was not given any documents to review. Ms. Victor should have had the legal right to interview other employees, especially the other employees the Defendants and their counsel have alleged seen Ms. Victor in a "pornographic" state, yet Ms. Victor was also denied this right.

941. The Defendants have accused Ms. Victor, through their legal counsel, of immorality, acts that would constitute a felony (prostitution and extortion amongst other things).

942. If the Defendants abided by CA Government Code section 19574.5 then Ms. Victor's "suspension" would have not exceeded fifteen days. The Defendants did not follow the law to properly take adverse action against Ms. Victor, thereby Ms. Victor is entitled to compensation for the fifteen days she would have been given, with pay, during a proper investigation, in addition to all other damages and penalties applicable by law.

943. The Defendants entire argument that they have been attempting to use to justify Ms. Victor's wrongful termination violates CA Government Code section 11440.40, subdivision (b), which states:

> "*Evidence of specific instances of a complainant's sexual conduct with individuals other than the alleged perpetrator is presumed inadmissible absent an offer of proof establishing its relevance and reliability and that its probative value is not substantially outweighed by the probability that is admission will create substantial danger of undue prejudice or confuse the issue.*"

944. The Defendants, and their counsels, defamation against Ms. Victor is entirely untrue, making their lies, that have had zero evidentiary support, a danger to subject Ms. Victor to further prejudice.

945. The defamation the Defense, and their counsel, have used in this litigation is a tactic used to confuse the issue at hand, which is the Defendants vile, disgusting, and unlawful conduct during Ms. Victor's employment and during this litigation.

946. Ms. Victor was harmed by the Defendants working conditions, and the Defendants working conditions were a substantial factor in causing Ms. Victor harm.

947. As a direct result of the Defendants willful, intentional, and malicious violations of public policy, Ms. Victor has suffered and will continued to suffer. Ms. Victor is therefore entitled to general and compensatory damages in an amount to be determined at trial.

948. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

949. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

950. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

951. WHEREFORE, Ms. Victor requests judgement as is further set below.

### FORTY FIRST CAUSE OF ACTION
### RETALIATION AGAINST A WHISTLEBLOWER- VIOLATION OF CA WHISTLEBLOWER PROTECTION
### (IN VIOLATION OF GOVERNMENT CODE §8547 & §8547.1, 8547.8, 8547.13)
### *AGAINST ALL DEFENDANTS*

952. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

953. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 8547.1 which states:

"*The legislature finds and declares that state employees should be free to report, waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution. The legislature finds and declares that public servants best serve the citizenry when they can be candid and honest without reservation in conducting the people's business.*"

954. Ms. Victor engaged in protected activity by reporting the Defendants unlawful actions to her employer thus informing the Defendants, each of them, that illegal activities were occurring in the workplace.

955. Ms. Victor, at various times, made such reports to a person with authority over her and to employees who had the authority to investigate, discover, or correct the violations or noncompliance(s). Directly or indirectly the owners, principals, chief executive officers, and/or the chief financial officer were made aware of Ms. Victor's reports of unlawful and illegal activity and failed to take action to stop such activity to the detriment of Ms. Victor.

956. Ms. Victor knew, or reasonably believed, that the acts and omissions of the Defendants, each of them, were in violation of laws that required that she be provided a workplace free of sexual harassment, discrimination, and retaliation. The laws violated, included, but were, and are not limited to Article 1, Section 8 of the California Constitution, and multiple CA codes of law.

957. Following Ms. Victor's protected activity, the Defendants retaliated against Ms. Victor as alleged herein, including, but not limited too, making the environment hostile by refusing to take action to stop harassment, discrimination, and retaliation.

958. After Ms. Victor's refusal to quit the Defendants, each of them, were left with no choice but to find and execute a way to wrongfully terminate Ms. Victor.

959. After Ms. Victor's wrongful termination Ms. Victor attempted to report the Defendants unlawful conduct to the CA Labor Commissioner's office, the DFEH, and the EEOC, which caused the Defendants to retaliate further.

960. In violation of the laws of the State of California, a state that provides protection for whistleblowers, Ms. Victor was not free to report fraud, abuse of authority, violation of law, or threat to public health without fear or retribution. In fact, Ms. Victor has been living in fear ever since she has attempted to whistleblow about the Defendants fraud, abuse of authority, violation of laws, and threats they made to her health and safety; as well as the threat the Defendants make to the health and safety of the public while their unlawful conduct continues.

961. Ms. Victor's protected activity was a motivating reason for the Defendants retaliatory conduct.

962. The Defendants retaliatory conduct was in violation of CA Government Code 8547.1.

963. As a direct result of the Defendants unlawful actions and omissions, Ms. Victor has suffered damages as alleged herein.

964. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 8547.8, subdivision (b), which states:

> "*Any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a state employee… for having made a protected disclosure, is subject to a fine not to exceed ten thousand dollars ($10,000) and imprisonment in the county jail for a period not to exceed one year.*"

965. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 8547.13, subdivision (d), which states:

*"A person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against an employee or applicant for employment for having made a protected disclosure, is subject to a fine not to exceed ten thousand dollars ($10,000) and imprisonment in a county jail for up to one year."*

966. Subdivision (e) of section 8547.13 of the CA Government Code states:

*"In addition to all other penalties provided by law... a person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against an employee or applicant for employment for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party. Punitive damages may be awarded by the court if the acts of the offending party are proven to be malicious. If liability is established, the injured party also shall be entitled to reasonable attorney's fees as provided by law."*

967. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

968. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered damages in the form of past and future wage loss, other pecuniary losses, mental anguish, and emotional distress in an amount to be determined at trial.

969. Ms. Victor moves the court to order the Defendants, each of them, to pay all statutory and/or civil penalties applicable by State law for each violation they made that went against the public policy of the State of California and for their malicious intention to violate the CA Whistleblower Protection laws.

970. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

971. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FORTY SECOND CAUSE OF ACTION**
**UNLAWFUL EMPLOYMENT CONDITIONS IN VIOLATION OF PUBLIC POLICY**
**(IN VIOLATION OF GOVERNMENT CODE §12964.5)**
***AGAINST ALL DEFENDANTS***

972. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

973. CA Government code section 12964.5, subdivision (a), states that it is an unlawful employment practice for an employer, in exchange for a raise or bonus, or as a condition of employment or continued employment, for an employer to require an employee to sign a release of a claim or right.

974. The "release of claim or right" is defined in paragraph (B) of this section, which includes:

> "*Requiring an individual to execute a statement that he or she does not possess any claim or injury against the employer or other covered entity, and includes the release of a right to file and pursue a civil action or complaint with, or otherwise notify, a state agency, other public prosecutor, law enforcement agency, or any court or other governmental entity.*"

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

975. As alleged herein, the Defendants have added a clause in their arbitration agreement that forces an employee, as a condition of employment, to give up their right to file a claim against the Defendants and denies any and all employees their guaranteed rights and equal protection, in complete violation of this statue.

976. Paragraph (2)(A) of this section describes the following actions as unlawful:

"*For an employer to require an employee to sign a non-disparagement agreement or other document that purports to deny the employee the right to disclose information about unlawful acts in the workplace, including, but not limited to, information pertaining to sexual harassment.*"

977. The Defendants, each of them, are also in violation of this statue. The Defendants force new employees to sign an agreement and/or acknowledgement that denies the employee the right to disclose information about unlawful acts in the workplace, including sexual harassment, discrimination, retaliation, or civil rights violations.

978. Subdivision (b) of this section states:

"*Any agreement or document in violation of this section is contrary to public policy and shall be unenforceable.*"

979. The arbitration agreement, despite the Defense counsel never filing a motion to compel arbitration, was and is unenforceable as it goes against public policy of the State of California. There is a reason steps were skipped in order to throw this case into arbitration, steps that are in violation of the laws of the State of California.

980. Based on the altered arbitration agreement and employee acknowledgement presented to the court by the Defense counsel, the Defendants prove that they expect employees, including Ms. Victor to agree, in writing, to terms and/or conditions, to which the Defendants should know or should have reasonably known is prohibited by law.

981. The Defendants arbitration portion of the Handbook tells an employee that they are prohibited from reporting discrimination, sexual harassment, discrimination, and other chargeable offenses when signing such agreement, which is prohibited by law and against the public policy of the State of California.

982. The Defendants new arbitration agreement should be null and void, not only for Ms. Victor, but for all current and future employees. The Defendants maliciously, intentionally, and knowingly have and continue to use their arbitration portion of the employee Handbook as a tool of manipulation to ensure that past, current, and future employees are unable to report them for chargeable offenses, which is prohibited by law and against the public policy of the State of California.

983. The Defendants created an arbitration clause and agreement for employees, including Ms. Victor, in violation of public policy.

984. The Defendants malicious and intentional acts and omissions are prohibited by law and go against the public policy of the State of California.

985. Provisions of the employment contract, as described herein, that Ms. Victor was required to sign, as a condition of employment, explicitly and unquestionably, violate several provisions of California law and public policy.

986. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, knew that such provisions violated California law and public policy.

987. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants unlawful conduct, as described herein, was substantially motivated by Ms. Victor's opposition to and/or reporting of the actual and/or perceived violations described herein.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

988. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

989. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

990. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

991. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

992. WHEREFORE, Ms. Victor requests judgement as is further set below.

### FORTY THIRD CAUSE OF ACTION
### FRAUD, DECEIT, & PERJURY IN VIOLATION OF CA PENAL CODES
### *AGAINST ALL DEFENDANTS*

993. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

994. CA Penal Code section 27, subdivision (a) states:

"*The following persons are liable to punishment under the laws of this state: (1) all persons who commit, in part, any crime within this state; (3) all who, being without this state, cause or did, advise or encourage, another person to commit a crime within this state, and are afterwards found therein.*"

995. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, including DOES 1-100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this complaint. The Defendants each of them have committed crimes within the State of California and, those, without being in the State of California, also advised, encouraged, caused, or did commit a crime within the State of California.

996. CA Penal code section 115, subdivision (a) states:

"*Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.*"

997. Subdivision (b) of section 115 states that each instrument which is procured or offered to be filed, registered, or recorded in violation of subdivision (a) shall constitute a separate violation of this section.

998. Every document that has been filed in this litigation was false and filed as genuine within the Stanley Mosk Courthouse and within this arbitration. Each document filed falsely is a separate violation making the Defendants guilty of multiple felonies.

999. CA Penal Code section 133 states:

"*Every person who practices any fraud or deceit, or knowingly makes or exhibits any false statement, representation, token, or writing, to any witness or person about to be called as a witness upon any trial, proceeding, inquiry, or investigation, whatever, authorized by law, with intent to affect the testimony of such witness, is guilty of a misdemeanor.*"

1000. As alleged herein, the Defendants, each of them coerced other employees of Wally's to say that Ms. Victor walked around the restaurant showing nude photos and videos. The text messages which prove the Defendants coercion, was received and lost, intentionally and maliciously, by Mosley & Associates, Ms. Victor's previous legal counsel. The Defendants counsel and Ms. Victor's prior counsel have all submitted documents to the court, under the penalty of perjury, as real and true, which made false statements and false representations.

1001. CA Penal Code section 118, subdivision (a) states:

*"Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilt of perjury."*

1002. The Defendants through their counsel have signed under penalty of perjury multiple pleadings and or documents that they knew, or should have known, to be false, therefore, making the Defendants liable for perjury.

1003. Perjury is punishable by imprisonment, to up to four years, pursuant to CA Penal Code section 124.

1004. CA Penal Code section 127 states:

*"Every person who willfully procures another person to commit perjury is guilty of subornation of perjury, and is punishable in the same manner as he would be if personally guilty of the perjury so procured."*

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

1005. The Defense counsel has committed perjury on behalf of the Defendants, the Defendants, willfully, allowed their counsel to commit such perjury making the Defendants guilty of subornation of perjury.

1006. CA Penal Code section 132 states:

"*Every person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or ante-dated, is guilty of a felony.*"

1007. As alleged herein the Defendants produced fraudulent documents to deceive the court and to conceal the fact that they had not paid Ms. Victor what she is owed in compensation, in violation of this statue. The Defendants violating this section makes them guilty of a yet another felony.

1008. Further, the Defendants violated CA Penal Code section 134, which states:

"*Every person guilty of preparing any false or ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to product it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of a felony.*"

1009. As alleged herein, the Defendants produced fraudulent documents to deceive the court and to conceal the fact that they had not paid Ms. Victor what she was owed in compensation; to hide the fact that they discriminated against Ms. Victor; to hide the fact that they had sexually harassed and assaulted Ms. Victor; to hide the fact that they had retaliated against Ms. Victor, amongst other things. The Defendants violating this statue makes them guilty of another felony.

1010. The Defendants, each of them, are guilty of a public offense and can and should be punished by imprisonment, pursuant to CA Penal Code section 136.1. Any person who

"*knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law*" or any person who "*knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law*" is guilty of a public offense.

1011. Subdivision (d) of CA Penal Code section 136.1 states:

"*Every person attempting the commission of any act described in subdivisions (a), (b), and (c) is guilty of the offense attempted without regard to success or failure of the attempt. The fact that no person was injured physically, or in fact intimidated, shall be no defense against any prosecution under this section.*"

1012. The Defendants, each of them, including DOES 1-100, inclusive, have spent the past three years ensuring, with malice and intent, that Ms. Victor was prevented from giving testimony at any trial, proceeding, or inquiry authorized by law. Pursuant to subdivision (c) of CA Penal Code section 136.1, the Defendants are guilty of a felony and should face up to four years in prison because the acts committed by the Defendants were in the furtherance of a conspiracy and such acts were committed for the Defendants own pecuniary gain.

1013. CA Penal Code section 153, states that a person who has the knowledge of the actual commission of a crime, or takes money or property of another, or any gratuity or reward, upon agreement to conceal that crime or to abstain from prosecution of such crime is punishable by imprisonment.

1014. The Defendants, each of them, including DOES 1-100 inclusive, and the Defense counsel knew, or should have known, of all the crimes that the Defendants have engaged in and

thereby worked collectively to conceal the Defendants crimes and to ensure the Defendants avoided prosecution for such crimes.

1015. The Defendants, during Ms. Victor's employment, termination, and this litigation conspired together and violated CA Penal Code section 182. If two or more people conspire to commit any crime, falsely to move or maintain any suit, action, or proceeding, or to commit any act injurious to the public health, to public morals, or to pervert or obstruct justice, or the due administration of the laws, they are guilty of a felony and could be punished by imprisonment in jail and a fine of ten thousand dollars ($10,000) or a fine of up to twenty-five thousand dollars ($25,000).

1016. The Defendants conspired with one another to commit multiple crimes against Ms. Victor during her employment. The Defendants conspired with one another to falsely move this case into arbitration and maintain this suit in their favor. And the Defendants have committed multiple crimes against multiple Plaintiff's/ victims, including Ms. Victor, making such conspiracy injurious to the public health and to public morals. The Defendants lastly, conspired with one another to obstruct justice. The Defendants did all this with malice, oppression, and intention. Thereby, Ms. Victor is entitled to the civil penalty of twenty-five thousand dollars ($25,000) in addition to.

1017. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, knew or should have known that they were engaging in fraud, deceit, and perjury and they intentionally and maliciously made false statements and representations to conceal their crimes and to confuse the court.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

1018. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

1019. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

1020. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

1021. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

1022.  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

1023. WHEREFORE, Ms. Victor requests judgement as is further set below.

## FORTY FOURTH CAUSE OF ACTION
### HATE CRIME
### *AGAINST ALL DEFENDANTS*

1024. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

1025. CA Penal Code Section 422.6, subdivision (a), states:

"*No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate, interfere with, oppress, or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of this states or by the Constitution or laws of the United States in whole or in part because of one or more of the actual or perceived characteristics of the victim listed in subdivision (a) of Section 422.55.*"

1026. Further CA Penal Code section 422.55, subdivision (a) defines "hate crime" as a criminal act committed, in whole or in part, because of one or more of the victims actual or perceived characteristics.

1027. The Defendants, as stated herein and above, have committed criminal acts, acts committed wholly or partially because of Ms. Victor's race, ethnicity, gender, and/or nationality. Making the Defendants in violation of both CA Penal Code sections 422.6 and 422.55.

1028. At all times mentioned herein, Ms. Victor had the right to be free from any threat of force, willful injury, intimidation, oppression, or threats, committed against her on account of her race, ethnicity, gender, and/or nationality.

1029. As alleged herein, the Defendants, each of them, including DOES 1-100, inclusive, subjected Ms. Victor to threats of force, willful injuries, intimidation, oppression, and threats, against her person on account of her race, ethnicity, gender, and/or nationality, and/or acted to aid, incite, and/or conspire with other Defendants to deny Ms. Victor her right to be free from

any threats of force, willful injuries, intimidation, oppression, and threats, committed against her person on the account of her race, ethnicity, gender, and/or nationality. In doing so, the Defendants committed multiple hate crimes against Ms. Victor, which is codified in CA Penal Codes 422.6 and 422.55.

1030. Any person who violates CA Penal Code 422.6 would be facing up to a year in prison for each offense.

1031. Pursuant to CA Penal Code section 422.85, the court shall make an order protecting the victim and the victim's family from any further acts of violence, threats, stalking, or harassment by the Defendant.

1032. The court must grant Ms. Victor, pursuant to this statue, a an order of protection against the Defendants, each of them. This request should be non-negotiable.

1033. CA Penal Code section 31 states:

"*All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission…or who, by fraud, contrivance, or force… or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed.*"

1034. The Defendants, each of them, including DOES 1-100, inclusive, are principals of each and every crime committed as alleged herein.

1035. Further, CA Penal Code section 32 states:

"*Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction, or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony.*"

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

1036. The Defendants have committed multiple felonies and misdemeanors as alleged herein, and their Defense counsel, and DOES 1-100, inclusive, have aided the Defendants to conceal such felonies and misdemeanors with the intent that the Defendants would avoid arrest, trial, conviction, or punishment, making the Defense counsel and all other co-conspirators, including DOES 1-100, inclusive, accessories to the Defendants felonies.

1037. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

1038. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

1039.  As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

1040. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

1041. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees

of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

1042. In addition, Ms. Victor is entitled to all and any civil or statutory penalties applicable by law.

1043.  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

1044. WHEREFORE, Ms. Victor requests judgement as is further set below.

## FORTY FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE UNITED STATES AND CALIFORNIA CONSTITUTIONS
### *AGAINST ALL DEFENDANTS*

1045. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

1046. At all times alleged herein, Ms. Victor possessed certain rights protected by the United States Constitution and the CA Constitution.

1047. Section 1 of the CA Constitution states:

 "*All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.*"

1048. The CA Constitution, Article 1, Section 2, subdivision (a), states:

"*Every person may freely speak, write, and publish his or her sentiments on all subjects…*"

1049. Amendment I of the United States Constitution states:

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

"*Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; of abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.*"

1050. The CA Constitution, Article 1, Section 3, subdivision (a) states:

"*The people have the right to instruct their representatives, petition the government for redress of grievances, and assemble freely to consult for the common good." Subdivision (b) paragraph (1) further states, "the people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny.*"

1051. The Defendants, each of them, including DOES 1-100, inclusive, have violated the US Constitution Amendment V (fifth amendment) which states that no person shall "*be deprived of life, liberty, or property, without due process of law…*" The Defendants have equally violated Article 1, Section 7 of the CA Constitution, which too states, "*a person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws*".

1052. Amendment VII (seventh amendment) of the US Constitution, guarantees the right of a jury trial, "*the right to a jury trial shall be preserved.*" The CA Constitution, article 1, section 16, which also states, "*trial by jury is an inviolate right and shall be secured to all.*"

1053. Amendment VIII (eighth amendment) of the US Constitution states "*excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted.*" And the CA Constitution, article 1, section 17 states, "*cruel or unusual punishment may not be inflicted or excessive fines imposed.*"

1054. Amendment XIII (thirteenth amendment) of the US Constitution states, "*neither slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their*

*jurisdiction.*" And the CA Constitution, article 1, section 6, states, "*slavery is prohibited.*

*Involuntary servitude is prohibited except to punish crime.*"

1055. Amendment XIV (fourteenth amendment) of the US Constitution states:

"*All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the states wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*"

1056. The Defendants have also violated the CA Constitution, article 1, section 8, which states:

"*A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin.*"

1056. The Defendants have ensured, and with malice, that Ms. Victor did not and does not enjoy life or liberty. The Defendants have ensured that Ms. Victor, at all relevant times alleged herein, was unable to obtain safety, happiness, and privacy.

1057. As alleged herein, the Defendants, each of them, violated section 2 of the CA Constitution, they also violated Amendment I of the US Constitution. The Defendants, their counsel, and Judge Yolanda Orozco herself, attempted to take away Ms. Victor's guaranteed first amendment rights to get her to stop using her social media platforms to exercise her first amendment rights at three separate legal hearings held directly in the Stanley Mosk Courthouse. The Defendants and their counsel are still, to this day, attempting to take away Ms. Victor's first amendment rights, with intention, malice, and cruelty.

1058. The Defendants, each of them, aided, abetted, incited, compelled, coerced, or conspired one another to stop Ms. Victor's freedom of speech or of the press, to conceal the

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

Defendants unlawful criminal behavior as well as their own; the Defendants also wanted to ensure that Ms. Victor was unable to petition the government for a redress of grievances. The Defendants wanted to take away Ms. Victor's guaranteed rights, and have engaged in such unlawful conduct with pleasure.

1059. Ms. Victor attempted to use her social media to discuss her case and the corruption throughout, which is indeed the conduct of the people's business. Ms. Victor had the right to discuss the writings and meetings surrounding her litigation as public officials and agencies are and can be open to public scrutiny. But the Defendants, each of them, aided, abetted, incited, compelled, coerced, or conspired, several times, to take this right away from Ms. Victor.

1060. Ms. Victor has been denied, from the beginning of this litigation, and even worse so during her self-representation, the right to due process of law which has deprived her of her life, liberty, and property, such is a direct result of the Defendants the unlawful conduct, each of them.

1061. Ms. Victor was denied all equal privileges both during her employment at Wally's and during this litigation by the Defendants, their counsel, and the court. Ms. Victor has been and continues to be deprived of her life, liberty, and property, and has not once, not a single time, throughout this litigation had the equal opportunity for due process of law. The one constant within this entire litigation, **the one thing that has not changed,** is Ms. Victor's denied right for equal protection of the laws.

1062. It has been the duty and goal of the Defendants, each of them, and their legal counsel to ensure Ms. Victor is denied her right to a jury trial, a guaranteed right she has pursuant both the CA Constitution and the US Constitution. The Defendants, each of them, and

their legal counsel knew, or should have known that if this case went to a jury trial Ms. Victor would win on the merits. Knowing such information to be true, the Defendants, each of them, aided, abetted, incited, compelled, coerced, or conspired one another to do what needed to be done, even if such actions were illegal and against the public policy of the State of California, to ensure that Ms. Victor does not get a jury trial which is what she has demanded since day one.

1063. Ms. Victor's employment at Wally's and this entire litigation has been cruel and unusual punishment for Ms. Victor. Ms. Victor was harassed, assaulted, abused, discriminated against, and retaliated against during her employment at Wally's. And this litigation has been dragged on for three years now which has made the Defendants cruel and unusual punishment drag out for three years of non-stop cruelty and punishment.

1064. Ms. Victor has been a slave in this entire litigation, which is prohibited by law, making the Defendants in violation of both these statues.

1065. Ms. Victor, at all relevant times alleged herein, has been and continues to be discriminated against. Ms. Victor's employment at Wally's was terminated due to her sex, race, color, ethnic origin, and/or her genetic information.

1066. At all relevant times, the Defendants, each of them, implemented and enforced customs and practices, and such customs and practices were enforced with deliberate indifference to the constitutional rights of potential victims, including Ms. Victor.

1067. The Defendants, each of them, aided, abetted, incited, compelled, coerced, or conspired one another to interfere with Ms. Victor's protection and rights guaranteed to her under the laws of the US Constitution and the CA Constitution.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

1068. As alleged herein, the Defendants intentionally interfered with or attempted to interfere with Ms. Victor's clearly established rights guaranteed under the United States Constitution and the CA Constitution, including, but not limited to Ms. Victor's right of protection from battery, assault, false imprisonment, gender violence, threats, intimidation, and coercion.

1069. Ms. Victor is informed and believes that the Defendants, each of them, know, or should have known, that their unlawful conduct would violate multiple federal and state laws and engaged in such unlawful conduct anyway.

1070. The Defendants unlawful conduct was a substantial factor in causing Ms. Victor harm, thereby, Ms. Victor is entitled to compensatory damages against all Defendants for their violations of federal and state laws.

1071. Ms. Victor is also entitled to an award of prejudgement interest on any award of damages to the extent permitted by law.

1072. Ms. Victor moves the court to issue declaratory and injunctive relief, immediately, against, the County of Los Angeles for the above violations of federal and state laws.

1073. Ms. Victor moves the court to issue injunctive relief against the Defendants for the above violations of federal and state laws.

1074. The Defendants conspired, aided, or incited each other to threaten and intimidate Ms. Victor while coercing co-conspirators and/or potential witnesses to lie under penalty of perjury to conceal the unlawful conduct of the Defendants and to undermine Ms. Victor's allegations and truth.

1075. Ms. Victor, because of the Defendants interference of her civil rights, has suffered economic harm and other consequential damages.

1076. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

1077. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

1078. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

1079. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

1080. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and

exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

1081.  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

1082. In addition to, Ms. Victor is entitled to any statutory or civil penalties applicable by law for the Defendants violations of federal and state laws.

1083. WHEREFORE, Ms. Victor requests judgement as is further set below.

### FORTY SIXTH CAUSE OF ACTION
### NEGLIGENCE
### *AGAINST ALL DEFENDANTS*

1084. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

1085. To prove a claim of negligence, a Plaintiff must show that the Defendants acted negligently with respect to a duty imposed on the Defendant by law and that the Plaintiff has suffered damages and the negligence of the Defendants caused the damages.

1086. As alleged herein, the Defendants, each of them, failed to provide Ms. Victor a work environment free of harassment and discrimination.

1087. Further, the Defendants failed to take all, or any reasonable steps necessary to prevent a work environment free of discrimination and harassment, in fact such discrimination and harassment was condoned, encouraged, tolerated, or ratified by each Defendant. The Defendants, each of them, therefore breached their duty to Ms. Victor to keep her safe while employed at Wally's.

1088. The Defendants, each of them, owed Ms. Victor a duty of care to act in a reasonable and ordinary manner so as not to cause Ms. Victor foreseeable harm.

1089. The Defendants and each of them, failed to use ordinary and reasonable care in order to avoid injury to Ms. Victor. This includes, but is not limited to, the Defendants failure to exercise a duty of care to avoid the Defendants sexual harassment, retaliation, and discrimination of female and/or ethnic employees and/or customers, including Ms. Victor, causing her multiple injuries.

1090. Ms. Victor is informed and believes and thereon alleges that the Defendants knew or should have known that Ms. Victor was being subjected to sexual harassment, retaliation, discrimination, among other things because the Defendants had been reported against by other victims prior to Ms. Victor's complaint.

1091. Ms. Victor is informed and believes, and based thereon alleges, that despite being informed of the Defendants unlawful conduct, the Defendants, each of them, failed to discipline the Defendants and kept them in their employ, thereby ratifying said unlawful conduct.

1092. The conduct of the Defendants constitutes negligence and is actionable under the laws of the State of California.

1093. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

1094. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

1095. As a direct result of the Defendants negligent conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

1096. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

1097. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

1098. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

1099. WHEREFORE, Ms. Victor requests judgement as is further set below.

### FORTY SEVENTH CAUSE OF ACTION
### FRAUDULENT AND NEGLIGENT MISREPRESENTATION
### *AGAINST ALL DEFENDANTS*

1100. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

1101. The Defendants, each of them, represented to Ms. Victor that she was being employed at an environment free from harassment, abuse, discrimination, and retaliation, and an environment where Ms. Victor was paid.

1102. The Defendants representation was false.

1103. The Defendants knew, or should have known, that their representation was false when made and without regard for its truth.

1104. The Defendants intended that Ms. Victor rely on their representation; and Ms. Victor reasonably relied on the Defendants representation.

1105. The Defendants misrepresented to Ms. Victor, and other employees, that they would be employed at a work environment free of harassment, discrimination, retaliation, or abuse, without reasonable ground for believing it to be true and with the intent to induce Ms. Victor's reliance.

1106. The Defendants, each of them, represented to Ms. Victor that she was safe in her work environment, when in truth she was being harassed sexually and non-sexually, assaulted, abused, discriminated against, and retaliated against by the Defendants.

1107. The Defendants also misrepresented that Ms. Victor would be working in an environment that paid wages on time and without fraud.

1108. The Defendants made such negligent misrepresentations without reasonable ground for believing it to be true and with the intent to induce Ms. Victor's reliance.

1109. The Defendants fraudulent misrepresentation has caused Ms. Victor pain and suffering; and Ms. Victors reliance on the Defendants representation was a substantial factor in causing Ms. Victor harm.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

1110. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

1111. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

1112. The Defendants knew or should have known that Ms. Victor did not want to engage in any unlawful behavior with them. Each Defendants conspired and/or aided and abetted the other to harass, retaliate, and discriminate Ms. Victor, amongst other things, displaying intimidation in order to continue to harass, retaliate, and discriminate against Ms. Victor. The Defendants knowing disregard for the safety of Ms. Victor and deliberate failure to monitor or control their behavior caused Ms. Victor to be repeatedly harassed, retaliated against, and discriminated against.

1113. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

1114. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees

of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

1115. Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

1116. WHEREFORE, Ms. Victor requests judgement as is further set below.

## FORTY EIGHTH CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### *AGAINST ALL DEFENDANTS*

1117. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

1118. A contract existed between the Defendants and Ms. Victor. Inherent, in contractual relationships is a covenant of good faith and fair dealing, which implies a promise that each party will refrain from doing anything to injure the others right to receive the benefits of the agreement and which protects the parties reasonable expectations from that agreement.

1119. The Defendants breached the covenant of good faith and fair dealing in their contractual arrangements with Ms. Victor by discriminating, harassing, abusing, and retaliating against her and because of all the grounds alleged above.

1120. The Defendants breach of covenant of good faith and fair dealing was a substantial factor in causing Ms. Victor harm.

1121. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of

causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

1122. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

1123. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design, and purpose of injuring Ms. Victor.

1124. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agents, employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

1125.  Ms. Victor has incurred, and will continue to incur, fees and costs in the prosecution of this action and therefore demands such fees, costs and restitution.

1126. WHEREFORE, Ms. Victor requests judgement as is further set below.

## FORTY NINTH CAUSE OF ACTION
### UNFAIR COMPETITION
### *AGAINST ALL DEFENDANTS*

1127. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

1128. The Defendants have engaged in and continue to engage in the following unlawful, unfair, and/or fraudulent business practices in violation of section 17200 of the CA Business and Professions code: failure to pay all wages at the time of separation from employment; failure to pay wages in a timely manner; failure to pay wages at the place of discharge; failure to furnish wage and hour statements; failure to provide meal and rest periods; failure to pay gratuities and unlawful taking of gratuities; failure to pay wages; wrongful termination; unlawful retaliation based on violations of the Defendants social media; unlawful contracts in violation of public policy; unlawful retaliation against a whistleblower; wrongful termination in violation of public policy; defamation; violation of the Unruh Civil Rights Act; violation of the CA Civil Code section 51.5; violation of the Tom Bane Civil Rights Act; sexual harassment in violation of CA Civil Code section 51.9; gender violence; sexual battery; battery; assault; stalking; constructive invasion of privacy; wrongful injuries to an animal; unlawful continued violations of CA Civil Codes; unlawful continued violations of CA Labor Codes; sex based discrimination; race based discrimination; color based discrimination; ancestry based discrimination; genetic information based discrimination; genetic information based discrimination; ancestry based discrimination; sexual harassment, failure to combat discrimination in violation of state policy; failure to combat harassment in violation of state policy; retaliation in violation of FEHA; employment discrimination in violation of FEHA; quid pro quo sexual harassment in violation of FEHA; unlawful coercion in violation of FEHA; hostile work environment and sexual harassment in

violation of FEHA; sexual favoritism in violation of FEHA; failure to prevent sexual harassment in violation of FEHA; negligent hiring and retention; intentional infliction of emotional distress; negligent infliction of emotional distress; violations of the CA Whistleblower Protection laws; unlawful employment conditions in violation of public policy; fraud; deceit; perjury; hate crime; violations of the US Constitution and the CA Constitution; negligence; fraudulent and negligent misrepresentation; breach of implied covenant of good faith and fair dealing; and stalking.

1129. The Defendants knowing conduct, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in CA Business and Professions Code sections 17200-17208. Specifically, the Defendants conducted business activities while failing to comply with the legal mandates cited herein.

1130. As a result of the Defendants unfair business practices, the Defendants have reaped unfair benefits at Ms. Victor's expense.

1131. By engaging in the acts and practices described above. The Defendants committed one or more acts of unfair competition within the meaning of the Business and Profession Code section 17200, which includes unlawful, unfair, or fraudulent business acts or practices.

1132. The Defendants, each of them, committed unlawful business acts or practices by, among other things, engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Ms. Victor and engaging in conduct that is immoral, unethical, oppressive, or substantially injurious to Ms. Victor.

1133. The Defendants committed fraudulent business acts or practices by, among other things, engaging in conduct that the Defendants know or should have know were likely to, and did, deceive the public, including Ms. Victor.

1134. As a direct and foreseeable result of the Defendants unlawful conduct as alleged herein, the Defendants business acts or practices have caused injury to Ms. Victor and the public. Ms. Victor is entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by the Defendants as a result of such business acts or practices.

1135. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants illegal acts as described herein are a serious and continuing threat to Ms. Victor and the public.

1136. If the Defendants are allowed to continue their unfair and unlawful acts, Ms. Victor and the public will suffer further immediate and irreparable injury, loss, and damage.

1137. Ms. Victor is further informed and believes, and based thereon alleges, that in the absence of a temporary restraining order and preliminary and permanent injunctions as prayed below, the Defendants, each of them, will continue to unfairly and unlawfully compete.

1138. Ms. Victor has lost money and/or property and has suffered injury as a direct result of the Defendants unlawful business acts and practices as well as severe emotional distress over safety issues.

1139. Ms. Victor seeks restitution, declaratory, and injunctive relief, and any other relief allowable under the CA Business and Professions Code section 17200, et seq.

1140. WHEREFORE, Ms. Victor requests judgement as is further set below.

## **PRAYER FOR RELIEF**

WHEREFORE PLAINTIFF DANIELLE VICTOR respectfully prays for judgement and relief against the DEFENDANTS, each of them, and DOES 1-100, inclusive, and each of them, as follows:

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

1. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code sections 201-203;

2. That the court award Ms. Victor for all of the Plaintiff's regular wages which were unpaid, from the period of February 15, 2019 to June 14, 2019, at a rate of $14.25 per hour. Ms. Victor seeks an award for two hundred and thirty two (232) regular hours worked. Plaintiff claims overtime wages at the rate of $21.74 per hour for fifty-four (54) hours of unpaid overtime. Ms. Victor seeks award of $4,533.96 in relief for all of her unpaid regular and overtime wages which the Defendants, each of them, have intentionally and maliciously refused to pay Ms. Victor;

3. That the court award Ms. Victor meal period premium wages based on a regular rate of pay of $14.25 per hour, for forty-five (45) workdays, where a meal period was not provided to Ms. Victor as required by law. The Plaintiff seeks an award in the amount of $641.25;

4. That the court award Ms. Victor rest period premium wages based on a regular rate of $14.25 per hour, for ninety (90) workdays, where a rest period was not provided as required by law. The Plaintiff seeks an award in the amount of $1,282.50;

5. That the court award Ms. Victor liquidated damages, for Labor Code violations, as follows: Minimum wages earned at $12.00 per hour, for a total of two hundred and eighty-six (286) hours where at least minimum wage was not paid as required by law. The Plaintiff seeks an award in the amount of $3,432.00;

6. That the court award Ms. Victor waiting time penalties. Ms. Victor was discharged from Wally's on June 14, 2019, on which date wages were due to Ms. Victor. Plaintiff claims waiting time penalties for thirty days (30) worth of wages, based on rate of pay of $179.22 per

day. Daily rate of pay is calculated as follows: eight (8) regular hours at $14.25 per hour, which is $114.00, three (3) overtime hours at a rate of $21.74 per hour, which is $65.22, totaling $179.22. The Plaintiff seeks an award in the amount of $5,376.60;

7. That the court award Ms. Victor compensation for all accrued sick days. Ms. Victor began accruing sick days beginning on February 15, 2019 until her suspension on June 14, 2019. Ms. Victor has accrued, at minimum, forty eight (48) hours (six days) of paid sick leave per month of her employment, totaling two hundred and forty (240) hours of paid sick leave during her five month employment with the Defendants. Pursuant to CA Labor Code, section 246, the Plaintiff was owed compensation for such accrued sick days at the time of her separation of employment from the Defendants. Plaintiff claims waiting time penalties for thirty days worth of wages, based on a rate of pay of $114.00 per day. Daily rate of pay is calculated as follows: eight regular hours at the pay rate of $14.25 per hour, totaling $114.00. The Plaintiff seeks an award in the amount of $6,840.00;

8. That the court award Ms. Victor compensation for all accrued vacation time. Ms. Victor began accruing vacation time beginning on February 15, 2019 until her suspension on June 14, 2019. Ms. Victor had accrued, at minimum, six days of vacation time for her employment. Ms. Victor was owed compensation for such accrued vacation days at the time of her separation of employment from Wally's. The Plaintiff claims wages earned at the rate of $14.25 per hour, for forty-eight (48) hours worked. Plaintiff was discharged on June 14, 2019, on which date these wages were due. In addition, the Plaintiff claims waiting time penalties for thirty days worth of wages, based on a rate of pay of $114.00 per day. Daily rate of pay is

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

calculated as follows: eight regular hours at the rate of $14.25 per hour, totaling $114.00. The Plaintiff seeks an award in the amount of $4,104.00;

9. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code section 210, The Defendants are liable for one hundred dollars ($100) for their initial failure to pay the Plaintiff and two hundred dollars ($200) for each additional, willful, and intentional, failure to pay the Plaintiff. The Defendants failed to pay the Plaintiff, initially, upon her suspension on June 14, 2019 making them liable for the one hundred dollar ($100) penalty. The Defendants then intentionally and willfully, failed to pay the Plaintiff on August 9, 2019 when her Labor Claim was initially filed, on May 20, 2020 when Deputy Ray and the Plaintiff's previous counsel closed the claim without the Plaintiff's knowledge, on September 9, 2020 when a complaint was filed in the Los Angeles Superior Court, and through multiple hearings, two unlawful arbitrations, plus meet and confers, the Defendants intentionally and willfully failed to pay the Plaintiff what she was owed, dragging the non-payment of such wages for three years, resulting in approximately 50 subsequent failures to pay Ms. Victor her owed compensation. In addition, Ms. Victor is owed twenty-five percent (25%) of the amount that was withheld from her, which is $26,210.31 The Plaintiff seeks an award in the amount of $16,652.58;

10. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code section 226, and to penalize the Defendants with an infraction for such violation;

11. The Defendants are liable for fifty dollars ($50) for their initial failure to comply with CA Labor Code section 226, subdivision (a), and the Defendants are liable to pay one hundred dollars ($100) for each additional, willful, and intentional, failure to comply with CA Labor

Code subdivision (a), in an amount not to exceed four thousand dollars ($4,000). The Plaintiff seeks immediate judgement in the amount of $4,050.00;

12. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code section 204, an award penalties for each violation, in the amount of one hundred dollars ($100) and two hundred dollars ($200) for each subsequent violation;

13. That the court award Ms. Victor the maximum number of hours accruable pursuant to CA Labor Code section 247.5. The Defendants were obligated by law to maintain accurate employment records for a minimum of three years, however, they have never, nor do they still have accurate records. The Defendants do not have accurate time stamps for the Plaintiff's missing hours, missing meal/rest periods, vacation time, sick time, etc. Due to their failure to maintain accurate records, the Plaintiff is owed the maximum number of hours available pursuant to this section. The Plaintiff worked for five months with the Defendants, therefore the Plaintiff wants the maximum number of hours to be accrued pursuant to this section to be 150 hours with her daily rate of pay, $14.25. The Plaintiff seeks an award in the amount of $17,100.00;

14. That the court award Ms. Victor a civil penalty of seven hundred and fifty dollars ($750). The Defendants willfully, intentionally, and maliciously violated CA Labor Code section 226, pursuant to subdivision (f) the Defendants are liable to pay the Plaintiff a penalty of seven hundred and fifty dollars ($750);

15. That the court award Ms. Victor penalties, pursuant to CA Labor Code section 226.3, of two hundred and fifty dollars ($250) for each violation of CA Labor Code section 226,

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

subdivision (a), and one thousand dollars ($1,000) for each subsequent violation; and any and all other civil penalties available pursuant to CA Labor Code section 226.3;

16. That the court find and declare that the Defendants, each of them, guilty of a misdemeanor pursuant to CA Labor Code section 226.6, and may the court award Ms. Victor any civil penalties applicable by law in addition to, including any other penalty provided by law;

17. That the court award the penalty of seven hundred and fifty dollars ($750) as well as injunctive relief, and any additional interest thereon, pursuant to CA Labor Code section 1198.5;

18. That the court prohibit the Defendants from introducing any evidence, books, documents, or records that can add further fraud on the court, pursuant to CA Labor Code section 1174.1;

19. That the court award the civil penalty of five hundred dollars ($500) to Ms. Victor, pursuant to CA Labor Code section 1174.5;

20. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to CA Labor Code 1175;

21. That the court award Ms. Victor compensation of one additional hour of pay for every meal or rest or recovery period that the Defendants did not provide to Ms. Victor, pursuant to CA Labor Code 226.7, subdivision (c);

22. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to CA Labor Code section 351 and 354; and award Ms. Victor a civil penalty of a minimum of one thousand dollars ($1,000); The Defendants failed to pay the Plaintiff owed gratuities. Pursuant to CA Labor Code Section 354, the Defendants are guilty of a misdemeanor. The Plaintiff claims one thousand dollars ($1,000) as a civil penalty.

23. Pursuant to CA Labor Code section 356, every department of the State of California is bound, as part of the social public policy of the State of California, to prevent fraud upon the public in connection with the practice of tipping. The Defendants have attempted to use a private arbitration to fraud the public and Ms. Victor from gratuity she has earned and was denied. Ms. Victor moves the court to enforce such public policy and prevent the Defendants from further fraud on the court and upon the public;

24. That the court award Ms. Victor compensation for all said gratuity, plus interest thereon; The Defendants owed the Plaintiff a two thousand dollar tip which has still not being given to the Plaintiff. In addition to the civil penalty of one thousand dollars ($1,000), the Plaintiff claims the two thousand dollars ($2,000) gratuity she is owed, and waiting time penalties for their failure to pay such gratuity. The Plaintiff seeks an award in the amount of $6,420.00 and any additional interest thereon;

25. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to both CA Labor Code section 510 and CA Labor Code section 553;

26. That the court award Ms. Victor all interest, plus prejudgement interest, and further all fees and costs for enforcing a court order for such compensation, pursuant to CA Labor Code section 1194, subdivision (a) and CA Labor Code section 1194.3; Pursuant to CA Labor Code section 1194.3, the Plaintiff may recover costs of suit, to enforce the court judgement for all unpaid wages. The Plaintiff claims costs of suit for her one year of self representation at the rate of her former attorney Walter Mosley of eight hundred dollars ($800) per hour, for eight hours a day, five days a week, as the Plaintiff has worked tirelessly and effortlessly to obtain her unpaid

compensation from the Defendants, amongst other things. The Plaintiff seeks an award in the amount of one million, five hundred and thirty-six thousand dollars ($1,536,000.00);

27. That the court order an injunction against the Defendants, each of them, to stop any further violations of any such laws, regulations, or orders by the Defendants, pursuant to CA Labor Code section 1194.5;

28. That the court award Ms. Victor all civil penalties available pursuant to CA Labor Code section 558, subdivisions (a) and (c); in addition to any other civil or criminal penalties provided by law; Pursuant to CA Labor Code section 558, any person who violates, or causes to be violated, any provisions of the CA Labor Code Chapter are held liable for civil penalties. The Plaintiff holds twenty two (22) corporations and/or individuals liable for each and every violation. The Defendants are liable for fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. The Defendants are also liable for each subsequent violation, for one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. The Plaintiff seeks an award in the amount of $29,700.00 and any additional amount the court deems proper;

29. That the court award Ms. Victor all compensation owed, plus interest thereon, including prejudgement interest to the extent of the law;

30. That the court award Ms. Victor a civil penalty of ten thousand dollars ($10,000) for each separate violation, pursuant to CA Labor Code section 1102.5, subdivision (f); in an amount no less than two hundred and twenty thousand dollars ($220,000);

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

31. That the court enforce an injunction restraining the Defendants, each of them, from the use or operation thereof until their working conditions are no longer a serious menace to the life and safety of Ms. Victor and the lives and safety of the public;

32. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to CA Labor Code section 1199;

33. That the court award Ms. Victor three times the maximum amount of actual damages for the Defendants violations of the Unruh Civil Rights Act, CA Civil Code section 51;

34. That the court order injunctive relief for the Defendants, each of them, discrimination and violations of the Unruh Civil Rights Act; in addition to damages for past harm;

35. That the court award Ms. Victor a civil penalty of twenty-five thousand dollars ($25,000) at all times applicable, pursuant to CA Civil Code section 52; in an amount no less than seventy-five thousand dollars ($75,000);

36. That the court grant Ms. Victor all statutory damages, including actual and exemplary damages pursuant to CA Civil Code section 52; in an amount no less than one million dollars ($1,000,000);

37. That the court find and declare that the Defendants, each of them, are guilty of the crime of stalking, pursuant to the CA Penal Code section 646.9;

38. That the court award Ms. Victor all general, special, and punitive damages available under each cause of action, pursuant to CA Civil Code section 3294; in an amount no less than one million dollars ($1,000,000);

39. That the court award Ms. Victor three times the amount of any general and special damages; in addition to a civil penalty of fifty thousand dollars ($50,000) for each responsible

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

person, pursuant to CA Civil Code section 1708.8, subdivision (e); in an amount no less than one million one hundred thousand dollars ($1,100,000);

40. That the court award Ms. Victor all exemplary damages applicable by law, pursuant to CA Civil Code section 3340;

41. That the court award Ms. Victor all damages applicable by law plus prejudgement interest, pursuant to CA Civil Code sections 3287 and 3288; and any other provisions of law providing for prejudgement interest;

42. That the court order the Defendants, each of them, enjoined, pursuant to the police power granted by CA Government Code sections 12920 and 12920.5 for failing and refusing to comply with the mandates of FEHA;

43. That the court order the Defendants, each of them, enjoined, pursuant to CA Government Code, section 12965, subdivision (c), for failing and refusing to comply with the mandates of FEHA;

44. That the court award Ms. Victor a civil penalty of ten thousand dollars ($10,000) for each person who intentionally engaged in acts of reprisal, retaliation, threats, coercion, or similar acts against Ms. Victor for making protected disclosures, pursuant to CA Government Code section 8547.8, subdivision (b); in an amount no less than two hundred and twenty thousand dollars ($220,000);

45. That the court award Ms. Victor a civil penalty of ten thousand dollars ($10,000) for each person who intentionally engaged in acts of reprisal, retaliation, threats, coercion, or similar acts against Ms. Victor for making protected disclosures, pursuant to CA Government

Code section 8547.13, subdivision (d); in an amount no less than two hundred and twenty thousand ($220,000);

46. That the court find and declare that the Defendants, each of them, are guilty of a felony, for each separate violation, pursuant to CA Penal Code section 115, subdivision (a);

47. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor pursuant to CA Penal Code section 133;

48. That the court find and declare that the Defendants, each of them, are guilty of perjury pursuant to CA Penal Code section 118;

49. That the court find and declare that the Defendants, each of them, are guilty of subornation of perjury pursuant to CA Penal Code section 127;

50. That the court find and declare that the Defendants, each of them, are guilty of a felony pursuant to CA Penal Code section 132;

51. That the court find and declare that the Defendants, each of them, are guilty of a felony pursuant to CA Penal Code section 134;

52. That the court find and declare that the Defendants, each of them, are guilty of a public offense pursuant to CA Penal Code section 136.1;

53. That the court find and declares that the Defendants, each of them, are guilty of a felony pursuant to CA Penal Code section 182;

54. That the court award Ms. Victor a civil penalty of twenty-five thousand dollars ($25,000) pursuant to CA Penal Code section 182;

55. That the court enforce an order protecting Ms. Victor from any further acts of violence, threats, stalking, or harassment by each Defendant, including DOES 1-100, inclusive, pursuant to CA Penal Code section 422.85;

56. That the court issue declaratory and injunctive relief, immediately, against the County of Los Angeles for the above violations of federal and state laws;

57. That the court issue injunctive relief, immediately, against the Defendants for the above violations of federal and state laws;

58. That the court award Ms. Victor all loss of earnings; in an amount no less than one million dollars ($1,000,000);

59. That the court award Ms. Victor all future loss of earnings; in an amount no less than one million dollars ($1,000,000);

60. That the court award Ms. Victor all economic and non-economic damages; in an amount no less than one million dollars ($1,000,000);

61. That the court award Ms. Victor all past and future medical and related expenses; in an amount no less than one million dollars ($1,000,000);

62. That the court award Ms. Victor all monetary damages; in an amount no less than one million dollars ($1,000,000);

63. That the court award Ms. Victor all punitive and exemplary damages, in a sum appropriate to pushes the Defendants, each of them, including DOES 1-100, inclusive, and set an example for others; in an amount no less than four million dollars ($4,000,000);

64. That the court award Ms. Victor all special damages, in an amount no less than one million dollars ($1,000,000);

65. That the court award Ms. Victor all general damages, in an amount no less than one million dollars ($1,000,000);

66. That the court issue an order imposing all statutory and/or civil penalties provided by law, together with interest on these amounts; in an amount no less than one million dollars ($1,000,000);

67. That the court issue a declaratory judgement that the Defendants, each of them, have violated the CA Labor laws and public policy as alleged herein;

68. That the court issue a declaratory judgment that the Defendants, each of them, have violated CA Civil laws and public policy as alleged herein;

69. That the court issue a declaratory judgement that the Defendants, each of them, have violated CA Government laws and public policy as alleged herein;

70. That the court issue a declaratory judgement that the Defendants, each of them, have violated the laws of the State of California and of the CA Constitution as alleged herein;

71. That the court issue a declaratory judgement that the Defendants, each of them, have violated the laws of the United States and of the United States Constitution as alleged herein;

72. That the court issue a declaratory judgement that the Defendants, each of them, have violated CA Penal laws and public policy as alleged herein;

73. That the court order the Defendants, each of them, enjoined and to cease and desist from unlawful and/or unfair business activities in violation of CA Business and Professions Code section 17200, pursuant to CA Business and Professions Code section 17203;

74. That the court award Ms. Victor restitution of the funds improperly obtained by the Defendants, each of them.

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

75. That the court award Ms. Victor restitution of all monies due to Ms. Victor from the unlawful business practices of the Defendants, each of them;

76. That the court award Ms. Victor all consequential damages applicable by law; in an amount no less than one million dollars ($1,000,000);

77. That the court award Ms. Victor for all prejudgement interest, available by law, at the prevailing legal rate;

78. That the court award Ms. Victor for all post judgement interest, available by law, at the prevailing legal rate;

79. That the court award Ms. Victor any further equitable relief that the court may deem just and proper;

80. That the court award Ms. Victor any further available statutory penalties, together with interest, that the court may deem just and proper;

81. That the court award of such other and further relief that the court may deem appropriate;

82. That that court award or issue all other available remedies applicable by law;

83. That the court award Ms. Victor all reasonable fees and costs of suit, including any additional expenses; in an amount no less than three million dollars ($3,000,000);


**DATED:** August 11, 2022

BY: _____

DANIELLE K. VICTOR
PLAINTIFF IN PRO SE

## **DEMAND FOR A JURY TRIAL**

PLAINTIFF, DANIELLE VICTOR, hereby demands a jury trial with respect to all issues triable of right by jury. PLAINTIFF, DANIELLE VICTOR, demands that each separate request for immediate injunctions, protective orders, and emergency relief be granted prior to such jury trial. The amount demanded exceeds twenty-five thousand dollars ($25,000), pursuant to CA Government Code section 72055.

**DATED:** August 11, 2022

BY: _____

DANIELLE VICTOR
PLAINTIFF IN PRO SE

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES

## <u>VERIFICATION</u>

I am the Plaintiff in this action. I have read the foregoing FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES and know its contents.

The matters stated in the foregoing FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES are true of my own knowledge except as to those matters which are alleged on information and belief, and as to those matters I believe them to be true.


Executed on August 11, 2022, at Methuen, Massachusetts.

I declare under the penalty of perjury under the laws of the State of California and under the laws of the United States of America, that the forgoing is true and correct.


_____
Danielle K. Victor
Plaintiff in Pro Se

FIRST AMENDED VERIFIED GENERAL COMPLAINT FOR DAMAGES